David Foyil, SBN 178067
Equal Justice Law Group
601 Court Street, Suite 106
Jackson, CA 95642
Phone: (209) 223-5363
Email:  mail@equaljusticelawgroup.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON PERSINGER AND NICOLE PERSINGER | **Case No.: 2:24-CV-02967-DAD-CSK** |
| Plaintiffs, | **SECOND AMENDED COMPLAINT** |
| vs. | **1.  Violation of the Americans with Disabilities act (ADA)** |
| COUNTY OF PLACER, DOES 1 – 100, INCLUSIVE | **2.  Municipal liability under Monell (42 U.S.C. § 1983)** |
| Defendant | **3.  Violation of Fourth Amendment rights (42 U.S.C. § 1983)** |
| | **4.  Retaliation in violation of the First Amendment (42 U.S.C. § 1983)** |
| | **5.  Unlawful termination in violation of Plaintiff's First and Fourteenth Amendment Due Process (42 U.S.C. § 1983)** |
| | **6.  Loss of consortium** |
| | **7.  Intentional Infliction of Emotional Distress** |
| | **8.  Discrimination in violation of Cal. Govt. Code § 12940** |
| | **9.  Defamation** |
| | **10 . Violation of California Civil Code§§ 56.20–56.245 (confidentiality of medical information)** |
| | **Demand for Jury Trial** |
| | **Complaint Filed:      October 29, 2024** |
| | **FAC filed:            January 17, 2025** |

**JURISDICTION AND VENUE**

Plaintiffs allege:

1.  This is an action brought under the Constitution and laws of the United States, 42 U.S.C. §1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 to recover damages against Defendants for violation of plaintiff's right against unreasonable search and seizure, guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, against Plaintiff's retaliation for exercising his First Amendment rights, guaranteed by the First and Fourteenth Amendments to the United States Constitution, and against the alienation of property without due process guaranteed by Section 1 of the Constitution of the State of California as incorporated pursuant to Ninth, Tenth and Fourteenth Amendments to the United States Constitution. Additionally, Plaintiff asserts Monell claim against the Defendant. This action seeks redress for violations of the United States and California Constitutions, as well as statutory and common law claims.

2. The jurisdiction of this Court is predicated on 28 U.S.C. §§§ 1331, 1343, and 12101.

3. Plaintiff, Jon Persinger, is, and at all times mentioned in this complaint was, a citizen of the United States, and a resident of Placer County, California. Co-Plaintiff, Nicole Persinger, is, and at all times mentioned in this complaint was, a citizen of the United States, and a resident of Placer County, California.

4. Defendant County of Placer is, at all times mentioned in this complaint was, a Charter County of the State of California, located within the Eastern District of California.  Venue is therefore proper under 28 U.S.C. §1391(b).

5. Plaintiff is ignorant of the true names and capacities of defendants sued in this complaint as DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious names.

SECOND AMENDED COMPLAINT

Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences and the discrimination against Plaintiff alleged in this complaint. At all relevant times, said defendants were acting within the course and scope of their employment with Defendant COUNTY OF PLACER and under color of state law. Plaintiffs' damages and constitutional injuries were proximately caused by the acts and omissions of these DOE defendants.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6**.** PLAINTIFF has fully exhausted all applicable administrative remedies and received his Right to Sue notice from the Equal Employment Opportunity Commission on August 7, 2024. Subsequently, PLAINTIFF received his Right to Sue notice from the California Civil Rights Department on September 11, 2024. PLAINTIFF submitted timely claims to the DEFENDANT, which was rejected on October 3, 2024.

7. PLAINTIFF and CO-PLAINTIFF have filed the following claims with DEFENDANT as required by the Government Claims Act:

8. PLAINTIFF filed a claim with the DEFEENDANT on November 2, 2023, alleging tort actions including employment causes of action and constitutional rights violations, which was rejected November 30, 2023.

9. PLAINTIFF filed a claim with the DEFENDANT alleging tort action, including malicious prosecution, abusive process, and subsequent prosecution on December 14, 2023, which was rejected on January 10, 2024.

10. CO-PLAINTIFF filed a claim with the DEFENDANT alleging tort actions, including consortium on December 14, 2023, which was rejected on January 26, 2024.

11. PLAINTIFF and CO-PLAINTIFF, through their counsel, filed claim with the DEFENDANT alleging all causes of actions foregoing in this complaint on September 27, 2024, which was rejected on October 3, 2024.

12. PLAINTIFF and CO-PLAINTIFF filed timely claims with the DEFENDANT to afford prompt notice and permit early investigation and evaluation for the claims. In accordance with the Government Claims Act, DEFENDANT's continuing violation postponed the accrual of the causes of action to a point within six months of the claim presentation, making such claim timely as the misconduct continued into the six-month period before the claim was. *Wills v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1118. Moreover, PLAINTIFF is permitted to represent claims that have not timely been filed if a written application was provided to the public entity for leave to present such a claim. If the public entity denied such claim, California Government Code section 946.6 authorized PLAINTIFF to petition the court for relief from the claim requirements. *Le Mere v. Los Angeles, Unified School District* (2019) 35 Cal.App.5th 237, 246.

**FACTUAL BACKGROUND**

13. In December 2018, plaintiff was employed by PCSO in Placer County. Plaintiff received a position as a Deputy Sheriff II at PCSO. His duties included uniform patrol in various locations within Placer County. Plaintiff's duties also included Coroner responsibilities where he had to manipulate dead bodies, take off clothing, and checking for injuries per investigative protocols. During his previous employment at the Union City Police Department, plaintiff was not required to perform such Coroner duties. Plaintiff was previously not responsible for manipulating and working with dead bodies in such various states of decay or trauma. It caused severe distress dealing with this new assignment.

14. Additionally, plaintiff was concerned with the lack of mental health support at PCSO. In his previous employment, at the Union City Police Department, after each incident that involved substantial injuries or death (critical incident), there was a mandatory debriefing with a certified therapist and/or peer support team. PCSO did not offer such services. The stress at work, and lack of mental support, started accumulating. Plaintiff started experiencing discomfort and stress induced medical ailments especially during calls that involved dead bodies, and even more particularly, those involving young victims.

15. As a consequence of the building stress stemming from work related duties, Plaintiff experienced physical symptoms at work and during his personal time off.  Plaintiff spoke to his medical doctor. Plaintiff was diagnosed with stress-induced Hypertension (high blood pressure) and placed on medication. Plaintiff knew reporting stress symptoms at work to PCSO staff would cause him to be retaliated against and ostracized, because he had witnessed other deputies go through this exact ordeal.

16. In July 2022, plaintiff was assigned to uniformed patrol duties in Auburn, California. On September 9, 2022, while on uniformed patrol for the Placer County Sheriff's Office (PCSO), Plaintiff responded to a call for service from Ruth Smith-Edgar, who reported a stolen garden hose. Plaintiff initially left a voicemail at the number she had provided and later met her at her apartment. After investigating the surrounding area, including a nearby dumpster, Plaintiff spoke with a neighbor who stated that Smith-Edgar was known to be untruthful, disliked by other residents, and involved in prostitution. The neighbor showed Plaintiff advertisements from Smith-Edgar's escort services posted on social media.

17. When Plaintiff returned to inform Smith-Edgar that he had not located the missing hose, she invited him into her apartment due to poor outdoor air quality from active wildfires. Inside,

Plaintiff observed cash on a table in a manner consistent with prostitution, which Smith-Edgar confirmed she was involved in. She then disclosed that she had been arrested at Thunder Valley Casino by Deputy Derek Tredinnick, who proposed she act as a confidential informant (CI) in exchange for being released without charges. She claimed she had later provided Tredinnick with information about a UAIC tribal council member engaged in illegal activity. According to Smith-Edgar, Tredinnick showed no interest in investigating UAIC members, and she suspected PCSO maintained a corrupt relationship with the tribe due to casino kickbacks. She stated her ban from Thunder Valley Casino was lifted shortly after providing that information, which she believed was a quid pro quo for not pursuing the case.

18. Based on his prior experience handling CIs at another law enforcement agency, Plaintiff briefly considered whether Smith-Edgar might be a viable informant. At her request, he reviewed her son's recent arrest record, which included felony domestic violence and possible attempted homicide charges stemming from a July 2022 incident. Plaintiff made clear that no assistance or law enforcement favors would be offered in return for her cooperation. He provided her with a temporary TextNow phone number as was common practice among deputies without assigned work phones.

19. On November 17, 2022, Plaintiff, motivated by an internal PCSO email requesting CI referrals for fentanyl operations sent by Sergeant Ben Machado reinitiated contact with Smith-Edgar. Her apartment complex was located near the intersection of Luther and Bowman Roads on the route to the Auburn PCSO station, and Plaintiff had passed her complex regularly. During their meeting, she again expressed interest in becoming a CI but reiterated her request for assistance with her son's jail medical care. While at her residence, she received a recorded call from her son at the Placer County Jail. Concerned about her son's safety and confidentiality, Plaintiff avoided

SECOND AMENDED COMPLAINT

identifying himself as law enforcement. Later that day, Plaintiff contacted jail medical staff, who confirmed that all inmates exposed to the earlier tear gas incident, including Smith-Edgar's son, were receiving proper medical care.

20. On or around November 26, 2022, Smith-Edgar messaged Plaintiff asking, "Are you coming soon?" Plaintiff did not respond.

21. On January 13, 2023, during his last day working the Auburn patrol beat before reassignment, Plaintiff again observed Smith-Edgar outside her apartment. Earlier that day, she had requested a selfie photo from Plaintiff via text message, stating that "something happened to her" involving a prostitution client. Concerned for her safety, Plaintiff declined to send a photo but offered to meet with her in person. When he arrived at her residence around 5 p.m., Smith-Edgar behaved unusually, spoke over him, and appeared to be attempting to manipulate the conversation. Sensing something was wrong, Plaintiff promptly ended the interaction and left.

22. Plaintiff later learned that this January 13 meeting had been secretly recorded without his knowledge or consent, allegedly at the direction of Smith-Edgar's civil attorney, Dan Gilleon, and her son, Richard Jeffcoach. The recording occurred shortly after Smith-Edgar had filed a tort claim against the County of Placer, alleging sexual misconduct by Plaintiff—her first and only complaint against him. Plaintiff believes this final interaction was orchestrated by Gilleon, known for filing sexual misconduct lawsuits against law enforcement, and was intended to entrap him into making compromising statements.

23. Based on the tort claim and the secret recording, which revealed no wrongdoing, PCSO initiated criminal and internal affairs investigations into Plaintiff. Plaintiff believes the investigations were retaliatory in nature, prompted by his refusal to intervene in Smith-Edgar's

son's case, and that they were further supported by a pattern of unfounded complaints she had made against other PCSO deputies.

24. It should be noted that from the time of July, 2022, to January, 2023, Smith-Edgar made multiple reports to PCSO alleging misconduct by various Deputies. Smith-Edgar never made any such complaints regarding plaintiff. Smith-Edgar never contacted PCSO for a crime report related to any allegations against plaintiff. Smith-Edgar's first action against plaintiff was through her lawyer via a Tort filed on January 12, 2023.

25. On January 20, 2023, a search warrant was obtained and executed by Placer County Sheriff's Office (PCSO) Detective Jeff Martin for the search of Plaintiff's residence, personal vehicles, employee locker (located at a PCSO substation), person, and for the seizure of telecommunications equipment, including Plaintiff's cell phone. Plaintiff hereby incorporates by reference a true and correct copy of Exhibit A. The warrant was based solely on allegations by Ruth Smith-Edgar claiming she "feared" Plaintiff, a claim which was not accompanied by any allegation of threats, force, coercion, or conduct that would constitute a felony under California law. The only stated basis in the supporting affidavit was that Plaintiff was a peace officer and that Smith-Edgar was allegedly intimidated by his status. Plaintiff hereby incorporates by reference a true and correct copy of Exhibit B.

26. Detective Martin's affidavit in support of the search warrant did not contain any facts establishing probable cause to believe Plaintiff had committed a felony sexual assault. The warrant's scope authorized seizure of Plaintiff's telecommunications devices but did not authorize forensic examination or search of the contents of those devices. Any such search would be subject to statutory requirements under the California Electronic Communications Privacy Act (CalECPA).

SECOND AMENDED COMPLAINT

27. Further undermining the basis for the warrant, contemporaneous reports authored by PCSO Detectives Cameron Bal and Jeff Martin reflect that prior to the warrant's execution, both detectives concluded Plaintiff's conduct, while perhaps unusual, was not criminal. Plaintiff hereby incorporates by reference a true and correct copy of Exhibit C. They also observed that Smith-Edgar's allegations appeared to be motivated by personal animus and potential financial gain, rather than genuine fear or evidence of any unlawful behavior.

28. Detective Bal noted that Smith-Edgar's actions, including freely inviting Plaintiff into her home, recording the interaction without signs of distress, and delaying her report to PCSO regarding the encounter by approximately one hour, undermined her claim of fear.

29. Despite the significance of these findings, none of these exculpatory statements or beliefs were presented to the issuing magistrate, Judge Michael W. Jones. The warrant affidavit omitted these statements and failed to disclose the investigating officers' concerns about the credibility of the complainant and the absence of probable cause.

30. Plaintiff is informed and believes and thereon alleges, that all times mentioned herein, the standard practice of requesting and seeking approval  of search warrants by the PCSO in conjunction with its prior oral arrangement with the Placer County District Attorney Office to approve warrants was automated to the point little to no objective legal standard was administered pursuant to plaintiff's rights against unlawful search and seizure and privacy guaranteed by the Constitutions of United States and state of California. More specifically, plaintiff is informed and believes and alleges, that the process of having warrants approved was completed by the submission of the required affidavit of support of the warrant by any investigating officer to a Deputy District Attorney, which was thereafter approved without proper judicial review or any objective legal standard.

SECOND AMENDED COMPLAINT

31. On the evening of January 20, 2023, the deputies from the Placer County Sherrif's Office (PCSO) unit arrived at plaintiff's residence to execute the search warrants. Plaintiff was home alone with minor child, sleeping in her room. Plaintiff was relaxing as he was off duty and had one alcoholic drink, containing approximately six or seven shots of Whiskey, while watching TV. At or around 8:00 pm, an individual rang plaintiff's video doorbell. Plaintiff looked at his phone to identify who the party was. The video camera was blocked. Consequently, plaintiff was unable to ascertain who was at his door. He then went downstairs to answer the door.   When he opened the door, PCSO deputies provided a search warrant and downplayed the situation by stating that Smith-Edgar made allegations, that they were doing a routine investigation, and that he should not be worried about it. Plaintiff was in disbelief and had no time to process the situation due to the late hour and influence of alcohol. Plaintiff let PCSO unit inside his residence and was cooperative.

32. Upon PCSO deputies' entry to the house, plaintiff's minor child woke up. She was calling for dad, Plaintiff, as she was behind her bedroom closed door per PCSO unit instructions. The minor was distraught and kept yelling and calling for her parents. PCSO unit kept informing plaintiff that he could not attend to the minor. No members of PCSO were ensuring the safety of the minor child. Minor child was distraught as they saw clearly her parents were stressed.

33. At the same time, Co-Plaintiff, arrived at the residence. Upon Co-Plaintiff's arrival, she noted law-enforcement units surrounding her house. Co-Plaintiff had no knowledge as to what was happening, and upon her request to get any information, she was denied any answers. Co-Plaintiff requested to enter into the residence to attend to the minor child. She explained that her child is young and terrified, but PCSO declined her request.

SECOND AMENDED COMPLAINT

34. At or around 10 pm, January 20, 2023, Plaintiff was asked to leave with criminal investigators for an interview at the PCSO station in Auburn, California.

35. Prior to leaving the residence, plaintiff had unambiguously informed the investigating deputies that he had consumed a significant amount of alcohol. Plaintiff expressed concern that he lacked the capacity to definitively, accurately, with full recollection, and with understanding of consequences of any voluntary communication relative to the investigation he was capable of correctly responding to questions or sufficiently able to understand any consequences of an apparent or actual waiver of his constitutionally protected right against self-incrimination.

36. During the interview, PCSO deputies used a ruse to convince plaintiff to sign two forms consenting to a search of his cellular devices. Plaintiff hereby incorporates by reference a true and correct copy of Exhibit D. The detectives told plaintiff that they would return plaintiff's phone that night after completing their search., which plaintiff understood to mean, based on the representations of investigators present, that the phone will be immediately returned after completion of a full data transfer from Plaintiff's phone. After the conclusion of the interview, plaintiff met with internal affairs to complete administrative forms required in conjunction with investigation. Thereafter, he immediately requested return of the phone, having allowed more than ample time for a complete data transfer to be completed. At that time plaintiff was informed that his phone would not be returned but held as evidence. Again, it should be noted that the warrant upon which this particular seizure was conducted did not authorize any forensic discovery of plaintiff's phone, that plaintiff only authorized of data transfer on the condition that the phone will be immediately returned. Consequently, the waivers signed by plaintiff were only executed on the material misrepresentation of the investigators of PCSO in violation of plaintiff's constitutionally protected rights against self-incrimination and unlawful search and seizure.

37. After Plaintiff was taken from the residence, multiple PCSO supervisory personnel, including Lieutenant Richard Gray (Internal Affairs Commander), Sergeant Nathan Ferguson (Internal Affairs), and Lieutenant Jason Davis (Personnel & Training) entered the residence without Plaintiff's or Co-Plaintiff's consent, and without any role in the criminal investigation.

38. These individuals had no legitimate law enforcement justification to enter the home, as the criminal investigative team already on scene was sufficiently staffed and supervised. Their presence and actions were unauthorized and outside the scope of the search warrant. Surveillance footage captured Lieutenant Davis removing property from inside the home. Sergeant Ferguson appeared to question Davis's actions. Davis stated, "I'm right to take all this stuff too." Davis then took possession of items not listed in the warrant, including Plaintiff's personal and work keys, uniform components, and a ballistic vest.

39. Plaintiff and Co-Plaintiff allege that the true purpose of this entry was to obtain information and property for use in an internal employment investigation unrelated to the criminal case. This is further supported by repeated statements by Lieutenant Gray that Internal Affairs investigators are "entitled" to all information obtained during criminal investigations, regardless of warrant limitations

40. Plaintiff and Co-Plaintiff never consented to the warrantless entry or seizure of property not covered by the warrant. No inventory or receipt was provided for the items taken, and several personal belongings of sentimental value remain missing. Plaintiffs are unaware if these were taken during the unauthorized entry. The conduct of Gray, Ferguson, and Davis constitutes an unreasonable search and seizure under the Fourth Amendment. Their actions were done under color of law, without judicial oversight or lawful authority, and for a non-criminal administrative purpose.

41. On or about January 21, 2023, plaintiff was placed on Paid Administrative Leave related to his investigation regarding Smith-Edgar's claims. Plaintiff's access to County of Placer benefits was immediately removed when he was placed on leave. These restricted benefits included all county computerized self-service access to email, payroll, health benefits, and all other employee self-service portals.

42. On or about January 23, 2023, Detective Cameron Bal, secured a search warrant for records related to plaintiff's use of the TextNow cell phone application. As was noted in the January 20, 2023 Detective Martin search warrant, the records sought were subject to the CalECPA and ordered sealed by the court. Plaintiff rescinded this consent to Detective Bal upon learning that he is not receiving his cellular phone back as promised.

43. Subsequently, PSU Detective Spurgeon documented in a report that a search occurred the following day without a search warrant based on this rescinded consent. None of the detectives informed a judge regarding this search being completed when applying for later search warrant.

44. While on administrative leave, plaintiff was ordered to contact Lieutenant Josh Tindall each morning at 0700 hours of each normal workday. Tindall ordered plaintiff to be available to respond to the Sheriff's Office during his workdays for any reason if required. On or around, February 27, 2023, Tindall ordered plaintiff to arrive at the PCSO Loomis Substation on February 28, 2023, for a meeting with PCSO Professional Standards Unit (PSU) personnel. PSU is the "Internal Affairs" division of PCSO.

45. Plaintiff contacted his Labor Attorney Joshua Olander to inquire what PSU possibly wanted to speak with him about. Olander told plaintiff that PSU wanted to provide him some paperwork that likely scheduled an administrative interview. Olander advised plaintiff that he was unavailable through the rest of the current week due to other obligations. If the meeting was being

SECOND AMENDED COMPLAINT

scheduled for the current week, Olander asked that plaintiff have the meeting rescheduled to the following week or later.

46. On or around February 28, 2023, plaintiff met with two PSU Detectives and a PSU Sergeant at the PCSO Loomis Substation as ordered. Plaintiff was provided paperwork ordering him to an Administrative Interview on Friday, March 3, 2023 (three days later).  Plaintiff informed the PSU members that Olander was not available on that day, and requested the interview be rescheduled for the following week or other agreeable time. Plaintiff was informed by the PSU Sergeant that the meeting was not going to be rescheduled, and he should retain a different attorney if he desired to be represented at the meeting.

47. Plaintiff informed the PSU detective and Sergeant that he was experiencing stress, mental health, and physical health complications from an on duty critical incident he was involved with on January 16, 2023. Due to Plaintiff's Administrative Leave status, he was unable to attend any critical incident debriefings or counseling services offered by PCSO due to the critical incident. Per the Employee Assistance Program, all PCSO employees were offered ten (10) sessions of mental health counseling. Plaintiff's health benefits access and counseling programs offered by PCSO had been removed from him, and plaintiff was having difficulty securing appropriate healthcare. Plaintiff was provided the phone number to County of Placer Employee Assistance Program (EAP) by one of the PSU Detectives.

48. Prior to being placed on Administrative Leave, plaintiff had access to PCSO's Cordico Shield mental health aid program.  Plaintiff no longer had access to Cordico Shield, or any of the other PCSO health benefits. Plaintiff was also not invited to participate in any of the critical incident debriefings or counseling offered to other PCSO personnel that participated in the January 16, 2023, critical incident.

49. Plaintiff later learned after requesting mental health services and counseling for the January 16, 2023, critical incident, Detective Gravey and Detective Morill shared confidential information with Detective Spurgeon. Detective Spurgeon later researched January 16, 2023, critical incident without authorization in the PCSO computer systems and wrote in his internal affairs report information diminishing plaintiff's involvement in the incident. Moreover, Detective Spurgeon later used plaintiff's request for mental health and treatment against him in the internal affairs investigation, which was impermissible.

50. Plaintiff had already been forced to seek private health benefits on his own due to the removal of County of Placer benefits due to his Administrative Leave status. County of Placer has Employee Assistance Program (EAP) benefits available to county employees, but one is required to receive authorization from County of Placer Human Resources to access those benefits.  County of Placer Human Resources employees require an explanation of why the employee is seeking benefits through EAP.  Plaintiff was aware that mental health ailments are a serious stigma in law enforcement, and he did not wish for PCSO to learn from County of Placer Human Resources that he was seeking mental health treatment for fear of discrimination, which he had personally witnessed in the past against other PCSO deputies. It is standard practice for County of Placer Human Resources staff to forward private medical information to PCSO supervisors regarding private medical ailments, conditions, and treatments which is against California standard Human Resources processes.

51. On March 1, 2023, plaintiff sought mental health treatment from a medical doctor (Psychiatrist) through his wife's private insurance. Plaintiff's psychiatrist evaluated him and determined a medical leave of absence from PCSO was needed to provide for a medication treatment plan to allow dangerous physical and mental health conditions to be brought to a safe

SECOND AMENDED COMPLAINT

level. On March 2, 2023, Plaintiff received an official medical leave of absence note from his psychiatrist placing him out of work immediately and until April 1, 2023. Plaintiff hereby incorporates by reference a true and correct copy of Exhibit E. Plaintiff was also instructed to immediately seek treatment from a general practitioner/family medical doctor for additional diagnosis and treatment.

52. Plaintiff contacted his labor attorney (Olander) and advised him of the note. Olander stated he had already attempted to reschedule the Administrative Meeting scheduled for Friday (March 3, 2023), but PSU Detective Spurgeon refused to accommodate the request. Olander also informed plaintiff that PCSO did not accept his medical absence authorization was a valid reason to reschedule or postpone the interview.

53. Plaintiff contacted County of Placer Human Resources regarding his medical absence. Plaintiff was advised to send County of Placer Human Resources a copy of the medical note, which he later did.

54. Plaintiff followed his doctor's medical orders and did not attend the Administrative Interview scheduled for March 3, 2023.  To reiterate, PCSO refused to reschedule the meeting despite the medical excuse.

55. On March 7, 2023, plaintiff contacted County of Placer Human Resources, and spoke with Administrative Technician Radha Gold, as instructed by his primary care physician and psychiatrist to report work related mental health trauma. Plaintiff had been officially diagnosed with Post Traumatic Stress Disorder (PTSD) by his physician. Plaintiff's medication and therapy treatment programs needed additional time to reduce grave health concerns (Hypertension and other serious PTSD health complications), and he was instructed to continue to remain away from work until at least April 1, 2023, as previously medically ordered. Plaintiff advised Gold via

SECOND AMENDED COMPLAINT

telephone that he was suffering from PTSD and was instructed to file a claim for Worker's Compensation benefits. Gold forwarded Plaintiff a claim form via email.

56. On March 8, 2023, plaintiff was contacted by Lieutenant Josh Tindall via text message and ordered to attend another meeting with PSU Detectives at the PCSO Loomis Substation. Plaintiff advised Tindall that he was currently on leave pursuant to his doctor's orders. Plaintiff hereby incorporates by reference a true and correct copy of Exhibit F. Tindall asked plaintiff if his medical orders restricted him from driving to the Loomis Substation. Plaintiff advised Tindall that his medical orders placed him completely off work and meetings with PCSO. Tindall asked plaintiff if he submitted a copy of the medical absence note, and to whom it was submitted.

57. Plaintiff informed Tindall he submitted a copy of the medical note to County of Placer Human Resources. Plaintiff submitted the note from his psychiatrist to County Human Resources rather than directly to PCSO, because he was concerned about retaliation from PCSO due to the medical note being from a psychiatrist. Plaintiff has witnessed, first-hand, discrimination against other PCSO Deputies with mental health ailments. These other PCSO Deputies were subjected to bullying, degrading rumors, and public ridicule for "mental weakness." Plaintiff was attempting to promote and advance his career at PCSO, so he did not want his peers or supervisors to know he was seeking mental health treatment.

58. Tindall and PSU Detectives contacted Placer County Human Resources and were able to review plaintiff's medical absence note from his psychiatrist. Tindall contacted Plaintiff after reviewing the note. Tindall informed Plaintiff his medical note "only restricted him from meetings or functions 'at' PCSO," so he believed Plaintiff would be allowed and required to meet  or work for PCSO at a location other than a physical PCSO location. Tindall ordered plaintiff to meet with PCSO Detectives at a gas station near his personal residence. Plaintiff protested the order with

Tindall. Tindall told plaintiff that if he did not respond to the gas station near his home as ordered, PCSO Deputies and PSU Detectives would respond to his residence to 'contact him.'

59. Plaintiff contacted his labor attorney, Olander. Olander advised plaintiff that PCSO had no authority to force him to a meeting while out on medical leave, and they had no authority to force entry into his home for an Administrative (Not Law Enforcement) Investigation. Plaintiff informed Olander that PCSO was threatening to come to his private residence in a close-knit gated neighborhood and embarrass him if he didn't go to the meeting at a gas station down the street. Olander advised plaintiff to do whatever he felt best for his family. After plaintiff discussed the situation with his wife, she pleaded with him to take the meeting at the gas station to avoid causing her additional stress and trauma at their home.

60. Plaintiff asked Tindall if there was any way he could have the paperwork mailed to him or provided to his attorney (Olander). Tindall told plaintiff the meeting in person was mandatory, and they would come to his home unless he went to the gas station as ordered. Plaintiff went to the gas station as ordered by Tindall, only to avoid further embarrassment at his home and cause additional emotional trauma to his family.

61. Plaintiff drove to the gas station at the ordered time. Plaintiff saw a PCSO Sergeant and PCSO Detective waiting in the parking lot with their vehicles. Plaintiff attempted to approach them, but they told him to wait nearby in his vehicle, because another detective was coming with the paperwork. After a short time, the other detectives arrived with multiple other detectives. Some of the detectives were dressed in tactical gear, wore body cameras, and had rifles.

62. Plaintiff was told to sign paperwork that he did not want to sign without first reviewing. Plaintiff was very nervous, and his hands were shaking. Plaintiff didn't understand why they would send five deputies to only deliver paperwork, why they had to deliver the paperwork to him

SECOND AMENDED COMPLAINT

personally even though he had a lawyer willing to accept it for him, or why they couldn't just wait until his medications brought his medical conditions under control enough for him to attend an interview or meeting safely.

63. Detective Spurgeon had plaintiff sign for receipt of the paperwork. Spurgeon then held up a flash memory drive and said, "this is all you're getting." Plaintiff thought Spurgeon's statement sounded strange, but believed he was providing him "discovery" information he was entitled to for the Administrative Investigation.

64. The paperwork plaintiff was served with on March 8, 2023, was for a proposed discipline of Termination for not attending the administrative interview he was ordered to attend on March 3, 2023. Plaintiff was medically excused from that interview and should not have been subjected to a forced meeting with five deputies to receive a packet of paperwork that could have easily been provided to his attorney, mailed to him, or at least delayed until plaintiff was medically safe and cleared to participate in a fair and unbiased investigative process. Plaintiff had more than 300 accrued sick leave hours available to use for his illness, but Placer County Human Resources refused to place him on medical leave rather than Administrative Leave. Plaintiff was told it was advantageous for him to remain on Administrative Leave. Plaintiff disagreed that he had to continue attending PCSO work duties while attempting to heal.

65. Plaintiff reviewed the contents of the USB memory drive provided by Spurgeon when he returned home. The drive contained a very limited amount of information. There were no police reports, search warrants, or any number of the numerous items of exculpatory evidence he was expecting to have access according to law (California Penal Code 135.5).

66. One of the sections of Detective Spurgeon's PSU narrative report was also extremely upsetting and discriminatory for Plaintiff. Spurgeon had reviewed the audio of Plaintiff's contact

with other PSU members on February 28, 2023. Spurgeon was particularly interested in Plaintiff's request for mental health counseling due to the critical incident on January 16, 2023. Spurgeon used California Law Enforcement Telecommunications System (CLETS) and PCSO Computer Aided Dispatch (CAD) resources to review the critical incident plaintiff was involved in on January 16, 2023, and write about it in his narrative. Spurgeon tried to minimize plaintiff's involvement in the incident by writing things like, plaintiff "was there to assist and CART did the primary investigation."

67. Plaintiff had a friend die on that call for service on January 16, 2023. Plaintiff held his friend's daughter's hand as he bled out in the street while moaning with agonal breathing. Plaintiff then drove their dog home and told his wife and mother of their child she needed to go to the hospital immediately, because they were hit by a car. The mother was obviously shocked and unable to drive to the hospital, so he offered to drive her, but another friend on scene took her there. Plaintiff was then instructed by the patrol duty Sergeant to go to the hospital and wait to provide updates, because if one of the pedestrians died it would be a more serious investigation. Plaintiff was there in the hospital with multiple family members when the neurologist came to tell them their father would not be waking up.

68. Plaintiff had a professional relationship with a few of the trauma nurses at the hospital and arranged for a private room to be set up where the family could say their goodbyes to their loved one, so he didn't have to die alone. They couldn't do that while he was in the trauma room, because his daughter was in the bed next to him, and the doctors were worried the shocking news could cause her condition to worsen. It was an emotional moment with crying family members hugging and thanking plaintiff for his compassion and thoughtfulness.

69. Spurgeon included a full copy of the CAD log of the critical incident on the "discovery" USB memory drive, so plaintiff could reread it and live through the trauma another time. Plaintiff wondered why Spurgeon would take his time to research something like an incident that caused him trauma and had no relationship to what he was supposed to be investigating. It was clear Spurgeon was not looking to impartially investigate plaintiff. Spurgeon was looking for opportunity to accuse plaintiff of misrepresentation relative to his medical (i.e. stress symptoms) and PTSD. There was no "need or right" for Spurgeon to review that specific call for service, and no need for it to be included on the "discovery" provided for this PSU insubordination investigation from missing an interview on March 3, 2023. Not only did Spurgeon inappropriately include this traumatic CAD detail, but he didn't include any actual investigative discovery material or exculpatory information related to the actual IA Investigation into plaintiff.

70. When plaintiff returned home from the forced meeting on March 8, 2023, and read the contents of the USB memory drive, he almost required hospitalization due to high blood pressure. Plaintiff contacted Placer County Human Resources to object about being forced to attend the meeting against doctor's orders. Plaintiff was informed by Placer County Human Resources Director, Nicole Lopez, that "paperwork service does not constitute a meeting and is not against his medical restrictions." Plaintiff explained to Lopez that it does not take five deputies in tactical gear, vehicles, and cameras to deliver paperwork. Plaintiff also explained that he was forced to sign paperwork under duress to end the meeting and return home. Plaintiff asked Lopez if she was the person who advised Tindall or Spurgeon about the specifics of his medical note. Lopez would not provide Plaintiff with a direct answer to the very simple questions. Plaintiff asked Lopez if she sent a copy of his medical note to PCSO, or informed PCSO which medical doctor authorized the note. Lopez would not answer the questions.

71. Plaintiff informed Lopez that she should consider this a formal complaint regarding a violation of his doctor's orders. Lopez told plaintiff she would make a note of it. Through an unrelated exchange of emails with Placer County Human Resources and PCSO staff, plaintiff was mistakenly added to a group email and received private medical information of a current PCSO employee. Plaintiff hereby incorporates by reference a true and correct copy of Exhibit G. The email was casually sending around private medical information for an employee to various supervisors and administrative assistants that did not need and should not have had access to this person's private medical information. Based on that behavior (and evidence in plaintiff's possession), he believes Placer County Human Resources likely sent a copy of his medical absence letter and private medical information to PCSO staff.

72. On March 16, 2023, the notice of proposed discipline, Termination for Insubordination, sent to plaintiff was rescinded. There was no reason listed for the proposed termination being rescinded. The notice referred to Plaintiff as "Mr" instead of "Deputy," and it was carbon copied (CC'd) to Placer County Counsel. Plaintiff alleges that his conversation with Placer County Human Resources was relayed to County Counsel that then provided correct legal advice about his medically excused absence from the interview on March 3, 2023.

73. Consequently, in the first few weeks of March 2023, PCSO Patrol Division conducted a shift bidding (selection) process. PCSO Patrol Division conducts a shift bidding process three times per year. Plaintiff had seen multiple shift bids take place and had never observed an employed Deputy not be a part of the process. Even deputies on medical leave that were obviously not returning to full duty status and deputies on administrative leave under criminal investigations had always taken part in the shift bidding process. Plaintiff learned from friends that he was not on the list to choose a shift. Numerous PCSO coworkers called Plaintiff and asked him "why he

quit." There were also rumors Plaintiff was served termination paperwork by "five deputies and a sergeant." Plaintiff had not discussed specifics of the Administrative or Criminal Investigation with anyone other than his attorney, Placer County Human Resources, and his close family members. Some of Plaintiff's coworkers told him Detective Cameron Bal was telling people he "caught Plaintiff in a lie, and Plaintiff was getting blowjobs at work." Detective Bal was one of the detectives handling Plaintiff's criminal investigation.

74. On March 22, 2023, numerous PCSO Auburn Jail staff were attending a training. Plaintiff learned of another "rumor" regarding his investigation that was being openly discussed. Another PCSO Deputy (Wes Montz) was placed on leave in March 14, 2023, for allegations of sexual assault. PCSO staff at the training were openly discussing Montz's and plaintiff's investigations (it should be noted that discussion of Internal Affairs or PSU Investigations is prohibited). Some of the details were getting confused between the two, but PCSO Detective Sergeant Brandon Hann took it upon himself to clear things up. Sergeant Hann was one of the PCSO Detective Sergeants and specifically he supervised Detective Cameron Bal (one of the detectives investigating Plaintiff's criminal case). Hann told multiple PCSO staff in an open forum that there was a felony criminal investigation involving plaintiff, a search warrant was conducted at plaintiff's home, plaintiff's young child was present and subjected to the search warrant, and plaintiff would not be returning to work.

75. A female PCSO staff member approached Hann after the group discussion to ask him why it was necessary to inject plaintiff's child into the conversation or the investigative process at all (specifically do a search warrant with the child in the home). The coworker also stated she would hope to have the opportunity to handle any similar situations without her own children being present. Hann replied, "if you keep you dick in your pants it won't be a problem."

76. This obviously upset the female PCSO employee. She was unaware of plaintiff's situation, because as stated earlier he kept it confidential as instructed. She called plaintiff later that night to see how he was doing and if she could do anything for him. She also told plaintiff of Hann's comments to her and how it made her feel uncomfortable. She told plaintiff she's had prior experience with how "things like this happen at PCSO," and she did not know how she would even report the incident to anyone without being subject to social ostracization or ridicule. She told plaintiff she wanted to call and see how he was doing and at least tell him about what Hann was saying in an open training forum. She likened this situation to being a "whistle blower" during Brandon Bean's statements of sexual assault in a different briefing at the Auburn Jail. Plaintiff was not at PCSO during that period, but he too heard that "whistle blowers" during that investigation also suffered ostracization and ridicule.

77. Plaintiff was upset about being left out of the shift bidding process and upset about Sergeant Hann's comments about his "confidential" investigation in an open forum giving credibility to rumors due to his position as a supervisor of a detective handling the investigation and his rank. Plaintiff contacted Placer County Human Resources to make a formal complaint about these things.

78. On March 27, 2023, plaintiff sent a detailed complaint in email form to Placer County Human Resources after speaking with a representative (Nicole Lopez) on the phone. Plaintiff confirmed the email was received. Plaintiff expected to hear back from a Detective about at least an investigation into Hann's statements or even someone from the Deputy Sheriff's Association about being left out of shift bids. Plaintiff heard nothing. Plaintiff contacted some friends and asked if they noticed anything "different" in the Investigation Division (Detective), or if they heard anything else about his situation. One of plaintiff's friends informed him they heard he submitted

a claim for PTSD "to get out of his investigation," and they weren't going to put him on the shift schedule if he claimed PTSD.

79. On March 30, 2023, Plaintiff received a phone call from a blocked number. Plaintiff answered the call and PSU Detective Mansourian greeted him. Mansourian asked Plaintiff if he had time to meet in person. Plaintiff told Mansourian that he was still out of work functions at PCSO until at least April 1, 2023, for a doctor's note that would likely be extended. Mansourian asked Plaintiff if he would be at his house if he came by with some more paperwork for him. Plaintiff told Mansourian that he would not be welcome at his home for PSU or Administrative Investigation matters. Plaintiff asked Mansourian to please just provide whatever paperwork he needed to give him to his labor attorney, Josh Olander, as had been requested multiple times already. Mansourian stated he was told to give the paperwork only to plaintiff in person. Plaintiff explained that it would have to be after he returned from medical absence. Mansourian told plaintiff he would check with a supervisor and get back to him about his plans for serving the paperwork. Plaintiff found it more than strange that he was getting another packet of "paperwork" only a few days after submitting a complaint to HR.

80. Plaintiff called Placer County Human Resources and again spoke with Nicole Lopez. Plaintiff pleaded with Lopez to have the Sheriff's Office or Placer County in general communicate with him through his attorney. Lopez told plaintiff it was Placer County policy to serve all such paperwork in person, "in person service only." Plaintiff hereby incorporates by reference a true and correct copy of Exhibit H. Plaintiff told her that he was under a significant amount of stress, and his blood pressure was high enough to require hospitalization, but he was refusing for financial reasons. Plaintiff had already been informed that his claim of PTSD for workers compensation was "denied" without even being sent to a workers comp medical doctor by Placer County.

Plaintiff's doctor already knew his stress was work related, so his private insurance was unwilling to cover expenses for a work-related injury. Plaintiff did not want to spend any more money than necessary on work related medical bills due to already high costs of criminal defense counsel. Plaintiff unsuccessfully pleaded with PCSO and Placer County Human Resources to receive medical treatment through Worker's Compensation (Occupational Health), but he was refused and his application for benefits was already denied without any medical review. (It should be noted that PTSD is a "presumptive injury" for law enforcement under California Labor Code 3212.15)

81. Lopez told Plaintiff she would speak with Placer County Legal Counsel and see if there was something they could arrange to serve paperwork through his attorney. After a few emails and phone calls, "special arrangements" were made specifically for Plaintiff to have his labor attorney receive PSU and County employment related paperwork. This arrangement was only required because Placer County refused to wait for Plaintiff to be medically cleared to return to work.

82. When plaintiff received a copy of the paperwork Detective Mansourian was attempting to serve him on March 30, 2023, he found out it was another proposed discipline for termination. Plaintiff sent the complaint about exclusion from patrol shift bids and Sergeant Hann's sexual harassment at the end of the day on March 27, 2023. Wayne Woo signed proposed termination paperwork on March 30, 2023.

83. Plaintiff's labor attorney, Olander, requested a Skelly hearing for the proposed termination from March 30, 2023. Olander requested discovery materials he knew to exist for the disciplinary investigation. Olander also requested a "stay of Skelly" for Plaintiff to be cleared to attend by his medical doctor and meaningfully participate. There were numerous items of important discovery omitted from what was provided. Plaintiff did not even receive any copies of

SECOND AMENDED COMPLAINT

police reports or multiple other items directly referenced in Detective Spurgeon's narrative report. After receiving some of these items through discovery due to criminal investigative and discovery proceedings (received on October 4, 2023), it is obvious that some items were concealed from the Administrative Investigation due to their exculpatory nature. Had this exculpatory evidence been provided as requested prior to the Skelly hearing, a strong defense of allegations would have been possible. PSU, PCSO, Placer County Counsel, and Placer County Human Resources clearly conspired and colluded to deny Plaintiff his due process employment rights while violating California Penal Code Section 135.5.

84. It was very clear Spurgeon concealed the exculpatory evidence to damage Plaintiff. Placer County Counsel also involved themselves in the Administrative Discovery process and denied the discovery requests. Spurgeon possibly did not deny discovery on his own and likely acted in concert with other County of Placer employees in a conspiracy to deny discovery of exculpatory evidence. This conspiracy to conceal exculpatory evidence during an administrative investigation is a felony under California Penal Code Sections 135.5, and 182.

85. There was no reason to conceal or prevent discovery of the aforementioned materials, such as a police criminal investigative report that Spurgeon clearly based his administrative investigation on, unless Spurgeon and co-conspirators maliciously sought to cause damage to plaintiff.

86. Plaintiff's requests for delay of the Skelly hearing and additional discovery items were both denied by Spurgeon and Placer County Counsel. Placer County Counsel repeatedly asked Plaintiff and his labor attorney Olander, "what reasonable accommodations could be made for Persinger to participate in a Skelly hearing." Olander and Plaintiff both requested Plaintiff be allowed to participate after he was medically cleared to do so by his physician. Plaintiff had over

300 hours of sick time bank credit with the county. Placer County Human Resources and PCSO refused to allow Plaintiff to use any of that sick time for this process and refused to place Plaintiff on medical leave even after multiple medical restrictions and absence notes from doctors. It was not an undue hardship for Placer County to allow plaintiff the legal right to fully participate in a Skelly hearing or any of the Administrative Investigation. Plaintiff was never even offered a second Administrative Interview opportunity after missing the first one on March 3, 2023, and being terminated for insubordination (which the county later rescinded).

87. Placer County Counsel communicated with plaintiff's labor attorney Olander multiple times. Placer County Counsel told Olander to ask plaintiff if he wished to voluntarily resign rather than be terminated. Placer County Counsel told Olander the Administrative Investigation of him would be stopped, and plaintiff would be able to seek employment elsewhere. Placer County Counsel told Olander that if PCSO was forced to continue with termination, they would finish the Administrative Investigation and plaintiff would be unemployable as a peace officer.

88. Olander explained to Placer County Counsel that PCSO has failed to perform a complete and unbiased Administrative Investigation in line with plaintiff's due process rights. Olander also explained to Placer County Counsel that resigning in lieu of termination no longer helps California peace officers continue to work due to California Senate Bill SB2. Plaintiff's Administrative Investigation would be required to be completed regardless of Plaintiff's employment status. It was clear to Olander that PCSO and Placer County Counsel did not fully intend to perform an unbiased or complete administrative investigation, and as a general practice would regularly pressure law enforcement employees into resigning, which was no longer allowed under California law.

89. A civil lawsuit against the County of Placer and plaintiff was filed on April 13, 2023, in the Placer County Superior Court after the TORT from Smith-Edgar and Gilleon on January 12, 2023, was denied. Plaintiff was terminated from employment at PCSO the same day the civil lawsuit was filed by Sheriff Wayne Woo. Plaintiff's termination and labor dispute process has not yet fully completed.  Plaintiff's criminal due process has also not been completed, and the criminal complaint has not yet been adjudicated. Plaintiff has an in-process workers compensation claim with Placer County for protected physical and mental health conditions (PTSD) that has not yet been resolved.

90. On May 3, 2023, an article was posted on the news media website The Sacramento Bee. The article was written in response to the civil lawsuit filed against the County of Placer and Plaintiff. The article contained multiple excerpts from text found in the filed lawsuit.  There were published statements from the attorney filing the civil lawsuit against the County of Placer and Plaintiff. There were also numerous untruthful quotes from "Sheriff's officials" provided in a written statement to the Sacramento Bee such as that the employment process is complete, where is ongoing employment process continuous and that Plaintiff's misconduct occurred off-duty, when all accusations against Plaintiff are on-duty.

91. The Sacramento Bee article caused multiple damages to Plaintiff. On November 2, 2023, Plaintiff submitted a Claim Against the County of Placer (TORT) for that incident and those damages stemming from it. The Claim Against the County of Placer submitted by Plaintiff on November 2, 2023, was subsequently denied on November 30, 2023, without contact for negotiations or clarifications. The denial of claim from the County of Placer to Plaintiff incorrectly stated the date of the claim submitted on November 2, 2023, was submitted on November 6, 2023. Plaintiff asserts that the claim submitted as November 6, 2023, was improperly logged by PCSO

SECOND AMENDED COMPLAINT

so that PCSO could assert that the claim fell outside the PCSO "alleged statute of limitation". The conduct of the County of Placer up to this point has been dishonest, unlawful, and in bad faith. Plaintiff believes that the County of Placer purposefully listed the date of claim from November 2, 2023, as November 6, 2023, with intent to fraudulently deny the claim for damages.

92. Consequently, plaintiff later found out that in February 2023, the Placer County Sheriff's Office submitted a completed criminal investigation and complaint against Plaintiff for multiple nonviolent misdemeanor crimes to the Placer County District Attorney's Office. Standard procedures dictate that once a criminal investigation is completed and forwarded to the District Attorney's Office for review, the Sheriff's Office is no longer involved in the case until the District Attorney's Office requests further investigation, or a decision is made to prosecute by the District Attorney.

93. On June 28, 2023, Placer County Sheriff's Office Detective Cameron Bal sought an arrest warrant for Plaintiff from Placer County Superior Court Judge Jeffrey Penney. The warrant served to authorize the arrest of Plaintiff for four separate nonviolent misdemeanor crimes related to the Placer County Sheriff's Office completed criminal investigation of Plaintiff already submitted to the Placer County District Attorney's Office for review in February 2023. Rather than wait for the District Attorney's Office to render a decision on the criminal investigation and seek a judicial bench warrant for the arrest of Plaintiff, the Placer County Sheriff's Office broke with standard procedures and requested a special arrest procedure for Plaintiff. This break from standard procedure to seek a specialized arrest process for Plaintiff violated numerous constitutional rights. It should also be noted Plaintiff was a private citizen at this time, and his status as a former police officer should not allow him to be treated any differently from another person.

SECOND AMENDED COMPLAINT

94. Upon consultation with multiple attorneys, plaintiff was advised that with multiple attorneys with decades of criminal law experience have never witnessed such a process. Plaintiff has over 15 years of law enforcement investigative experience and cannot think of a reason to seek a walk-through misdemeanor arrest warrant for a person after a completed investigation has already been sent to the District Attorney for review.

95. Upon later review of Detective Bal's declaration in support of the arrest warrant (Affidavit), it was determined Bal omitted numerous items of exculpatory evidence, which did not present "the whole truth." Bal also incorporated items in the arrest warrant as "evidence," that he had no lawful authority to include or possess for purposes of criminal investigation without judicial authorization per CalECPA. Judge Penney authorized the arrest warrant for "no cite" (meaning mandatory appearance or bail), and a bail increase of ten times the maximum bail for Plaintiff's alleged misdemeanor crimes to $50,000 rather than $5,000. This meant Plaintiff would be required to be booked into jail for processing and his bail was increased by Judge Penney far in excess of the approved standard 2023 Placer County Bail Schedule. At this time, it is unknown if Detective Bal requested the "no citation" clause, or the increase of bail. Discovery requests for the missing information have gone unanswered, and the criminal prosecution process has not yet been completed. Through the criminal discovery process for Plaintiff's criminal proceedings, he was informed no documentation was completed by Judge Penney to justify his increase of Plaintiff's bail and no-citation mandatory appearance conditions.

//-//

//-//

96. There is also a conflict for Placer County Judge Penney to be involved in this criminal process because he resides approximately 400 yards away from plaintiff in a private gated community, where they are both members of the same homeowner's association.

97. Before advising plaintiff of the warrant for his arrest, or attempting to arrest him for the warrant, Placer County Sheriff's Office employees solicited media coverage from Sacramento area news station ABC10. It is clear the Placer County Sheriff's Office abused its authority, political office, and role within the California Justice System to seek media coverage of plaintiff's pending arrest prior to it occurring. This act of malice to damage Plaintiff's reputation was also coordinated with Placer County Counsel to unlawfully tamper with and influence a jury deliberation in an active civil lawsuit against the County of Placer (S-CV-0042328).

98. Plaintiff was informed of his arrest warrant by Placer County Sheriff Sergeant Ben Machado via telephone after 5pm on June 28, 2023. The Sergeant demanded that Plaintiff immediately surrender to the Roseville Placer County Jail for booking. Plaintiff reviewed the warrant charges against him on the Placer County Superior Court website and informed the PCSO Sergeant that the charges were four nonviolent misdemeanors. Plaintiff knew from over 15 years of law enforcement experience that nonviolent misdemeanor warrants for arrest are almost always handled by issuing the arrestee a citation or "promise to appear" form with an arraignment court date. Plaintiff requested to be issued a citation or promise to appear form in lieu of being formally booked at the jail for nonviolent misdemeanor accusations as a person with no prior criminal history. The Sergeant advised Plaintiff that per Lieutenant Joshua Barnhart he was to immediately surrender to jail, or PCSO Deputies would be dispatched to retrieve him from his residence.

99. Plaintiff informed the PCSO Sergeant that he would first be contacting his criminal defense attorney. The PCSO Sergeant informed plaintiff that Lt Joshua Barnhart, "was not good

SECOND AMENDED COMPLAINT

with that delay." The PCSO Sergeant was very clear when he informed plaintiff that Lt Barnhart considered any delay by plaintiff to immediately turn himself in at the jail would be met with forceful arrest by responding PCSO Deputies, and Barnhart considered plaintiff waiting for a response or advice from his criminal defense attorney an unnecessary delay.

100. Plaintiff informed the PCSO Sergeant that he knew from professional law enforcement experience that PCSO Deputies could not unlawfully force entry into his private residence to arrest him for a nonviolent misdemeanor arrest warrant. Plaintiff informed the PCSO Sergeant he would be waiting inside his private residence until he is able to speak with his attorney. The PCSO Sergeant informed Plaintiff that a Placer County Superior Court Judge was on "standby" and already willing to sign a warrant granting access to plaintiff's residence by force if necessary to facilitate his immediate arrest. Plaintiff believed the PCSO Sergeant was making credible threats of possible force against him and his family due to the highly unusual circumstances regarding the already issued arrest warrant and other malicious acts by the Placer County Sheriff's Office. Plaintiff asked the PCSO Sergeant if he was really willing to carry out the obviously malicious act of forcing entry into his home and arresting him for nonviolent misdemeanors. The PCSO Sergeant pleaded with plaintiff on the phone and informed him that he did not wish to be a part of this situation or plaintiff's arrest, but he would carry out orders from his superiors. Plaintiff had numerous prior professional interactions with this specific PCSO Sergeant and believed he was speaking truthfully, which caused him grave concern and worry for his safety and the safety of his family.

101. Plaintiff informed the Sergeant a procedure was already agreed upon between his criminal defense attorney and the Placer County District Attorney's Office for the handling of any criminal proceedings against plaintiff. Plaintiff's criminal defense attorney was not contacted after

this arrest warrant was issued as agreed upon. The agreement already established that plaintiff's criminal defense attorney would bring him to the courthouse or jail if requested. Plaintiff and his criminal defense attorney had been completely cooperative throughout the entire investigative process, and the Placer County Sheriff's Office and the Placer County District Attorney's Office had no reason to believe plaintiff would cease to continue that cooperation.

102. Plaintiff spoke with his criminal defense attorney on the telephone after the phone call with the PCSO Sergeant ended. Plaintiff's criminal defense attorney was displeased to learn his established agreement was not honored. Plaintiff's criminal defense attorney arranged for a bail bondsman to contact Plaintiff and have a bail ready prior to being booked into the jail. Plaintiff's criminal defense attorney then advised plaintiff to continue his cooperation with the judicial process and immediately surrender himself to the jail as demanded by PCSO. Plaintiff was upset at the need for a bail bondsman, because he had already prepared his finances to post a possible bail on his own. PCSO seeking and enforcing the arrest warrant after normal business hours meant that Plaintiff was unable to have access to his banking professionals and therefore would have needed to at least spend the night in jail if he didn't use a bail bond company.

103. Plaintiff arrived at the Roseville Placer County Jail shortly after 7pm on June 28, 2023. Plaintiff expected to be quickly processed for booking and subsequently released due to a bail bond authorization for him already present at the jail.

104. Lt Joshua Barnhart called Plaintiff's cellular phone after he had already been sitting in the lobby of the jail for a while. Plaintiff's wife answered his cellular phone and spoke with Barnhart. Barnhart wanted to confirm Plaintiff was inside the jail.

105. Immediately after Barnhart finished speaking with plaintiff's wife on the phone, a social media post was made to the official Placer County Sheriff's Office Facebook page regarding

34                               SECOND AMENDED COMPLAINT

plaintiff's arrest. The social media post was published at 8:00pm on June 28, 2023. Plaintiff was not yet booked at the jail. Plaintiff was still sitting in the lobby of the jail waiting for Deputies to contact him. At 8:22pm on June 28, 2023, the ABC10 news website published an article about plaintiff's arrest and listed the Facebook post from the official Placer County Sheriff's Office Facebook page. It is obvious that the ABC10 reporters were prepared for plaintiff's arrest by the Placer County Sheriff's Office. It is also obvious that the Placer County Sheriff's Office sought to damage private citizen plaintiff's reputation by coordinating and soliciting media coverage of a nonviolent misdemeanor arrest. Plaintiff had not been employed by PCSO for over two months, and there was already an inappropriate statement about his termination from PCSO in May 2023.

106. Both the social media post by the Placer County Sheriff's Office and following ABC10 news article contained patently false and vaguely worded information. The vague language and false accusations were both done with specific intent to damage plaintiff's reputation. The posts indicated plaintiff was arrested for "sexual misconduct" - an intentionally vague term that is not related to any criminal charges; it also indicated there were "several incidents on and off duty". Plaintiff has not ever been charged with any incidents off duty; and it is generally accepted in the English language that two incidents is not "several." This post was written to be salacious, damaging, and misleading to make the story sound far worse than the actual charges against Plaintiff. It should also be noted that Solicitation for Prostitution is not considered a "sex crime" in California law.

107. Plaintiff was held at the Roseville Placer County Jail for four hours. Plaintiff knows from two years of prior working experience at the Placer County Jail booking area, that it can take less than an hour to completely book and process an inmate for release when there is already a bail bond waiting for them on arrival. The first jail cell plaintiff was placed in did not have a

functioning telephone. After around one hour in that jail cell, plaintiff was moved to a neighboring cell with a working telephone. The jail cell with the working telephone wreaked of feces, and obviously had not been sterilized or properly cleaned possibly ever. There was obvious fecal matter on the floor of the cell, the toilet of the cell, and the ceiling of the cell. It appeared a prior occupant had wiped fecal matter from themselves with toilet paper and then stuck that toilet paper to the ceiling and ventilator grates inside the cell. Plaintiff complained about the cell and requested to speak with a supervisor about how long he was being held at the jail. No supervisor ever came to speak with plaintiff. The intercom of plaintiff's cell was also purposefully deactivated, so he could not speak with an officer if needed.

108.    Plaintiff was removed from his cell around 10:50pm on June 28, 2023, for fingerprinting and booking photographs. Plaintiff asked why the process was taking so long, but he did not receive an answer. After completing the booking photograph and fingerprint process, plaintiff was returned to his cell. Plaintiff was finally released from jail on $50,000 bail around midnight on June 29, 2023, with an arraignment court date set. There was no reason given for the extreme delay in plaintiff's jail processing. Plaintiff suspects he was held at the jail until just before midnight as to not show he was in custody for multiple days.

109.    On the morning of June 29, 2023, plaintiff began receiving phone calls and messages from family members living in other states (Texas and Illinois). The family members asked plaintiff if he was alright, because they had seen his booking photograph on the news. Plaintiff's booking photograph was taken around 10:50pm on June 28, 2023, and was already released by the Placer County Sheriff's Office to media outlets within hours. It was clear the Placer County Sheriff's Office went far outside of normal record keeping and release policy to distribute

SECOND AMENDED COMPLAINT

plaintiff's booking photograph to news organizations through professional and specialized media relationships.

110. A standard Public Records Request through the Placer County Sheriff's Office records portal took 10 full days to receive plaintiff's booking photograph. That booking photograph was provided against PCSO policy and California Law as listed on their own records request portal.

111. Plaintiff continues suffering great emotional distress as PCSO employees disparaging plaintiff. Recently, on August 22, 2024, a former co-worker of plaintiff contacted him via text message to report the following: the former coworker was at law enforcement training for homicide investigators when he met Detective Cameron Miele from PCSO. The former coworker asked Miele how a different PCSO deputy was doing and Miele than stated, "I noticed you didn't mention Persinger's name." The former coworker said, he didn't want to go into a discharge about plaintiff's situation. Miele went out of his way to detail confidential criminal investigative information to the former coworker while also disparaging plaintiff's reputation and due process of criminal prosecution by calling plaintiff guilty stating "Persinger doesn't' have a leg to stand on."

112. On September 27, 2023, plaintiff appeared in Superior Court of California, County of Placer for a hearing related to a Criminal Protective Order (CPO) he was being served with. Assistant District Attorney Anna Duffy requested a CPO that restrained Complainant from Smith-Edgar. Plaintiff had no contact with Smith-Edgar since the last time he met with her on duty for PCSO more than eight months prior. Plaintiff was not charged with any crimes that Smith-Edgar was a victim of. Plaintiff was not charged with any crimes of violence or criminal threats against Smith-Edgar.

113. Plaintiff asked his criminal defense attorney, Michael Wise, why and how Duffy was able to obtain a CPO against him when there had not been any contact outside of PCSO duties, and there were no threats or acts of violence from him toward Smith-Edgar alleged. Wise did not know how a CPO would be granted, but stated Duffy was requesting such order to protect Smith-Edgar as a witness.

114. Plaintiff and his attorney both requested to be served with the CPO by a law enforcement officer or District Attorney investigator rather than need to spend time in court. The CPO had already been granted by a judge, and plaintiff was concerned about spending money for his attorney to be present in court if he could simply be served with the CPO beforehand. Plaintiff was also concerned ADA Duffy had ulterior motives for making him appear in court. Duffy refused to allow plaintiff to be served the CPO without appearing in court.

115. When plaintiff arrived for court on September 27, 2023, he saw a man he recognized as a legal process server waiting to attempt to serve him with legal paperwork unrelated to his criminal case. Plaintiff contacted Wise and complained he was likely being ordered to appear in court rather than just being served his CPO by a law enforcement officer. Plaintiff alleged to Wise he was being ordered to appear at court in person so Placer County Counsel could have him served with civil lawsuit paperwork, so they could settle the civil case against them. The civil case could not be settled until all parties had been properly served with the lawsuit, and Plaintiff had not yet been served.

116. Wise contacted Duffy and requested plaintiff be able to be served the CPO by a Deputy of Investigator at the court, as he was already there and willing to accept service. Duffy again declined the request. Wise then informed Duffy that plaintiff did not wish to appear in court at that time, because he believed he was also there to be served with civil lawsuit paperwork. Duffy

SECOND AMENDED COMPLAINT

told Wise she was aware of the civil process server waiting for plaintiff, and she wanted plaintiff to appear in court anyway.

117. In court on September 27, 2023, Duffy stated to judge that she had performed a firearms registry check of plaintiff and confirmed he no longer had any firearms registered to him. Duffy then stated that plaintiff sold firearms to someone with the same last name that also resided in the same residence. Complainant did in fact sell his firearms to his wife, Co-Plaintiff. Complainant is familiar with the law, and his firearms weren't even being stored in his residence. The firearms were securely stored at Co-Plaintiff's parent's home. Complainant had no access to any firearms.

118. Duffy told the judge she wanted a search condition added to plaintiff's CPO, so law enforcement could search his person, vehicle, and residence for firearms at any time. Duffy stated she wanted law enforcement to be able to enter plaintiff's private residence and assert he had no access to Co-Plaintiff's lawfully owned firearms. This in essence Duffy was requesting a search condition on plaintiff CPO to enter his home and inspect Co-Plaintiff's firearms storage, which is a gross violation of Co-Plaintiff's constitutional rights. Duffy also requested the CPO be tied to plaintiff's bail, so if he refused to agree to the CPO, or is found to be in violation of the CPO, his bail would be revoked, and he would be remanded to PCSO custody.

119. Plaintiff had no valid choice to maintain his freedom other than to agree to the CPO search condition rather than be remanded to custody. This CPO with search condition was established and provides no hearings or other legal remedies of challenge or due process as required by law. Law enforcement officers may enter and search the Persinger private residence at any time to search for firearms due to the order, which causes both plaintiff and Co-Plaintiff to be in fear for their privacy and personal property.

120. Co-Plaintiff claims this CPO against plaintiff that allows a search of her residence to assert her firearms are secure causes her much anxiety and loss of consortium with plaintiff. Co-Plaintiff lives in constant fear that PCSO deputies will show up at her home without cause and demand entry to search.

121. Rather than doing the ethical process of requesting permission from the court, Placer County Counsel has been actively following and participating in plaintiff's criminal legal proceedings. Placer County Counsel attorneys have attended multiple motions and hearings in plaintiff's criminal process. Subsequently, Placer County Counsel has obtained copies of court documents containing excerpts and private data from plaintiff's phones for use in their Administrative Process. It is clear County Counsel is in active communication with the Placer County District Attorney's Office to conspire against plaintiff. County Counsel has obtained numerous copies of court records and documents directly from the District Attorney's Office rather than the Clerk of the Court.

122. Subsequently, plaintiff was scheduled to appear in the County of Placer for a procedural labor hearing called a Civil Service Board during the first week of April 2023. Prior to the Civil Service Board hearing, both the County and the plaintiff needed to provide their exhibits and witness lists to each other for discovery through Counsel for the Placer County Civil Service Commission William M. Wright esq.

123. Placer County Counsel submitted approximately sixty such exhibits. Almost all of those submitted exhibits contained personal phone messages from plaintiff's cellular phone that were obtained via Search Warrant in a criminal investigation. CalECPA strictly prohibits sharing of any digital information obtained via search warrants for purposes other than the specific criminal investigation for which it was sought without further order of the court. Placer County

SECOND AMENDED COMPLAINT

had not obtained any such order and had already unlawfully shared and distributed plaintiff's personal digital information to numerous parties.

124. Counsel for the Placer county Civil Service Commission made a ruling that information obtained from plaintiff's property via criminal search warrant could not be included or used in any way unless authorized by the court. Plaintiff hereby incorporates by reference a true and correct copy of Exhibit I.  Placer County Counsel Brett Holt requested plaintiff's Civil Service Board be postponed until he could apply for and obtain permission to use plaintiff's digital data from the court. Holt made the statement to Attorney Joshua Olander and Attorney William Wright, "this is what we always do, and it's never been a problem before." Holt clearly admitted (multiple times on record) that Placer County regularly uses unlawfully obtained digital data in civil administrative hearings.

125. As of October 2024, Holt had yet to request any authorization from the court to possess plaintiff's unlawfully obtained data and refuses to delete such data as requested by plaintiff and required under California Law (right to delete).

126. Holt continued to use plaintiff's data for an Administrative Process. If Holt did inform the court that he had plaintiff's data it would be admitting that he unlawfully possesses the data and is now requesting permission to keep what he stole. It would also inform the Court that not only did he violate plaintiff's constitutional rights, but it would also show the court that PCSO Deputies serving search warrants under CalECPA and not complying with those court orders which require sealing and protection of plaintiff's data, and they were disseminating private information obtained via search warrant unlawfully for non-criminal investigative purposes.

127. Subsequently, on October 7, 2024, plaintiff was at the State of California Worker's Compensation Appeals Board for a worker's compensation case hearing. Placer County's

contracted attorney provided as a witness Lieutenant Richard Gray (Gray) from PCSO to testify. Gray is the current command staff member in charge of the PCSO Professional Standards Unit. Gray perjured himself under oath during his testimony. Gray stated multiple times that Plaintiff was suspected of "Rape under the color of authority." Plaintiff was investigated for suspected forced oral copulation. Grey testified that he has over twenty-five years of law enforcement experience. All experienced law enforcement officers know that the crime of rape has specific elements differ significantly from forced oral copulation. Plaintiff believes that Gray used the phrase "rape under the color of authority" to illicit a stronger reaction from judge and unfairly influence the court against Plaintiff.

128. Gray's testimony also establishes him as being in command of an Administrative (Human Resources) investigation of Plaintiff. Gray differentiated the Administrative Investigation from the Criminal Investigation being conducted by PCSO and the Placer County District Attorney's Office. Gray stated, "we get everything from the criminal investigation, but the criminal investigation does not get everything from the administrative investigation." Gray's statement showed PCSO administrative investigators believe they are entitled to criminal search warrant data for use in their investigations without court or judicial authorization. There are many items of confidential or sealed information in some criminal investigations. PCSO PSU Investigators accessed and used items of sealed or confidential information in their administrative investigation of Plaintiff. Lieutenant Richard Gray commanded the Administrative Investigation of Plaintiff and admitted here under oath his misunderstanding of the 4th Amendment and California Law.

129. Following the filing of the original Complaint on October 29, 2024, Defendants engaged in further acts of retaliation, constitutional violations, and judicial deception.

SECOND AMENDED COMPLAINT

130. Plaintiffs are informed and believe, and thereon allege, that Placer County Counsel, Risk Manager Helaina Wilkinson, and outside counsel Jeanette Herrera unlawfully distributed and used Plaintiff Jon Persinger's confidential Internal Affairs (IA) investigative file. This file included sealed disciplinary records and protected digital data obtained via criminal search warrants and was distributed without court authorization and in violation of Pitchess procedures. Plaintiff hereby incorporates by reference a true and correct copy of Exhibit J. On November 19, 2024, attorney Jeanette Herrera used protected search warrant data during a workers' compensation deposition in violation of Plaintiff's rights

131. At the time of that deposition, no motion had been filed requesting court permission for administrative use of the search warrant data.

132. On November 27, 2024, County Counsel Holt and Reeves filed a motion in Plaintiff's pending criminal case (Case No. 62-192449), seeking court authorization to use the same digital evidence in administrative proceedings.  Attorneys Holt, Reeves, and Warner knowingly failed to disclose to the Court that County Counsel had already accessed and used the digital data they were seeking to use. This omission constituted a knowing violation of their duty of candor to the Court.

133. Despite Plaintiffs having filed this lawsuit and asserted their rights through appropriate legal channels, Defendants' retaliatory and unlawful conduct has not ceased.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)**

Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein.

SECOND AMENDED COMPLAINT

134. Plaintiff is an individual with a disability as defined under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102, based on his mental health condition.

135. Plaintiff is otherwise qualified to participate in or receive the benefits of Defendant's services, programs, or activities, or to perform the essential functions of his job with or without reasonable accommodation, pursuant to 42 U.S.C. § 12112. See *Thompson v. Davis*, 295 F.3d 890 (9th Cir. 2002).

136. Plaintiff was excluded from participation in, denied the benefits of, and otherwise discriminated against in Defendant's services, programs, and activities, and was denied reasonable accommodation despite Plaintiff's willingness to engage in the interactive process and Defendant's knowledge of Plaintiff's medical condition. See *Jeremiah M. v. Crum*, 695 F. Supp. 3d 1060 (E.D. Cal. 2023); *McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056 (9th Cir. 2007).

137. The exclusion, denial, and discrimination were by reason of Plaintiff's disability. See *Thompson*, 295 F.3d at 890; *Jeremiah M*., 695 F. Supp. 3d at 1060.

138. As a result, Plaintiff suffered compensatory damages and is entitled to reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1981a, 12188, and 12205.

## SECOND CAUSE OF ACTION

## MUNICIPAL LIABILITY UNDER *MONELL* (42 U.S.C. § 1983)

Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein.

139. Placer County, including through PSCO entity, is a "person" within the meaning of 42 U.S.C. § 1983 and subject of *Monell* liability. The insidious policy and customs of the County were the moving forces behind the Constitutional violations suffered by Plaintiff.

140. The management, operation, oversight, training and policies associated with internal affairs and criminal investigations by the County was devoid of Constitutional safeguards. Due to the failure or adequate monitoring, oversight, policies and procedures by the County, Plaintiff was deprived of his freedom of speech as well as freedom of association, his right to privacy, and further retaliated against for exercising his First Amendment rights.

141. The County employed Wayne Woo, Josh Tindall, Josh Barnhart, Chris Spurgeon, Cameron Bal, Kevin Mansourian, Jeff Martin, Jason Davis, Richard Grey, Nathan Furguson, Julia Reeves, Nicole Lopez, Angela Musallam, Colin Nelson, and Helania Wilkinson. These individuals, acting under color of law and pursuant to official County policies or customs, directly or indirectly contributed to the violations alleged herein.

142. With proper training, monitoring and oversight, Constitutional rights violations in this matter would not have occurred.

143. The County's failure to adequately train its employees created the foreseeable risk that officers like Plaintiff would suffer Constitutional deprivations.

144. The County, including through its agencies, had a duty to Plaintiff at all times to establish, implement and follow policies, procedures, customs and/or practices (Hereinafter "policy" or "policies") which confirm and provide the protections guaranteed under the United States Constitution, including those under the First and Fourteenth Amendments, to include without limitation: right to petition the court; freedom of speech; freedom of association; to be free from government retaliation; right to equal protection for the law; the right to due process of the law; the right to privacy; and the right not to be defamed or stigmatized. The County's internal investigation policy granted broad authority to inquire into criminal proceedings; however, such authority must be exercised within constitutional boundaries to ensure that due process, the right

to privacy, and protections against unreasonable searches and seizures are not violated. Plaintiff hereby incorporates by reference a true and correct copy of Exhibit K.

145. The County also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, so as to protect theses constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiff in order to avoid causing the injuries and damages alleged herein. Based on the duties charged to the County, including the nature of work related to criminal and internal affairs investigations, County knew or should have known of the obvious need to establish customs, policies, practices and adequate training required to protect the aforementioned civil rights as were violated and described herein.

146. The County established and/or followed longstanding policies, procedures, customs, and practices which were the moving force behind the violations of Plaintiff's constitutional rights, including those under the First, Fourth, and Fourteenth Amendments. These include the issuance and execution of unlawful and overbroad search warrants based on false or incomplete affidavits; the seizure and use of electronic communications data outside the scope of lawful warrants and in violation of CalECPA; the retaliatory use of administrative processes and public disclosures of confidential information to discredit, punish, and silence Plaintiff for protected activity; and the failure to protect Plaintiff's disability rights and medical confidentiality under the ADA and state law.

147. County acted with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or failing to train and/or supervise it's officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including

those under the First, Fourth, and Fourteenth Amendments, related to the internal affairs and criminal investigation(s) of its officers.

148. County breached its duties and obligations to Plaintiff by, but not limited to: failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices, failing to properly select, supervise, train, control and revies its agents and employees as to their compliance with Constitutional safeguards; and by deliberately permitting its agents to engage in the unlawful and unconstitutional conduct as herein alleged with total indifference to the rights of affected persons, including Plaintiff.

149. County knew or should have known that by breaching the above-mentioned duties and obligations, it was highly predictable that said unconstitutional policies, practices, customs and usages would cause Plaintiff to be injured and damaged. The systemic failures, actions and/or inactions of County are the moving force behind, and the direct and proximate cause of Plaintiff's injuries as alleged herein.

150. As a result, Plaintiff has sustained general and special damages to an extent and in an amount to be proven at trial.

151. In addition, Plaintiff has incurred, and will continue to incur, attorney's fees, costs, and expenses, including those as authorized by 42 U.S.C. § 1988, to an extend and in an amount to be subjected to proof at trial.

### THIRD CAUSE OF ACTION

### VIOLATION OF FOURTH AMENDMENT RIGHTS (42 U.S.C. § 1983)

Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein.

152. Defendants acted under the color of state law.

153. Plaintiff was deprived of a right secured by the Constitution by Defendant's engaging in an unreasonable search or seizure by meaningfully interfering with an individual's possessory interest in property or liberty as follows:

a) On or about January 20, 2023, Jeff Martin, Cameron Bal, and David Tellman submitted an affidavit in support of a search warrant that intentionally omitted material exculpatory evidence. These omissions were material because their inclusion would have negated probable cause, thus violating Plaintiff's Fourth Amendment rights.

b) On or about April 21, 2023, Colin Nelson and Anna Duffy submitted a subsequent affidavit containing material falsehoods, including misrepresenting the existence of a felony, which misled the magistrate and invalidated the warrant.

c) On January 20, 2023, Richard Gray, Nathan Ferguson, and Jason Davis attended the search warrant execution at Plaintiff's residence but seized items not authorized by the warrant, including but not limited to a vest, keys, and badges. Defendants failed to document or inventory the seized items and did not provide Plaintiff with a receipt.

d) Cameron Bal, Richard Gray, and Chris Spurgeon obtained purported consent to search Plaintiff's cellphone by deception rendering the consent invalid under the Fourth Amendment, which was rescinded by Plaintiff.

e) Defendants accessed electronic data beyond the scope of the warrant, violating Plaintiff's reasonable expectation of privacy and the California Electronic Communications Privacy Act.

SECOND AMENDED COMPLAINT

f)  Defendants distributed seized electronic data to outside personnel and agents to further processes and procedures not of interest or involvement with the criminal investigation in which that data was seized in violations of Plaintiff's reasonable expectation of privacy and the California Electronic Communications Privacy Act.

154. The seizure was unreasonable, as Plaintiff's individual's right to privacy and freedom from arbitrary interferences were significantly outweighed compared to the governmental interest.

155. As a result, Plaintiff has sustained general and special damages to an extend and in an amount to be proven at trial.

156. In addition, Plaintiff has incurred, and will continue to incur, attorney's fees, costs, and expenses, including those as authorized by 42 U.S.C. § 1988, to an extend and in an amount to be subjected to proof at trial.

## FOURTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. § 1983)

Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein.

157. Defendants were at all times mentioned in this complaint, acting under color of state law.

158. Based upon the hereinabove described facts and causes of action, inclusive, Plaintiff is and was subjected to a violation(s) of the First (1st) Amendment to the United States Constitution as applicable to the states through the Fourteenth (14th) Amendment, as a result of the conduct of Defendants.

159. Defendants have punished Plaintiff as a result of Plaintiff's speech on matters of public concern in violation of the First Amendment to the United States Constitution and the California Constitution.

160. Defendants have punished Plaintiff as a result of Plaintiff's exercise of his right to petition the court(s) in violation of the First Amendment to the United States Constitution and the California Constitution.

161. Plaintiff engaged in protected First Amendment activities by reporting internal misconduct within the Sheriff's Office to Human Resources and other administrative officials, making complaints and disclosures unrelated to his core job duties, speaking out on matters affecting public integrity, misuse of power, and violations of civil and constitutional rights.

162. Defendants imposed prior restraints on Plaintiff's right to free speech regarding matters of public concern under threat of termination in violation of the First Amendment to the United States Constitution.

163. As a direct and proximate result of the conduct of Defendants described in this Second Amended Complaint, Plaintiff has suffered injury, loss and damage, including invasion of privacy, emotional distress, pain and suffering.

**FIFTH CAUSE OF ACTION**

**UNLAWFUL TERMINATION IN VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT DUE PROCESS (42 U.S.C. § 1983)**

Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein.

164. Plaintiff brings this cause of action under 42 U.S.C. § 1983 for violation of rights secured under the Constitution and laws of the United States, including but not limited to the rights to due process and freedom from retaliation for protected conduct.

165. Defendants, acting under color of state law, deprived Plaintiff of constitutional rights, guaranteed by the Fourteenth Amendment, including the right to due process in employment termination proceedings, and the First Amendment right to be free from retaliation for engaging in protected activity.

166. Defendant failed to take into consideration Plaintiff mental health disability precluding from appropriate hearing and notice of due process to his right to be heard during the investigative procedures during the termination process.

167. Plaintiff was subjected to retaliatory actions and procedural irregularities during the course of the internal investigation after raising concerns about misconduct and discrimination at PSCO. Rather than conducting a fair and impartial investigation, Defendants:

g) On or about January 20, 2023, Jeff Martin, Cameron Ball, and D. Tellman, knowingly or recklessly omitted exculpatory material evidence from the affidavit submitted in support of a criminal search warrant. The omitted information included evidence that no crime had occurred and that the complainant had a documented history of fabricating allegations, as reflected in internal reports.

h) During the execution of the search on January 20, 2023, PSCO Deputies including but not limited to Cameron Bal, Jeff Martin, Richard Grey, Ben Machado, Nathan Furgeson, and Jason Davis acted with deliberate indifference to the safety and emotional well-being of Plaintiff's minor child. Defendants

failed to follow any child welfare protocol, needlessly exposed the child to trauma, and engaged in behavior that shocked the conscience, thereby infringing upon Plaintiff's fundamental right to familial integrity and security under the Fourteenth Amendment.

i) Josh Tindall, Chris Spurgeon, Nicole Lopez, Brett Holt, and Julia Reeves imposed baseless or pretextual disciplinary charges subjecting Plaintiff to daily forced check-ins under threat of further punishment.

j) Plaintiff had a constitutionally protected property interest in his continued employment under a Memorandum of Understanding (MOU) that governed the terms and conditions of his position. Chirs Spurgeon, Brett Holt, Julia Reeves, and Gregory Warner, acting under color of law, knowingly relied on falsified, misleading, or altered evidence in proceedings aimed at depriving Plaintiff of his employment. The materials used against Plaintiff included: altered or manipulated internal affairs reports; mischaracterized or discredited witness statements; withheld exculpatory documentation criminal to Plaintiff's defense.

k) Brett Holt, Julia Reeves, Gregory Warner, and Jeanette Herrera knowingly and unlawfully disseminated confidential Internal Affairs records and investigative materials obtained through a criminal search warrant to unauthorized third parties, including individuals with no legitimate need or legal right to access such records. Such disclosure included sensitive, private and misleading information related to an ongoing criminal investigation and internal disciplinary matters and constituted a clear violation of Plaintiff's constitutional right of informational privacy and procedural fairness.

SECOND AMENDED COMPLAINT

168. Defendants deliberate intervention in criminal proceedings, disclosure of private facts of the criminal proceedings, violation of Plaintiff's right to accommodations based on the medical disability rendered an unjust decision and materially contributed to Plaintiff's termination without proper cause.

169. As a direct and proximate result of Defendant's unlawful actions and violations of Plaintiff's due process- including suppression of evidence, retaliation, and failure to ensure a fair investigation- Plaintiff suffered an unlawful and unjust termination. Plaintiff has incurred economic harm, reputational damage, emotional distress, and other consequential damages as a result.

**STATE LAW CLAIMS UNDER SUPPLEMENTAL JURISDICTION**

**SIXTH CAUSE OF ACTION**

**LOSS OF CONSORTIUM**

Co-Plaintiff incorporates herein by reference all preceding paragraphs above:

170. Plaintiff and Co-Plaintiff are, and at all times herein mentioned were, husband and wife.

171. Based on the hereinabove described facts and causes of action as alleged defendants are liable in tort for the injury to Co-Plaintiff.

172. Prior to the injuries, plaintiff was able to and did perform his duties as a spouse. Subsequent to the injuries and as a proximate result thereof, plaintiff has been unable to perform the necessary duties as a spouse, in that he no longer can perform the work and services usually performed by him in the care, maintenance, and management of the family home. Plaintiff will be unable to perform such work, services, and duties in the future. Furthermore, Co-Plaintiff, Nicole Persinger, deprived of felicity, partnership, intimacy with her spouse by reason thereof, plaintiff's

spouse, Co-Plaintiff, has been deprived and will be deprived of the ***consortium*** of plaintiff, including the performance of his spouse's necessary duties, all to plaintiff Co-Plaintiff's damage, in an amount established at trial.

## SEVENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## (GOVERNMENT CODE 815.2 (a))

**Government Code section 815.2 (a) states that a public entity can be liable for injuries caused by its employees acting within the scope of their employment.**

Plaintiff incorporates herein by reference all preceding paragraphs above:

173. Based upon the hereinabove described facts, the actions of defendant were outrageous and intentional and done with malice and reckless disregard of the likelihood of causing plaintiff to suffer severe emotional distress.

174. As a proximate result of the aforementioned outrageous acts of the defendant, plaintiff has suffered emotional damage caused to plaintiff by defendant's outrageous acts. Additionally, as a proximate result of the aforementioned outrageous acts of the defendant, plaintiff has been unable to work from the period commencing at the termination of his employment by defendant, resulting in a loss of wages.

175. As a proximate result of the aforementioned outrageous acts of the defendant, plaintiff has suffered general damages and special damages.

176. In doing the acts herein alleged, defendant acted knowingly, intentionally, and maliciously.

## EIGHTH CAUSE OF ACTION

## EMPLOYMENT DISCRIMINATION

## (CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT-Cal. Govt. Code § 12940)

Plaintiff incorporates herein by reference all preceding paragraphs above:

177**.** At all times relevant, Plaintiff was employed by Defendant, and suffered from a medical disability recognized under California law. Defendant, through its agency, the Office of the Sheriff of Placer County, unlawfully terminated Plaintiff as a consequence of his disability and related need for medical leave and accommodations. Defendant was aware of Plaintiff's condition and failed to engage in any interactive process or offer reasonable accommodation before proceeding with adverse employment action.

178. Defendants acts in termination of plaintiff's employment were discriminatory. As a proximate result of the termination initiated by defendant, plaintiff has been damaged in an amount to be proved at trial.

## NINTH CAUSE OF ACTION

## DEFAMATION

Plaintiff incorporates herein by reference all preceding paragraphs above:

179. Based on the facts alleged hereinabove, specifically related to the public dissemination of information relative to the arrest and charges made by defendant against plaintiff through media channels, and social media, were distributed through an interstate network throughout the local community and the United States at large. The information disseminated was without proper regard for the truth or falsity, of that information published, and, more particularly was made with intentional ambiguity by summarily inferring facts published and designed, in a manner which

55                               SECOND AMENDED COMPLAINT

would cause, and, in fact, did cause reasonable persons of the public to draw false conclusions related to Defendant's negligently unsupported criminal charges. The published information published by Defendant degraded the reputation and character of Plaintiff. specific allegations made, degrading the reputation and character of the plaintiff.

180. The news media and social media release is and was libelous on its face. It clearly exposed plaintiff to hatred, contempt, ridicule and obloquy.

181. As a proximate result of the above-described publication, plaintiff has suffered loss of his reputation, shame, mortification, and injury to his feelings, all to his damage in an amount to be established at trial. The above-described publication was not privileged because it was published by defendants with malice, hatred and ill will toward plaintiff and the desire to injure him.

### TENTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE §§ 56.20-56.245 (Confidentiality of Medical Information)

Plaintiff incorporates herein by reference all preceding paragraphs above:

182. California Civil Code §§ 56.20 through 56.245 (the Confidentiality of Medical Information Act or CMIA) protects the confidentiality of medical information and strictly prohibits unauthorized disclosure of such information.

183. Defendants, acting under color of state law, knowingly, and unlawfully disclosed Plaintiff's confidential medical records and information without his express authorization or lawful court order.

184. The disclosures were made outside the scope of any permissible exceptions under the CMIA and were not justified by any legitimate government or medical necessity. Defendants' actions violated Plaintiff's statutory rights to medical privacy under California law.

185. As a direct and proximate result of Defendants' unlawful disclosures, Plaintiff suffered severe emotional distress, humiliation, and exacerbation or his medical conditions, including increased symptoms related to PTSD and other health issues.

**PRAYER OF RELIEF**

WHEREFORE, plaintiff prays judgment against defendant(s), as follows:

   i.   For general damages according to proof.

   ii.  For special damages according to proof.

   iii. For costs of suit herein incurred.

   iv.  For costs of court filing and reasonable attorney's fee

   v.   Enjoin Defendants from all further retaliatory acts, prior restraints(s) on free speech, and/or other violations of law against Plaintiff.

   vi.  For such other and further relief as the court may deem proper.


Date: August 6, 2025                          /s/        _____

                                              David Foyil, Attorney for Plaintiffs

SECOND AMENDED COMPLAINT

**VERIFICATION**

I, Jon Persinger, am Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

August 6, 2025

Jon Persinger, Plaintiff

SECOND AMENDED COMPLAINT

**VERIFICATION**

I, Nicole Persinger, am Co-Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

August 6, 2025

Nicole Persinger, Co-Plaintiff

**Exhibit List**

Exhibit A- PSCO Search Warrant

Exhibit B- Tort Claim Smith-Edgar

Exhibit C- Bal and Martin Crime/Incident Report Supplemental

Exhibit D- Jon Persinger Permission to search Cellphone

Exhibit E- Request for Medical Excusal

Exhibit F - Lieutenant Josh Tindall text message Communication with Jon Persinger

Exhibit G- Email correspondence regarding Leave of Absence of Officer Hernandez-Ceja

Exhibit H- Placer County Civil Service System Articles on personal service

Exhibit I- Tentative Ruling on the Admissibility of Evidence by Counsel for the Placer County Civil Service Commission

Exhibit J- Partial Transcript of Proceedings on October 7, 2024 before Darcy Kosta, Workers' Compensation Judge

Exhibit K- Internal Affairs Investigation Manual

SECOND AMENDED COMPLAINT

# Exhibit A

# In Support of Plaintiff's Second Amended Complaint

| FILE / MATTER: | | DESCRIPTION OF DOCUMENTS: |
|---|---|---|
| Pesinger, J. | | Sw 63 - 023828  PERSONEL  HANS, LOCKERS |
| **DATE:** | **INITIALS:** | **PAGES:** |
| | | |

☐ FILE AFTER SCANNING

☐ SHRED AFTER SCANNING



**COMMENTS / NOTES:**

*Exhibit A, In Support of Plaintiff's Second Amended Complaint, pg 002*

SCAN COVER SHEET

SW NO. _63-023828_



# STATE OF CALIFORNIA, COUNTY OF PLACER,
## SEARCH WARRANT and AFFIDAVIT
### (Residential, Person, Employee Locker Search Warrant)

REVIEWED BY CHIEF ASSISTANT DA D. TELLMAN

**Detective Jeff Martin** swears under oath under penalty of perjury under the laws of the State of California that the facts expressed by him in the attached and incorporated **Statement of Probable Cause** are true and that based thereon he has probable cause to believe and does believe that the articles, property, and persons described below are lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below, and are now located at the locations set forth below. Wherefore, Affiant requests that this Search Warrant be issued.

_____JM_____
Signature of Affiant

HOBBS SEALING REQUESTED:        ☐ YES  ☒ NO
CRC § 2.550 SEALING REQUESTED:  ☒ YES  ☐ NO
NIGHT SEARCH REQUESTED:         ☒ YES  ☐ NO

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY PEACE OFFICER IN THE COUNTY OF PLACER:** proof by affidavit, having been this day made before me by **Detective Jeff Martin** that there is probable cause to believe that the property or person described herein may be found at the location(s) set forth herein and that it is lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below by "**X**"(s), in that:

☒   The property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony.

☒   When the property or things were used as the means of committing a felony

## YOU ARE THEREFORE COMMANDED TO SEARCH:

**THE RESIDENCE AT:** ████████████████████

████████████████ Placer County) (to include all premises and parts therein including rooms, safes, storage areas, containers, surrounding areas, trash areas, garages, outbuildings, assigned to or part of the residence); FURTHER DESCRIBED AS a two story, single family residence that faces west. It has a grey tile shingle roof. The residence is beige in color with white trim. The front door of the residence is on the westside of the residence, under a covered porch. It should be noted the front door is brown in color. The garage door to the residence is located on the westside of the residence facing the street of ████████████ in Rocklin, CA. It should be noted that garage doors are white in color. The residence is located within the ████████████████████ Below is a photo of the residence which was taken by your Detective Bal on 1/19/2023 at 2244 hours.

(CONTINUE TO NEXT PAGE)

Oath administered telephonically. MWJ. DEPT. 3

Page 1 of 23

*Exhibit A, In Support of Plaintiff's Second Amended Complaint, pg 003*

SW NO._____



**AND ANY VEHICLE(S):**
- Including all vehicle components, travel trailers, RVs containers, and trunks identified as being registered, in possession of or previously in possession of Jon Persinger residing at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as determined by keys, admissions or documentation.

- 2022 dark grey Ford F150, California License Plat▮▮▮▮▮▮▮ or VIN: ▮▮▮▮▮▮▮▮▮▮▮

**AND ANY EMPLOYEE LOCKER(S):**
- The Placer County Sheriff's Office, 6140 Horseshoe Bar Rd, Loomis, CA 95650, Men's Locker Room, Locker #29 which is assigned to Jon Persinger.

*Exhibit A, In Support of Plaintiff's Second Amended Complaint, pg 004*



SW NO._____

## FOR THE FOLLOWING PERSON(S):

- **Jon Patrick Persinger** ███████████████████ Male White Adult, 6'03'' tall, 250 lbs, brown hair, and blue eyes.

## FOR THE FOLLOWING PROPERTY:

- Any cellular telephones or other electronic or telecommunications devices that are in the possession or control of **Jon Persinger** at the time this warrant is served. An additional search warrant will be obtained to view any information contained within those cellular telephones, consistent with the provisions of the California Electronic Communications Privacy Act (ECPA). Additionally, the searching Peace Officers are authorized to seize and book said cellular telephones and transfer them to a law enforcement agency location prior to commencing the search of the items. Furthermore, said search may continue beyond the ten-day period beginning upon issuance of this Search Warrant, to the extent necessary to complete the search on the cellular telephones.

- Investigating officers are authorized, at their discretion, to seize all "computer systems", "computer programs or software," and "supporting documentation" as defined by Penal Code section 502, subd. (b), including any supporting hardware, software or documentation that is necessary to the use of the system or is necessary to recover digital evidence from the system and any associated peripherals that are believed to contain some or all of the evidence described in the warrant, and to conduct an off-site search of the seized items for the evidence described.

- Any items tending to establish the identity of persons who have dominion and control of the location, premises, automobiles, or items to be seized, including delivered mail, whether inside the location or in the mail box/s, bills, utility bills, telephone bills, miscellaneous addressed mail, personal letters, personal identification, purchase receipts, rent receipts, sales receipts, tax statements, payroll check stubs, keys and receipts for safe deposit box(s), keys and receipts for rental storage space, keys and receipts for post office box or mail drop rentals, ignition keys, car door and trunk keys, vehicle ownership certificates or "pink slips," and/or vehicle registration slips, recordation of voice transmissions on telephone answering machines, audio tapes and telephone message receipt books, and written phone messages, and photographs tending to show occupation of the residence / business and connection between co-conspirators, whether identified, or unidentified, also digital pagers which will document telephone numbers of co-conspirators, and if found, to activate the digital pagers' display mechanism and to obtain messages from the pagers, answering machines, tape recorders, and any other recording devices, and to play such devices to obtain their messages. Any examples of handwriting including letters, address books, business records, canceled checks, notes, and/or lists.

- Uniform shirt stays (vertical straps that run down the sides of the legs to keep shirts tucked and wrinkle free)

- Investigators are also allowed to leave on the premise, any digital devices determined to either not be under the care or control of Jon Persinger, or to not contain relevant information.

### Additional Orders:

1. **Use of Force to Breach Authorized:** Officers may use necessary force to breach any gates, fences, door, and/or windows to gain entry into the location(s) to be searched pursuant to this warrant.

2. **Use of Force to Open Safes and/or Locked Containers Authorized:** Officers may use necessary force to breach any safe and/or storage containers believed to contain contraband, controlled substances, or items to be seized pursuant to this warrant.

Page 3 of 23



*Exhibit A, In Support of Plaintiff's Second Amended Complaint, pg 005*

SW NO._____

3. **Use of Outside Experts Authorized:** Outside experts acting under the direct control of the investigating officers are authorized to enter the above listed locations in order to assist with the service of the search warrant, photograph, video tape, diagram, and/or process the scene for latent fingerprints and trace evidence.

4. **Night Service Authorization:** The Court, having reviewed the search warrant and the affidavit in support thereof and finding good cause, based upon the facts stated by the affiant in the affidavit, as well as the "Night Service Justification" on page(s) _22_, the Court exercises its discretion under Penal Code Section 1533, and finds that there is justification to serve this warrant at any hour of the day or night.

   ☒ Requested by affiant        ☐ Not requested by affiant

   (_Xx_)  Order granted

   (____)  Order not granted and/or not applicable

5. **Sealing of Search Warrant, Affidavit, and Return:** Affiant has established good cause for a sealing order pursuant to Rule 2.550 of the California Rules of Court, and as such, this Search Warrant, the supporting Affidavit, and the Return are ordered sealed and shall not become a public record. This Search Warrant, Affidavit, and Return shall be delivered into the custody of the Clerk of the Superior Court and remain sealed in the custody of the Clerk unless further ordered by the court. "Sealing of Search Warrant Justification on **page** _23_ .

   ☒ Requested by affiant        ☐ Not requested by affiant

   (_Xx_)  Order granted

   (____)  Order not granted and/or not applicable


Upon conclusion and disposition of the case, and without further order of the court, all items seized pursuant to this order may be disposed of pursuant to state law by the Placer County Sheriff's Office property and evidence division.



*Exhibit A, In Support of Plaintiff's Second Amended Complaint, pg 006*

SW NO._____

## AND TO SEIZE IT/THEM IF FOUND

and if you find the same or any part thereof, to hold such property in your possession under California Penal Code Section 1536. This **Search Warrant** and **Affidavit** and attached and incorporated **Statement of Probable Cause** were sworn to as true and subscribed before me on this 20 day of January, 2023, at 6:56 AM/PM. Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

_____
SIGNATURE OF MAGISTRATE

Michael W. Jones  Dept. 3

| | | |
|---|---|---|
| **HOBBS SEALING ORDERED** | ☐YES | ☒NO |
| **CRC § 2.550 SEALING ORDERED** | ☒YES | ☐NO |
| **NIGHT SEARCH ORDERED:** | ☒YES | ☐NO |

SEAL

*Exhibit A, In Support of Plaintiff's Second Amended Complaint, pg 007*

# Exhibit B

# In Support of Plaintiff's Second Amended Complaint

# CLAIM AGAINST COUNTY OF PLACER

☒ **Attach additional pages if necessary**

CLAIMANT NAME:   Smith-Edgar, Ruth A.

Last                      First              MI

ADDRESS:   C/O Gilleon Law Firm, APC; San Diego, CA 92101

Street                 City           State       Zip

*** Objection. Privacy. Not required by Gov. Code section 910

BUSINESS TELEPHONE:  619-702-8623     HOME TELEPHONE:  (   )

DATE OF BIRTH: ***    /    /     DRIVER'S LICENSE #: ***

DATE OF INCIDENT: 11/17/2022     TIME OF INCIDENT: 1524 hours     AM / PM

PLACE OF INCIDENT:   See Attachment to Tort Claim

NAME OF COUNTY EMPLOYEE(S) INVOLVED (Or, mark "unknown"):
Deputy Jon Patrick Persinger

DESCRIPTION OF HOW THE INCIDENT OCCURRED AND WHY PLACER COUNTY IS AT FAULT:
See Attachment to Tort Claim

DESCRIBE DAMAGES, INJURIES, AND AMOUNT OF MONEY YOU ARE CLAIMING: *(if claim involves an automobile, provide make, model, year, and registered owner information)*

See Attachment to Tort Claim

**WARNING:  IT MAY BE A CRIMINAL OFFENSE TO PRESENT A FALSE/FRAUDULENT CLAIM.**

I HAVE READ THE ABOVE CLAIM AND CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

SIGNED THIS DAY OF:  01/12/2023     AT   Del Mar   , CALIFORNIA.

Daniel M. Gilleon, Gilleon Law Firm APC, Attorneys for Complainant Ruth Smith-Edgar

*Exhibit B In Support of Plaintiff's Second Amended Complaint, pg002*

**ATTACHMENT TO TORT CLAIM**
*Ruth Smith-Edgar v. Deputy Jon Patrick Persinger; County of Placer*

Complainant Ruth Smith-Edgar ("Ms. Smith" or "Complainant") is a 57 year-old woman residing in Auburn, California. On September 9, 2022, Ms. Smith called the Placer County Sheriff's Department to report a theft of personal property. Deputy Jon Patrick Persinger ("Deputy" or "Deputy Persinger") responded, leaving a voicemail at or around 0930 hours. At approximately 1100 hours, Deputy Persinger arrived at Ms. Smith's home in his marked Sheriff's vehicle, wearing a full uniform with his badge and gun readily apparent.

When Complainant saw Deputy Persinger at her door, she assumed he was there to complete his report, and invited him in. As Ms. Smith spoke about the theft, she observed that Deputy Persinger was preoccupied with something on his phone, his eyes going back and forth between gazing at her and looking at his phone. Ms. Smith gave Deputy Persinger the telephone numbers for her on-site manager who had moved out the week before, and her off-site manager. The Deputy called both managers and spoke to them on speaker phone, putting a finger to his lips to indicate to Complainant that she should not talk. Ms. Smith thought this was strange, but she sat silently and listened.

After Deputy Persinger finished the call, he said, "*I have done everything about your [property] as you can see. So I want to tell you about the first time I was here. The neighbor in Apartment 4 ran me down and was running her mouth about you, and told me you were an escort.*" Ms. Smith suddenly realized why Deputy Persinger was in her living room, and as her terror grew his presence became menacing. When she denied knowing what he was talking about, Deputy Persinger turned his phone around to show her a website displaying photographs of her. Deputy Persinger said, "*The woman who is in this picture is the same woman who is in front of me.*" As he continued scrolling, the Deputy told Ms. Smith that she was "*hot.*"

It was clear to Complainant that Deputy Persinger was demanding sex, and she felt she had no choice but to submit to the armed law enforcement officer with whom she was alone, inside her apartment. The Deputy walked to her son's bedroom, and put his radio on the dresser. He removed his service belt with his weapon and threw it on the bed. The belt and holstered pistol bounced onto the floor. Deputy Persinger then unbuttoned his pants and let them fall to the floor.

Although she was terrified, Ms. Smith mustered the courage to tell the Deputy she would not have sex with him. Deputy Persinger replied that he was "*good with [oral sex].*" Ms. Smith got on her knees at the foot of her son's bed, and pulled down Deputy Persinger's underwear to expose his erect penis. As she began to perform oral sex on Deputy Persinger, Doe told him to let her know when he was about to climax. Soon thereafter, he told her he was ready and she handed him a towel to ejaculate into. After Deputy Persinger was done cleaning himself up, he said, "*Most incredible thing I've ever had in my life. Just what I needed.*" When he was dressed and ready to leave, Complainant briefly mentioned a legal matter involving her son. The

Attachment to Tort Claim
*Smith v. Persinger; Placer County*
Page 2 of 2

Deputy promised to get back to her on that matter. They both walked downstairs, and Deputy Persinger thanked her again, saying, "*That was so amazing, just what I needed.*" Shortly after leaving, at 1206 hours, Deputy Persinger sent Ms. Smith a text that simply said, "Jon."

Weeks went by without word from Deputy Persinger, and despite not hearing back about her son's matter, Ms. Smith was relieved that he had not returned. This changed on November 17, 2022, at 1520 hours, when Deputy Persinger began knocking on her front door. Complainant was in her kitchen when she first heard the knock. Hoping the person would go away, she ignored the knocking, but it became more aggressive. Jane Ms. Smith looked through the peephole and saw Deputy Persinger standing in full uniform, with his marked Sheriff's vehicle parked in front of her yard. Terror returned, flooding Ms. Smith. Although frozen in fear, she still did not answer the door. At 1524 hours, Deputy Persinger texted her, "*Just saying hello.*" The aggressive knocking returned and Complainant realized she would have no option but to open the door.

When Ms. Smith asked Deputy Persinger why he was there, he said, "*I've been out here several times, I drive by your apartment many times and I think about you. I thought you would see my vehicle. I parked right in front of you … I've been watching your ad.*" Deputy Persinger told Ms. Smith that he had looked into her son's case, asking if her other son still worked at the jewelry store. Complainant became fearful that he had researched her entire family and became fearful for them too. While discussing her son's case, Deputy Persinger opened his wallet and handed Ms. Smith a $20 bill.

Like before, Ms. Smith felt powerless to resist Deputy Persinger's request for more sex. She went upstairs and he followed her into her son's bedroom. This time, Deputy Persinger did not take off his clothes or service belt. He simply unzipped his pants and pulled out his penis. The Deputy told Complainant that this had been a fantasy of his, and that he was hoping it was hers too. Ms. Smith did not respond. She just got on her knees and orally copulated Deputy Persinger until he ejaculated into another towel (which Ms. Smith kept, along with the $20 bill). Zipping up his pants, Deputy Persinger reminded Jane Ms. Smith that he was monitoring her website. As he left, the Deputy told Complainant that he needed to see her "*twice a week or twice a month.*"

Although Deputy Persinger has not returned, Ms. Smith continues to live in terror that he will. After retaining an attorney, Complainant sent a pretext message to the Deputy, asking if he planned to return. He has not yet replied.

The causes of action to be filed in the unlimited jurisdiction of the Superior Court of California will include sexual misconduct by a law enforcement officer; sexual battery (Civ. Code §1708.5); assault and battery; negligent supervision, training, and retention; breach of mandatory duty (Gov. Code §815.6); *respondeat superior*/*Mary M.* (Gov. Code §815.2); sexual harassment (Civ. Code §51.9); gender violence (Civ. Code §52.4); and civil rights violations under color of law (Civ. Code §52.1; 42 USC §1983); *Monell*). Damages exceed $10,000.

# Exhibit C

# In Support of Plaintiff's Second Amended Complaint

*Exhibit C In Support of Plaintiff's Second Amended Complaint, pg 001*

**INVESTIGATOR NOTES:**

Upon review of the text thread and provided videos, I had concerns with (S) Deputy Persinger's intentions for being at (V1) *'s residence. It is unusual to respond to a victim's house off-duty in full uniform and make statements such as, "I am here to take advantage of you". In my career in law enforcement, which has been approximately 10 years, I have never responded to a victim's house off-duty, in full law enforcement uniform, and/or while driving my personally owned vehicle. The situation was suspicious in nature and an explanation was needed by (S) Deputy Persinger.

It should also be noted that I do not believe (V1) * feared for her safety when (S) Deputy Persinger responded to her house on 1/13/2023. (V1) * stated that her attorney informed her to

UNLAWFUL DISSEMINATION OF THIS RESTRICTED INFORMATION IS PROHIBITED VIOLATION WILL SUBJECT THE OFFENDER TO CRIMINAL, AND CIVIL LIABILITY

Page **13** of 14      00038



## PLACER COUNTY SHERIFF
## CORONER / MARSHAL'S OFFICE
### CRIME/INCIDENT REPORT SUPPLEMENTAL

REPORT NUMBER:
**SO230000428**

### NARRATIVE

| Title | Author | Date |
| --- | --- | --- |
| SUPPLEMENTAL NARRATIVE #2 | C. Bal #171 | 1/23/2023 |

pretext (S) Deputy Persinger which started the interaction on 1/13/2023. When (S) Deputy Persinger showed up to the house, she recorded him walking to the front door acting scared that he was there. When (V1) * walked downstairs, she placed her phone on the counter audio recording the interaction. (V1) * freely opened the door and stepped aside indicating that (S) Deputy Persinger was welcome to come inside her residence. Even when (V1) * opened the door she acted surprised as if she was not expecting (S) Deputy Persinger at her residence. (V1) * openly engaged in a face-to-face conversation with (S) Deputy Persinger and not once told him to leave or showed any signs of fear with him standing in front of her. It also took (V1) * approximately an hour to report the complaint to the Placer County Sheriff's Office.

In my opinion, it appeared (S) Deputy Persinger knew something was different with (V1) * and might have believed he was being set up. (S) Deputy Persinger's tone changed when (V1) * asked him to repeat, "You wanted to take advantage of me". (S) Deputy Persinger left the apartment without issue and the recording stopped. (S) Deputy Persinger's behavior was bizarre and concerning; especially while wearing a Placer County Sheriff's uniform.

*Exhibit C In Support of Plaintiff's Second Amended Complaint, pg 002*

The 58-year-old female victim,                          a self-admitted prostitute, provided three dates and times to PCSO Detectives in which Persinger was at her residence on                     while on duty. On two of those dates, she claimed she provided oral copulation to Persinger while he was on duty, in an exchange for money.  On both dates, the victim disposed of Persinger's semen into rags, which she saved.  Those same rags where later sent to the California Department of Justice who determined the semen was located and indicated a very strong support for Persinger being the contributor.  Digital evidence also places Persinger at the victim's house on the dates                     provided.

            claimed she was in fear for her safety and her family's safety as result of Persinger's actions. This investigation discounts her claim of fear but rather an assumed method for financial gain.

*Exhibit C In Support of Plaintiff's Second Amended Complaint, pg 003*

# Exhibit D

# In Support of Plaintiff's Second Amended Complaint



**PLACER COUNTY**

# SHERIFF
**CORONER-MARSHAL**

MAIN OFFICE
2929 RICHARDSON DRIVE
AUBURN, CA 95603
PH: (530) 889-7800  FAX: (530) 889-7899

SOUTH PLACER STATION
6140 HORSESHOE BAR ROAD, SUITE D
LOOMIS, CA 95650
PH: (916) 652-2400 FAX: (916) 652-2424

NORTH LAKE TAHOE STATION
P.O. BOX 1710
TAHOE CITY, CA 96145
PH: (530) 581-6300  FAX: (530) 581-6377

**DEVON BELL**
SHERIFF-CORONER-MARSHAL

**WAYNE WOO**
UNDERSHERIFF

## PERMISSION TO SEARCH
## (CELLPHONE)

I, __Jon Persinger__, have been informed by __Det. Bal__ and
__N/A__, who made proper identification as (an) authorized law enforcement
officer (s) of the PLACER COUNTY SHERIFF'S OFFICE of my constitutional right not
to have a search made of the premises and property owned by me, and/or under my care,
custody and control, without a search warrant.

Knowing of my lawful right to refuse to consent to such a search, I willingly give my
permission to the above named officer(s) to conduct a complete search of the mobile
device, including but not limited to:

The following items that may be located on and in the below-described cellular
communication device(s):

A. Data that may identify the owner or user of the above-described cellular
communication device(s);
B. Address books and calendars;
C. Audio and video clips;
D. Call histories and call logs;
E. Photographs and associated metadata;
F. Text messages (SMS), multimedia messages (MMS), Chats, recorded messages
and subscriber information modules [SIM cards];
G. E-mail messages and attachments, whether read or unread.
H Internet World Wide Web (WWW) browser files including, but not limited to,
browser history, browser cache, stored cookies; browser favorites, auto-complete
form history and stored passwords;
I. Global position system (GPS) data including, but not limited to coordinates, way
points and tracks;
J. Documents and other text based files;

Item(s) to be searched: __iPhone 14 Pro Max, color Blk, Texttnew,__
__1130 (search to 9-9-22 to current date) or__
__1/21/23  0031 hrs__

*Exhibit D In Support of Plaintiff's Second Amended Complaint, pg 002*



**PLACER COUNTY**

# SHERIFF
### CORONER-MARSHAL



MAIN OFFICE
2929 RICHARDSON DRIVE
AUBURN, CA 95603
PH: (530) 889-7800  FAX: (530) 889-7899

SOUTH PLACER STATION
6140 HORSESHOE BAR ROAD, SUITE D
LOOMIS, CA 95650
PH: (916) 652-2400 FAX: (916) 652-2424

NORTH LAKE TAHOE STATION
P.O. BOX 1710
TAHOE CITY, CA 96145
PH: (530) 581-6300  FAX: (530) 581-6377

**DEVON BELL**
SHERIFF-CORONER-MARSHAL

**WAYNE WOO**
UNDERSHERIFF

The above said officer(s) further have my permission to take any digital evidence, which they desire as evidence for criminal prosecution in the case or cases under investigation. This written permission to search without a warrant is given by me to the above officer(s) voluntary and without promises of any kind on this _21_ day of _January_ ~~2020~~, 2023 at _0005_ hours.

The executing law enforcement officer may enlist the aid of a law enforcement computer forensic laboratory in the searching, viewing, photographing, recording, copying, forensic imagining and analysis of any and all of the information described in the list above including all subsections.

I have been further advised that I may withdraw my consent at any-time; however, the withdrawal of my consent shall not be effective until received by the forensic examiner of the Placer County Sheriff's office and shall not be effective as to those items,  material, data, e-mail or content already viewed, seized, analyzed or copied.

I am the owner of the device(s) listed above, and/or have been authorized to possess it/them from the owner of the device(s).

Signed _____    Date: _1/21/23_

WITNESS: _J. MARTIN_                WITNESS: _____

ADDRESS: _2929 Richardson Dr. Auburn CA_ ADDRESS: _____

PHONE: _530-889-7800_              PHONE: _____

*Exhibit D In Support of Plaintiff's Second Amended Complaint, pg 003*



**PLACER COUNTY**
# SHERIFF
**CORONER-MARSHAL**

MAIN OFFICE
2929 RICHARDSON DRIVE
AUBURN, CA 95603
PH: (530) 889-7800  FAX: (530) 889-7899

SOUTH PLACER STATION
6140 HORSESHOE BAR ROAD, SUITE D
LOOMIS, CA 95650
PH: (916) 652-2400 FAX: (916) 652-2424

NORTH LAKE TAHOE STATION
P.O. BOX 1710
TAHOE CITY, CA 96145
PH: (530) 581-6300  FAX: (530) 581-6377



**DEVON BELL**
SHERIFF-CORONER-MARSHAL

**WAYNE WOO**
UNDERSHERIFF

## PERMISSION TO SEARCH
## (CELLPHONE)

I, _Jon Persinger_ , have been informed by _DET. Bal_ and
_N/A_ , who made proper identification as (an) authorized law enforcement
officer (s) of the PLACER COUNTY SHERIFF'S OFFICE of my constitutional right not
to have a search made of the premises and property owned by me, and/or under my care,
custody and control, without a search warrant.

Knowing of my lawful right to refuse to consent to such a search, I willingly give my
permission to the above named officer(s) to conduct a complete search of the mobile
device, including but not limited to:

The following items that may be located on and in the below-described cellular
communication device(s):

A. Data that may identify the owner or user of the above-described cellular
communication device(s);

B. Address books and calendars;

C. Audio and video clips;

D. Call histories and call logs;

E. Photographs and associated metadata;

F. Text messages (SMS), multimedia messages (MMS), Chats, recorded messages
and subscriber information modules [SIM cards];

G. E-mail messages and attachments, whether read or unread.

H Internet World Wide Web (WWW) browser files including, but not limited to,
browser history, browser cache, stored cookies; browser favorites, auto-complete
form history and stored passwords;

I. Global position system (GPS) data including, but not limited to coordinates, way
points and tracks;

J. Documents and other text based files;

Item(s) to be searched: _PIXEL SMARTPHONE: (SEARCH TO 9-9-22_
_TO CURRENT DATE) JB_
_X___ 1/21/23 0031 hrs_

*Exhibit D In Support of Plaintiff's Second Amended Complaint, pg 004*



**PLACER COUNTY**
# SHERIFF
**CORONER-MARSHAL**

MAIN OFFICE
2929 RICHARDSON DRIVE
AUBURN, CA 95603
PH: (530) 889-7800  FAX: (530) 889-7899

SOUTH PLACER STATION
6140 HORSESHOE BAR ROAD, SUITE D
LOOMIS, CA 95650
PH: (916) 652-2400 FAX: (916) 652-2424

NORTH LAKE TAHOE STATION
P.O. BOX 1710
TAHOE CITY, CA 96145
PH: (530) 581-6300  FAX: (530) 581-6377



**DEVON BELL**
SHERIFF-CORONER-MARSHAL

**WAYNE WOO**
UNDERSHERIFF

The above said officer(s) further have my permission to take any digital evidence, which they desire as evidence for criminal prosecution in the case or cases under investigation. This written permission to search without a warrant is given by me to the above officer(s) voluntary and without promises of any kind on this _20_ day of _January_ , 2020, at _2157_ hours. ~~2020~~ 2023

The executing law enforcement officer may enlist the aid of a law enforcement computer forensic laboratory in the searching, viewing, photographing, recording, copying, forensic imagining and analysis of any and all of the information described in the list above including all subsections.

I have been further advised that I may withdraw my consent at any-time; however, the withdrawal of my consent shall not be effective until received by the forensic examiner of the Placer County Sheriff's office and shall not be effective as to those items, material, data, e-mail or content already viewed, seized, analyzed or copied.

I am the owner of the device(s) listed above, and/or have been authorized to possess it/them from the owner of the device(s).

Signed X _____    Date: _1/20/23_

WITNESS: _J. Martin_    WITNESS: _____
ADDRESS: _2929 Richardson Dr. Auburn, CA_    ADDRESS: _____
PHONE: _530-889-7800_    PHONE: _____

*Exhibit D In Support of Plaintiff's Second Amended Complaint, pg 005*

# Exhibit E

# In Support of Plaintiff's Second Amended Complaint

**Capitol City Psychiatry**
**Michael McAndrew M.D.**
**300 Harding Boulevard Suite 118**
**Roseville, California 95678**
**(916) 742-5236  Fax (916) 742-5237**

MARCH 2, 2023

TO: PLACER COUNTY SHERIFF DEPARTMENT

RE:  Request for Medical Excusal

Regarding the matter of Jon Persinger:  Mr Persinger is currently under my care for issues related to critical incidents under employment as a Deputy Sheriff, most recently the incident occurring on or about 1-16-2023.

I recommend that he not be involved in Sheriff Department meetings or functions until April 1, 2023, based on my complete examination.  We will be continuing active treatment during this time.

Your cooperation is appreciated.

Michael McAndrew M.D.

Psychiatry, ABPN

# Exhibit F

# In Support of Plaintiff's Second Amended Complaint

12:25



Josh >

Wed, Mar 8 at 11:57 AM

Hello Jon. I am waiting for additional but have been asked to instruct you to be available anytime today up until 1630 hours 10-10 time. Once I get more I will let you know.

Copy. FYI my doctor has me out of service for work related functions until April 1 if that matters. I sent the form to HR already.

Copy that. Are you able to drive or that not within your prescribed scope of capabilities?

It doesn't restrict driving, but it does restrict me from attending meetings or work functions at PCSO.

Is there a way they can mail me the paperwork? I'm assuming it's PSU paperwork.

My lawyer is also open to speaking with you or them about it if you would prefer.

Let me inquire and get back to you.

iMessage

12:26

JT

Josh

Let me inquire and get back to you.

Wed, Mar 8 at 1:14 PM

Question Did you or your attorney send to County HR or to Sheriff's Office HR? They are trying to locate.

*your doctor's note

I did. Katherine Bandy was handling

Copy thanks

Wed, Mar 8 at 2:53 PM

You are instructed to meet PSU today at 1545 hours in the rear lot of the Shell Gas around the corner from his house to serve papers. 5500 Schriber Way. You will see their vehicles parked. They have checked and this does not interfere with any restrictions you have. If you cannot respond as directed they will go to your home and meet you there. This is for paper service only you are not being arrested.

*your house

Understood.

iMessage

# Exhibit G

# In Support of Plaintiff's Second Amended Complaint



Jon Persinger <jon.persinger@gmail.com>

---

## FW: [EXTERNAL] Re: Leave of Absence - Placer County
2 messages

---

**Cheryl Geldien** <CGeldien@placer.ca.gov>                    Tue, Apr 25, 2023 at 1:11 PM
To: Matthew Metcalf <MMetcalf@placer.ca.gov>
Cc: "Greg McKenzie (Sheriff)" <GMckenzi@placer.ca.gov>, Jon Persinger <jon.persinger@gmail.com>, Jerry Rogers
<jerryrogers@placer.ca.gov>, Katie Orcino <KOrcino@placer.ca.gov>, Kathryn Bandy <kbandy@placer.ca.gov>, Janine
Martindale <jmartind@placer.ca.gov>, Kourtney Sterrett <ksterrett@placer.ca.gov>

Hello Sergeant,

Please review the attached note and let me know if we can continue to accommodate.

Thank you,

Cheryl

M-F I 7:15-4:45 I 1st Monday RDO

---

**From:** Kathryn Bandy <kbandy@placer.ca.gov>
**Sent:** Tuesday, April 25, 2023 12:45 PM
**To:** Cheryl Geldien <CGeldien@placer.ca.gov>; Jon Scofield <JScofiel@placer.ca.gov>; Greg McKenzie (Sheriff)
<GMckenzi@placer.ca.gov>
**Cc:** Janine Martindale <jmartind@placer.ca.gov>; Kourtney Sterrett <ksterrett@placer.ca.gov>
**Subject:** FW: [EXTERNAL] Re: Leave of Absence - Placer County

Good Afternoon,

Attached please find a note received regarding an extension of modified duty for Officer Hernandez-Ceja. Please let me
know if modified duty continues to be accommodated.

Thank you,
Kathryn

**Kathryn Bandy**

Human Resources Analyst

Human Resources Department I Workforce Optimization

(530) 886-4676 direct I (530) 889-4060 main

*Exhibit G In Support of Plaintiff's Second Amended Complaint, pg 002*

COUNTY OF
**Placer**®
HUMAN RESOURCES

**From:** Gabriela Hernandez <g_hernandezp3@yahoo.com>
**Sent:** Tuesday, April 25, 2023 12:32 PM
**To:** Kathryn Bandy <kbandy@placer.ca.gov>
**Subject:** [EXTERNAL] Re: Leave of Absence - Placer County

Good morning Kathryn,

I have an updated work accommodation note from my doctor.

Sent from my iPhone

> On Jan 31, 2023, at 2:30 PM, Gabriela Hernandez <g_hernandezp3@yahoo.com> wrote:
>
> Hi Kathryn,
>
>
> Just wanted to make sure you received my updated work status doctor's note and if I'm still on to return to work as planned this Thursday.
>
>
> Sent from my iPhone
>
>> On Jan 31, 2023, at 9:54 AM, Gabriela Hernandez <g_hernandezp3@yahoo.com> wrote:
>>
>> Good morning Kathryn,
>>
>> I requested an updated doctor's note yesterday. It looks like Kaiser changed the modifications.
>>
>>
>> <Letters | Medical Record | Kaiser Permanente.pdf>
>>
>>
>>
>> Sent from my iPhone
>>
>>> On Jan 30, 2023, at 1:22 PM, Kathryn Bandy <kbandy@placer.ca.gov> wrote:
>>>
>>>
>>> Good Afternoon, Officer Hernandez-Ceja,

*Exhibit G In Support of Plaintiff's Second Amended Complaint, pg 003*

attempt to call you a few minutes ago regarding your medical leave of absence. Your voicemail box was full, and I was unable to leave you a message. When you receive this email, can you please give me a call? I am working at home today, and the best way to reach me would be my cell phone – (916) 214-6766.

Thank you,

Kathryn


**Kathryn Bandy**

Human Resources Analyst

Human Resources Department l Workforce Optimization

(530) 886-4676 direct l (530) 889-4060 main


<image001.png>


This e-mail is intended only for the person or entity to which it is addressed and may contain information that is confidential, privileged or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please contact the sender and destroy the original message and all copies.


**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

 **Letters  Medical Record  Kaiser Permanente.pdf**
64K

---

**Matthew Metcalf** <MMetcalf@placer.ca.gov>           Tue, Apr 25, 2023 at 1:35 PM
To: Cheryl Geldien <CGeldien@placer.ca.gov>
Cc: "Greg McKenzie (Sheriff)" <GMckenzi@placer.ca.gov>, Jon Persinger <jon.persinger@gmail.com>, Jerry Rogers <jerryrogers@placer.ca.gov>, Katie Orcino <KOrcino@placer.ca.gov>, Kathryn Bandy <kbandy@placer.ca.gov>, Janine Martindale <jmartind@placer.ca.gov>, Kourtney Sterrett <ksterrett@placer.ca.gov>

*Exhibit G In Support of Plaintiff's Second Amended Complaint, pg 004*

Yes, we can accommodate. I will have her sergeant fill out an interactive.

[Quoted text hidden]

# Exhibit H

# In Support of Plaintiff's Second Amended Complaint

ARTICLE 3.08
**CIVIL SERVICE SYSTEM**

Part 1
**Enabling Ordinance**

### § 3.08.010.  Preamble.

Pursuant to the authority granted to it under the provisions of the County Civil Service Enabling Act Statutes of 1939, Chapter 982, and in order to establish an equitable and uniform procedure for dealing with personnel matters through a civil service commission and to place county employment on a merit basis for the purpose of obtaining the highest efficiency and assuring that the best qualified persons available shall be brought into the service of the county, the following civil service system is adopted.
(Prior code § 14.1000; Ord. 5478-B (Attach. A), 2007)

### § 3.08.020.  Civil service commission—Established—Appointment and term of office of members.

There is created a civil service commission. The commission shall consist of five members appointed by the board of supervisors. The board of supervisors shall appoint five qualified electors of the county as members of such commission, to take office as soon as appointed and qualified. The term of office of two members of the first commission shall be one year. The term of office of the other members shall be two, three, and four years respectively. The members of the commission shall determine by lot the relative order of expiration of their terms. Each member of the commission shall hold office for four years and until his or her successor is appointed and qualified.
(Prior code § 14.1010; Ord. 5478-B (Attach. A), 2007)

### § 3.08.030.  Civil service commission—Qualifications, removal and compensation of members— Investigative and subpoena power—Quorum.

A.   The members of the civil service commission shall be selected from among the qualified electors of the county. No member of the commission shall be an employee of the classified or unclassified service and concurrently a member of the commission, an officer of any local, state of national committee of a political party, or an officer of a committee in any partisan political club or organization or shall hold or be candidate for any elective office.

B.   A majority vote of the entire board of supervisors shall be required to elect a member of the commission. The board of supervisors, by a majority vote of all the members may remove a member of the commission for cause during his or her term of office, but only by stating in writing the reason for such removal and allowing him or her an opportunity for a public hearing before the board of supervisors.

C.   Members of the commission shall receive $100 per regularly scheduled meeting attended, with a maximum limit on compensation for 24 meetings per county fiscal year. Members of the commission shall also receive $100 for each day, or portion thereof, devoted to the hearing of grievance complaints or disciplinary appeals, other than the days of a regularly

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

scheduled meeting. Members shall receive reimbursement for actual and necessary expenses incidental to the proper execution of their duties and responsibilities; and such necessary traveling and other official expenditures necessitated by their official duties as shall be approved by the board of supervisors.

D.    The commission shall have power to inquire into the conduct and operation of any department and to subpoena and require the attendance of witnesses and production of records, books and papers and to administer oaths.

   1.    Any inquiry conducted pursuant to this section shall be only for the purpose of determining whether or not there has been a violation of any section or sections of this article or the civil service rules.

   2.    No inquiry shall be commenced unless a verified complaint is first filed which alleges a violation of a section or sections of this article or the civil service rules.

   3.    Such an inquiry shall be conducted by the civil service commission in the form of public or private hearings.

   4.    No inquiry shall be commenced unless the alleged violation or violations occurred less than 60 days prior to the commencement of the inquiry.

   5.    The civil service commission shall enact rules, not inconsistent with this section, which govern the procedural method of commencing, conducting, and concluding the inquiry.

E.    Three members of the civil service commission shall constitute a quorum, and a majority of the entire civil service commission shall be required to transact business.

(Prior code § 14.1020; Ord. 5478-B (Attach. A), 2007)

### § 3.08.040.  Civil service commission—Chairperson—Meetings.

Immediately upon appointment, the civil service commission shall elect one of its members as chairperson. The commission shall meet once a month and may, upon the call of the chairperson, meet as often as necessary for carrying out its duties.

(Prior code § 14.1030; Ord. 5478-B (Attach. A), 2007)

### § 3.08.050.  Civil service commission—Powers and duties generally.

The civil service commission shall hold hearings on grievances, appeals and other personnel matters, shall enforce rules for the classified service, shall keep minutes of its proceedings and records of its examinations, and shall, as a commission or through a single commission member, make investigations concerning the enforcement and effect of this article and of the rules and efficiency of the service.

(Prior code § 14.1040; Ord. 5006-B, 1999; Ord. 5160-B, 2002; Ord. 5189-B, 2002; Ord. 5398-B § 4, 2006; Ord. 5478-B (Attach. A), 2007; Ord. 6025-B § 3, 2020)

### § 3.08.060.  Director of human resources.

A.    The director of human resources shall be a department head appointed by the county executive officer, subject to confirmation by the board of supervisors.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

B.   The director of human resources shall act as executive secretary of the civil service commission and shall perform and discharge, under the direction and control of the commission, the powers, duties, purposes, functions and jurisdiction vested in the commission and delegated to him or her by it. The director of human resources shall be responsible for carrying out all procedures in the administration of the classified personnel in conformity with the provisions of this article, including prescribing, amending and enforcing rules for the classified service.

Such rules shall, among other things, provide:

1.   For the standardization and classification of all positions in the classified service, as contained in Article 3.12 of this chapter.

2.   For competitive examinations to test applicants for entrance to the promotion in the civil service system; provided, that in the event of the creation of a new position in the classified service or in the case of a vacancy in any classified position requiring peculiar and exceptional qualifications of a scientific, professional or expert character, upon satisfactory evidence that competitive examinations to qualify applicants for such positions are impractical, and that the position can best be filled by the selection of a person of recognized attainments, competitive examinations may be suspended by the commission, but no suspension shall be general in its application to such position and all such cases of suspension shall be reported, together with the reasons therefore to the board of supervisors. This provision for the suspension of competitive examinations shall not apply to any examination to qualify applicants for entrance into the service in any classified position in the health, emergency services, and social service departments.

3.   For creation of employment lists, upon which shall be entered the names of successful candidates in the order of their ranking via the examination process.

4.   For provisional appointments where there is no employment list.

5.   For appointments to vacant positions from employment list.

6.   For publicly advertising all examinations.

7.   For emergency appointments without reference to employment lists, when such appointments are found necessary to prevent stoppage of public business, loss of life or damage to persons or property.

8.   For certification of eligibles in order of priority lists.

9.   For rejection of applications of eligibles who fail to comply with the requirements of the commission.

10.  That department heads, boards or officers possessing appointive power shall make a selection from one of the five highest ranks on an eligible list.

11.  For a probationary period of not less than six months, but not to exceed one year.

12.  For separation from the service of employees through layoffs and for reemployment of

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

the employees laid off.

13. For leaves of absences.

14. For promotion, demotion, transfer and reinstatement.

15. For recommendation of rates of pay for each classification of position based upon an annual study of salaries prevailing in the labor market for comparable employment in government agencies and private industries.

16. For health, welfare and safety of employees.

The director of human resources shall also keep an official record of all actions taken by the commission and shall prepare or cause to be prepared an annual report that shall be submitted to the board of supervisors.

C.   The director of human resources shall be in the unclassified service and serve at the pleasure of the county executive officer.

D.   All references in county forms, documents, regulations, filings and other provisions of this county code to the terms "personnel director" or "director of personnel," or to the term "director" when context clearly indicates the term is meant to refer to the personnel director, shall now mean and be construed to mean "director of human resources."

(Prior code § 14.1050; Ord. 5006-B, 1999; Ord. 5478-B (Attach. A), 2007; Ord. 5795-B § 3, 2015; Ord. 6025-B § 3, 2020)

## § 3.08.070.  Classified and unclassified service defined.

The civil service system of the county is divided into the unclassified and the classified service.

A.   The unclassified service shall consist of:

1. All officers elected by the people and all confidential or special investigators employed by any of such elective officers.

2. All appointive boards and commissions.

3. Members of the civil service commission.

4. All persons serving the county without compensation.

5. Interns, student nurses, dentists, and all physicians except those required to be in the classified service by state regulation.

6. Casual patient and inmate employees at county institutions.

7. Persons employed under contract to supply expert, professional or technical service in a temporary position.

8. Appointive officers as set forth in County Charter Section 402.

9. Chief probation officer.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

*Exhibit H In Support of Plaintiff's Second Amended Complaint, pg 005*

10.  All department heads and appointing authorities.

11.  Special classifications exempt from approved local merit system standards (State Administrative Code).

12.  All other classifications and titles as identified by the board of supervisors through passage of an ordinance so indicating.

The current schedule of all titles coming within the classified service pursuant to this section will be maintained by the personnel director and presented in such a fashion so as to be readily available for review by county employees, officers, and the public.

B.  Classified Service. The classified service shall comprise all positions not included in the unclassified service.

Note: See Section 3.08.050(B).

(Prior code § 14.1060; Ord. 5006-B, 1999; Ord. 5014-B, 2000; Ord. 5032-B, 2000; Ord. 5040-B, 2000; Ord. 5065-B, 2000; Ord. 5069-B, 2000; Ord. 5077-B, 2001; Ord. 5115-B, 2001; Ord. 5140-B, 2001; Ord. 5182-B, 2002; Ord. 5184-B, 2002; Ord. 5193-B, 2002; Ord. 5194-B, 2002; Ord. 5196-B, 2002; Ord. 5235-B, 2003; Ord. 5295-B, 2004; Ord. 5303-B, 2004; Ord. 5329-B, 2004; Ord. 5353-B, 2005; Ord. 5345-B, 2005; Ord. 5347-B, 2005; Ord. 5356-B, 2005; Ord. 5359-B, 2005; Ord. 5363-B, 2005; Ord. 5374-B, 2005; Ord. 5382-B, 2005; Ord. 5389-B, 2005; Ord. 5395-B, 2006; Ord. 5402-B, 2006; Ord. 5403-B, 2006; Ord. 5408-B, 2006; Ord. 5425-B § 4, 2006; Ord. 5435-B, 2006; Ord. 5441-B § 1, 2006; 5468-B, 2007; Ord. 5478-B (Attach. A), 2007; Ord. 5795-B § 4, 2015; Ord. 5991-B § 1, 2019)

### § 3.08.080.  Contracting for services.

The board of supervisors may contract with any state department or with any competent agency or person for the conducting of competitive examinations or for the performance of any other service in connection with personnel selection and administration.
(Prior code § 14.1070; Ord. 5478-B (Attach. A), 2007; Ord. 6025-B § 3, 2020)

### § 3.08.090.  Status of present employees upon creation of civil service commission.

A.  All persons holding full-time positions in the classified service, as established by this article, for six months immediately preceding the effective date of this article, shall hold their positions until discharged, reduced, promoted or transferred in accordance with the provisions of this article. Any other persons holding positions of employment in the classified service shall be regarded as holding their positions of employment as probationers who are serving out the balance of their probationary periods before obtaining regular positions.

B.  Employees of the social service department who hold positions which are subject to state grant-in-aid merit system requirements and who have been under the jurisdiction of the California County Merit System shall be transferred from the system and included in and made a part of the classified service of the Placer County civil service system upon approval of the latter system by the California State Personnel Board. Upon such a transfer of

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

jurisdiction, employees who acquired either probationary or permanent status under the former system prior to such transfer, shall retain such status and hold their positions until discharged, reduced, promoted or transferred, in accordance with this article. Upon such a transfer of jurisdiction, employees who have not acquired either probationary or permanent status under the California County Merit System prior to such transfer, shall be required to compete for the positions which they then hold through open competitive examinations, in accordance with the provisions of this article.

(Prior code § 14.1080; Ord. 5478-B (Attach. A), 2007)

### § 3.08.100. Director of human resources to approve payment of salaries, etc.

The county auditor shall withhold payment of any salary or compensation for services from any person holding or performing the duties of a position in the classified service, unless the payroll or claim for such salary or compensation shall bear the approval of the director of human resources that the persons named therein have been appointed or employed and are performing service in accordance with the provisions of this article and of the rules established under this article.

(Prior code § 14.1090; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

### § 3.08.110. Discrimination prohibited.

A.    General Provisions. No person in the civil service system or seeking admission thereto shall be appointed, reduced or removed or in any way favored or discriminated against because of any constitutionally or statutorily protected right, or because of age, sex, race, sexual orientation, color, ancestry, religious creed, national origin, physical disability, mental disability, medical condition, marital status or denial of family and medical care leave, family sick leave or pregnancy leave except where specific age, sex or physical requirements constitute bona fide occupational qualification necessary for proper and efficient operation. A copy of the county equal employment opportunity plan is available upon request of the human resources department.

B.    Appeals Procedure. The appeal procedure against such acts shall be as provided in Section 3.08.280 of these rules and regulations.

     1.    Any person who believes they have been discriminated against on the basis of discrimination as cited in subsection A of this section, may appeal in writing to the director of human resources within 10 working days of the alleged discriminatory act. The director shall advise the person appealing of their rights and options pursuant to the grievance procedure. The appeal shall state the following:

           a.    The specific act(s) of alleged discrimination.

           b.    The effect of the act(s) of alleged discrimination.

           c.    The nature of the relief or remedy which is being sought.

     2.    Upon receipt of the appeal, the director of human resources, or designee, shall determine the initial appeal step to be followed; however, every effort will be made by the director to resolve the appeal through an informal discussion with the parties concerned.

     3.    a.    If the director determines that the appeal is within the scope of an appointing

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

Case 2:24-cv-02967-DAD-CSK    Document 25    Filed 08/06/25    Page 97 of 251

authority's power to correct, a copy of the appeal will be forwarded to them within five working days. The appeal shall then begin with the lowest appropriate step of the grievance process as designated under County Code Section 3.08.290, if it is a county employee, and will begin with Step 3, if it is a member of the general public.

    b.   If the director determines that the appeal is not within the scope of an appointing authority but is within the scope of the director, then the appeal shall begin with Step 3 of the grievance process.

    c.   If the appeal is not within the scope of either an appointing authority or the director of human resources, the appeal shall be referred directly to the civil service commission as designated under County Code Section 3.08.320.

4.   If the appeal is within the scope of an appointing authority and is not resolved to the appellant's satisfaction at Step 3 of the grievance process, the appellant may submit a written request for review to the director of human resources within five working days following the date the appointing authority renders a decision.

    a.   The director, or designee, shall then review and investigate the matter. The director shall render a written decision to the appellant and the appointing authority within 10 working days.

    b.   If the decision of the director of human resources requires an appointing authority to take action, the appointing authority shall notify the director within five working days of the acceptance or rejection of the decision.

5.   If the appellant is not satisfied with the director of human resources' decision or if the appointing authority rejects the director's decision, the appellant may submit a written request for a hearing before the civil service commission as designated under County Code Section 3.08.320.

(Prior code § 14.1100; Ord. 5238-B, 2003; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019; Ord. 6068-B § 1, 2021)

## § 3.08.120.  Sexual harassment prohibited.

A.   General Provisions. No employee shall be subject to sexual harassment including verbal harassment, physical harassment, visual forms of harassment or sexual advances: (1) where submission to such conduct is either explicitly or implicitly made a term or condition of employment; (2) where submission to or rejection of such conduct by an individual is used as a basis for employment decisions; or (3) where such conduct has the purpose or effect of unreasonably creating an intimidating, hostile or offensive working environment.

B.   Complaint Procedure. The complaint procedure for reporting incidents of sexual harassment and/or retaliation is available upon request from the personnel department. Complaints of sexual harassment may be submitted to the employees supervisor or department head or formally through the equal employment opportunity officer in the personnel department. The personnel department shall routinely and continuously post the name, work location and telephone number of the equal employment opportunity officer in each county office and

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

department and shall provide any forms to be used for filing a formal complaint of sexual harassment.
(Prior code § 14.1110; Ord. 5238-B, 2003; Ord. 5478-B (Attach. A), 2007)

### § 3.08.130. Discrimination against disabled prohibited.

A.  General Provisions. No person with a physical or mental impairment that substantially limits one or more of the major life activities of such individual shall be subject to discrimination in regard to job application procedures, hiring or discharge from employment, compensation, advancement, job training, or other terms, condition and privileges of employment because of such disability. However, these provisions shall not apply where the disability prevents that person from performing the essential functions of a job with or without reasonable accommodation; as such terms are defined in the Americans with Disabilities Act, 42 USC Section 12101 et seq.

B.  Complaint Procedure. Any employee or applicant who believes that they have been the subject of discrimination because of a physical or mental impairment may file a complaint with the equal employment opportunity officer at the human resources department. The name, work location and telephone number of the equal employment opportunity officer will be routinely and continuously posted by the human resources department. The human resources department shall make available to all persons a copy of the procedure for the filing of formal complaints for violation of this section. In addition, the human resources department shall provide the necessary forms to any person who wishes to file a complaint under this section.
(Prior code § 14.1120; Ord. 5238-B, 2003; Ord. 5478-B (Attach. A), 2007; Ord. 6068-B § 1, 2021)

### § 3.08.140. Dismissal, suspension or reduction in rank or compensation.

Dismissal, suspension, reduction in rank or compensation, or any other form of disciplinary action shall comply with the requirements of Part 12, commencing at Section 3.08.1160.
(Prior code § 14.1130; Ord. 5478-B (Attach. A), 2007)

### § 3.08.150. Appropriation of funds.

The board of supervisors shall appropriate such funds as are necessary to carry out the provisions of this article.
(Prior code § 14.1140; Ord. 5478-B (Attach. A), 2007)

### § 3.08.160. Amendment of article.

No ordinance repealing or amending this article which nullifies the basic principle of the civil service system contemplated by this article and the county civil service enabling law shall be effective unless a proposition of such repeal or amendment shall have been submitted to an election and approved by a majority vote of the electors voting on the proposition.
(Prior code § 14.1150; Ord. 5478-B (Attach. A), 2007)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

Part 2
**Definition of Terms**

## § 3.08.170.  Definition of terms.

The following words and terms used in these rules shall have the meaning indicated below unless the context clearly indicates otherwise.

"Advancement" means a salary increase within the limits of the pay grade established for a class.

"Allocation" means the official determination of the class in which a position shall be deemed to exist and the assignment of an individual position to an appropriate class.

"Anniversary date" means the date by which and from which employee benefits are computed including but not necessarily limited to salary increases, vacation, sick leave and leaves of absence.

"Applicant" means a person who, according to the rules, has made formal application for employment.

Appointing authority.

1.   "Appointing authority" means the board, commission, department heads, group of persons, officer or person having the power by lawful delegated authority to make appointment to or removal from an established position in the county service.

2.   Except as specifically provided elsewhere, the following shall be deemed the appointing authority:

     a.   The board of supervisors shall be the appointing authority for the county executive officer, county counsel, and all county boards and commissions.

     b.   The county executive officer shall be the appointing authority for all department heads other than elective officials.

     c.   Department heads shall be the appointing authority as to all persons within their respective departments.

     d.   Identification of a position as classified or unclassified shall not affect the operation of the foregoing rules. "Appointment" means the offer to and acceptance by a person of a position either on a permanent or temporary basis.

"Assistant department head" means any individual having sole authority to act on behalf of a department head in the department head's absence for an entire department, and who reports directly to the department head.

"Board" means the board of supervisors of the county of Placer.

"Certification" means the submission by the director of names of eligibles in rank order from an appropriate eligible list to an appointing authority.

"Class" means a definitely recognized kind of employment in the county service designed to embrace all positions having duties and responsibilities sufficiently similar so that the same requirements as to education, experience, knowledge and ability may be demanded of incumbents

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

*Exhibit H In Support of Plaintiff's Second Amended Complaint, pg 010*

and so that the same schedule of compensation may be made to apply with equity.

"Classification or reclassification" means the judging of a position's contents and its allocation to a class in accordance with the duties performed and the authority and responsibilities exercised.

"Classification plan" means an orderly arrangement of positions under separate and distinct classes so that each class will contain all those positions which are sufficiently similar in respect to duties and responsibilities to meet the requirements as established under the definition of "class," such classification plan being established and maintained by the director of human resources.

"Classified service" means all positions in the county service except those specifically placed in the "unclassified" service.

"Commission" means the Placer County civil service commission.

"Compensation" means the salary, wage, allowances, and all other forms of valuable consideration, earned by or paid to an employee by reason of service in any position, but does not include any allowances authorized and incurred as necessary expenses.

"Compensation plan" means a schedule of salaries established by ordinance for the several classes of positions recognized in the classification plan, so that all positions of a given class will be paid the same salary grade established for the class.

Continuous service.

1. "Continuous service" means service without interruption during which the employee has been employed by the county. An employee who is laid off and then reemployed shall have total time worked as the basis for computing continuous service. Interruption of service means dismissal, resignation, unauthorized leave of absence and lay-off in excess of two years.

2. A break shall occur for any unauthorized absence or resignation.

3. For purposes of computing a break in service for employees on integrated State Disability Insurance (SDI), only those hours recorded as off payroll hours will accumulate toward the determination of a break in service. For example, in an 80 hour pay period, the SDI hours covered may amount to 20 hours. The remaining hours are covered by and charged to sick leave. The 20 hours related to SDI will be off payroll, which will be reflected on the employee's payroll check stub.

4. Except as provided in subsection 3 of this definition, partial calendar months shall be excluded in computing continuous service.

5. For DSA represented employees, whenever "year of service" or "years of service" is used in this chapter to define any form of benefit eligibility, that term shall mean a continuous year of permanent county service (2,080 paid hours equals one year of service) or continuous years of permanent county service (2,080 paid hours equals one year of service).

"County" means the county of Placer.

"County service" or "service of the county" means the positions and employments occupied by any legally appointed officer or employee of the county established by the board.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

*Exhibit H In Support of Plaintiff's Second Amended Complaint, pg 011*

"Demotion" means a change in status of an employee, from a position in one class to a position in another class having lesser duties and responsibilities, lower qualifications and a lower grade of compensation.

"Department" means an administrative branch of the county government with a line of work and group of employees under the immediate charge of a chief executive officer, who is known as the department head.

"Director" means the human resources director.

"Dismissal" means the separation of an employee from the classified service for a cause.

"Eligible" means a person who may legally be appointed to vacant positions in the competitive service by reason of prior service or of the successful passage of an original entrance or promotional examination.

"Eligible list" means a list of names of persons arranged in order of final ranking, who have been found qualified through suitable tests for employment for positions allocated to a specific class.

"Employee" means a person who is legally occupying a position in the county service or who is on authorized leave of absence.

Examination, assembled. "Assembled examination" means a test conducted at a specified time and place at which applicants are required to appear concurrently for competition under the supervision of an examiner or proctor.

Examination, unassembled. "Unassembled examination" means a test consisting of an appraisal of training, experience or work history, or any other means for evaluating other relative qualifications of applicants without the necessity of their personal appearance at a specified place.

"General reclassification" means a general survey within a department wherein a group of positions are resurveyed and, as a result, a group of such positions are reallocated to different classes.

Good standing, termination in. "Termination in good standing" means that an employee has given the required termination notice and has not been discharged for cause. It shall also include employees who have been laid off.

Group, occupational. "Occupational group" means a major subdivision of a series including one or more classes of positions in an associated craft, occupation, profession, or functional activity.

Holiday. A declared holiday constitutes eight working hours granted as time off with pay.

"Holiday pay." A declared holiday constitutes eight working hours granted as time off with pay for full-time employees. Part-time employees' holiday hours shall be pro-rated on the basis of their standard/scheduled hours to a 40 hour week. For PPEO, DDAA, and DSA represented employees, rounding will occur to one decimal place.

"Layoff" means termination of employment of an employee without prejudice for any of the following reasons:

    1.   Necessity based on lack of funds or work; or

    2.   Advisability in the interest of economy to reduce the departmental staff; or

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

3. Return of another employee with greater seniority from leave of absence.

"Leave of absence" means an authorized absence from work as provided by these rules.

"Open examination" means an examination open to the public and not limited to applicants in county service.

"Overtime" means:

1. General Unit and Professional Unit. That period of authorized work performed by an employee in excess of such employee's normal work period.

2. Deputy Sheriffs Unit. That period of authorized work performed by an employee in excess of such employee's normal work schedule.

"Permanent full-time position" means a position established within which a full-time employee works on a continuous basis, 40 hours per week and allocated by the board to a department in the salary ordinance. (Except those employees under an FLSA 7J or 7K exemption.)

"Permanent part-time position" means a position established on a permanent, year-round basis requiring work on a regular schedule of less than 40 hours per week and allocated by the board to a department in the salary ordinance.

"Position" means an office or employment in the county service, of which the duties and responsibilities are exercised by one person.

Position, extra help. "Extra help position" means a position approved by the county executive for a specific length of time, who works eight hours a day or a fraction thereof, but such work is done on call at irregular intervals or without a set pattern, usually to meet peak workloads or temporary conditions such as vacation relief, paid sick leave and other situations involving a fluctuating staff. An extra help position is not allocated by the board to a department.

"Professional employee" means:

1. Any employee engaged in work:

    a. Predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work;

    b. Involving the consistent exercise of discretion and judgment in its performance;

    c. Of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time;

    d. Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a long course of specialized intellectual instruction and study in an institution of higher learning or a hospital as distinguished from a general academic education or from an apprenticeship or from training in the performance or routine mental, manual or physical processes; or

2. Any employee who:

    a. Has completed the courses of specialized intellectual instruction and study in subsection (1)(d) of this definition;

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

b.   Is performing related work under the supervision of a professional person to qualify themselves to become a professional employee as defined in subsection (1)(d) of this definition.

"Promotion" means advancement to a position of higher rank or grade where the salary grade difference between the current classification and the new classification involves an increase in pay of at least five percent or more. A change in salary grade resulting from a reclassification of an occupational group without regard to departmental lines and involving no substantial change in duties and qualifications is not considered a promotion.

"Promotional examinations" means those limited to qualified permanent or probationary county employees in permanent allocations. County employees shall be allowed paid time during their regular scheduled shift to participate in an examination or interview for other county positions.

"RDO" means regular day off or an employee's regularly scheduled day off.

"Re-allocation" means a change in allocation of an individual position by raising it to a higher class, reducing it to a lower class, or moving it to another class at the same level on the basis of substantial changes in the kind, difficulty, or responsibility of duties performed in such position.

Re-classification. See "Classifications."

"Re-employment list" means a list of names of persons, arranged in order provided by these rules, who have occupied positions allocated to any class in the classified service and who have been separated from the service due to layoff or who have been demoted to a lower class and who, in accordance with these rules, are entitled to have their names certified to appointing authorities when vacancies in the class from which they separated are to be filled, ahead of those whose names are on any eligible list for the class.

"Reinstatement" means restoration of a former permanent full-time employee to a class in which status was formerly held.

"Series" means one or more occupational groups having classes of positions with duties substantially similar in nature and character, such classes being placed in the respective groups to aid in the process of classification, in determining and fixing compensation and in administering the county classification and compensation plan.

Service credit, one year of. "One year of service credit" means 2,080 hours of service, including authorized paid absences.

Service, types of. "Service" refers to the number of hours an employee works and to the regularity with which they work.

1.   Permanent Full-Time. A permanent full-time employee works on a continuous basis 40 hours per week and whose position is allocated by the board to a department and listed in the salary ordinance.

2.   Permanent Part-Time. A permanent part-time employee works less than 40 hours per week but normally follows a predetermined fixed pattern of working hours and whose position is allocated by the board to a department and listed in the salary ordinance.

3.   Extra Help. An extra help employee may work eight hours a day or a fraction thereof, but whose position is not allocated by the board to a department but has been authorized

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

by the county administrative officer for a specific length of time. An extra help employee has no status. The advance authorization by the county executive office shall not be required as to any urgent or emergency situation; in such emergency situation the sheriff may use any reserve deputy sheriff for a period not to exceed 16 hours within a pay period. Not later than the close of the third succeeding work day following the commencement of such emergency use, the sheriff shall, in writing, report such emergency use to the county executive office.

4.  Limited Term. A limited term employee works on a continuous basis 20 or more hours per week. These positions are allocated by the board to a department as funded for the duration of an outside source of funds, e.g., federal or state grant. A limited term employee has no status until transferred to or appointed to a permanent position within the county.

"Specification" means the official description of a class.

Status, types of. There are three types of status. They are acquired as follows:

1.  Permanent. Acquired by an employee who has been lawfully retained in their position after the completion of the probationary period as provided in these rules.

2.  Probationary. Acquired by an employee who has been certified and appointed, but who has not completed the probationary period as provided in these rules.

3.  Provisional. Acquired by an employee who possesses the minimum qualifications established for the class and who has been appointed to fill a position for which no eligibles are available.

"Supervisory employee" means any individual having authority to exercise independent judgment in the interest of the employer, promote, discharge, assign, reward or discipline other employees, or having the responsibility to direct them, or to adjust their grievances, or effectively to recommend such action if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

1.  Second Level Supervisor. Authority to direct a division or unit of a department. May be directly responsible for other supervisors, professional employees and employees whose output is qualitative rather than quantitative; who exercise independent judgment as opposed to routine decision making; and stresses intellectual rather than manual tasks.

2.  First Level Supervisor. One who is directly responsible for five or more employees within a department, division, or unit on a full-time basis. Reports to assistant department head, division head, or second level supervisor.

"Suspension" means a temporary separation of an employee from his or her position without pay, for disciplinary purposes or other just causes. An employee may not be so suspended for a period exceeding 90 calendar days in any calendar year.

Titles, class title or title of class. The designation given to or name applied to a class or to each position allocated to the class and to the legally appointed incumbent of each position allocated to the class. (Its meaning is set forth in the corresponding definition and the class specification and it is always to be used and understood in that sense, even though it may previously have had a

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

broader, narrower, or different significance.)

"Unclassified service" means all officers, positions, and employments in the government of Placer County as set forth in Section 3.08.070 of this code.

"Workday" means that 24 hour period which begins at 5:01 p.m. on each calendar day. "Workweek" means:

1. Regular Workweek—General Unit, Professional Unit and Deputy Sheriffs Unit. That calendar period which begins at 5:01 p.m. on a Friday and which ends at five p.m. on the following Friday. Paid time off for vacation, holidays, sick leave, and compensatory time taken shall be computed as actual hours worked for computation of overtime.

2. 9/80 Program—General Unit and Professional Unit. In the case of employees on a 9/80 program (nine workdays in an 80 hour pay period) the workweek shall consist of the first 40 hours worked in a seven consecutive 24 hour period, commencing with adoption of the 9/80 program. A 9/80 program shall consist of eight nine-hour workdays, one eight-hour workday and one additional day off, every other workweek. The additional day off must be taken on the same day of the week as the eight-hour workday in the alternate week. Paid time off for vacation, holidays, sick leave, and compensatory time taken shall be computed as actual hours worked for computation of overtime.

(prior code §§ 14.1208, 14.1292; Ord. 5006-B, 1999; Ord. 5058-B (Attach. 18), 2000; Ord. 5160-B, 2002; Ord. 5371-B, 2005; Ord. 5478-B (Attach. A), 2007; Ord. 5531-B, 2008; Ord. 5572-B § 15, 2009; Ord. 5795-B § 5, 2015; Ord. 5991-B § 1, 2019; Ord. 6025-B § 3, 2020; Ord. 6068-B § 1, 2021; Ord. 6246-B, 1/23/2024)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

Part 3
**General Provisions**

### § 3.08.180.  Purpose.

These sections are adopted in pursuance of Placer County Ordinance Number 501 providing civil service for the county of Placer. The primary purpose is for the furtherance of personnel activities and transactions on the sole basis of merit and competence, the best interest of the county of Placer, and without regard to personal, political, or other extraneous matters.
(Prior code § 14.1300; Ord. 5478-B (Attach. A), 2007)

### § 3.08.190.  Administrative regulations.

The director of human resources from time to time may adopt, amend, and rescind such administrative policies and procedures as are necessary for conducting personnel matters, when authorized by and not in conflict with these rules.
(Prior code § 14.1304; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

### § 3.08.200.  Regular meetings.

Regular meetings of the county civil service commission shall be held each month and at such time as the commission may determine.
(Prior code § 14.1306; Ord. 5478-B (Attach. A), 2007; Ord. 6025-B § 3, 2020)

### § 3.08.210.  Special meetings.

Special meetings may be called by the chairperson upon giving reasonable advance notice to each commissioner.
(Prior code § 14.1308; Ord. 5478-B (Attach. A), 2007)

### § 3.08.220.  Meetings open.

All meetings of the commission shall be governed by the provisions of the Brown Act.
(Prior code § 14.1310; Ord. 5478-B (Attach. A), 2007)

### § 3.08.230.  Quorum.

Three members of the civil service commission shall constitute a quorum and a majority vote of the entire civil service commission shall be required to make a ruling.
(Prior code § 14.1312; Ord. 5478-B (Attach. A), 2007; Ord. 6025-B § 3, 2020)

### § 3.08.240.  Communication.

Communications and requests to the commission shall be in writing, and the substance of such request, and the action of the commission thereon, noted in the minutes.
(Prior code § 14.1314; Ord. 5478-B (Attach. A), 2007)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

### § 3.08.250.  Minutes.

The executive secretary of the commission, or a person designated by the executive secretary, shall record in the minutes the time and place of each meeting of the commission, the names of the commissioners present, all official acts of the commission, the votes given by commissioners except when the action is unanimous; and, when requested, a commissioner's dissent, with such commissioner's reasons; and shall cause the minutes to be written up forthwith and presented for approval or amendment at the next regular meeting. The minutes, or a true copy thereof, certified by the commission, or a majority thereof, shall be open to public inspection.
(Prior code § 14.1316; Ord. 5478-B (Attach. A), 2007)

### § 3.08.260.  Effective date.

All rules and amendments shall become effective immediately upon their adoption by the commission unless some later date is specified therein.
(Prior code § 14.1320; Ord. 5478-B (Attach. A), 2007)

### § 3.08.270.  Rules of distribution.

A copy of these rules and a copy of all subsequent rules or amendments shall be sent as soon as practicable after adoption to each department of the county government, and a copy shall be maintained in the personnel department for public inspection.
(Prior code § 14.1322; Ord. 5478-B (Attach. A), 2007)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

Part 4
**Violations of Chapter 3 or Civil Service Rules**

## § 3.08.280. Applicability.

A.  The purpose of this part is to provide a procedure for inquiry by the civil service commission into the maladministration of the civil service system when there is reasonable cause to believe, and when a complaint has been filed alleging, one or more sections of this chapter, the civil service rules, an applicable memorandum of understanding, and/or side letter agreement have been violated. The sections hereunder are independent of those procedures governing the disciplining of county employees under Part 12 of Article 3.08 and are not applicable when the procedures defined there under are invoked.

B.  Whenever there is reasonable cause to believe that there has been a violation of this chapter or the civil service rules, an applicable memorandum of understanding, and/or side letter agreement, the civil service commission may conduct an investigation or hearing in any department where classified employees are employed for the purpose of determining the validity of such charge or charges.

(Prior code § 14.1400; Ord. 5478-B (Attach. A), 2007; Ord. 6068-B § 1, 2021)

## § 3.08.290. Grievance.

A.  DSA Represented. Prior to utilizing the provisions herein, all persons, or designated representatives, having a grievance shall make every effort to resolve such grievance by meeting with the person causing the grievance. If the grievance is not resolved to the grievant's satisfaction, then the grievant may utilize the formal procedure outlined below. The meeting process does not toll the 60 calendar days from the date of the occurrence of the events that form the basis of the grievance to file a grievance.

1.  Step 1. Within 60 calendar days after the occurrence of the events on which the grievance is based, the grievance shall be submitted in writing by the employee or their representative to the immediate supervisor. The supervisor shall meet and discuss the grievance with the employee and their representative, if any, and reply in writing to the employee within seven calendar days.

2.  Step 2. In the event that a mutually satisfactory solution has not been reached, the employee or their representative may submit the written grievance within seven calendar days to the next level of supervision. The second level supervisor or their representative shall have seven calendar days to investigate and render a written decision.

3.  Step 3. If a mutually satisfactory solution has not been reached, the employee or their representative has seven calendar days to submit the grievance in writing to the department head or their representative. After the receipt of the grievance, the department head or their representative shall have 14 calendar days in which to schedule such investigations or hearings as deemed necessary and render a written decision.

4.  Step 4. If a mutually satisfactory resolution has not been reached, either party shall, within seven calendar days of issuance of the department head's written response,

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

request the director of human resources to attempt to mediate the grievance. The director of human resources or their representative shall have 14 calendar days to schedule the mediation step. Either party may refuse to participate in the mediation, without prejudice.

5.  If the grievance is not settled through the prior steps, the employee may submit a formal complaint in accordance with Sections 3.08.300 through 3.08.340.

B.  PPEO Represented, PPOA Represented, DDAA Represented, Classified Management and Confidential Employees. Prior to utilizing the provisions herein, all persons, or designated representatives, having a grievance shall meet with subject of the grievance to resolve such grievance prior to invoking the formal grievance process. If the grievance is not resolved to the grievant's satisfaction through this meeting, then the grievant may utilize the formal procedure outlined below. This meeting process does not toll the 60 calendar days from the date of the occurrence of the events that form the basis of the grievance.

1.  Step 1. Within 60 calendar days after the occurrence of the events upon which the grievance is based, the grievance shall be submitted in writing by the employee or their representative to the immediate supervisor. The supervisor shall meet and discuss the grievance with the employee and their representative, if any, and reply in writing to the employee within seven calendar days.

2.  Step 2. In the event that a mutually satisfactory solution has not been reached, the employee or their representative may submit the written grievance within seven calendar days to the next level of supervision. The second level supervisor or their representative shall have seven calendar days to investigate and render a written decision.

3.  Step 3. If a mutually satisfactory solution has not been reached, the employee or their representative has seven calendar days to submit the grievance in writing to the department head or their representative. After the receipt of the grievance, the department head or their representative shall have 14 calendar days in which to schedule such investigations or hearings as deemed necessary and render a written decision.

4.  Step 4. If a mutually satisfactory resolution has not been reached, either party may within seven calendar days of issuance of the department head's written response, request the State Department of Mediation and Conciliation Services to attempt to mediate the grievance.

5.  Countywide Grievance. If the bargaining unit believes that the appropriate initial step for the grievance is with the human resources department, they may file the grievance directly with the human resources director in lieu of steps 1 through 3 above. However, the human resources director may refer the grievance to step 1 if they believe that is the appropriate step. After the receipt of the grievance, the human resources director shall have 14 calendar days in which to render a written decision.

6.  If the grievance is not settled through the prior steps, the employee or their representative may submit a formal complaint in accordance with the Placer County Code, Chapter 3, Part 4.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

C.  PCLEMA Represented Employees. For employees represented by PCLEMA, grievance procedure shall be as set forth in the Memorandum of Understanding between the county and PCLEMA.

(Prior code § 14.1402; Ord. 5478-B (Attach. A), 2007; Ord. 5683-B § 31, 2012; Ord. 5700-B § 27, 2013; Ord. 5883-B § 2, 2017; Ord. 5991-B § 1, 2019; Ord. 6159-B § 1, 2022; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025; Ord. 6306-B, 4/15/2025)

### § 3.08.300.  Grievance—Initiation of proceedings.

A.  DSA Represented Employees.

    1.  Such proceedings shall be commenced by a complaint which is signed by any aggrieved person. The complaint shall be entitled "IN RE" (the name of the department in which the alleged violations occurred), and shall be directed to the Placer County civil service commission. It shall contain the following:

        a.  The name of the department in which the alleged violation or violations occurred;

        b.  The name of the person responsible for the alleged violation or violations (if applicable);

        c.  The section or sections of the Placer County Code, Chapter 3, applicable memorandum of understanding and/or side letter agreement which have allegedly been violated;

        d.  The factual basis upon which each of the alleged violations rest, including the dates thereof;

        e.  The name and position of the party who signed the complaint;

        f.  The date of the complaint.

    2.  The complainant shall attach to the complaint satisfactory evidence that they made application for the requested relief to their supervisors and to their department head but were denied such relief.

B.  PPEO Represented, PPOA Represented, DDAA Represented, Classified Management and Confidential Employees.

    1.  Such proceedings shall be commenced by a complaint which is signed by any aggrieved person. The complaint shall be entitled "IN RE" (the name of the department in which the alleged violations occurred), and shall be directed to the Placer County civil service commission. It shall contain the following:

        a.  The name of the department in which the alleged violation or violations occurred;

        b.  The name of the person responsible for the alleged violation or violations (if applicable);

        c.  The section or sections of the Placer County Code, Chapter 3, applicable memorandum of understanding and/or side letter agreement which have allegedly

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

been violated;

    d.   The factual basis upon which each of the alleged violations rest, including the dates thereof;

    e.   The name and position of the party who signed the complaint;

    f.   The date of the complaint.

   2.   The complainant shall attach to the complaint satisfactory evidence that they made application for the requested relief to their supervisors and to their department head but was denied such relief.

C.   PCLEMA Represented Employees. For employees represented by PCLEMA, initiation of grievance proceedings shall be as set forth in the Memorandum of Understanding between the county and PCLEMA.
(Prior code § 14.1404; Ord. 5478-B (Attach. A), 2007; Ord. 5683-B § 32, 2012; Ord. 6068-B § 1, 2021; Ord. 6159-B § 1, 2022; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025; Ord. 6306-B, 4/15/2025)

## § 3.08.310.  Grievance—Filing and service of complaint—Answer.

A.   DSA Represented.

   1.   Complaint. The complainant must file the complaint with the civil service commission, in care of the director of human resources, not later than seven calendar days after completion of the last step in the grievance process. The director of human resources, or clerk to the commission, shall record the date on which it was filed, and shall:

    a.   Place one copy on file for the civil service commission and counsel for the commission;

    b.   Transmit one copy to the county counsel's office;

    c.   Transmit one copy to the person accused (if applicable) of violating the Placer County Code, Chapter 3, memorandum of understanding, and/or side letter agreement;

    d.   Transmit one copy to the department head, or their representative, of the department in which the violation or violations were alleged to have occurred;

    e.   Transmit one copy to the county executive officer.

   2.   Answer. The person charged (if applicable) and/or the department head or their representative of the department in which the alleged violation or violations occurred may answer the complaint, within 14 calendar days, after the service thereof upon them. The answer shall be filed with the civil service commission, in care of the director of human resources and the director of human resources, or clerk to the commission, shall record the date it was filed, and shall:

    a.   Place one copy on file for the civil service commission and counsel for the

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

commission;

b.   Transmit one copy to the county counsel's office;

c.   Transmit one copy to the person who signed the complaint;

d.   Transmit one copy to the department head or their representative, of the department in which the alleged violation or violations occurred, and the accused, or their representative, if applicable;

e.   Transmit one copy to the county executive officer.

B.   PPEO Represented, PPOA Represented, DDAA Represented, Classified Management and Confidential Employees.

1.   Complaint. The complainant must file the complaint with the civil service commission, in care of the human resources director not later than seven calendar days after completion of the last step in the grievance process. The human resources director, or clerk to the commission, shall record the date on which it was filed, and shall:

a.   Place one copy on file for the civil service commission and counsel for the commission;

b.   Transmit one copy to the county counsel's office;

c.   Transmit one copy to the person accused (if applicable) of violating the Placer County Code, Chapter 3, memorandum of understanding, and/or side letter agreement;

d.   Transmit one copy to the department head, or their representative, of the department in which the violation or violations were alleged to have occurred;

e.   Transmit one copy to the county executive officer.

2.   Answer. The person charged (if applicable) and/or the department head or their representative of the department in which the alleged violation or violations occurred may answer the complaint, within 14 calendar days, after the service thereof upon them. The answer shall be filed with the civil service commission, in care of the human resources director and the human resources director, or clerk to the commission, shall record the date it was filed, and shall:

a.   Place one copy on file for the civil service commission and counsel for the commission;

b.   Transmit one copy to the county counsel's office;

c.   Transmit one copy to the person who signed the complaint;

d.   Transmit one copy to the department head or their representative, of the department in which the alleged violation or violations occurred, and the accused, or their representative, if applicable;

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

      e.    Transmit one copy to the county executive officer.

C.    PCLEMA Represented Employees. For employees represented by PCLEMA, procedures for filing and answering a complaint shall be as set forth in the Memorandum of Understanding between the county and PCLEMA.

(Prior code § 14.1406; Ord. 5478-B (Attach. A), 2007; Ord. 5683-B § 33, 2012; Ord. 5700-B § 28, 2013; Ord. 5991-B § 1, 2019; Ord. 6068-B § 1, 2021; Ord. 6159-B § 1, 2022; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025; Ord. 6306-B, 4/15/2025)

### § 3.08.320. Preliminary review and hearing.

PPEO, PPOA, PCLEMA, DDAA, DSA, Classified Management, and Confidential Employees. Prior to hearing the grievance by the commission, the counsel for the commission shall first determine if the complaint is drawn, filed, and served in compliance with the requirements of Sections 3.08.290, 3.08.300, 3.08.310, and 3.08.340(B) of this article.

A.    If the complaint is not drawn, filed, and served in compliance with the requirements of Sections 3.08.300 and 3.08.310 of this article, the counsel for the commission shall grant the complaining party at least one opportunity to amend and shall prescribe a timeframe for re-filing the amended complaint of no more than 30 calendar days from written notice by the counsel for the commission. If the complaint is to be amended, it shall be redrawn in its entirety and filed and served in compliance with Section 3.08.310 of this article.

B.    If the complaint is not drawn, filed, and served in compliance with the 60 day statute of limitations period set forth in Sections 3.08.290 and 3.08.340(B) of this article, the counsel for the commission shall dismiss the complaint on behalf of the commission. Written notice of the dismissal shall be provided by the counsel for the commission.

C.    If the complaint is compliant with the requirements of Sections 3.08.290 and 3.08.340(B) of this article, then the commission shall convene a special meeting at the earliest date possible after the date of the filing of the complaint, taking into consideration adequate time to schedule the parties, commissioners, and counsels. The commission shall, without receiving any evidence, based solely on the grievance, complaint, and the answer, as well as oral argument by the grievant and the respondent, or their respective representatives, determine whether or not the allegations of the complaint warrant further inquiry by the commission. If the commission finds that the allegations of the complaint warrant further inquiry, the provisions of Section 3.08.330 of this article shall be applicable. Otherwise, the proceedings shall terminate upon the decision of the commission to not make further inquiry.

Upon agreement by both parties, the preliminary hearing may be waived without prejudice.

(Prior code § 14.1408; Ord. 5058-B (Attach. 19), 2000; Ord. 5478-B (Attach. A), 2007; Ord. 6159-B § 1, 2022; Ord. 6213-B § 1, 2023; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025; Ord. 6306-B, 4/15/2025)

### § 3.08.330. Grievance—Hearing.

A.    PPEO, PPOA, PCLEMA, DDAA, DSA, Classified Management and Confidential Employees.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

1. The civil service commission shall convene a special meeting at the earliest date possible, taking into consideration adequate time to schedule the parties, commissioners, and counsels to hold a hearing for the purpose of determining the validity of the charges made.

2. Definition of Party. For the purpose of this section a "party" is defined as the complainant, the party accused, and the department head of the department in which the violation or violations are alleged to have occurred, or their representatives.

3. Attorneys. Any party is entitled to be represented by legal counsel. The county counsel, or deputy, may participate in the examination of witnesses. The commission shall be represented by its counsel in the conduct of the hearing.

4. Closed Session Hearings. If the grievance is based on a specific complaint or charge against an employee by another person or employee, the civil service hearing on the grievance shall be noticed for and held in closed session. All persons other than the parties, their attorneys and representatives, the civil service commission, the human resources director, the clerk to the civil service commission, the court reporter, the county counsel and deputies, and witnesses who are actually testifying, shall be excluded from closed session. During the examination of a witness, any or all other witnesses in the matter being investigated by the legislative body may be excluded from the closed session hearing. As a condition to holding a closed session on specific complaints or charges brought against an employee by another person or employee, the employee shall be given written notice of their right to have the complaints or charges heard in an open session rather than a closed session, which notice shall be delivered to the employee personally or by mail at least 24 hours before the time for holding the closed session. If notice is not given, any action taken by the legislative body against the employee based on the specific complaints or charges in the closed session shall be null and void. After all evidence, testimony and argument has been submitted, the commission shall deliberate in closed session with only counsel for the commission and the human resources director present.

5. Open Session Hearings. If the grievance is not based on a specific complaint or charge against an employee by another person or employee, the civil service hearing on the grievance shall be noticed for and held in open session. After all evidence, testimony, and argument has been submitted, the commission shall deliberate in open session.

6. Oaths. All testimony shall be given under oath. The hearing body or counsel to the hearing shall have the authority to administer the oath.

7. Evidence.

   a. Order of Evidence. The person who signed the complaint shall first present evidence of the charges alleged. The person charged and/or the department head of the department in which the alleged violation or violations occurred may then present evidence in their behalf.

   b. Relevancy. Only the evidence which is relevant and material to the allegations of the grievance shall be admissible into evidence. Counsel for the commission shall

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

Case 2:24-cv-02967-DAD-CSK    Document 25    Filed 08/06/25    Page 115 of 251

rule as to the admissibility of evidence. The commission shall not be bound by the formal rules of evidence required of a formal court hearing.

8. Recording. All oral testimony received by the commission shall be recorded in some appropriate form.

9. Subpoenas. The commission shall have the power to compel the attendance of witnesses by subpoena. Any subpoena shall be prepared by the parties, or their representatives, and shall be signed by the clerk to the commission and the party requesting issuance.

10. Records. Upon demand of the chairperson of the civil service commission, the human resources director shall make available to the commission and/or any party to the proceeding any personnel record or existing document in their office which the chairperson of the commission deems relevant to the charges made.

11. Conclusion. If, after the presentation of all the evidence, the civil service commission is convinced by a preponderance of the evidence of the truth of the charges in the complaint, the commission shall afford the complainant the appropriate relief as determined by the commission. If the commission is not so convinced by a preponderance of the evidence of the truth of the charges in the complaint, the commission may deny the grievance, in whole or in part. If partially denied the commission may, if appropriate, afford the complainant partial relief.

12. The commission shall provide written notification of its decision in a reasonable time following the conclusion of the hearing. The decision of the commission shall be final.

(Prior code § 14.1410; Ord. 5478-B (Attach. A), 2007; Ord. 5683-B § 34, 2012; Ord. 5700-B § 29, 2013; Ord. 5991-B § 1, 2019; Ord. 6159-B § 1, 2022; Ord. 6213-B § 1, 2023; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025; Ord. 6306-B, 4/15/2025)

## § 3.08.340.  Grievance—Dismissal of action.

DSA, PPEO, PPOA, PCLEMA, DDAA, Classified Management and Confidential Employees.

A. By Complaining Party. At any time prior to the conclusion of the hearings, the complaining party may, with the consent of the civil service commission, withdraw his or her complaint and dismiss the action.

B. Limitation of Action. The civil service commission shall dismiss any charge in the complaint when step 1 of the grievance was filed more than 60 calendar days after the date of the alleged violation.

(Prior code § 14.1412; Ord. 5478-B (Attach. A), 2007; Ord. 5683-B § 35, 2012; Ord. 5700-B § 30, 2013; Ord. 6213-B § 1, 2023; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

Part 5
**Alteration in Employment Status**

### § 3.08.350.  Promotion, generally.

Insofar as practicable, vacancies in the classified service shall be filed by promotion. No promotion shall be made except as a result of an examination as provided by this article.
(Prior code § 14.1500; Ord. 5478-B (Attach. A), 2007)

### § 3.08.360.  Demotion, generally.

Subject to the provisions of these rules, an appointing authority may demote an employee whose ability to perform the duties falls below normal standards or for disciplinary purposes. No employee shall be demoted to a position for which they do not possess the minimum qualifications.
(Prior code § 14.1505; Ord. 5478-B (Attach. A), 2007; Ord. 6068-B § 1, 2021)

### § 3.08.370.  Transfer—Promotion and demotion.

Movement of an employee from a position in a lower classification to a position in a higher classification is a promotion, unless the increase in the top step of the classifications is less than five percent or unless such advancement is the result of a reclassification of an occupational group without regard to departmental lines. Any transfer of an employee from a position in a higher classification to a position in a lower classification is a demotion unless the difference in the top step of the classifications is less than five percent. A transfer may be accomplished only in the manner provided for making promotional or demotional appointments as provided in this article. Employees transferring from one classification to another must meet the entrance requirements established for the new classification.
(Prior code § 14.1510; Ord. 4981-B, 1999; Ord. 5478-B (Attach. A), 2007; Ord. 5894-B § 3, 2017)

### § 3.08.380.  Transfer—Class to another class.

Subject to approval of the director of human resources, an employee may transfer from one classification to another classification where the difference between the current classification and the new classification is less than five percent. Such approval may only be granted if the employee meets the entrance requirements established for the new class. The director may also require the employee to demonstrate that they possess the additional or different requirements.
(Prior code § 14.1515; Ord. 4981-B, 1999; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019; Ord. 6068-B § 1, 2021)

### § 3.08.390.  Transfer—Re-assignment.

A.  An appointing authority may at any time transfer any employee under his or her jurisdiction to another position in the same class.

B.  If the transfer is permanent and reasonably requires a change of place of residence, such assignment must be made at least 45 days in advance of the effective date and in writing, setting forth in clear language the reasons why the employee is being transferred.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

(Prior code § 14.1520; Ord. 5478-B (Attach. A), 2007)

### § 3.08.400.  Transfer—Interdepartmental.

Subject to the approval of the director of human resources, an employee may be transferred to another department in the same or comparable class provided that both appointing authorities consent thereto, and provided the employee meets the requirements set forth in Section 3.08.380 of this article.
(Prior code § 14.1525; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

### § 3.08.410.  Transfer—Probationary period.

Transfer of an employee from one class to another or from one appointing authority to another shall require the service of a new probationary period unless such probationary period shall have been waived by the appointing authority. An employee rejected during such probationary period shall be reinstated to the position from which they transferred.
(Prior code § 14.1530; Ord. 5478-B (Attach. A), 2007; Ord. 6068-B § 1, 2021)

### § 3.08.420.  Transfer—Organizational change.

Whenever any position is changed by the adoption of new, different, or additional machines, processes or functions while the purpose of the position is the same or similar in nature, any civil service employee affected shall be given a short term assignment, not to exceed six months without change in class, status or salary to learn to do the work with the new machine, process or function and to qualify for status in the different class of position required for such work, provided that such new class is at the same salary grade. An employee who qualifies for appointment through training in the different class shall be deemed to possess the specific education, experience or other requirements for such class and shall be appointed thereto with the same status and seniority which they last had in their previous class. The position shall be reallocated in accordance with Section 3.08.480.
(Prior code § 14.1535; Ord. 5478-B (Attach. A), 2007; Ord. 6068-B § 1, 2021)

### § 3.08.430.  Transfer—Appeal.

A.  Any employee affected by a transfer, who feels that the transfer is being made for the purpose of harassment or discipline, may appeal said transfer by filing a grievance as provided in Section 3.08.280 of these rules and regulations.

B.  The appointing authority may require the employee to transfer pending the outcome of the grievance process. If the commission disapproves the transfer, the employee shall be returned to their former position, shall be paid any regular travel allowance for the period of time they were away from their original place of residence if they were required to change residence.
(Prior code § 14.1540; Ord. 5478-B (Attach. A), 2007; Ord. 6068-B § 1, 2021)

### § 3.08.440.  Movement from classified service to unclassified service.

A.  Except as provided in subsection E of this section, any employee accepting a position in the unclassified service, shall resign from their position in the classified service.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

B.   An unclassified employee may accept transfer, promotion or demotion to an open position in the classified service provided that they had either probationary or permanent status in the classified service and provided further that they obtain such promotion or demotion as provided by these rates.

C.   Movement within the provisions of this rule shall be deemed to be continuous service and such employee shall receive all benefits pertaining to county employment during their tenure.

D.   Unclassified employees who enter the classified service under the provisions of this section shall, if they previously had acquired only probationary status before entering the unclassified service, be required to serve a new, full probationary period.

E.   An employee with permanent status in the classified service who accepts appointment by an elected department head to the unclassified service shall have the right to return to their prior classified position unless terminated for cause. For purposes of this subsection, such an employee may be required to demote to the prior classified position without cause and at the pleasure of the appointing authority. The elected department head must ensure that an open position exists to accommodate any demotion pursuant to this section. The county executive officer shall cooperate with the elected department head where a request for a new position is necessary to accommodate a demotion. Such movement shall be deemed continuous service and a new probationary period shall not be required.

(Prior code § 14.1545; Ord. 5478-B (Attach. A), 2007; Ord. 6068-B § 1, 2021)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

*Exhibit H In Support of Plaintiff's Second Amended Complaint, pg 029*

Part 6
**Classification**

### § 3.08.450. Classification plan.

Every position in the county classified service shall be allocated to the appropriate class in the classification plan. The allocation of a position to a class shall be determined by the duties and responsibilities of the position and shall be based on the principle that all positions shall be included in the same class if:

A.    Sufficiently similar in duties and responsibilities that the same descriptive title may be used.

B.    Substantially the same requirements as to education, experience, knowledge and ability are demanded of incumbents.

C.    Substantially the same test of fitness maybe used in choosing qualified appointees.

D.    The same schedule of compensation can be made to apply with equity.
(Prior code § 14.1600; Ord. 5478-B (Attach. A), 2007)

### § 3.08.460. Class specifications.

For each class a written specification shall be prepared by the director of human resources which shall include the official title of the class, description of duties, responsibilities characteristic of positions in the class and the minimum qualifications required for admission into competition. Class specifications shall be interpreted in their entirety in relation to others in the classification plan. They are descriptive and explanatory of characteristic duties and responsibilities of positions in a class and are not restrictive. They shall not be construed as limiting the duties and responsibilities of any position nor shall they limit or modify the authority of any department head or of the board to assign duties and to direct and control the work of employees in the county service.
(Prior code § 14.1605; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019; Ord. 6025-B § 3, 2020)

### § 3.08.470. Administration of the classification plan.

The director of human resources shall be responsible for the preparation and maintenance of the classification plan and from time to time as he or she deems necessary, may recommend that the board of supervisors establish additional classes and divide, combine, alter or abolish existing classes. When such actions are taken, the director of human resources shall determine in each instance whether positions affected are to be reallocated to another class or classes after taking into account the criteria set forth in Section 3.08.450 of this rule and shall determine the status of the probationary or permanent employees affected.
(Prior code § 14.1610; Ord. 5478-B (Attach. A), 2007; Ord. 6025-B § 3, 2020)

### § 3.08.480. Reallocation.

A.    Upon the reallocation of a position because of a change in duties, the incumbent holder of the superseded classification shall not thereby gain status in the new classification; the

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

incumbent may only attain status in the new classification in accordance with the appropriate section of the rules relating to promotion, demotion, transfer, layoff, or other appropriate sections, except that, when a position is reclassified to a higher level, the director of human resources may provide that the incumbent of a reclassified position may noncompetitively promote to the position when the director finds that the incumbent has satisfactorily performed the duties of that position for a continuous period of not less than one year prior to the date the position is reclassified.

B.   The incumbent holder of the superseded classification shall be entitled to the rights provided by Sections 3.08.740, 3.08.750 and 3.08.1120. If such employee elects demotion under Section 3.08.1120, and the top step of the salary grade for the position to which they elect demotion is less than that earned at the date of such demotion, such employee's salary shall remain unchanged until the grade of the position to which they sought demotion exceeds such employee's salary; at such time as the grade exceeds their salary, the incumbent shall be entitled to annual step increases in the manner provided for all employees. If such employee elects demotion to a lower position than that to which they could elect demotion, or if such employee thereafter declines promotion to a higher classification still under their superseded classification, such employee shall only be entitled to receive the difference between their original salary and such salary which they could have elected to receive; at such time as the salary grade of such superseded classification exceeds their salary, the incumbent shall be entitled to annual step increases in the manner provided for all employees.

C.   If such incumbent holder of the superseded classification does qualify for such new classification and the top step of the salary grade for the new classification is less than that earned by such incumbent holder at the date of such reallocation, such incumbent employee's salary shall remain unchanged until the grade of the new position exceeds such employee's salary; at such time as the grade exceeds their salary, the incumbent shall be entitled to annual step increases in the manner provided for all employees.

(Prior code § 14.1615; Ord. 5058-B (Attach. 20), 2000; Ord. 5478-B (Attach. A), 2007; Ord. 6025-B § 3, 2020; Ord. 6068-B § 1, 2021)

### § 3.08.500.  Use of class titles.

Class title shall be used when referring to position in all official records and communications and all reports and payrolls providing for the payment of personnel services. Any other title desired by the appointing authority may be used to designate any position for purposes of internal administration.

(Prior code § 14.1620; Ord. 5478-B (Attach. A), 2007)

### § 3.08.510.  Work-out-of-class/temporary upgrade pay.

A.   DSA Represented Employees. Work-out-of-class pay and temporary upgrade pay shall be administered pursuant to the terms of the Memorandum of Understanding between Placer County and the DSA.

B.   PPOA Represented Employees. Work-out-of-class pay and temporary upgrade pay shall be administered pursuant to the terms of the Memorandum of Understanding between Placer County and the PPOA.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

C. PPEO General and Professional Units. Work-out-of-class pay and temporary upgrade pay shall be administered pursuant to the terms of the Memorandum of Understanding between Placer County and the PPEO.

   1. Work-Out-of-Class Pay.

      a. In line with the principle that an employee assigned higher level job duties outside the scope of the current classification should receive additional compensation in recognition of these additional duties, an employee may be eligible for work-out-of-class pay as set forth below.

      b. Work-out-of-class requests shall be approved by the appointing authority and submitted to the human resources department for verification of eligibility and/or approval.

      c. A work-out-of-class assignment for training purposes may be excluded from work-out-of-class compensation provided such training purposes can be adequately demonstrated.

      d. No work-out-of-class compensation will be considered or paid for assignments of two workdays or less.

      e. Additional compensation for working out-of-class shall be five percent of the employee's base hourly rate, plus longevity if applicable, and start at the beginning of the pay period, unless approved by the human resources director or designee.

      f. Work-out-of-class pay may be approved by the appointing authority for up to 14 calendar days; from 15 calendar days up to and including 180 calendar days requires approval of the human resources director. Any extension beyond 180 calendar days shall require the concurrence of the county executive officer.

      g. The human resources department shall hear any contention that an employee is working out-of-class. In the event of an adverse decision by the human resources department, the employee concerned and/or their employee representative shall have the right to appeal such decision to the civil service commission.

   2. Temporary Upgrade Pay.

      a. Employees that are required by their appointing authority to work in an upgraded classification for a limited duration shall be eligible for temporary upgrade pay.

      b. The human resources department must certify prior to the assignment that the duties the individual employee will be working for a limited duration will be the full scope of the duties of the upgraded classification and that the employee meets the minimum qualifications of the upgraded classification.

      c. Employees will be eligible for temporary upgrade pay when work conditions warrant.

      d. A request for a temporary upgrade assignment shall be made by the appointing authority to the human resources department:

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

*Exhibit H In Support of Plaintiff's Second Amended Complaint, pg 032*

      i.    When the position is vacant due to an absence of the incumbent; or

      ii.   When workloads necessitate the assignment of employees to supplement a specific position or perform new assignments.

e.    A temporary upgrade assignment for training purposes may be excluded from temporary upgrade pay, provided such training purposes can be adequately demonstrated.

f.    Temporary upgrade pay up to and including 180 calendar days requires approval by the director of human resources or designee, and durations in excess of 180 calendar days shall require the concurrence of the county executive officer.

g.    No temporary upgrade pay will be considered or paid for assignments of 14 calendar days or less.

h.    Temporary upgrade pay shall be no less than a minimum of five percent or exceed a maximum of 15%. The pay shall fall on the closest step in the upgraded classification that results in at least a five percent increase and shall start at the beginning of a pay period, unless approved by the human resources director or designee.

i.    The human resources department shall hear any contention that an employee is working in a temporary upgraded assignment. In the event of an adverse decision by the human resources department, the employee concerned and/or their employee representative shall have the right to appeal such decision to the civil service commission.

D.   PCLEMA Represented Employees. Work-out-of-class pay and temporary upgrade pay shall be administered pursuant to the terms of the Memorandum of Understanding between Placer County and the PCLEMA.

E.   DDAA Represented Employees. Work-out-of-class pay and temporary upgrade pay shall be administered pursuant to the terms of the Memorandum of Understanding between Placer County and the DDAA.

F.   Classified Management and Confidential Employees. Work-out-of-class pay is distinguished from temporary upgrade pay in that the latter is for assignments in which the employee is performing the full scope of an upgraded classification, whereas work-out-of-class pay is in recognition of duties performed in addition to their regularly assigned duties. Work-out-of-class pay is not in recognition of workload volume but to the additional higher-level duties assigned that fall outside the employee's classification.
(Prior code § 14.1625; Ord. 5478-B (Attach. A), 2007; Ord. 5683-B § 36, 2012; Ord. 5740-B § 12, 2014; Ord. 5991-B § 1, 2019; Ord. 6025-B § 3, 2020; Ord. 6161-B § 1, 2022; Ord. 6213-B § 1, 2023; Ord. 6223-B, 10/17/2023; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025; Ord. 6306-B, 4/15/2025)

## § 3.08.520.  Notice and hearing on proposed classification action.

Any employee affected by any change in the classification plan or in the allocation of his or

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

her position shall be notified of the intent to take such action and shall have the opportunity to be heard by the director of human resources, or an appeal, by the commission before the action becomes final.

(Prior code § 14.1630; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

Part 7
**Examination**

### § 3.08.530.  General.

Examinations for the establishment of eligible lists shall be competitive and by such character as fairly to test and determine the qualifications, fitness and ability of competitors actually to perform the duties of the class or position for which they seek appointment.
(Prior code § 14.1700; Ord. 5478-B (Attach. A), 2007)

### § 3.08.540.  Types of examination.

Except as provided herein and in Section 3.08.630 examinations may be promotional or open, assembled or unassembled, written, or oral, or in the form of a demonstration of skill, or any combination of these; and any investigation of character, personality, education and experience and any test of intelligence, capacity, technical knowledge, manual skill, or physical fitness which the director of human resources deems appropriate.
(Prior code § 14.17 10; Ord. 5160-B, 2002; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

### § 3.08.550.  Announcement of vacancies.

The director shall make public announcements of all examinations at least 10 working days prior to the closing date. Announcements shall be posted on the personnel department's job board and given such other publicity as the director of human resources deems warranted to attract a sufficient number of qualified candidates to compete. Recruitments may be of one of the following types at the discretion of the director of human resources:

A.  Regular Recruitment. Regular examination announcements shall specify a filing period of at least 10 working days and shall clearly state a final filing date.

B.  Continuous Recruitment. In instances where the need for employees is frequent or continuing, or there is a labor market scarcity, the director of human resources may announce examinations with no final filing date and conduct recruitments of sufficient duration to assure the county's needs are met.

C.  Limited Recruitment. The director of human resources may restrict the recruitment to limit the size of the applicant group by:

   1.  Establishing a shorter filing period than that required for regular recruitments;

   2.  Specify a maximum number of applications that will be accepted and the recruitment shall close immediately when that number is reached; or

   3.  Other means that are appropriate to the circumstance.

(Prior code § 14.1715; Ord. 5371-B, 2005; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

### § 3.08.560.  Content of examination announcement.

Official examination announcements shall include:

A.   The title of the class and salary grade at which appointment may be made;

B.   Final filing date, if established;

C.   Officially established minimum qualification requirements or such other standards for education or experience as may have been approved;

D.   Relative weights assigned to the various parts of the examination unless otherwise set forth in the notice to appear for the first part of the examination or announced at the time of the first part of the examination; and

E.   Other special conditions for admission to the examination, certification and employment.
(Prior code § 14.1718; Ord. 5478-B (Attach. A), 2007)

### § 3.08.570.  Application for employment.

A.   Every applicant shall submit a county application for employment to the human resources department on or before the final filing date published in the job announcement.

B.   Deputy Sheriffs' Unit. Every applicant for a promotional examination must meet the minimum qualifications for the classification by the scheduled written examination date. In the event no written examination is scheduled, then the date of the oral examination will be utilized.
(Prior code § 14.1720; Ord. 5028-B, 2000; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

### § 3.08.580.  Acceptance of applications.

The director may refuse to accept, examine, or, after examination, may refuse to declare as an eligible, or may withhold or withdraw from certification, prior to appointment, anyone who comes under the following categories.

A.   Lacks any of the requirements legally established in the public bulletins for the examination or position for which they applied.

B.   Engages in conduct that is inconsistent with the county's drug and alcohol policy.

C.   Has been dismissed from any position in public or private service for any cause, which would be a cause for dismissal in the county service.

D.   Has resigned from any position not in good standing or in order to avoid dismissal.

E.   Has practiced or attempted to practice any deception or fraud in their application, in their examination, or in securing their eligibility.

F.   Is found unsuited or not qualified for employment. Whenever an applicant is rejected, they shall be notified in writing of the reason for the rejection and of their right to appeal to the civil service commission.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

(Prior code § 14.1725; Ord. 5160-B, 2002; Ord. 5478-B (Attach. A), 2007; Ord. 5901-B § 1, 2018; Ord. 6068-B § 1, 2021)

### § 3.08.590.  Rating examination.

A.   The final, earned rating of each person competing in any examination shall be determined by the weighted average of the earned ratings on all phases of the examination, according to the weights for each phase established in advance of the giving of the examination and published as a part of the announcement of the examination.

B.   The director may set minimum ratings for each phase of an examination and may provide that competitors failing to achieve such rating in any phase shall be disqualified from any further participation in the examination.

C.   Current employees who have completed and passed a written examination for a promotional position will be given the option to apply the previous written test score to a new list rather than taking the written examination again if it has been determined by the director of human resources that the tests are substantially similar.

(Prior code § 14.1730; Ord. 5058-B (Attach. 21), 2000; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

### § 3.08.600.  Qualifying by examination.

Qualifying and placement on an appropriate eligible list shall be accomplished in accordance with Section 3.08.730.
(Prior code § 14.1735; Ord. 5478-B (Attach. A), 2007)

### § 3.08.610.  Continuous examination, administration.

A.   For classes of positions in which there has been a demonstrated difficulty in maintaining adequate eligible lists, the director of human resources may receive applications, conduct examinations, and create eligible lists continuously. The names of all eligibles who took the same or comparable examination on different dates may be ranked on one eligible list for purposes of certification in the order of final earned rating.

B.   Examinations will be scheduled by the director of human resources in accordance with the demand in filling vacancies. Successful candidates will remain on the eligible list for the calendar year the eligible list was established, or until the final filing date, whichever occurs first. Candidates will be eligible to reapply and take an examination if a new recruitment opens the following calendar year.

If a candidate fails any phase of the examination process, they will be deemed ineligible for employment in accordance with the above regulations with the exception of certain standardized public safety written examinations which may allow applicants to retake an examination in accordance with applicable state regulatory agency standards (e.g., POST and/or BSCC).

(Prior code § 14.1740; Ord. 5160-B, 2002; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019; Ord. 6068-B § 1, 2021; Ord. 6218-B, 9/26/2023)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

## § 3.08.620.  Examination conditions.

The director shall designate the procedure, time, place and type of examination, the conditions under which it may be conducted, and the proctor to conduct the examination.
(Prior code § 14.1745; Ord. 5478-B (Attach. A), 2007)

## § 3.08.630.  Oral boards.

For each oral examination, the director shall appoint an oral board consisting of persons interested in the advancement of public service and the selection of the best qualified personnel for the class for which the examination is being conducted.

A.  Members. No person having appointing authority for the particular position to be filled shall be a member of an oral board. No one employee in the department affected shall be a member of an oral board for a promotional examination except as provided in subsection C of this section.

B.  Auditing Examinations. An appointing authority of the position to be filled, or authorized representative, may attend oral examinations, for such positions, other than promotional examinations, for the purpose of informing the oral board members of the specific responsibilities of the position to be filled and of particular qualifications desired in the application to be appointed. The appointing authority or authorized representative shall not be present during the deliberations of the oral board or participate in the scoring or ranking of the candidates.

C.  Procedure Where All Applicants Will be Certified—Promotional. In any examination where one vacancy is to be filled and where three or less applications are received for examination or for continuous examinations, the director of human resources may prescribe the most appropriate examination procedure. If the number of vacancies requested to be filled is more than one, the number of certifiable ranks will increase proportionately. (Example: One vacancy results in no more than five ranks certified; two vacancies result in no more than six ranks certified, etc.)

(Prior code § 14.1750; Ord. 5160-B, 2002; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

## § 3.08.640.  Liability release.

Each candidate in an examination which includes physical exertion or other activity which may result in injury or damage to the candidate or to his or her property shall be required to execute a document releasing the county from any and all liability in connection with examination. Failure to execute such document when requested to do so shall result in disqualification of the candidate.
(Prior code § 14.1755; Ord. 5478-B (Attach. A), 2007)

## § 3.08.650.  Scoring.

The director shall establish a procedure for scoring each examination which will give due weight to each portion of the examination and which will afford each qualified candidate an equal opportunity to compete.
(Prior code § 14.1760; Ord. 5478-B (Attach. A), 2007)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

### § 3.08.660.  Passing grade.

The director shall establish for each written, oral and unassembled examination a minimum passing grade, which shall be set forth in the examination bulletin. Failure by any candidate to attain the minimum passing grade in any portion of an examination shall eliminate the candidate from competition in any further portion of the examination. Any candidate so eliminated shall be notified promptly in writing.
(Prior code § 14.1765; Ord. 5478-B (Attach. A), 2007)

### § 3.08.670.  Revealing candidates' names.

Each written examination shall be scored before the name of any candidate is revealed to the person scoring the examination.
(Prior code § 14.1770; Ord. 5160-B, 2002; Ord. 5478-B (Attach. A), 2007)

### § 3.08.680.  Retention of typing and shorthand scores.

The scores of candidates who are successful in typing and/or shorthand performance tests shall be kept on record in the central personnel office for a period of one year. During that period, they shall be accepted as satisfying the performance test requirement for each class for which the minimum typing and/or shorthand qualifications have been attained.
(Prior code § 14.1775; Ord. 5478-B (Attach. A), 2007)

### § 3.08.690.  Acceptance of outside typing and shorthand tests.

The director may accept the records of typing and/or shorthand performance tests given by the state of California or any other qualified agency.
(Prior code § 14.1780; Ord. 5478-B (Attach. A), 2007)

### § 3.08.700.  Applications retained.

Applications of candidates shall be retained for the duration of the employment list, at least, and shall be made available for inspection by appointing authorities to whom the candidates are certified. Applications of those candidates appointed shall be filed with the reports of their appointment. Applications for those candidates not appointed, shall be retained for up to two years from the date of the application. Answer sheets, test keys, and other examination records shall be retained for the duration of the employment list, and thereafter for a period of time to be determined by the director.
(Prior code § 14.1785; Ord. 5478-B (Attach. A), 2007)

### § 3.08.710.  Appeals from disqualification in examination.

Candidates who believe their qualifications have been improperly evaluated in an examination may appeal as follows:

A.   If a candidate wishes to appeal any phase of the examination, a written statement must be filed with the commission setting forth the nature of the action being appealed, the circumstances surrounding the action and the nature of the relief which is being sought.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

B.    Appeals to the commission from any phase of an examination must be filed within 30 calendar days after establishment of the eligible list.

C.    The commission at its first regular meeting following the filing of a timely appeal will take the matter under submission to determine the facts in the case. After careful consideration of all facts and circumstances, the commission at its next regular meeting shall take such action, or direct that such action, be taken as will, in its judgment, provide a legal, fair and equitable remedy.

D.    Valid appointment from an open eligible list shall not be affected by any subsequent action by the commission which affects the eligible list.

(Prior code § 14.1790; Ord. 5478-B (Attach. A), 2007)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

*Exhibit H In Support of Plaintiff's Second Amended Complaint, pg 040*

Part 8
**Eligible Lists**

**§ 3.08.720.  Eligible lists.**

A.   Eligible lists shall be established as a result of examinations open to all persons who lawfully may be appointed to any position in the classified service within the class for which examinations are held and who meet the minimum qualifications requisite to the performance of the duties of such position as prescribed by the specifications for the class.

B.   Transfer of Eligibility. Upon approval of the director of human resources, the names of individuals in the classified or unclassified service of another public agency operating a civil service or merit system may be placed on lateral transfer/other agency eligible list(s) for the comparable classes in the Placer County classified service.

In each case, the following conditions must be met:

   1.   The classification in which Placer County employment is contemplated must be substantially similar in job assignment and responsibility;

   2.   Prior to a conditional job offer being made, the individual must submit documentation from the other qualifying public agency confirming that:

      a.   The individual had been employed by the agency within one year prior to the date of his or her application to Placer County,

      b.   If classified, the individual held permanent status with the agency in a comparable job assignment,

      c.   If unclassified, the individual had been employed by the agency in a qualifying assignment for a minimum of six months,

      d.   The employment record of the individual has been satisfactory,

      e.   The individual has not been separated for cause,

      f.   The individual was appointed to the class from an eligible list resulting from a qualifying or competitive examination,

      g.   If not currently employed by the other agency, the individual is eligible for reinstatement to the prior agency;

   3.   The names of such individuals shall be placed on the lateral transfer/other agency eligible list and managed in accordance with Sections 3.08.170 (Definitions), 3.08.1090 (Separation and reinstatement) and 3.08.1150 (Reinstatement following resignation or voluntary demotion) of this article.

C.   Reinstatement Eligible List. A permanent employee who has resigned in good standing or accepted a voluntary demotion may, within five years following the effective date of resignation or demotion, request that the director of human resources place his or her name on the reinstatement eligible list for a classification previously held or a vacant position in a

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

comparable or lower class with equivalent minimum qualifications. This list may be considered by department heads in addition to the open eligible list but cannot take precedence over the promotional eligible list.

D.   Alternate Eligible Lists. Whenever there is no eligible list for a classification, or whenever it is in the best interest of the county, the director of human resources may certify names to vacancies from eligible lists for related classifications provided that the required minimum qualifications of the related classifications are at least equivalent to those of the classification in which the vacancy exists. The names of the persons thus certified shall remain on the eligible lists on which their names were originally placed.

(Prior code § 14.1800; Ord. 5371-B, 2005; Ord. 5409-B, 2006; Ord. 5478-B (Attach. A), 2007; Ord. 5773-B § 1, 2015; Ord. 5991-B § 1, 2019)

## § 3.08.730.  Composition of eligible list.

As soon as possible after the conclusion of an examination, the director shall prepare an eligible list consisting of the names of persons successfully passing the examination. Names of candidates shall be placed on the eligible list in descending order of their final rank.

(Prior code § 14.1805; Ord. 5160-B, 2002; Ord. 5478-B (Attach. A), 2007)

## § 3.08.740.  Order of eligible lists.

Names shall be certified by the director to the appointing authority in the following order:

A.   Re-employment lists.

B.   Promotional eligible list.

C.   Open eligible list.

D.   Reinstatement Eligible. List shall be certified in addition to subsection C above and eligibles may be considered for appointment at the discretion of the appointing authority.

E.   Lateral Transfer/Other Agency List. List shall be certified in addition to subsections C and D above, or in the absence of an eligible list.

Eligibles may be considered for appointment at the discretion of the appointing authority.

(Prior code § 14.1810; Ord. 5371-B, 2005; Ord. 5478-B (Attach. A), 2007; Ord. 6068-B § 1, 2021)

## § 3.08.750.  Re-employment lists.

A re-employment list for permanent employees who have been laid off and probationary employees noticed of release from employment (pursuant to Section 3.08.1090(C)) shall be established to facilitate re-employment of employees laid off or released in accordance with these provisions. Rank order shall be determined by total county service from longest to shortest and shall remain in existence for a period of a minimum of one year and a maximum of two years.

(Prior code § 14.1815; Ord. 5478-B (Attach. A), 2007; Ord. 5549-B § 1, 2009)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

### § 3.08.760.  Promotional eligible list.

A.   Promotional Eligible List. The names of competitors successful in promotional examinations shall be placed on promotional eligible lists in the descending order of their final rank.

B.   Noncompetitive Promotion.

   1.   The director of human resources may permit a permanent or probationary employee in a permanent allocation to be promoted on a noncompetitive basis if the minimum education and experience requirements in the higher class are met, the employee has received on-the-job training as a normal part of the lower classification in preparation for the higher level class, and the employee has standard performance ratings on file in their official personnel file.

   2.   Before any noncompetitive promotion may be made, the appointing authority shall file, with the director of human resources, a statement that the employee meets the minimum requirements as to performance, training and experience for the promotional position. The director may also require the employee to demonstrate that they possess the requirements for the higher class.

   3.   The director of human resources shall determine classes of positions from which, and to which, such promotions may be made within a class series of positions where the positions are allocated as either, or, i.e., I, II, III or II, III or I, II. Noncompetitive promotions shall not be made to positions within supervisory classes.

   4.   This section shall apply only to positions which have the same basic job title but different levels within class series of positions (junior appraiser, appraiser, probation officer I or II), and that have the same number of positions in the same department at the proposed promotional level as in the level from which the promotion is made.

(Prior code § 14.1820; Ord. 5160-B, 2002; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019; Ord. 6025-B § 3, 2020; Ord. 6068-B § 1, 2021)

### § 3.08.770.  Open eligible list.

The names of competitors successful in open examinations shall be placed on open eligible lists in the descending order of their final rank.

(Prior code § 14.1825; Ord. 5160-B, 2002; Ord. 5478-B (Attach. A), 2007)

### § 3.08.780.  Final examination rating.

The final rating on an examination shall be determined by the total of the scores received by each candidate for each part of the examination, based upon the relative value assigned to each part of the examination before it was given.

A.   The names of all candidates achieving the same whole percentage score shall constitute one rank. Final ratings of fractional percentage points shall be rounded upward to the next highest whole percentage point.

B.   Candidates are eligible for certification to the hiring department(s) when their scores are in the top five ranks of an eligible list. A veteran who receives a passing score on an open

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

examination and who qualifies for veteran's preference under Section 3.08.785 is eligible for certification to the hiring department(s) when the veteran's points raise the score to within the top five ranks.

C.  All candidates taking an examination shall be given written notice of the results of the examination process, including whether or not they received a passing score on the examination and their final ranking. Final rankings shall be reported as whole numbers, and candidates' positions within each rank will not be identified to the appointing authority or the candidates.

(Prior code § 14.1830(a); Ord. 5160-B, 2002; Ord. 5478-B (Attach. A), 2007)

### § 3.08.785.  Veterans preference.

The intent of this section is to assist veterans and disabled veterans who within five years of the date of application for employment with Placer County have either been separated under other than dishonorable conditions, discharged from a V.A. hospital as being fit for employment or have completed rehabilitative vocational training. Eligibility for preference is extended to eight years for those veterans who have been attending college on a full-time basis. This will be accomplished by adding a preference of five numerical points to the passing score attained in the examination by a veteran, unmarried widows, or widowers of veterans. A preference of 10 points not to exceed the total points possible will be added to the passing score attained in the examination by a disabled veteran or by the spouse of a disabled veteran who has been determined to have a disability of 80% or more. Veteran's preference shall apply to initial entrance into county service only or to a subsequent appointment in the event the first classification is abolished and the employee is laid off. Disabled veterans will not be subject to the five-year discharge or separation limitation.

For the purpose of this section, "disabled veteran" means any person who served on active duty in the Armed Forces of the United States, who has been honorably separated and who has been declared by the United States Veterans Administration to be currently disabled to a compensable degree as result of a service connected disability.

For the purpose of this section, the term "veteran" means any person who served on active duty in the Armed Forces of the United States for a period of 30 or more consecutive days the beginning or ending of which was in time of war, or in time of peace in a campaign or expedition for which a medal has been authorized by the Congress of the United States, or in time of peace for a full enlistment period or a minimum of 24 months unless disabled, and who was separated from service under other than dishonorable conditions. The term "veteran" does not include any person who served only in auxiliary or reserve components of the Armed Forces or any person whose active duty in the Armed Forces was performed solely for training purposes.

Persons who elected a career in the Armed Forces and retired after 20 or more years of active military service shall not be eligible for veteran's preference.

(Prior code § 14.1830(b); Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

### § 3.08.800.  Life of eligible list.

A.  Effective Date. Eligible lists shall become effective upon the certification by the director that the list was legally prepared and represents the relative ratings of the names appearing thereon.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

B.   Minimum and Maximum Life. Eligible lists shall remain in effect six months and may be extended by the director of human resources for additional three-month periods, but in no event shall a list remain in effect for more than two years. Continuous eligible lists shall expire by the end of the calendar year and a new continuous eligible list may be established the following calendar year, but in no event shall a continuous list remain in effect for more than one year.

C.   Abolition of List. At any time the director of human resources may abolish a list.

D.   Notification of Abolition. Any person on an eligible list that has been abolished shall be notified in writing of the next scheduled application filing period, if known.

E.   Re-Employment List as Eligible List. For purposes of this section, a re-employment list shall be treated in the same manner as an eligible list.

F.   When, in the opinion of the director of human resources, a list of eligibles does not meet the service demands but has not expired, the director may order selection procedures to provide additional eligibles, and all successful applicants shall have their names placed on the eligible list in the order of their scores.

(Prior code § 14.1840; Ord. 5371-B, 2005; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019; Ord. 6025-B § 3, 2020; Ord. 6218-B, 9/26/2023)

### § 3.08.810.  Removal from eligible list.

Names of eligibles may be removed from an eligible list by the director for any of the following reasons:

A.   Fraud or false statements in the application or fraudulent conduct in connection with an examination.

B.   Permanent appointment to a position in the class for which the eligible list was established.

C.   After certification three times to the same department without appointment, provided such eligible is interviewed as a result of each certification.

D.   Upon request, death, or upon resignation from the service of an eligible on a promotional eligible list.

E.   Failure to appear or to arrange for an interview with an appointing authority within a reasonable time after notification of certification, or failure to appear for work after appointment.

F.   Declination of an appointment three times in any given class in accordance with the conditions of employment specified by the eligible.

G.   Whenever an eligible is removed, they shall be so notified in writing and informed of their right to appeal. This stipulation shall not apply to eligibles removed in accordance with subsections B and D of this section.

(Prior code § 14.1845; Ord. 5478-B (Attach. A), 2007; Ord. 5683-B § 37, 2012; Ord. 5901-B § 2, 2018; Ord. 5991-B § 1, 2019; Ord. 6068-B § 1, 2021; Ord. 6218-B, 9/26/2023)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

## § 3.08.820.  Waiver of certification.

Eligibles may waive certification by giving written notice to the director. Waivers must be filed within five working days after the date of certification, and such name shall not be certified to an appointing authority until such waiver has expired or has been withdrawn. Waivers, whether continuous or otherwise, shall not be approved for a period of longer than one year.
(Prior code § 14.1850; Ord. 5478-B (Attach. A), 2007)

## § 3.08.830.  Specific waivers.

An eligible may file a conditional waiver of certification by stating the minimum salary or the particular location or department of service for which they wish to be certified.
(Prior code § 14.1855; Ord. 5478-B (Attach. A), 2007; Ord. 6068-B § 1, 2021)

## § 3.08.840.  Restoration to eligible list.

Names which have been removed from eligible lists may be restored by the director for the duration of the list for the following reasons:

A.   Acceptance of the reason for waiver of certification which had previously been rejected.

B.   Acceptance of the reason for non-appearance for interview with the appointing authority after certification.

C.   Upon request of an employee dismissed during a probationary period, if without fault or delinquency on his or her part.

(Prior code § 14.1860; Ord. 5478-B (Attach. A), 2007)

## § 3.08.850.  Erroneous eligible list.

When it becomes evident that an omission or other error has occurred in the preparation of a list, a corrected list shall be prepared by the director and the erroneous list shall be canceled.
(Prior code § 14.1865; Ord. 5478-B (Attach. A), 2007)

## § 3.08.860.  Cancellation of erroneous eligible list.

The cancellation of an erroneous list shall not invalidate any appointment made therefrom if the name of the person appointed appears on the corrected list. Should such person's name not appear on the corrected list, they shall be treated as a provisional employee.
(Prior code § 14.1870; Ord. 5478-B (Attach. A), 2007; Ord. 6068-B § 1, 2021)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

Part 9
**Appointments**

### § 3.08.870.  Appointments.

A.  The appointing authority shall fill positions by appointment. Appointments to permanent, full-time and permanent, part-time positions in the classified service shall be made from eligible lists. Appointments of extra help shall also be made from eligible lists. No person shall be appointed under a class not appropriate to the duties to be performed. (Employees occupying permanent, part-time positions on the effective date of the ordinance codified in this section shall gain probationary status in the position which they are employed. The director of human resources shall prepare a list of such individuals and notify the department head of their new status.)

B.  Anniversary dates shall be established as of the effective date of permanent employment or promotion in the county service.

C.  The sheriff's department shall appoint deputy sheriff trainees to deputy sheriff I upon satisfactory completion of the basic P.O.S.T. academy. A new anniversary date shall be established as of the effective date of appointment to the higher class. Appointments to deputy sheriff I shall be provided by noncompetitive promotion.
(Prior code § 14.1900; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

### § 3.08.880.  Notification of vacancy.

Whenever a vacancy occurs in a county department and a replacement is desired, the appointing authority shall notify the director of human resources in writing who shall advise the appointing authority as to the availability of employees for re-employment, transfer and of eligibles on eligible lists for the class. The director should be notified far enough in advance in order to facilitate the employment process. Responsibility of notification of vacancies to the director shall be that of the appointing authority.
(Prior code § 14.1905; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

### § 3.08.890.  Appointment from re-employment list.

A.  When there is a re-employment list for the class in which the vacancy exists, only the employee with the greatest total county service shall be certified and shall be appointed.

B.  Employees on a re-employment list may waive certification by written notification to the director of human resources. Such notification shall state the period of time and/or department(s) to which the waiver shall apply.
(Prior code § 14.1910; Ord. 5478-B (Attach. A), 2007; Ord. 5549-B § 2, 2009; Ord. 5991-B § 1, 2019)

### § 3.08.900.  Appointments from eligible lists.

The director shall certify the top five ranks from the eligible list. If five names of eligibles are not available, and the number certified is less than five, the appointing authority may demand certification of five names, and examinations shall be conducted until a minimum of five names

Downloaded from https://ecode360.com/PL4987 on 2025-08-06
*Exhibit H In Support of Plaintiff's Second Amended Complaint, pg 047*

may be certified. The appointing authority is not required to make appointment from an eligible list with less than five names.
(Prior code § 14.1915; Ord. 5160-B, 2002; Ord. 5478-B (Attach. A), 2007)

### § 3.08.910.  Promotional appointments.

No appointing authority shall appoint a person from a promotional eligible list who is not at time of appointment employed by the county or on leave of absence.
(Prior code § 14.1920; Ord. 5478-B (Attach. A), 2007)

### § 3.08.920.  Regular permanent appointment.

After interview from among those certified and after any investigation desired, the appointing authority may make an offer of employment. Such offer of employment is contingent upon satisfactory results of a county approved medical evaluation. The appointing authority shall notify the director of human resources of the name of the person offered employment.
(Prior code § 14.1925; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

### § 3.08.930.  Provisional appointments.

A.    In the absence of eligibles from which regular appointments may be made, a person meeting the minimum qualifications for the vacant allocated position may be provisionally appointed. The director of human resources shall determine and certify that the applicant meets the minimum qualifications before the appointment may become effective. No provisional appointment shall continue longer than 90 calendar days in any fiscal year. Time spent under provisional appointment shall not be credited to the probationary period or be used for computing any benefits accruing under county employment.

B.    Provisional Promotion. Permanent full-time employees may be promoted to a higher classification for a limited period of time in accordance with subsection A of this section except that such employee shall be entitled to continue accruing benefits under county employment.
(Prior code § 14.1930; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019; Ord. 6025-B § 3, 2020)

### § 3.08.940.  Extra help appointment.

A.    The director of human resources, upon request of the appointing authority, may certify from an appropriate eligible list the names of those eligibles willing to accept extra help appointments.

B.    Such certification shall be made in the same manner as would normally be made to fill a regular permanent position.

C.    An extra help employee appointed in accordance with subsections A and B of this section:

    1.    May, upon request of the appointing authority and with the approval of the director of human resources, be transitioned into a permanent position within the same department and classification held as an extra help employee. Such appointee shall attain

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

probationary status effective the date of appointment to the permanent position.

2. May not be transitioned to a permanent position if certification to the extra help position was from an extra help only eligible list.

In the event the eligible list from which an extra help appointment is made should expire, the person in the position shall remain an eligible for probationary appointment to that position for the duration of the extra help if they meet the criteria set forth above. In this case, eligibility for certification to the newly allocated permanent position shall supersede new eligible lists provided the initial extra help appointment was made in accordance with normal procedures for hiring permanent employees.

D. It shall be the appointing authority's responsibility to inform extra help employees of the expected duration of employment and that time spent under extra help appointment shall not be:

1. Credited to the probationary period; or

2. Used for computing any employee benefits accruing under county employment.

E. Extra help appointments shall not be made to vacant permanent positions.

F. An extra help employee shall not be employed more than 1,000 hours in a fiscal year without the express approval of the director of human resources.

G. Acceptance or refusal of an extra help appointment shall not affect an individual's standing on an eligible list for permanent employment.

H. Time spent under extra help appointment shall not be credited to the probationary period or be used for computing any benefits accruing under county employment.

I. In the event of a dispute in the application of this section, the employee affected, appointing authority or director of human resources may request the civil service commission to conduct a hearing for the purpose of determining whether the provisions of this section have been properly applied. The civil service commission's decision shall be final.

J. It is not the intent of the county to use either temporary agency employees or extra help to circumvent the civil service career hiring process.
(Prior code § 14.1935; Ord. 5058-B (Attach. 22), 2000; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019; Ord. 6025-B § 3, 2020; Ord. 6068-B § 1, 2021)

## § 3.08.960.  Emergency appointment.

To meet the immediate requirements of an emergency condition which threatens life or public property, any legally competent officer or employee may employ such persons as may be needed without regard to the civil service restrictions as regards appointment. As soon as possible such appointments shall be reported to the director of human resources. In no event shall emergency appointment exceed 10 days, be extended, or provide employment of more than 10 days in any 12-month period to any one person. Time spent under such employment shall not be credited to a probationary period or be used in computing any privileges accruing under county employment.
(Prior code § 14.1940; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

## § 3.08.970.  Declination or failure to report.

The appointing authority is to notify the director of human resources if a person declines appointment or fails to report to the appointing authority as a result of certification, notice of which shall be given by certified letter, within the time stated on the notice of certification. Once all names within a rank have been cleared, the next rank on the list shall be certified.
(Prior code § 14.1945; Ord. 5160-B, 2002; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

## § 3.08.980.  Voluntary withholding.

Whenever a person submits a written request to the director of human resources to have their name withheld from certification to certain departments or for certain types of employment, their name shall not be certified to said departments or for such types of employment until they notify the director of human resources in writing of their availability for such employment.
(Prior code § 14.1950; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019; Ord. 6068-B § 1, 2021)

## § 3.08.990.  Withholding for declinations.

If an eligible who is certified for employment to permanent positions declines appointment a total of three times, his or her name shall be removed from the eligible list. Failure to report to the appointing authority for interview shall constitute a declination of appointment.
(Prior code § 14.1955; Ord. 5478-B (Attach. A), 2007)

## § 3.08.1000.  Removal from list for failure to report.

If an eligible agrees to accept an appointment, but fails to report for duty as directed, they shall be notified in writing that their name has been removed from the reemployment and/or eligible list. If within 15 calendar days after such notification, they prove to the satisfaction of the director that their failure to report was excusable, their name shall be returned to its place on such list.
(Prior code § 14.1960; Ord. 5478-B (Attach. A), 2007; Ord. 6068-B § 1, 2021)

## § 3.08.1010.  Pre-employment medical evaluations.

A.  Pre-employment medical screenings may include physical examinations, psychological examinations, physical abilities testing, and other job-related medical screening tests, depending on the nature and duties of the position. The county may make a job offer that is conditioned upon the applicant's ability to pass a medical evaluation designed to determine if the applicant can perform job related functions or to respond to an applicant's request for reasonable accommodations if the following criteria are met:

   1.  The evaluation is job-related and consistent with business necessity; and

   2.  All applicants entering employment into the same job classification are subject to the same evaluations.

B.  An applicant may be rejected due to disability only if:

   1.  They are unable to perform the job functions even with a reasonable accommodation;

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

or

2.  They cannot perform essential duties in a manner that would not endanger their health or safety or the health or safety of others even with reasonable accommodation; and

3.  The county has considered all rebuttal information that the applicant submitted timely.

C.  Each person selected to fill a permanent full-time, permanent part-time position, or extra help assignment in law enforcement or other Occupational Group I position shall be required to pass a medical evaluation prior to appointment given by a physician (and recorded on forms) designated by the director of human resources, to determine whether the person selected is capable of performing the essential duties of the position.

1.  Current employees applying for transfer, promotion or demotion to a position with statutory or regulatory requirements for pre-employment screening will be subject to all mandated screening. In addition to mandated screening, current employees will be subject to pre-placement testing when moving into positions with greater physical demands than the employee's current position will be subject to any medical screening requirements they have not previously completed including job-specific physical abilities testing.

2.  Inability to pass a pre-employment medical evaluation shall disqualify the applicant for employment by the county in that classification and the applicant's name will be removed from the eligible list for that classification.

D.  Occupation Groups. All positions covered by the classification and compensation plans shall be assigned by the director of human resources specific medical standards and requirements, based upon the physical requirements of the jobs. Positions having similar physical requirements have been listed under numbered medical group titles, which are generally defined as follows:

1.  Occupational Group I. Classifications which demand a high degree of physical fitness or for positions which demand considerable physical labor or exertion.

2.  Occupational Group II. Classifications performing office, supervisory, or other functions which require minimal physical exertion.

E.  Medical Ratings. Each applicant will be evaluated in accordance with the requirements of the job classification and the Occupational Group in which the classification falls, and will be given a medical rating in one of the following classes:

1.  Medically Qualified. Applicants in this group are capable of performing the essential functions of the job classification with or without reasonable accommodations.

2.  Medically Disqualified. Applicants in this group are those who have been determined by the examining physician to be unfit for employment as a result of the medical evaluation.

F.  Human Resources Department and Appointing Authority Procedures.

1.  All applicants given a conditional job offer by an appointing authority will be medically

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

            evaluated and determined to be medically qualified before the effective date of appointment.

    2.   Information contained on medical reports is confidential and shall not be made available to unauthorized persons.

G.   An applicant disqualified from appointment to a position for failing to meet the medical standards for the job classification may file a written request to the director of human resources for a review of the disqualification. This request must be submitted within 10 calendar days of the date noted on the disqualification letter.

    1.   The applicant will have the right to submit additional information including a report by an independent medical examiner for consideration. The information provided must be relevant to the nature and extent of the medical condition(s) which relates to the applicant's medical disqualification and the applicant's ability to perform the essential functions of the job classification. All medical examinations and collection of additional information relating to this appeal are the financial responsibility of the applicant.

    2.   Additional medical information provided by the applicant will be submitted to the director of human resources for review. The director of human resources may consult with medical providers, the county health officer, or other subject matter expert(s) and determine, in light of this additional information, whether to approve or deny the applicant's appeal. The decision of the director of human resources, after review of the additional information, shall be final.

(Prior code § 14.1970; Ord. 5478-B (Attach. A), 2007; Ord. 6068-B § 1, 2021)

## § 3.08.1012. Pre-employment drug screening.

Each applicant selected and provided with a conditional offer to fill a permanent full-time position, permanent part-time position, or extra help assignment in a classification/assignment that has been designated or identified as meeting the criteria for pre-employment drug testing must participate in and successfully pass a drug screening test as part of the county's post-offer, pre-employment screening process.

1.   Failure or inability to successfully pass the drug screen will result in disqualification from the eligible list.

2.   All testing will be conducted by a licensed independent medical laboratory, in accordance with applicable laws and which will follow established testing standards and protocols.

(Ord. 6068-B § 1, 2021)

## § 3.08.1015. Pre-employment psychological evaluations.

A.   The county may make a job offer that is conditioned upon the applicant's ability to pass a psychological evaluation designed to determine if the applicant can perform job-related functions or to respond to an applicant's request for reasonable accommodations if the following criteria are met:

    1.   The evaluation is job-related and consistent with business necessity; and

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

    2.   All applicants entering employment in the same job classification are subject to the same evaluations.

B.   An applicant may be rejected due to disability only if:

    1.   They are unable to perform the job functions even with a reasonable accommodation; or

    2.   They cannot perform essential duties in a manner that would not endanger their health or safety or the health or safety of others even with reasonable accommodation.

C.   Purpose. For certain job classifications in public safety where psychological evaluations are mandated or where assignments may include direct access to drugs, evidence, or weapons, a pre-employment psychological evaluation may be required post conditional job offer and prior to appointment to the position pursuant to applicable laws and regulations. The intent of this evaluation is not an examination of mental health, but rather to identify special characteristics related to the requirements of the classification, and the applicant's ability to perform the essential functions of the job.

    1.   Applicants will not undergo a post conditional offer pre-employment psychological evaluation until after the background investigation process is successfully completed.

D.   Applicants will be evaluated by a psychological evaluator designated by the director of human resources in compliance with applicable rules and regulations. The psychological evaluator will render one of the following outcomes of the evaluation:

    1.   Suitable. Applicants in this group have been determined to meet the psychological requirements required to perform the essential job functions.

    2.   Unsuitable. Applicants in this group have been determined unable to meet the requirements of the position for which they applied based upon applicable laws and standards and disqualified.

E.   For non-POST certified classifications, the determination of the county designated psychological evaluator shall be final.

F.   Appeals/Second Opinions. An applicant for a POST-certified classification who is disqualified from the selection process as a result of their psychological evaluation may obtain a second opinion from a POST-certified psychological evaluator as defined by POST at their own expense.

    1.   Applicants have 10 calendar days from the date of the disqualification notification letter to submit their intent to appeal in writing to the director of human resources.

    2.   The director of human resources will serve as the appeal hearing officer. After reviewing the supporting documentation provided by each of the psychological evaluators, the director of human resources will make a final decision regarding whether to approve or deny the applicant's appeal.

        a.   The director of human resources may consult with relevant subject matter experts, including, but not limited to, the county health officer, county counsel, and/or

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

department management.

    b.   After consideration of all relevant information, the decision of the director of human resources shall be final.

(Ord. 6068-B § 1, 2021; Ord. 6218-B, 9/26/2023)

### § 3.08.1020.  Fitness for duty evaluation during employment.

A.   When, in the judgment of the appointing authority, an employee's health, or physical or mental condition is such that it is desirable to evaluate the employee's capacity to perform the duties of their position, the appointing authority shall require the employee to undergo a fitness for duty medical or psychological evaluation. Such evaluation shall be by a physician or psychologist selected by the county.

B.   The examining physician or psychologist shall state whether, in their opinion, the employee is able to properly perform the essential job duties/functions of the position. Such determination shall be based upon the essential job duties/functions and the diagnosis or injury/illness, and whether the employee's condition can be remedied within a reasonable period of time.

C.   If the examining physician or psychologist finds the employee unfit to perform the essential job duties/functions of the position, the employee may, within 14 calendar days after notification of the determination, submit a written request to the county disability management administrator to provide additional information to the examining physician or psychologist for review. The additional information provided must be relevant to the nature and extent of the medical condition(s) which relates to the employee's inability to perform essential job duties/functions. All costs associated with obtaining/providing additional medical information relating to this appeal are the financial responsibility of the employee.

D.   Further medical information provided by the employee will then be submitted directly to the examining physician or psychologist who completed the initial review. The physician or psychologist will review the additional information and determine whether or not the employee can properly perform the essential job duties/functions of the position. The employee shall not be entitled to a second evaluation by another physician or psychologist.

(Prior code § 14.1971; Ord. 5478-B (Attach. A), 2007; Ord. 5683-B § 38, 2012; Ord. 5700-B § 31, 2013; Ord. 6104-B § 1, 2021)

### § 3.08.1035.  Disability review process—Action by the appointing authority.

A.   If it is determined that the employee cannot perform the essential job duties/functions of the classification in which they are employed, with or without reasonable accommodation, due to a medical or psychological condition that meets the disability criteria under federal and state statutes, the county may take the following actions, as appropriate:

    1.   Engage in an interactive process with the employee and as a reasonable accommodation may consider reassignment to an alternate classification based on the following criteria:

        a.   Employee's ability to meet the minimum qualifications of the alternative classification;

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

*Exhibit H In Support of Plaintiff's Second Amended Complaint, pg 054*

    b.   Employee's ability to perform the essential job duties/functions of the alternative classification;

    c.   Rules governing lateral transfer and voluntary demotion; and

    d.   Availability of the position at the time of acceptance, as determined by the county executive office.

B.   Appeal Process. The employee may appeal an offer of, or refusal to offer, reasonable accommodation by submitting a written request to the county disability management administrator within 14 calendar days of the offer. The request shall be in writing and set forth the offered accommodation, if any, the reason the offered accommodation or denial of accommodation is unreasonable, and any accommodation the employee feels would be reasonable.

    1.   The county disability management administrator will review the appeal, obtain any additional information from the appointing authority and submit the request to the county executive officer for consideration. After consultation with county counsel, the county disability management administrator, and the appointing authority, the county executive officer shall make one of the following findings:

        a.   Further consideration of alternatives is needed;

        b.   The appeal is upheld; or

        c.   The appeal is not justified and denied.

      The decision of the county executive officer shall be final.

C.   If the interactive process described above does not result in resolution, the county will submit an application for disability retirement on the employee's behalf in accordance with the Public Employees Retirement Law if the employee is eligible.

D.   Separation of the employee from county service for medical cause will occur if: (1) the employee is not eligible for, or denied, disability retirement under the Public Employees Retirement Law; or (2) the employee declines an offer of reasonable accommodation; or (3) the employee fails to engage in the interactive process or reasonable accommodation cannot otherwise be satisfactorily achieved by the employee and the county. In taking such action to separate the employee for medical cause, the appointing authority shall follow the process set out in Article 3.08, Part 12, Disciplinary Action, as applicable, although the separation shall not be considered disciplinary action.

(Ord. 5627-B § 13, 2010; Ord. 5683-B § 40, 2012; Ord. 6068-B § 1, 2021)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

Part 10
**Probationary Period**

### § 3.08.1040.  Objective of probationary period.

The probationary period shall be an intrinsic part of the examining process and shall be utilized for closely observing and appraising the conduct, performance, attitude, adaptability and job knowledge of such employees and determine whether the employee is qualified for permanent status.
(Prior code § 14.2000; Ord. 5478-B (Attach. A), 2007)

### § 3.08.1050.  Length of probation.

A.   All permanent appointments from open eligible lists to positions in the classified service shall serve a probationary period of 12 calendar months or 2,080 hours, whichever is more, with the exception of those classifications identified below. Where changes to the probationary period for a classification are made herein, employees will serve the probationary period in effect when they began their probation. Time spent on leave of absence will not count toward the completion of the probationary period.

     1.   PPEO, PPOA, PCLEMA, DDAA, Confidential, and Classified Management Employees. All appointments to permanent full time and permanent part time positions in the classified service shall serve a probationary period of 12 months or 2,080 hours, whichever is more, at the time of their initial hire or promotion with the exception of those classifications listed below. Where changes to the probationary period for a classification are made herein, employees will serve the probationary period in effect when they began their probation. Time spent on leave of absence will not count towards the completion of the probationary period, subject to any state or federal law.

     2.   Sheriff's Office—Non PPEO Represented.

| | Period |
|---|---|
| **Initial Hiring Classification** | |
| Deputy Sheriff I | 18 months |
| **Promotion to** | |
| Deputy Sheriff I | 18 months |
| Deputy Sheriff II | 6 months |
| Sheriff's Sergeant | 6 months |

Deputy Sheriff — Trainee. Incumbency in this class is limited to a period not to exceed 12 months and to individuals who have not yet completed the basic P.O.S.T. academy. Failure to satisfactorily complete and graduate from P.O.S.T. academy while in this class shall result in termination from this class.

Upon satisfactory completion of the basic P.O.S.T. academy, it will be permissible to

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

appoint the incumbent to deputy sheriff I. Upon appointment to deputy sheriff I, the incumbent shall serve a probationary period of 18 months.

3.  District Attorney's Office.

|                                  | **Period**  |
| -------------------------------- | ----------- |
| **Initial Hiring Classification** |             |
| Investigator                     | 12 months   |
| **Promotion to**                 |             |
| Investigator                     | 6 months    |

B.

1.  PPEO, PPOA, DDAA, Classified Management and Confidential Employees—Extension of Probation. Probationary periods may be extended when good cause exists. Good cause includes, but is not limited to, an extended absence or similar circumstance that removes the probationary employee from direct observation of job performance and/or there have been changes in the probationary employee's status, i.e., a transfer from one class to another, a transfer from one department to another, change in work location, major change in assignment, the installation of new processes or technology; or when the appointing authority has failed to complete interim performance appraisals and has been directed to request such an extension of the probationary period under Section 3.08.1060(B). In such situations, the appointing authority may, with the consent of the director of human resources, extend an employee's probationary period for up to 90 days (520 hours).

2.  Deputy Sheriff Unit—Extension of Probation. If during the probationary period there have been changes in an employee's status, i.e., a change in work location, major change in assignment, the installation of new processes or technology, or in the event of authorized light duty because of illness/injury where the assignment prevents the completion of field training and/or jail operations training (this field training and jail operations training requires successful completion prior to completing probation), the appointing authority may, with the consent of the director of human resources, extend an employee's probationary period for up to one year. The appointing authority must present evidence to the director of human resources documenting the reason for requesting an extension of the probationary period.

C.  Re-Employment List Appointment Probationary Period. Any employee who is appointed from a re-employment list shall serve a probationary period of six months or 1,040 hours, whichever is greater. The only exceptions to this are:

1.  An employee who did not complete their full initial probationary period prior to being placed on the list will be required to repeat the full initial hire probationary period required of their classification.

2.  An employee who is appointed into the same or lower classification (within the same

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

classification series) and same department they were working in at the time of layoff shall not be required to complete a new probationary period.

D.  For purposes of this section, a calendar month shall be from a given date in a month through the next preceding date in the following month (e.g., July 10th through August 9th).

E.  An employee who is released from a probationary status after being re-employed from a re-employment list pursuant to these provisions will be given 14 calendar days advance notice of the release and advised of their return to the re-employment list with the total county service they had obtained upon original placement on the list.

F.  An employee who is released from probation after having been re-employed from a re-employment list shall NOT be certified again to the same department unless so requested by the appointing authority.

G.  An employee who is released during their probationary period after having been re-employed from a re-employment list on two separate occasions will NOT be placed back on the reemployment list and shall be separated from county service.

H.  An employee who elects to bump (in accordance with Section 3.08.1120) into a lower classification (within the same classification series) and same department they were working in at the time of layoff shall not be required to complete a new probationary period.

(Prior code § 14.2010; Ord. 5115B, 2001; Ord. 5186-B, 2002; Ord. 5193-B, 2002; Ord. 5436-B, 2007; Ord. 5442-B, 2007; Ord. 5443-B, 2007; Ord. 5478-B (Attach. A), 2007; Ord. 5531-B, 2008; Ord. 5549-B § 3, 2009; Ord. 5683-B § 41, 2012; Ord. 5740-B § 13, 2014; Ord. 5879-B § 7, 2017; Ord. 6025-B § 3, 2020; Ord. 6068-B § 1, 2021; Ord. 6213-B § 1, 2023; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025)

## § 3.08.1060.  Performance appraisal.

A.  Report Required. For probationary periods of six months, the appointing authority shall prepare a performance appraisal for each employee at the end of three months and prior to the expiration of six months. For probationary periods of 12 months or 18 months, the appointing authority shall prepare a performance appraisal at the end of six months and prior to the expiration of the 12 month or 18 month probationary period.

B.  Failure to Prepare Report. Failure by an appointing authority to prepare an interim performance appraisal for a probationary employee shall result in a rebuttable presumption of "Standard" as to the missed evaluation. In addition, such failure shall require the appointing authority to obtain the review and approval of the director of human resources prior to rejection of any such employee during the probationary period.

C.  Status Following Evaluation. If release is not specifically recommended before the end of the probationary period, the probationer shall acquire permanent status.

D.  Step Increase. An employee performance evaluation form shall be submitted prior to an employee's eligibility date for a step increase with a recommendation regarding merit salary increase.

E.  Annual Evaluation. Employees at the top step of their salary range shall receive an evaluation

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

annually.

F.  More Than One Supervisor During Rating Period. In the event an employee has been under the direct supervision of more than one supervisor:

    1.  Rating shall be both by the last person to supervise the employee and by the person who supervised the employee for the longest period of time during the rating period in question.

    2.  If the person who supervised the employee for the longest period is no longer employed in county service:

        a.  Such person, if available, shall be provided the opportunity to confer with the rating supervisors.

        b.  If such person is not available, or declines to comment, the rating shall be by the last supervisor and such other supervisor as may be directed by the department head.

        c.  The rater or raters shall prepare and submit to the appointing authority a performance appraisal of the employee at the conclusion of the rating period. Failure by the supervisor to submit such report shall result in a rebuttable presumption of "Standard" as to the missed evaluation.

G.  Right of Employee Review and Comment. No performance appraisal shall be placed in a departmental file, nor shall it be transmitted to the personnel department, until the employee has reviewed the evaluation personally with the rating supervisor and, if requested by the employee, such employee has reviewed the evaluation personally with such employee's appointing authority or designee.

H.  Comments. The provisions of Section 3.04.170 shall also be applicable to performance appraisals.

(Prior code § 14.2015; Ord. 5478-B (Attach. A), 2007; Ord. 5531-B, 2008; Ord. 5549-B § 4, 2009; Ord. 5627-B § 14, 2010; Ord. 5683-B § 42, 2012; Ord. 5700-B § 33, 2013; Ord. 5991-B § 1, 2019; Ord. 6025-B § 3, 2020; Ord. 6159-B § 1, 2022)

## § 3.08.1070.  Release during probationary period.

A.  Release Other Than Initial Probationary Period. At any time during the probationary period, an employee may be released by the appointing authority, and the probationer shall be without the right of review of any kind. Notification of release shall be made in writing by the appointing authority to the human resources director. The appointing authority shall give such employee, at any time up to and including the last day of the probationary period, 10 working days' notice of termination of employment. Such employee shall be entitled to receive, during such last 10 working days, the salary of the position in which said employee was on probation.

B.  At any time during the probationary period, an employee may be terminated, for cause on any of the grounds set forth in Section 3.08.1190 other than subsections E and L.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

C.  DSA, PPOA, PPEO, DDAA, Classified Management and Confidential Employees—Release During Initial Probationary Period. At any time during the initial probationary period, a probationary employee may be released by the appointing authority, and the probationary employee shall be without the right of review of any kind. Notification of release shall be made in writing to the probationary employee by the appointing authority with a copy sent to the human resources director. The effective date of the probationary employee's separation from county service and last day on county payroll will be the day of the notice of release.

(Prior code § 14.2020; Ord. 5478-B (Attach. A), 2007; Ord. 5572-B § 16, 2009; Ord. 5683-B § 43, 2012; Ord. 5700-B § 34, 2013; Ord. 5885-B § 1, 2017; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025)

## § 3.08.1080.  Status following release from probation.

A.  An employee released during the probationary period under Section 3.08.1070(A) shall be reinstated to the position or status previously held, at the same pay step and with the same anniversary date held prior to such new probationary period.

    1.  An employee released during probation as a deputy sheriff I, who was appointed to this class from deputy sheriff trainee, shall not be reinstated to the trainee class. The employee shall be reinstated to the position or status held prior to appointment to deputy sheriff trainee.

B.  An employee dismissed during the probationary period under Section 3.08.1070(B) shall be deemed effectively terminated from county service under Section 3.08.1260.

C.  If the employee's original anniversary referred to in subsection A of this section overlaps the probationary period in the higher classification, such terminated employee in subsection A of this section shall be entitled to apply for the higher pay step in his or her former position.

D.  Any employee displaced by the provisions of subsection A of this section shall be reinstated to his or her former position or status:

    1.  Promoted or transferred employees shall be reinstated to their former position.

    2.  Employees coming from an open list or reemployment list shall be placed on a layoff status.

E.  The provisions of subsections A and D of this section shall apply to all terminations from and after July 1, 1976; except, however, no employee terminated after July 1, 1976, and prior to October 1, 1976, under a former rule shall be entitled to back pay.

(Prior code § 14.2925; Ord. 5478-B (Attach. A), 2007; Ord. 5683-B § 44, 2012)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

Part 11
## Separation and Reinstatement

### § 3.08.1090.  Layoff.

A.   Layoffs shall be made solely under the direction of the board of supervisors. The county executive officer, following board approval, may direct the department's appointing authority to lay off employees for any of the following reasons:

    1.   Necessity based on lack of funds or work; or

    2.   Advisable in the interest of economy to reduce the departmental staff; or

    3.   Administration of a violation of Section 3.04.080 relating to nepotism.

B.   Notwithstanding the provisions of subsection A of this section, the department's appointing authority may lay off an employee, without the direction of the board of supervisors, for the following reasons:

    1.   Return of another employee with greater seniority from leave of absence;

    2.   Return of another employee with greater seniority as a result of release from probation.

C.   Permanent employees laid off and probationary employees noticed of release from county service pursuant to these provisions shall be placed on a re-employment list for the class or classes from which they were laid off or released ranked by total county service in order from longest to shortest.

(Prior code § 14.2100; Ord. 5478-B (Attach. A), 2007; Ord. 5549-B § 5, 2009)

### § 3.08.1100.  Notice.

A.   Deputy Sheriffs Unit and PCLEMA Represented Employees. Ten days before the effective date of a layoff, the appointing authority or county executive shall file notice with the director of human resources of the intended action with reason therefor. A copy of such notice shall be personally served the employee affected.

B.   PPEO, PPOA, DDAA, Confidential and Classified Management Employees. At least 14 calendar days, excluding holidays, before the effective date of a layoff, the appointing authority shall cause each employee affected to be personally served a notice of layoff. The notice shall include a copy of the layoff provisions. A copy of such notice shall be sent to the director of human resources.

(Prior code § 14.2105; Ord. 5478-B (Attach. A), 2007; Ord. 5549-B § 6, 2009; Ord. 5991-B § 1, 2019; Ord. 6213-B § 1, 2023; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025)

### § 3.08.1105.  Definition of terms pursuant to layoff provisions.

Bumping rights. The right for a permanent employee to revert to a position in which they previously attained permanent status if the employee has been notified that they are subject to layoff, formally elects to move to the previously held position or to the classification performing the same or similar duties in the case of subsequent reclassification, retitling or merge of classifications, and has sufficient seniority or total county service in order to "bump" another

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

employee from the position.

Class. The categorization of work duties and responsibilities sufficiently similar so that the same minimum qualifications, education, experience, knowledge, skills and abilities (KSAs) may be required of incumbents and so that the same schedule of compensation is applied with equity.

Class series. A set of two or more classes that are closely related in terms of work performed and distinguished primarily by the level of responsibility and scope of duties assumed. Common titling designations are generally used to clearly define the applicable class level, such as building crafts mechanic, building crafts mechanic senior, building crafts mechanic supervising, and building crafts mechanic senior supervising.

Demotion. A change between classifications where the difference between the maximum salaries of one classification to the other is a decrease of five percent or more.

FTE. Full-time equivalent; a 40 hour per week position = 1.0 FTE.

Full-time position. A position established on a year-round basis required to work a regular work schedule of 40 hours per week.

Layoff. The involuntary termination pursuant to Section 3.08.1090 of a permanent employee from a classification without fault on the part of the employee.

Part-time position. A position established on a year-round basis to work a regular work schedule of less than 40 hours per week.

Permanent status. Acquired by an employee who has been retained in their position after the completion of an initial or reinstatement county probationary period.

Probationary status. Acquired by an employee who has been certified and appointed, but who has not completed an initial or reinstatement county probationary period.

Seniority. Total county-paid hours in a specific classification and specific department excluding overtime and any extra help or temporary assignments.

1.  An employee, who works in a temporary assignment, receiving work-out-of-classification compensation, will continue to accrue seniority in their regular position/classification.

2.  Any hours spent on a board of supervisors approved work furlough program will be included in the employee's seniority and total county service hours.

3.  An employee, who is transferred to another department as a result of the transfer of a business unit or function, shall have all county-paid hours in the prior department moved forward into the new department if they remain in the same classification.

4.  An employee whose position is reclassified shall have all hours moved forward to the newly reclassified position. This provision does not apply to any employee who receives a promotion as defined in Section 3.08.1070 as follows:

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

Promotion. Advancement to a position of higher rank or grade where the salary grade difference between the current classification and the new classification involves an increase in pay of at least five percent or more. A change in salary grade resulting from a reclassification of an occupational group without regard to departmental lines and involving no substantial change in duties and qualifications is not considered a promotion.

Total county service. Total county-paid hours in any department from the date of hire to present, excluding overtime and extra help or temporary assignments.

1.  An employee who works in a temporary assignment receiving work-out-of-classification compensation will continue to accrue total county service.

2.  Employees who reinstate within a two-year period shall maintain their original date of hire. However they will not have any county-paid hours added to their seniority or county service during the period of separation.

3.  Any hours spent on a board of supervisors approved work furlough program will be included in the employee's seniority and total county service hours.

4.  An employee who is transferred to another department as a result of the transfer of a business unit or function shall have all county-paid hours in the prior department moved forward into the new department if they remain in the same classification.

5.  An employee whose position is reclassified shall have all hours moved forward to the newly reclassified position. This provision does not apply to any employee who receives a promotion as defined in Section 3.08.1070 as follows:

Promotion. Advancement to a position of higher rank or grade where the salary grade difference between the current classification and the new classification involves an increase in pay of at least five percent or more. A change in salary grade resulting from a reclassification of an occupational group without regard to departmental lines and involving no substantial change in duties and qualifications is not considered a promotion.

(Ord. 5549-B § 7, 2009; Ord. 6068-B § 1, 2021)

## § 3.08.1110.  Order of layoff—Departmental.

A.  In the event a layoff is necessary, the appointing authority, with the approval of the county executive, shall determine which class or classes will be affected. Flexibly staffed positions in classifications which include entry/journey, assistant/associate or I/II in the job title will be treated as one class for purposes of this provision. Prior to layoff of permanent employees, notice of release of employment shall first be given to employees in the following order by class or classes: extra help, provisional and probationary employees in the targeted department. The following sequence will be used to determine the order in which permanent employees in the department target class or classes will be laid off:

1.  Permanent employees whose last recorded overall performance rating was "unacceptable/needs improvement" in the performance evaluation done 90 days or more prior to the notice of layoff.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

2.  Permanent employees shall be laid off, by class, in the inverse order of seniority within a classification within a department. Permanent part-time employees' seniority will be prorated based on hours worked as per the definitions contained in Section 3.08.1105.

    a.  PPEO, PPOA, DDAA, Classified Management and Confidential Employees. Employees who voluntarily demote to a lower classification (not as part of a layoff and the layoff process) shall have their hours of service in the higher classification transferred to the lower classification for the purpose of calculating seniority for layoff purposes only.

3.  The least senior employee may choose to "bump" (as per Section 3.08.1120) to any class with the same or lower maximum salary in which the employee had previously served in a permanent status in the same department or in another county department of county service.

4.  Ties. In the event of a tie in seniority (above), the tie will be broken by ranking: (a) in inverse order of seniority within the department; then (b) in inverse order of seniority within the total county service. In the event the above methods do not break the tie, then the final decision will be made by lot.

(Prior code § 14.2110; Ord. 5478-B (Attach. A), 2007; Ord. 5549-B § 8, 2009; Ord. 5740-B § 14, 2014; Ord. 6159-B § 1, 2022; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025)

## § 3.08.1120.  Transfer or demotion in lieu of layoff.

A.  Deputy Sheriffs Unit. An employee so transferring or demoting may not displace any employee whose total county service exceeds that of the employee so transferring or demoting.

B.  PPEO, PPOA, DDAA, Confidential and Classified Management Employees. In lieu of being laid off, an employee may request to transfer or demote to any vacant class that is approved to be filled with the same or lower maximum salary for which the employee meets minimum qualifications as provided in Sections 3.08.370 and 3.08.380 subject to the approval of the director of human resources. An employee who voluntarily exercises the option contained in this section to demote to another position shall be eligible to be placed on a re-employment eligible list.

1.  To determine which employee(s) will be displaced by an employee who chooses to bump, the employee's total county service will be compared to the time in class of each person in that class; however, an employee may not be displaced by an employee with less total county service, if such displacement results in separation from county service of the senior employee.

2.  To submit an election to bump, an employee must notify his or her appointing authority in writing of such election not later than five working days after receiving the notice of layoff. Any employee displaced by bumping shall have the same rights afforded by this section. The salary of the employee who elected to bump shall be determined in accordance with Section 3.04.700 of these rules.

3.  An employee who exercises the right to bump shall be placed on the re-employment list

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

for the classification of the position(s) from which they were laid off.

4.  An employee who previously exercised the option to elect bumping rights, shall, at the employee's discretion, have the right thereafter to set aside such exercise of the bumping option within 30 calendar days and accept layoff.

5.  In the event that an employee is laid off as a result of privatization of a county function, the county will continue to pay the employee's current salary and benefits at the time of layoff, for two pay periods, without reducing accrued leave balances, to be considered severance pay. The severance pay will not apply if the employee chooses not to exercise bumping rights or is hired by the private contractor. Employees subject to layoff will be allowed to use accumulated leave time to conduct a job search.

(Prior code § 14.2115; Ord. 5058-B (Attach. 23), 2000; Ord. 5478-B (Attach. A), 2007; Ord. 5549-B § 9, 2009; Ord. 5991-B § 1, 2019; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025)

## § 3.08.1130.  Resignation.

A.  An employee wishing to leave the classified service in good standing, shall give 10 working days notice of such intention and shall file with his or her appointing authority on a written resignation stating the effective date and reasons for leaving. The 10 working days may be waived by the appointing authority if done so in writing to the director of human resources. Once a written resignation has been submitted by the employee, it becomes final and may not be withdrawn unless it is set aside by the commission under Section 3.08.280 of these rules. Failure to comply with this rule shall be entered on the service record of the employee and may be cause of denying future employment by the county.

B.  An employee wishing to leave unclassified service in good standing, shall give 10 working days' notice of such intention and shall file with their appointing authority on a written resignation stating the effective date and reasons for leaving. The 10 working days may be waived by the appointing authority if done so in writing to the director of human resources. Once a written resignation has been submitted by the employee, it becomes final and may not be withdrawn. Failure to comply with this rule shall be entered on the service record of the employee and may be cause of denying future employment by the county.

(Prior code § 14.2120; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019; Ord. 6259-B, 3/26/2024)

## § 3.08.1140.  Notice to director of human resources of resignation.

The resignation shall be forwarded to the director of human resources with a statement by the appointing authority as to the resigned employee's service performance and any pertinent information concerning the cause for resignation.

(Prior code § 14.2125; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

## § 3.08.1150.  Reinstatement following resignation or voluntary demotion.

Upon request of the appointing authority, the director of human resources may permit a permanent employee who has resigned, or voluntarily demoted, both in good standing and with a good record to be reinstated within five years to his or her former position, if vacant, or a vacant position in a comparable or lower class with equivalent minimum qualifications.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

A.  Employees granted reinstatement will not be placed higher than the same salary, in dollars, that was attained prior to resignation. On reinstatement, the new salary step will be that which most closely approximates the prior monthly salary; however, in any event, it will be no lower than Step I of the current salary grade. Upon the recommendation of the appointing authority, the county executive officer may adjust the step of an employee within the limits of the salary grade in the same manner as delineated under Section 3.04.680, Appointment at higher step. The new anniversary date for purposes of establishing eligibility for merit increases shall be the date of reinstatement.

Deputy Sheriff's Association, Safety Management, PCLEMA Represented, Management, Confidential and Unclassified Nonmanagement Employees. Employees granted reinstatement will not be placed higher than the same salary, in dollars, that was attained prior to resignation. On reinstatement, the new salary step will be that which most closely approximates the prior monthly base salary exclusive of additional pays; however, in any event, it will be no lower than Step 1 of the current salary grade. Upon the recommendation of the appointing authority the county executive officer may adjust the step of an employee within the limits of the salary grade in the same manner as delineated under Section 3.04.680, Appointment at higher step. The date of reinstatement will be used to establish when the employee meets the required paid hours, exclusive of any form of overtime, for purposes of step progression.

B.  Employees granted reinstatement will serve a probationary period associated with the class to which they are reinstated from the date of reinstatement regardless of the length of probation served during the prior service.

C.  Employees compensated for vacation under Section 3.04.500, Termination of employment, shall not be credited with any vacation upon reinstatement.

D.  Employees granted reinstatement after two years but less than five years shall be treated as new employees for the purpose of computing benefits to be accrued from and after the date of reinstatement. Employees hired from the lateral transfer/other agency list shall be treated as new employees for the purpose of computing benefits to be accrued from and after the date of hire regardless of their eligibility for reinstatement from their prior agency.

E.  Employees granted reinstatement within two years of separation shall be reinstated with the number of seniority hours and sick leave balance that had not been cashed out as of the date of separation and will accrue vacation leave at the same rate as the date of separation. With respect to longevity pay, non-DSA permanent employees shall be eligible to obtain longevity pay under Longevity Pay A or Longevity Pay B if reinstated within two years and the employee's last hire date was before November 1, 2019. The time accrued for longevity pay calculation starts anew upon reinstatement. If an employee who previously received longevity pay is reinstated, the longevity pay must be earned again with the requisite number of hours of service. If the employee's last hire date was after November 1, 2019, the employee shall not be eligible for longevity pay.

Employees granted reinstatement are not required to work six months before being eligible to use sick leave and vacation provided they worked the required six months prior to separation.

F.  All other benefits besides seniority, vacation, sick leave (e.g., health insurance, PERS

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

retirement) and longevity pay shall be subject to laws, rules or memoranda of understanding in effect on the date of reinstatement.

(Prior code § 14.2130; Ord. 5371-B, 2005; Ord. 5386-B, 2005; Ord. 5478-B (Attach. A), 2007; Ord. 5627-B § 15, 2010; Ord. 5991-B § 1, 2019; Ord. 5992-B § 1, 2019; Ord. 6213B § 1, 2023)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

Part 12
**Disciplinary Action**

### § 3.08.1160.  Discipline—Definitions.

"Appointing authority" means, for purposes of Chapter 3 only, the employee's department head or county executive.

"Discipline" means discharge (termination of employment), suspension without pay, demotion, or reduction of wages.

"Hearing body" means the civil service commission where disciplinary action is of a classified employee, and the board of supervisors where the employee is an unclassified employee, except as provided by Section 3.08.1270.
(Prior code § 14.2200; Ord. 5006-B, 1999; Ord. 5478-B (Attach. A), 2007; Ord. 5683-B § 45, 2012)

### § 3.08.1170.  Peace officer bill of rights.

Nothing under the provisions of Section 3.08.1160, et seq., shall be deemed to grant or deny any right or duty granted or denied by the peace officer bill of rights.
(Prior code § 14.2201; Ord. 5478-B (Attach. A), 2007)

### § 3.08.1180.  Power to discipline.

An appointing authority, for cause, may impose discipline on an employee.
(Prior code § 14.2205; Ord. 5478-B (Attach. A), 2007)

### § 3.08.1190.  Grounds for discipline.

The following shall be grounds for disciplinary action:

A.   Unauthorized absence;

B.   Conviction of a felony or conviction of a misdemeanor involving moral turpitude. A plea or verdict of guilty, or a conviction following a plea of nolo contendere, to a charge of a felony or any offense involving moral turpitude is deemed to be a conviction within the meaning of this section;

C.   Disorderly or immoral conduct;

D.   Dishonesty;

E.   Incompetence or inefficiency;

F.   Insubordination;

G.   The use of alcohol, drugs or narcotics, medications or any substance that impairs job performance and/or the safety of the employee and/or other persons;

H.   Neglect of duty other than incompetence or inefficiency or failure to meet reasonable work performance standards and requirements;

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

*Exhibit H In Support of Plaintiff's Second Amended Complaint, pg 068*

I.  Negligence of, or willful damage to, waste of, or unauthorized use or theft of, public supplies or equipment;

J.  Violation of civil service laws, county policies and/or procedures;

K.  Fraud in securing appointment;

L.  Failure to meet reasonable work performance standards and requirements;

M.  Discourteous treatment of the public or other employees;

N.  Improper political activity;

O.  Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to their agency or employment. The county shall be held to a standard of expectation which is no less than those standards of the state civil service system and applicable case law.

(Prior code § 14.2210; Ord. 5058-B (Attach. 24), 2000; Ord. 5089-B, 2001; Ord. 5478-B (Attach. A), 2007; Ord. 5577-B § 1, 2009; Ord. 5683-B § 46, 2012; Ord. 5700-B § 35, 2013; Ord. 6159-B § 1, 2022)

## § 3.08.1200.  Initiating discipline—Review by county executive officer.

A.  DSA, DDAA, PPOA, and PPEO Represented Employees, Classified Management and Confidential. Prior to initiating any discipline as hereinafter provided, an appointing authority considering discipline consisting of discharge, suspension without pay for 32 or more scheduled work hours, demotion or reduction of wages shall first review the matter with the county executive officer.

B.  PPEO, PPOA, and DDAA Represented Employees, Classified Management and Confidential. No appointing authority shall dismiss any disciplinary action or impose any discipline less than that recommended by the county executive officer, without the express authorization of the county executive officer.

C.  DSA Represented Employees. No appointing authority shall dismiss any disciplinary action or impose any discipline less than that recommended by the county executive officer without reviewing the matter with the county executive officer.

D.  The appointing authority may review minor proposed discipline with the county executive officer.

E.  Employees classified as exempt under the Fair Labor Standards Act shall not be disciplined by suspension without pay for less than a full work week, unless it is a penalty imposed in good faith for infractions of safety rules of major significance.

F.  PCLEMA Represented Employees. For employees represented by PCLEMA, the discipline procedure shall be as set forth in the Memorandum of Understanding between the county and PCLEMA.

(Prior code § 14.2213; Ord. 5044-B, 2000; Ord. 5478-B (Attach. A), 2007; Ord. 5577-B § 2, 2009; Ord. 5627-B § 16, 2010; Ord. 6213-B § 1, 2023; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

## § 3.08.1210.  Initiating discipline—Notice of proposed action.

Except as provided in Section 3.08.1250, disciplinary action shall be commenced by an appointing authority preparing a written notice of proposed action containing the following:

A.   The name of the employee.

B.   The section number or numbers of the rules or regulations violated constituting the charges.

C.   The reasons for which the disciplinary action is proposed to be taken on such charges.

D.   Any materials upon which the action is based.

E.   A statement informing the employee of his or her rights to respond, either orally or in writing, to the appointing authority within seven calendar days.

(Prior code § 14.2215; Ord. 5478-B (Attach. A), 2007; Ord. 5577-B § 3, 2009; Ord. 5627-B § 17, 2010)

## § 3.08.1220.  Service of notice of proposed action.

The notice of proposed action shall be personally served on the employee. The person serving this notice shall prepare an affidavit of service.

(Prior code § 14.2218; Ord. 5478-B (Attach. A), 2007)

## § 3.08.1230.  Filing charges.

At the expiration of the time specified in Section 3.08.1210(E), and after investigating and considering such responses, oral or written, as the employee may have made, the appointing authority may file, within 40 calendar days, a written order initiating discipline containing the following:

A.   The name of the employee.

B.   The section number or numbers of Placer County code, policies or procedures violated constituting the charges.

C.   The reasons for which the disciplinary action is proposed to be taken on such charges.

D.   Any materials upon which the action is based.

(Prior code § 14.2220; Ord. 5478-B (Attach. A), 2007; Ord. 5577-B § 4, 2009; Ord. 5627-B § 18, 2010; Ord. 6223-B, 10/17/2023)

## § 3.08.1240.  Filing and service of order.

Deputy Sheriff's Association, PCLEMA, DDAA, PPOA, and PPEO Represented Employees, Classified Management and Confidential. The appointing authority or designated representative shall personally serve one copy on the employee and send one copy to the director of human resources. No copy of such order may be placed in such employee's personnel file until the discipline has become effective as provided in Section 3.08.1260.

(Prior code § 14.2222; Ord. 5478-B (Attach. A), 2007; Ord. 5577-B § 5, 2009; Ord. 5627-B § 19, 2010; Ord. 5991-B § 1, 2019; Ord. 6213-B § 1, 2023; Ord. 6246-B, 1/23/2024; Ord.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

6303-B, 3/18/2025)

## § 3.08.1250.  Interim suspension (administrative leave) with pay.

DSA, PPEO, PCLEMA, DDAA, PPOA, Classified Management and Confidential Employees.

A.  Pending investigation by the appointing authority of charges against an employee, the appointing authority may, in writing, and with the approval of the county executive officer order the employee placed on immediate paid administrative leave of absence until charges are filed under Section 3.08.1230. Such interim suspension may only be made if the appointing authority and county executive officer determine it is in the best interest of the department or county to do so.

B.  If notice is served under Section 3.08.1210, the appointing authority may with county executive officer approval, in writing, order that such interim suspension continue until such discipline becomes effective as provided in Section 3.08.1260, or such charges are dismissed. Such further suspension may only be made if the appointing authority and the county executive officer determine that it is in the best interest of the department or county to do so.
(Prior code § 14.2225; Ord. 5478-B (Attach. A), 2007; Ord. 5577-B § 6, 2009; Ord. 5627-B § 20, 2010; Ord. 5683-B § 47, 2012; Ord. 5700-B § 36, 2013; Ord. 6213-B § 1, 2023; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025)

## § 3.08.1260.  Effective date of discipline.

The employee may file a request for an appeal hearing within 10 calendar days of being served, per Placer County Code, Chapter 3, Section 3.08.1280.

A.  PPEO, PCLEMA, DDAA, PPOA, Classified Management and Confidential. Discipline less than termination shall become effective 11 calendar days after the employee has been served with the order of discipline, whether or not an appeal has been filed by the employee.

B.  DSA Represented. Discipline not involving termination shall become effective when either the employee has not filed a request for appeal hearing (within the 10 calendar days as required under Section 3.08.1280) or at the conclusion of a hearing when findings have been made by the commission.

C.  Discipline that involves discharge shall become effective when the appointing authority has served the employee with a copy of the order and filed the original order with the human resources director pursuant to Section 3.08.1240.
(Prior code § 14.2228; Ord. 5478-B (Attach. A), 2007; Ord. 5577-B § 7, 2009; Ord. 5627-B § 21, 2010; Ord. 5683-B § 48, 2012; Ord. 5879-B § 8, 2017; Ord. 5885-B § 2, 2017; Ord. 6223-B, 10/17/2023; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025)

## § 3.08.1270.  Appeal—To whom made.

An appeal by an employee in the classified service shall be made to the civil service commission except that the director of human resources shall appeal to the board of supervisors.
(Prior code § 2230; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

*Exhibit H In Support of Plaintiff's Second Amended Complaint, pg 071*

## § 3.08.1280.  Appeal—Procedure.

PPEO, PPOA, DSA, PCLEMA, DDAA, Classified Management and Confidential Employees. An employee desiring to appeal shall file with the hearing body an answer admitting or denying, in whole or in part, the allegations of the order. Matters not admitted by the filed answer shall be deemed denied. Such answer must be filed within 10 calendar days of receipt of such order by such employee, or their representative, in care of the human resources director. The human resources director, or clerk to the commission, shall record the date it was filed and shall:

A.    Place one copy in the employee's personnel file;

B.    Place one copy on file for the civil service commission and counsel for the commission;

C.    Transmit one copy to the appointing authority;

D.    Transmit one copy to the county counsel's office;

E.    Transmit one copy to the county executive officer.
(Prior code § 14.2235; Ord. 5478-B (Attach. A), 2007; Ord. 5577-B § 8, 2009; Ord. 5627-B § 22, 2010; Ord. 5991-B § 1, 2019; Ord. 6159-B § 1, 2022; Ord. 6223-B, 10/17/2023; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025)

## § 3.08.1290.  Appeal—Hearing.

PPEO, PPOA, DSA, PCLEMA, DDAA, Classified Management and Confidential Employees.

A.    After the date the answer is filed with the hearing body, such body shall hold a hearing at a special meeting to determine whether such disciplinary action shall be sustained. The hearing shall be scheduled at the earliest possible date taking into consideration adequate time to schedule the parties, commissioners and counsel.

B.    Attorneys. Any party is entitled to be represented by legal counsel. The county counsel, or deputy, may participate in the examination of witnesses. The hearing body shall be represented by its counsel in the conduct of the hearing.

C.    Closed Session Hearings. Hearings shall be noticed for and held in closed session. All persons other than the parties, their attorneys and representatives, the civil service commission, the human resources director, the clerk to the civil service commission, the court reporter, the county counsel and deputies, and witnesses who are actually testifying, shall be excluded from closed session, unless the employee or their representative, files a written request for the hearing to be held in open session at least seven calendar days prior to the date of the hearing. After all evidence, testimony and argument has been submitted, the commission shall deliberate in closed session with only counsel for the commission and the human resources director present.

D.    Oaths. All testimony shall be given under oath. The hearing body or counsel to the hearing body shall have the authority to administer the oath.

E.    Evidence.

    1.    Order of Evidence. All facts must be established by a preponderance of the evidence.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

The appointing authority shall have the burden to prove the grounds for the disciplinary action and that the proposed sanction is appropriate. The appointing authority shall be required to present its case first. The hearing body and its counsel shall have the right to ask questions of the parties and of any witnesses and each party shall have the right to present evidence in rebuttal.

2. Relevancy. Only evidence which is relevant and material to the disciplinary action shall be admissible. Counsel for the hearing body shall rule as to the admissibility of evidence. The hearing body shall not be bound by the formal rules of evidence required of a formal court hearing.

F. Recording. All oral testimony received by the hearing body shall be recorded in some appropriate form.

G. Subpoenas. The hearing body shall have the power to compel the attendance of witnesses by subpoena. Any subpoena shall be prepared by the parties, or their representatives, and shall be signed by the clerk to the commission and the party requesting issuance.

(Prior code § 14.2240; Ord. 5478-B (Attach. A), 2007; Ord. 5577-B § 9, 2009; Ord. 5627-B § 23, 2010; Ord. 5991-B § 1, 2019; Ord. 6159-B § 1, 2022; Ord. 6213-B § 1, 2023; Ord. 6223-B, 10/17/2023; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025)

## § 3.08.1300.  Appeal—Findings.

PPEO, PPOA, DSA, PCLEMA, DDAA, Classified Management and Confidential Employees.

A. At the conclusion of the hearing, the hearing body may sustain, modify or reverse the discipline imposed by the appointing authority and may make such findings and enter such orders as it deems appropriate.

B. If the hearing body orders reinstatement of the employee the findings shall specify the effective date of the reinstatement. The hearing body shall provide written notification to the parties of its decision in a reasonable time following the conclusion of the hearing.

(Prior code § 14.2245; Ord. 5478-B (Attach. A), 2007; Ord. 5577-B § 10, 2009; Ord. 5627-B § 24, 2010; Ord. 6159-B § 1, 2022; Ord. 6213-B § 1, 2023; Ord. 6223-B, 10/17/2023; Ord. 6246-B, 1/23/2024; Ord. 6303-B, 3/18/2025)

## § 3.08.1310.  Exhausting administrative remedies.

Administrative remedies shall be exhausted when findings have been made by the hearing body.
(Prior code § 14.2250; Ord. 5478-B (Attach. A), 2007)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

Part 13
**Unclassified Service**

## § 3.08.1320.  Generally.

All positions in the unclassified service shall be governed by the provisions of this part.
(Prior code § 14.2300; Ord. 5478-B (Attach. A), 2007)

## § 3.08.1330.  Job specifications.

For each position in the unclassified service, job specifications shall be prepared by the human resources director and approved by the county executive officer.
(Prior code § 14.2305; Ord. 5478-B (Attach. A), 2007; Ord. 5876-B § 2, 2017)

## § 3.08.1340.  Appointments to be certified by county executive.

No person shall be appointed to, or employed in, any position until they have been certified by the county executive as being eligible for appointment to such position.
(Prior code § 14.2310; Ord. 5478-B (Attach. A), 2007; Ord. 6068-B § 1, 2021)

## § 3.08.1350.  Disciplinary action.

A.   When, in the opinion of either a department head or the county executive, an employee's conduct warrants disciplinary action, either the department head or the county executive may take disciplinary action following procedures set forth in subsection B of this section. However, unclassified employees shall not be disciplined by suspension without pay for less than a full workweek, unless it is a penalty imposed in good faith for infractions of safety rules of major significance.

B.   Except as otherwise provided, disciplinary action shall be commenced by a department head or the county executive by the preparation of a written notice of proposed action containing the following:

1.   The name of the employee;

2.   The reason or reasons for which the employee is being suspended;

3.   Any written materials upon which the action is based;

4.   A statement informing the employee of his or her right to respond, either orally or in writing, to the appointing authority within five working days.

C.   At the expiration of the five working days and after considering such responses, oral or written, as the employee may have made, the appointing authority may file a written order initiating discipline containing the following:

1.   The name of the employee;

2.   The section number or numbers of the rules or regulations violated constituting the charges and the disciplinary action proposed;

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

*Exhibit H In Support of Plaintiff's Second Amended Complaint, pg 074*

3.  The reasons for which the disciplinary action is proposed to be taken on such charges;

4.  Any materials upon which the action is based.

D.  The appointing authority shall personally serve one copy on the employee and send, not later than three working days after the date of the disciplinary action, one copy each to the county executive, county counsel and director of human resources.

E.  The action of the appointing authority or executive officer in issuing the written order shall be final.

F.  Nothing in this section shall be deemed to abridge the right of a department head or the county executive to discharge from the unclassified service any employee serving at the pleasure of his or her appointing authority.

(Prior code § 14.2315; Ord. 5044-B, 2000; Ord. 5478-B (Attach. A), 2007; Ord. 5991-B § 1, 2019)

## § 3.08.1360.  Work-out-of-class/temporary upgrade pay.

Unclassified Management and Unclassified Nonmanagement Employees. Work-out-of-class pay is distinguished from temporary upgrade pay in that the latter is for assignments in which the employee is performing the full scope of an upgraded classification, whereas work-out-of-class pay is in recognition of duties performed in addition to their regularly assigned duties. Work-out-of-class pay is not in recognition of workload volume but to the additional higher-level duties assigned that fall outside the employee's classification.

A.  Work-Out-of-Class Pay.

1.  In line with the principle that an employee assigned higher level job duties outside the scope of the current classification should receive additional compensation in recognition of these additional duties, an employee may be eligible for work-out-of-class pay as set forth below.

2.  Work-out-of-class requests shall be approved by the appointing authority and submitted to the human resources department for verification of eligibility and/or approval.

3.  A work-out-of-class assignment for training purposes may be excluded from work-out-of-class compensation provided such training purposes can be adequately demonstrated.

4.  No work-out-of-class compensation will be considered or paid for assignments of two workdays or less.

5.  Additional compensation for working out-of-class shall be five percent of the employee's base hourly rate, plus longevity if applicable, and start at the beginning of the pay period, unless approved by the human resources director or designee.

6.  Work-out-of-class pay may be approved by the appointing authority for up to 14 calendar days; from 15 calendar days up to and including 180 calendar days requires approval of the human resources director. Any extension beyond 180 calendar days shall require the concurrence of the county executive officer.

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

*Exhibit H In Support of Plaintiff's Second Amended Complaint, pg 075*

7. The human resources department shall hear any contention that an employee is working out-of-class. In the event of an adverse decision by the human resources department, the employee concerned and/or their employee representative shall have the right to appeal such decision to the civil service commission.

B. Temporary Upgrade Pay.

1. Employees that are required by their appointing authority to work in an upgraded classification for a limited duration shall be eligible for temporary upgrade pay.

2. The human resources department must certify prior to the assignment that the duties the individual employee will be working for a limited duration will be the full scope of the duties of the upgraded classification and that the employee meets the minimum qualifications of the upgraded classification.

3. Employees will be eligible for temporary upgrade pay when work conditions warrant.

4. A request for a temporary upgrade assignment shall be made by the appointing authority to the human resources department:

    a. When the position is vacant due to an absence of the incumbent; or

    b. When workloads necessitate the assignment of employees to supplement a specific position or perform new assignments.

5. A temporary upgrade assignment for training purposes may be excluded from temporary upgrade pay, provided such training purposes can be adequately demonstrated.

6. Temporary upgrade pay up to and including 180 calendar days requires approval by the director of human resources or designee, and durations in excess of 180 calendar days shall require the concurrence of the county executive officer.

7. No temporary upgrade pay will be considered or paid for assignments of 14 calendar days or less.

8. Temporary upgrade pay shall be no less than a minimum of five percent. The pay shall fall on the closest step in the upgraded classification that results in at least a five percent increase and shall start at the beginning of a pay period, unless approved by the human resources director or designee.

9. The human resources department shall hear any contention that an employee is working in a temporary upgraded assignment. In the event of an adverse decision by the human resources department, the employee concerned and/or their employee representative shall have the right to appeal such decision to the civil service commission.

(Ord. 5876-B § 1, 2017; Ord. 6161-B § 1, 2022; Ord. 6213-B § 1, 2023; Ord. 6259-B, 3/26/2024)

Downloaded from https://ecode360.com/PL4987 on 2025-08-06

# Exhibit I

# In Support of Plaintiff's Second Amended Complaint

*Exhibit I In Support of Plaintiff's Second Amended Complaint, pg 001*

**WILLIAM M. WRIGHT (SBN 95651)**
PO Box 347
Rescue, CA 95672
Telephone:   (530) 306-0217
Email: billofwrights@sbcglobal.net

Counsel for
Placer County Civil Service Commission

## BEFORE THE PLACER COUNTY CIVIL SERVICE COMMISSION

| | |
|---|---|
| JON PERSINGER, | ) |
| | ) **TENTATIVE RULING ON THE** |
| Appellant, | ) **ADMISSIBILITY OF EVIDENCE** |
| | ) |
| v. | ) |
| | ) |
| COUNTY OF PLACER, | ) |
| | ) |
| Respondent | ) |
| | ) |
| _____ | ) |

**I**

**BACKGROUND**

This case involves an appeal of disciplinary action taken by Placer County Sheriff Wayne Woo against Deputy Jon Persinger. The Order of Discipline was appealed to the Placer County Civil Service Commission pursuant to Placer County Code Section 3.08.1280. Under Section 3.08.1290(E) of the Code, counsel for the Commission has the authority to rule on the admissibility of evidence in the hearing.

In preparation for the Civil Service Commission hearing that was scheduled for April 1-3 2024, prehearing conferences were held to discuss procedure and evidentiary issues. Several objections to the evidence proposed to be submitted by the County were voiced by Joshua Olander, counsel for the Appellant at a prehearing conference held on March 15, 2024. The parties agreed to a briefing schedule and to continue the prehearing conference to March 27, 2024, to further address the evidentiary issues. Counsel for the Commission indicated he would

1
TENTATIVE RULING ON THE ADMISSIBILITY OF EVIDENCE

*Exhibit I In Support of Plaintiff's Second Amended Complaint, pg 002*

provide a tentative ruling on the evidentiary issues at the prehearing conference to assist counsel in the preparation of their case and the organization of the evidence binders.

On March 20, 2024, Mr. Olander submitted a Prehearing Brief and Motion to Suppress Evidence pursuant to Penal Code Section 1538.5. On March 26, 2024, County Counsel submitted a Pre-hearing Brief and Response to the Motion to Suppress. Brett Holt, counsel for Placer County, Joshua Olander, counsel for Jon Persinger and William Wright, counsel for the Placer County Civil Service Commission were present at the March 27, 2024, prehearing conference.

## II

## THE MOTION TO SUPPRESS EVIDENCE AND TENTATIVE RULING

The Motion to Suppress sought to exclude various text messages and related information obtained by the County pursuant to a search warrant issued by the Honorable Trisha Hirashima to the business known as TextNow, Inc. as set forth in Exhibit E to Appellant's Motion to Suppress Evidence and under a search warrant issued by the Honorable Jeffrey Penney to allow the search of several electronic devices as set forth in Exhibit F to Appellant's Motion to Suppress Evidence. The search warrants and the supporting affidavits sought to obtain additional evidence in support of a felony being investigated by the Sheriff's Department and the District Attorney. The supporting affidavits did not seek evidence in support of the personnel matter currently pending before the Civil Service Commission and the warrants issued did not expressly authorize the seized evidence to be used for such purposes. Although the record is not clear, it appears that the warrant and supporting affidavit issued by Judge Hirashima are still under seal. The sealing order for the warrant and the supporting affidavit issued by Judge Penney appears to have expired.

The warrants were issued under the parameters and restrictions set forth in the California Electronic Communications Privacy Act ("ECPA") set forth in Penal Code Section 1546 et seq. The ECPA limits the disclosure of private electronic communications such as text messages except under limited circumstances. A warrant is one of the listed exceptions to the limitations on the disclosure of this information.

Appellant primarily relies upon provisions in the ECPA and the holding set forth in *Saunders v. Superior Court* (2017) 12 Cal.App.5th Supp.1 in support of the motion to suppress the

introduction of the data seized under the warrants in this hearing.  In rebuttal, the County relies upon case law holding that evidence seized unlawfully under the Fourth Amendment and subject to the exclusionary rule in a criminal proceeding is nevertheless admissible in administrative proceedings.

We note initially that a motion to suppress pursuant to Penal Code Section 1538.5 is not the proper vehicle to exclude evidence in an administrative hearing.  Although Penal Code Section 1546.4 of the ECPA specifically allows a motion to suppress to be brought pursuant to Penal Code Section 1538.5 for any "hearing or proceeding", we assume that such a motion must be filed in Superior Court since the entire statutory scheme for motions to suppress under Penal Code Section 1538.5 vests jurisdiction with the Superior Court.  Indeed, if the motion was filed in Superior Court, the issue before us would have been resolved.  However, if we deny the motion on this procedural technicality, we are still left with the underlying issue of whether evidence seized pursuant to a criminal warrant can be considered by the Civil Service Commission when the warrant itself may still be under seal and the evidence seized under the warrant has not yet been submitted in criminal court.  Thus, we will treat the motion to suppress as a motion in limine to exclude evidence.

There is limited authority pertaining to the use of evidence seized under a criminal warrant in an administrative proceeding.  Certainly, if the evidence has already been submitted in the criminal case, then the evidence may be considered in an administrative hearing.  But does an administrative tribunal have the authority to consider evidence seized pursuant to a criminal warrant if the warrant itself is under seal and the evidence has not been presented in the criminal proceeding?  The issue is even more narrowly focused here where the evidence seized is also protected under the ECPA.

The case law cited by the County establishing the right to introduce evidence seized in violation of the Fourth amendment in an administrative hearing is not instructive on the narrow issue before us.  Here, the evidence was lawfully seized pursuant to a criminal warrant.  The issue then becomes who has jurisdiction over this information and who has the authority to allow the evidence to be used outside of the criminal arena in advance of the criminal trial.  On this issue *Saunders*, *supra*, is illuminating and instructs us that the evidence is held under the jurisdiction of the Court and that the Court controls the disposition of the evidence seized under the warrant.

*Saunders* was decided against the backdrop of a Public Records Act request by a newspaper

to access text messages of a custodial officer seized pursuant to a warrant when the criminal case had already been resolved by plea and the text messages were not introduced at trial.  The Court carefully distinguished between the warrant itself and the evidence seized pursuant to the warrant and held as follows:

> Saunders sought writ relief in prohibition or mandate in the appellate division, and we stayed the trial court's release order and issued an order to show cause. After full briefing and oral argument, we conclude that the trial court's order releasing Saunders's private cell phone records — obtained through execution of a search warrant on a third party service provider — to the Mercury News was an abuse of discretion. For one thing, even acknowledging policies promoting public access to court or judicial records, property or things seized under a search warrant are not publicly accessible, unlike warrant materials — the warrant, supporting probable-cause affidavit, and return — under Penal Code section 1534, subdivision (a). Moreover, the seized records, in their present state and in this procedural context, are not court or judicial records, and there is no associated public right of access, whether rooted in the federal or state Constitution, statutory authorities, or the common law, to such private property or things seized under a search warrant and constructively possessed by the court pending a criminal prosecution, when those things are never offered in evidence or otherwise used in a court proceeding. And even if the court acted only through its inherent power to control the disposition of the seized records regardless of their status as a court or judicial record, their release at this procedural juncture before they were ever offered in evidence or otherwise used in the criminal proceeding, would cause irreparable harm to Saunders's constitutional right to privacy. We accordingly grant writ relief. (*Saunders, supra*, 12 Cal.App.5[th] Supp.1, 5-6).

The Court added:

> The records, seized under a search warrant, were always subject to the control of the court, not the County, even before the court had actual possession of them. The County could thus not have simply released the records or made them available in response to a CPRA request. As observed by the Court of Appeal in *People v. Superior Court (Laff)* (2001) 25 Cal.4th 703, 713 [107 Cal.Rptr.2d 323, 23 P.3d 563] (Laff), "[l]aw enforcement officials who seize property pursuant to a warrant issued by the court do so on behalf of the court, which has authority pursuant to Penal Code section 1536 to control the disposition of the property." (*Id*. at p.12).

We thus feel compelled to restrict the introduction of the evidence seized pursuant to the warrants in the hearing before the Civil Service Commission absent authorization from the Court that controls the disposition of the evidence.

The other issue set forth in the motion to suppress involved the admissibility of video footage taken by the alleged victim of deputy Persinger.  Under the authority cited by the County in its response brief and based upon the fact that Mr. Persinger was in uniform at the time the video was taken, we believe there was not an objective, reasonable expectation of privacy by Mr.

4

TENTATIVE RULING ON THE ADMISSIBILITY OF EVIDENCE

*Exhibit I In Support of Plaintiff's Second Amended Complaint, pg 005*

1  Persinger and that the evidence should be allowed into evidence.

2      Both of the above rulings are tentative in nature and subject to change if additional authority

3  is submitted by the parties.  Based upon the tentative ruling restricting the use of the evidence

4  seized under the warrants, the County requested a continuance of the hearing to allow time to

5  seek a court order authorizing the use of the evidence in the administrative hearing.  The motion

6  was granted and the hearing was continued off calendar.

7

8

9  Dated:  March 31, 2024                                **WRIGHT LAW OFFICE**

10

11                                          _____
                                                *Wm M Wright*

12                                          WILLIAM M. WRIGHT

13                                  Counsel for the Placer County Civil Service Commission

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TENTATIVE RULING ON THE ADMISSIBILITY OF EVIDENCE

*Exhibit I In Support of Plaintiff's Second Amended Complaint, pg 006*

# Exhibit J

# In Support of Plaintiff's Second Amended Complaint

STATE OF CALIFORNIA

DEPARTMENT OF INDUSTRIAL RELATIONS

DIVISION OF WORKERS' COMPENSATION

JON PERSINGER,                              CASE NOS. ADJ 17450511(M)
                                                      ADJ 17450513
                    Applicant,

        vs.

COUNTY OF PLACER, PSI, administered
By ATHENS ADMNISTRATORS,

                    Defendant(s).
_____/

--oOo--

PARTIAL TRANSCRIPT OF PROCEEDINGS

OCTOBER 7, 2024 - 10:00 a.m.

BEFORE DARCY KOSTA
WORKERS' COMPENSATION JUDGE

--oOo--

CERTIFIED COPY


RECEIVED
DEC 2 3 2024
By

Reported by Susan Lanoza, Hearing Reporter

*Exhibit J In Support of Plaintiff's Second Amended Complaint, pg 002*

```
 1                    A P P E A R A N C E S

 2

 3
       FOR THE APPLICANT:
 4

 5            BRADLEY LAW
              3800 Watt Avenue, Suite 155
 6            Sacramento, CA  95821
              By:  Shane Bradley, Esq.
 7

 8
       FOR THE DEFENDANT:
 9

10            HANNA, BROPHY, MacLEAN, McLEAN & JENSEN
              2882 Prospect Park Drive
11            Rancho Cordova, CA 95670
              By:  Jeannette Herrera, Esq.
12

13
       ALSO PRESENT:
14

15            Helaina Wilkenson, Employer Representative

16

17

18                                        .

19

20

21

22

23

24

25
```

*Exhibit J In Support of Plaintiff's Second Amended Complaint, pg 003*

```
1                        I N D E X

2     WITNESS                                    PAGE

3

4     Lieutenant Richard Gray

5

6           Examination by Ms. Herrera .............    4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

STATE OF CALIFORNIA
DIVISION OF WORKERS' COMPENSATION                    3

*Exhibit J In Support of Plaintiff's Second Amended Complaint, pg 004*

1          Sacramento, California - October 7, 2024

2              (*From the opening of the record to*

3              *this point, transcription is omitted.*)

4                          --oOo--

5                  **LIEUTENANT RICHARD GRAY**

6     Called as a witness, was sworn and testified as follows:

7                  **DIRECT EXAMINATION**

8     BY MS. HERRERA:

9          Q.  Lieutenant Gray, thank you for being here.  I'll keep

10    this nice and short.  Very briefly, can you tell us where you

11    currently work and your brief history in law enforcement?

12         A.  Certainly.  So I'm currently employed by Placer County

13    Sheriff's Office.  I've been in law enforcement for over 22

14    years.  Started off with the City of Pacifica in 2002, I

15    lateralled to Placer County in 2007, briefly worked a number of

16    different specialty assignments, including a special

17    investigations spot, where I was a computer forensic examiner.

18    I worked with the Sacramento High Tech Task Force.

19         I moved from that position to our newly formed

20    professional standards unit, and at that time the professional

21    standards unit was responsible for all internal affairs

22    investigations within our agency.  Prior to that, each division

23    was responsible for doing its own internal affairs.  So we had

24    a number of tasks in front of us to get everything to become

25    standardized within our agency.

*Exhibit J In Support of Plaintiff's Second Amended Complaint, pg 005*

1      I was in that position for a fairly short period of time

2   before I promoted to sergeant where I spent time in one of our

3   two jails, primarily as one of the administrative sergeants for

4   that jail.  I moved out of the jail for a year on patrol, and

5   then I promoted to lieutenant about 2 years ago and was

6   assigned to our support services division.  There is four units

7   that I currently manage, one of which being the professional

8   standards unit.  Professional standards currently is

9   responsible for all of the background of employees' policy

10  reviews, as well as high level internal affairs investigations,

11  and anything involving officer-involved shootings or in-custody

12  deaths.

13      Q.  Lieutenant Gray, I want to go ahead and show you

14  Defendant's Exhibit D, which is an Order of Discipline.

15      Your Honor, may I?

16      THE COURT:  Yeah, you can go ahead.

17      Q.  BY MS. HERRERA:  Lieutenant Gray, do you recognize

18  this document?

19      A.  Yes, I do.

20      Q.  Can you please tell the Court what this document is?

21      A.  The Order of Discipline?  This particular document was

22  generated by our undersheriff's office and had to do with the

23  discipline that was being issued to Mr. Persinger as a result

24  of the internal affairs investigation that was completed

25  against him.

1    Q.  Have you previously read this document in its

2  entirety?

3    A.  I have.

4    Q.  Is there anything in this document that you believe to

5  be incorrect or misleading?

6    A.  No.

7    Q.  Is this document a true and accurate representation of

8  the information or events as it describes?

9    A.  Yes.

10    Q.  I'll go ahead and take that document back.  I only

11  have one more line of questioning.  I want to keep this short.

12    Very briefly, can you tell me about the first time you

13  heard about the allegations against Mr. Persinger and the

14  general investigation that incurred, including how it turned

15  into a full investigation?

16    A.  Certainly.  I had heard about this, the initial

17  allegation -- so one of the other responsibilities I have with

18  our agency is I have a very close working relationship with

19  risk management and county counsel having anything to do with

20  lawsuits or torts that are brought against our agency.

21    I was actually on vacation and was traveling out of state

22  when I first was made aware of this case.  My plane landed.  I

23  took my cell phone off of airplane mode and was instantly

24  barraged by a bunch of different messages from my boss, which

25  started the communication then.

1    In short, we were notified by a confidential victim via

2   tort that there was an allegation of rape under color of

3   authority by Mr. Persinger, and the details were specific but

4   not terribly specific, and there was not really enough for us

5   to believe one way or the other whether it occurred or didn't

6   occur.  So there was some steps that we had to take to

7   investigate the basic foundation of what the complaint was.

8    She gave us -- the confidential victim gave us a date and

9   time initially and -- all of our patrol vehicles are equipped

10  with GPS location devices, and those GPS location devices

11  record -- track and record where those vehicles are roughly.

12   So the initial investigation, what we did to try and

13  confirm what was being said within the tort was -- we did a --

14  first, we tried to determine if Mr. Persinger was actually

15  working on the day that she claimed, which he was, and he was

16  assigned to the beats or the patrol jurisdiction where she

17  resided, and we then did a search of the vehicle GPS -- we call

18  it AVL -- search of the vehicle location during the rough time

19  period where she said that this rape under color of authority

20  occurred.

21   And the location of Mr. Persinger's vehicle came back

22  within very close proximity to the confidential victim's

23  address.  So that changed the way that we started looking at

24  the investigation from being -- because we get all sorts of

25  radical claims by the general public that -- quite a large

STATE OF CALIFORNIA
DIVISION OF WORKERS' COMPENSATION                    7

*Exhibit J In Support of Plaintiff's Second Amended Complaint, pg 008*

1    number of them -- we're able to dismiss right on its face.

2    This was not one of those.

3        The more we started looking into the details behind her

4    tort and the information she had in the tort, the more it

5    appeared as though her claim might have been based on some

6    fact, and so that is what really propelled us down the path

7    that we took.

8        Now, because of the complaint, the tort -- so it's a

9    lawsuit, but we took it as a complaint, which is standard --

10   because of the nature of her complaint, it really was critical

11   that we dove into this quickly.  It was criminal in nature, and

12   the way that an investigation like this will run is -- because

13   it's criminal, the criminal investigators now run the

14   investigation.  The internal affairs investigation trails the

15   criminal side.

16       We are allowed to get everything that the criminal side

17   obtains, and generally speaking they don't get anything that we

18   find on the administrative investigative side, but there are

19   some exceptions.  So the criminal side started looking into the

20   basis behind the tort, found a number of different things, and

21   that led into the investigation.  So it changed what -- that

22   initial part, we call that a -- now my brain goes blank.  Oh,

23   I'm sorry.

24       So that initial part of the investigation, where we're

25   trying to figure everything out, we call that an inquiry versus

*Exhibit J In Support of Plaintiff's Second Amended Complaint, pg 009*

1    a full internal affairs investigation.  So an inquiry is where

2    we do some fact finding to determine whether or not the basis

3    behind the allegation, there is any merit to it.  And if there

4    is not, then it stays an inquiry and it's dismissed.  If

5    there's any merit to it then --

6                    (Reporter asked for clarification.)

7        I apologize if I'm talking too fast.  So if there is any

8    merit based on what we found in the inquiry, then it graduates

9    -- if you want to call that -- to a full internal affairs

10   investigation.

11       Q.  One last question, and you alluded to this, this

12   turned into a full investigation, correct?

13       A.  Correct.

14       MS. HERRERA:  Thank you, Lieutenant Gray.  No further

15   questions.

16               (*From this point to the close of the record*

17                *transcription is omitted.*)

18          (Thereupon the proceeding concluded at 10:27 a.m.)

19

20                           --oOo--

21

22

23

24

25

```
 1   STATE OF CALIFORNIA,     )

 2                            ) ss.

 3   COUNTY OF SACRAMENTO.     )

 4

 5

 6          I, SUSAN LANOZA, Official Reporter of the State of

 7   California, do hereby certify:

 8          That I am an Official Shorthand Reporter of the State

 9   of California; that the foregoing proceedings were taken before

10   me in machine shorthand; that the said proceedings were

11   thereafter, under my direction, transcribed into computer-aided

12   transcription, and that the foregoing constitutes a full, true

13   and correct transcript of the proceedings had.

14

15

16

17                                             12/18/24

18          SUSAN LANOZA, Hearing Reporter

19

20

21

22

23

24

25
```

STATE OF CALIFORNIA
DIVISION OF WORKERS' COMPENSATION                    10

*Exhibit J In Support of Plaintiff's Second Amended Complaint, pg 011*

# Exhibit K

# In Support of Plaintiff's Second Amended Complaint



**Placer County Sheriff's Office**

# Administrative Investigations

**A Guide for Investigators**

June 1, 2018



# Contents

BASIC ADMINSTRATIVE INVESTIGATION PRINCIPALS .......................................................... 3
    Your Role as Investigator ...................................................................................................... 3
    The Administrative Investigation Process ............................................................................. 4
THE ADMINISTRATIVE INVESTIGATION ............................................................................... 5
    The Criminal and Administrative Investigation ...................................................................... 5
    Employee Misconduct ........................................................................................................... 5
    Timeliness ............................................................................................................................. 6
INVESTIGATION PROCESS ..................................................................................................... 7
    Sources of Evidence ............................................................................................................. 8
    The Use of Force Review Board ........................................................................................... 8
    Chemical Tests ..................................................................................................................... 9
    Administrative Searches ....................................................................................................... 9
    Forms and Notifications ........................................................................................................ 9
        Administrative Investigation Advisement ......................................................................... 9
        Witness Notification ....................................................................................................... 10
        Miranda/Lybarger Form ................................................................................................. 10
        Recorded Interview Admonishment ............................................................................... 10
        Video Evidence Review Admonition ............................................................................... 10
*BRADY* AND *PITCHESS* ........................................................................................................ 11
    *Brady* ................................................................................................................................. 11
    *Pitchess* Motions ............................................................................................................... 11
        Federal Law ................................................................................................................... 12
THE ADMINISTRATIVE INTERVIEW ...................................................................................... 12
    *Weingarten* ........................................................................................................................ 13
AS YOU NEAR COMPLETION OF THE INVESTIGATION ...................................................... 13
THE INVESTIGATIVE REPORT .............................................................................................. 13
        Background .................................................................................................................... 14
        Summary of Incident ...................................................................................................... 14
        Investigation Timeline .................................................................................................... 14
        Applicable Authorities .................................................................................................... 14
        Analysis ......................................................................................................................... 14
        Summary ....................................................................................................................... 15
        Attachments .................................................................................................................. 15
        Findings ......................................................................................................................... 15
        Recommendations ......................................................................................................... 16
IAPRO AND BLUETEAM USE ................................................................................................ 17
    IAPro and BlueTeam Basics .............................................................................................. 17
        Attachment Details ........................................................................................................ 17
        How to Attach Files in IAPro .......................................................................................... 17
    BlueTeam ........................................................................................................................... 19
ADDENDUM A      *CONDUCT 8, "PERSONNEL INVESTIGATION"* ....................................... 21
ADDENDUM B      *PEACE OFFICER BILL OF RIGHTS AND ASSCOATED LAW* ...................... 31
ADDENDUM C      *SELECTED POLICY VIOLATIONS AND CASE LAW* ................................... 42
ADDENDUM D      *ADMINISTRATIVE INVESTIGATION ADVISEMENT* ..................................... 49

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 003*



Placer County Sheriff's Office
Administrative Investigation Manual

ADDENDUM E      *WITNESS NOTIFICATION* ........................................................................ 54
ADDENDUM F      *MIRANDA/LYBARGER* ............................................................................ 55
ADDENDUM G      *RECORDED INTERVIEW ADMONISHMENT* .................................. 56
ADDENDUM H      *VIDEO EVIDENCE REVIEW ADMONITION* .................................... 58
ADDENDUM I       *EXAMPLE ADMINISTRATIVE INVESTIGATION* .............................. 59
ADDENDUM J      *RESOURCES* ......................................................................................... 66

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 004*

# BASIC ADMINSTRATIVE INVESTIGATION PRINCIPALS

Seeking the ***truth of the matter*** and maintaining the ***integrity of the investigation*** shall always be your mission when conducting an administrative investigation.

> CALIFORNIA SUPREME COURT
>
> [W]hen allegations of misconduct are raised, it is essential that the department conduct a *prompt, thorough* and *fair* investigation.
>
> Pasadena Police Officers' Association v. City of Pasadena,
> 51 Cal. 3d 564 (1990)

## YOUR ROLE AS INVESTIGATOR

As the investigating officer of an administrative investigation, you are responsible for completing a prompt, thorough, and impartial investigation upon which appropriate recommendations can be made. Your role is the most important of the administrative investigation and disciplinary process. You are facilitating either the prompt vindication of an employee's actions, or the foundation for disciplinary action against employee misconduct.

Your own attitude and character exhibited during an investigation helps maintain the integrity of the process. This means that you must act as a fact-finder, not a head-hunter. Do not investigate to validate your initial hypothesis of guilt or innocence. Instead, focus on the facts and the thoroughness of your investigation.

- Were all witnesses interviewed?
- Was all evidence available or included?
- Were investigative procedures followed?

As a supervisor, you are already responsible for ensuring that quality service is provided by those employees assigned to you. There is an expectation that you demonstrate leadership. Be proactive; try to anticipate adverse situations and prevent bad behavior before it is too late.

As an investigating officer of possible misconduct, expand on your supervisory role. Become very familiar with our own procedures and the law pertaining to the administrative investigation process. Act with integrity and accountability, and leave no room for anyone to question or doubt your fairness and thoroughness.

If you have any questions regarding the Administrative Investigation process or need any assistance during the course of your investigation, the Professional Standards Unit may be contacted for support.

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 005*



# THE ADMINISTRATIVE INVESTIGATION PROCESS

**Internal Affairs Investigation**

- *GENERAL ORDERS: Conduct 8 - Personnel Investigations*
- May be assigned to Professional Standards Unit Detective, Sworn Sergeant, Non-Sworn Sergeant, Professional Staff Manager, or as assigned by the Sheriff.
- Should be concluded within 90 days
- Fact finder only.

**FINDINGS**

- Division Lieutenant
- *GENERAL ORDERS: Conduct 8, Section VI. § A. Internal Affairs Findings* Examine each allegation seperately and determine a finding on each allegation:
  - Unfounded
  - Exonerated
  - Not sustained
  - Sustained
  - Frivolous

**RECOMMENDATIONS**

- Captains' Panel
- Collectively make discipline or other recommendations

**SHERIFF REVIEW**

- *GENERAL ORDERS: Conduct 8, Section VI. § A. Internal Affairs Findings:* Immediately after completion of the investigation, the written report and case file, if appropriate, shall be reviewed by the Undersheriff. He shall make the final determination whether any or all of the allegations of the complaint are sustained or not sustained.
- *GENERAL ORDERS: Conduct 8, Section VI. § B. Disciplinary Notifications:* Once approved by the Sheriff, disciplinary action will proceed. Informal discipline consisting of training, informal counseling, documented oral counseling, and letters of reprimand can be imposed immediately.

**Skelly Hearing**

- A Skelly Hearing is a hearing which must be provided to a permanent employee prior to the imposition of discipline.
- Heard by a Captain who did not participate in the Captains' Panel.

**Civil Service Hearing**

- County of Placer Civil Service Commission website. https://www.placer.ca.gov/bos/committees-and-commissions/civil-service-commission

4

# THE ADMINISTRATIVE INVESTIGATION

The policy and general guidelines for personnel investigations can be found in the General Orders Manual, **Conduct 8, "Personnel Investigation**," which is included in this Manual (Addendum A).

## THE CRIMINAL AND ADMINISTRATIVE INVESTIGATION

Per Conduct 8, "cases involving allegations of criminal conduct will first be investigated as criminal matters. Internal Affairs investigators will conduct concurrent investigations and obtain copies of all criminal reports for use in the Administrative Investigation."

- **Everything** in the criminal investigation can be used in the administrative investigation.
- **Nothing** obtained by a compelled statement in an administrative investigation, or evidence obtained due to information learned during a compelled statement in an administrative investigation may be used in the criminal investigation.

## EMPLOYEE MISCONDUCT

- Determine the nature of allegations, i.e. policy violations, criminal conduct; in most cases, one of the twelve following categories of complaint is used:
  - Unlawful Arrest
  - Unlawful Search
  - Unnecessary Force
  - Rude Conduct (abusive, threatening, profanity, poor attitude, etc., while on duty)
  - Discrimination (sexual, racial, etc.)
  - Excessive Police Service (harassment, providing confidential information, etc.)
  - Improper Procedure (violation of County policy, General Orders Manual)
  - Delay in Response/Slow Response
  - Failure to Take Action
  - Unofficerlike Conduct (off-duty behavior, violation of the law, drug/alcohol use, misuse of County property, gratuities, bribes, abuse of authority, etc.)
  - Dishonesty
  - Missing/Damaged Property
- Determine the specific rule/regulation which may have been violated. (See Addendum C for a list of common policy violations.)
  - General Orders
  - Field Operations Manual
  - Corrections Manual
  - County Policy
  - Case Law
- Notice/forewarning/foreknowledge: Did the employee know or have reason to know that if he/she engaged in the alleged conduct discipline could result?
  - Obtain the employee's policy review  (GO receipt) and training records
  - On-duty vs. off-duty conduct



> **OFF-DUTY MISCONDUCT**
>
> "Courts have long recognized that, while the off-duty conduct of employees is generally of no legal consequence to their employers, the public expects peace officers to be 'above suspicion of violation of the very laws [they are] sworn…to enforce.'…Accordingly, discipline for lawful off-duty conduct could be imposed if the conduct tended to impair the public's trust in its police department."
>
> Pasadena Police Officers' Association v. City of Pasadena,
> 51 Cal.3d 564,568 (1990)

## TIMELINESS

- Sheriff's Office policy for completion of an administrative investigation is 90 days from the date the complaint is received, for most cases. If the investigation will require additional time, written updates to the Undersheriff including the reason for delay and anticipated completion date are required.
- One-year statute of limitations

> **GOVERNMENT CODE 3304(D)**
>
> Except as provided in this subdivision and subdivision (g), no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct.

- Exceptions – the one-year statute does not apply if:
  - There is an ongoing criminal investigation
  - There is a waiver
  - The investigation is multi-jurisdictional
  - The investigation involves more than one employee
  - The employee is incapacitated or unavailable
  - The employee is named in a civil suit
  - The complainant is a criminal defendant
  - The allegation involves workers' comp fraud



# INVESTIGATION PROCESS

Investigative tasks usually fall into the steps listed below. Remember that the legal civil standard is a preponderance of the evidence in administrative investigations.

- Is this a formal (Citizen Complaint or Administrative Investigation) or informal complaint (Inquiry)?
    - Determined by command staff prior/when assigned to you
- Determine the subject(s) and witnesses involved in the incident.
    - Employees facing possible disciplinary exposure as a result of the investigation should be considered subjects.
- Review the allegations.
    - What rules or regulations were violated?
- Identify the need for further interviews.
    - Are they complete, have witnesses been contacted?
    - Is an area canvas needed to locate additional witnesses?
    - All known witnesses (civilian and staff members) should be interviewed prior to interviewing the subject officer.
- Collect all evidence. (See Sources of Evidence below)
- Obtain background data regarding complainant
    - Criminal history
    - Prior litigations/complaints
    - Local records
    - Social media
- Obtain background data regarding officer
    - Prior complaints (May be pulled by management as part of findings/recommendations)
    - Personnel file
    - Evaluations
- Notification to subject employees (See Forms and Notifications section below)
- Interview the subject Sheriff's Office employee(s). (See the Administrative Interview section below)
    - Record all interviews with subject(s) and witnesses; secret recordings are prohibited

7

## SOURCES OF EVIDENCE

- INCIDENT REPORTS
- ARREST REPORTS
- CAD RECORDS
- CAD MESSAGING RECORDS
- DISPATCH PHONE RECORDINGS
- PHONE LOGS
- RMS ENTRIES
- RADIO RECORDINGS
- IN CAR VIDEO
- BODY CAMERAS
- VIDEO SURVEILLANCE
- EMAILS
- SHIFT ROSTERS
- GENERAL ORDER RECEIPTS
- SIGNED CODE OF ETHICS
- TRAINING RECORDS
- MEDICAL REPORTS
- DISABILITY PAPERWORK
- DIAGRAMS
- ITEMS BOOKED INTO EVIDENCE
  - RECORDED STATEMENTS
  - PHOTOS
- JAIL RADIO RECORDINGS
- JAIL VIDEO RECORDINGS

- JAIL PHONE CALLS
- JAIL VISITAITON RECORDS
- JAIL VISITATION RECORDINGS
  - VIDEO
  - PHONE
- JAIL DOCUMENTS
  - BOOKING PAPERWORK
  - JAIL INCIDENT REPORTS
  - CLASSIFICATION RECORDS
  - BODY SCANS
  - CELL CHECK RECORDS
  - DISCIPLINE REPORTS
  - KITES
  - GRIEVANCES
  - BOOKING PHOTOGRAPHS
  - DAYROOM AND RECREATION SCHEDULES
  - HOUSING HISTORY
- SOCIAL MEDIA
- NEWS REPORTS
- USE OF SUBJECT MATTER EXPERTS
  - USE OF FORCE REVIEW BOARD

## THE USE OF FORCE REVIEW BOARD

The Use of Force review board was created to serve to provide systematic review of use of force incidents. Per Oper 23, "Use of Force Review Board," the board shall "assist in the determination of the reasonableness of force used, in order to provide expert evidence during the investigation of complaints and Internal Affairs investigations." The Use of Force review board should be considered as a resource when investigating allegations of improper or excessive force.

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 010*



Placer County Sheriff's Office
Administrative Investigation Manual

## CHEMICAL TESTS

Per Conduct 8, "when appropriate, as part of a misconduct investigation, Internal Affairs investigators can require an employee to submit to a chemical test(s).[1]"

Breath: An Intoxilizer maintained at either jail will be used. Results should be printed and a copy provided to the officer.

Urine: Obtain two samples. Witness urine sample with investigator/command officer of the same sex.

Blood: Investigators will need to obtain recorded or written consent or a search warrant in order to obtain a blood draw. Request County contract phlebotomist. Obtain two samples. The Department member's name will not appear on any paperwork provided to the contract laboratory. Use the File Number to label each sample.

Administrative chemical tests of urine and blood samples are **NOT** sent to the State Crime Lab. One sample is retained by the internal affairs investigator and stored in Evidence. The other sample is transported to the contract laboratory. The Sheriff's Office maintains an open purchase order with this agency to provide testing for administrative purposes.

## ADMINISTRATIVE SEARCHES

Administrative Searches will be conducted in accordance with Government Code, Section 3309. Searches should be conducted in the employee's presence, with consent, a valid search warrant, or with prior notice to the employee.

## FORMS AND NOTIFICATIONS

### Administrative Investigation Advisement (Addendum D)

The Administrative Investigation Advisement fulfills all necessary notifications per the Government Code, provides an honesty admonishment to prevent situations that may arise to *Brady* notifications (See ***Brady*** **and *Pitchess*** section, below), and provides the involved employee with an abridged copy of the Peace Officers Bill of Rights (POBAR.)

- As a matter of policy and practice, all members of the Sheriff's Office shall be afforded the rights of the Peace Officers' Bill of Rights, whether or not they are a sworn officer. As such, this form advises them that the rights afforded them by the California Government Code, Sections 3300 through 3311 are in effect.
- This form shall be filled in and printed prior to serving the employee.
  - Fill in the index portion of the form to the best of your ability, using the information at hand.
- The employee will sign, date, and initial all sections. The original shall be retained as part of the investigation. The employee shall be immediately provided with a copy.
- Reasonable accommodations can be made to reschedule interviews with a valid reason from the involved officer.

---

[1] Skinner v. Railway Labor Executive's Association. (1989) 489 U.S. 602- In fitness oriented position, government may compel chemical test without individualized suspicion following certain incidents (i.e. accident.)

9



Placer County Sheriff's Office
Administrative Investigation Manual

**Witness Notification** (Addendum E)

Witness Notifications are provided to employee witnesses only, and is not applicable to non-PCSO persons. Employee witnesses in investigations shall be read this form at the time of their interview. Witnesses do not need to be afforded advanced notification of interview, so the notification is often contemporaneous to the time of interview. However, this form may be provided when making arrangements for a future interview.

**Miranda/Lybarger Form** (Addendum F)

- If there is a possibility that the member's conduct is criminal in nature, they will be given the Sheriff's Office approved Miranda warning. (Miranda/Lybarger form-Addendum F)
- Should the member invoke his/her Miranda Rights, the Lybarger Admonishment[2] will then be read and signed and dated by the employee and investigator. The original shall be retained as part of the investigation. The employee may have a copy.
- When there is no alleged criminal conduct, the Miranda warning and Lybarger Admonishment are not necessary.

**Recorded Interview Admonishment** (Addendum G)

- The Recorded Interview Admonishment shall be read during all subject interviews. It shall be filled out by the Investigator and each section initialed by the involved employee. The original shall be retained as part of the investigation. The employee may have a copy. Reading the Recorded Interview Admonishment to the employee fulfills the following notification standards:
  - Date, time and location of the interview
  - Notification that the interview is being recorded
  - Identify who is conducting the interview, and their current assignment
  - Persons present during the interview
  - Purpose of the interview
  - Nature of the investigation
  - That the employee is required to answer questions truthfully, honestly and completely

**Video Evidence Review Admonition** (Addendum H)

- The Video Evidence Review Admonition shall be read during interviews where video or audio evidence will be reviewed prior to or during the interview. List each piece of video or audio evidence that is being reviewed in conjunction to the statement on the form. Examples:
  - Video    In Car Camera Video from Vehicle 1149 from 0001hours to 0012hours on 1/1/2018
  - Video    YouTube video taken by complainant and posted on 1/2/2018
  - Audio    Radio recordings from main dispatch channel
  - Audio    Recording of prior interview with subject

---

[2] *Lybarger v. Los Angeles* (1985) 40 Cal.3d 822 – Whenever potential exists for criminal charges, the accused officer must be advised of *Miranda* plus the fact that they may be compelled to answer. Such answers are limited to the scope of the administrative investigation, and per *Garrity v. New Jersey* 385 U.S. 493 (1967), any statement made under such compulsion, cannot be used in a later criminal proceeding.

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 012*



# BRADY AND PITCHESS

## BRADY

Federal law requires prosecutors to provide the defense in criminal cases with exculpatory evidence that is material to either guilt or punishment (*Brady v. Maryland* (1963) 373 U.S. 83, 87.) "Exculpatory" means evidence favorable to the accused. This obligation includes impeachment evidence that consists of "substantial material evidence bearing on the credibility of a key prosecution witness.[3]" California Evidence Code section 780 defines "impeachment evidence" to include evidence like untruthfulness, bias, and conduct involving moral turpitude. Testimony of an employee of the Placer County Sheriff's Office who lacks in credibility may qualify as exculpatory evidence.

The Placer County District Attorney's Office and the Placer Law Enforcement Agencies have a written agreement as to how they will handle their obligations per *Brady* titled, "*Brady* Protocol." Per the *Brady* Protocol, "*Brady* material in personnel files" is defined to include, "any sustained finding of misconduct that reflects upon the truthfulness, bias or moral turpitude of a witness."  As such, when a PCSO employee is subpoenaed as a witness in a case prosecuted by the District Attorney's Office, PCSO is required to disclose to the *Brady* Committee that potential *Brady* materials exist in the involved employee's personnel file.  This notification states only that potential material exists and the date that material was entered into the effected personnel record.

When peace officer personnel files contain information that potentially may be used to impeach the officer (dishonesty, moral turpitude conduct, etc.) there is an interplay between *Brady* and *Pitchess* law. For the District Attorney to obtain more information about the *Brady* material in sworn personnel files, they must file a *Pitchess* Motion. To obtain records from non-sworn employees, they must issue a subpoena duces tecum for the records.

## PITCHESS MOTIONS

Disclosure of peace officer personnel records is prohibited without compliance with Evidence Code §1045. (Penal Code § 832.7(a).)  In order to obtain information from the personnel file, a written motion (*Pitchess* Motion), by either the prosecution or defense, must be filed showing "good cause" on while those records should be accessed. The statutory procedure for *Pitchess* motions was decided in *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.  The motion must show that the evidence they hope to gain is material to the subject matter involved in the pending litigation. There is a five year window on what records may be released, and generally, only dates of incidents and witness names are released to the requesting attorney.[4]

*Pitchess* Motions for PCSO employee files are received by the office of the Undersheriff and assigned the Support Services Lieutenant.   The Support Services Lieutenant accompanies the records to the closed session review with the issuing judge.  If a record is found to be material, the judge makes a ruling as to what contained within the file is made a matter of record.

---

[3] People v. Roberts (1992) 2 Cal.4th 271, 330.
[4] See also California Penal Code §§ 832.5, 832.7, 832.8; California Government Code § 3300 et seq. (Public Safety Officers Procedural Bill of Rights Act).



Placer County Sheriff's Office
Administrative Investigation Manual

**Federal Law**

It should be noted that the laws that protect peace officer records, as well as the decision in *Pitchess,* are all California state laws. In federal criminal cases, or civil cases where the files are being requested for claims of violations of federal civil rights, such as a case brought under 42 U.S.C. sec 1983, the protections under California state laws are not recognized. In these cases, it should be expected that a federal prosecutor will conduct an in camera inspection and evaluation of involved employee personnel files.

# THE ADMINISTRATIVE INTERVIEW

Administrative interviews should be conducted at a reasonable hour, preferably when the employee is on duty or during normal waking hours, unless the seriousness of the investigation requires otherwise.[5] Allow the employee to attend to his/her own personal physical needs, as reasonable, during the interview.[6]

Planned, formal interviews of Sheriff's Office members will be recorded. The recording device will be kept in open view.  The recordings will be labeled and retained as part of the Administrative Investigation. The Miranda/Lybarger form (Addendum F-as necessary) and Recorded Interview Admonishment (Addendum G) shall be read to the employee.  These admonishments shall be part of the recorded interview.

A maximum of two investigators will be present during the interview.[7]  Keep in mind, this is an interview, not an interrogation, unless circumstances warrant the latter. Avoid leading questions. Do not use offensive language during your interview nor should you promise reward for favorable answers.[8]

Officers who are the subject of the investigation may have a representative present with them at the time of the interview.  Representatives may be attorneys or other employee representatives; however, the representative may <u>not</u> be a person who is subject to the same investigation.[9]  The representative cannot be required to disclose any information obtained from the employee in non-criminal matters. It is vital that you, as the investigator, control the interview, and not allow the representative to direct the interview.  The role of the representative is to protect the rights of the involved employee, provide them legal advice, or "elicit favorable acts" by the involved employee.

As this is a detailed examination of the action of the employee, it is your responsibility during the interview to either corroborate or refute the employee's account of the incident. Prepare a list of thorough interview questions prior to the interview. It is your job to address the gap between the information you have and the information you need. Be specific and stay focused on the allegations.  Try to avoid bringing the subject employee back for a follow up by getting all the needed information on the first try.

---

[5] Public Safety Officers Procedural Bill of Rights Act §3303(a)
[6] Public Safety Officers Procedural Bill of Rights Act §3303(d)
[7] Public Safety Officers Procedural Bill of Rights Act §3303(b)
[8] Public Safety Officers Procedural Bill of Rights Act §3303(e)
[9] Public Safety Officers Procedural Bill of Rights Act §3303(i)

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 014*



If there is video of the event, you may want to review that video with the involved employee as part of your interview. Complete the Video Evidence Review Admonition (Addendum H) for video/audio evidence. Bring copies of any documents, diagrams, or photos the employee may need to review or that you need clarification on.[10] You may want to bring copies of the policies/procedures related to the alleged violations to review as part of the interview.

Advise the employee of his Constitutional rights as soon as it appears that he may be charged with a criminal offense.[11] If you are interviewing the employee as a witness, and it becomes evident that they may have committed policy violations that would amount to discipline, you should stop the interview. Provide them notice using the Administrative Investigation Admonishment and provide them the opportunity to seek a representative prior to completing your interview. (See *Weingarten*, below.)

### *WEINGARTEN*

The right of employees to have representation at investigatory interviews was decided by the Supreme Court in *National Labor Relations Board v. Weingarten*, Inc. 420 U.S.251, now known as *Weingarten* Rights. Employees only have these rights during investigatory interviews when they could be subject to discipline or need to defend their conduct. Supervisors are not required to inform employees of their *Weingarten* rights; it is the employee's responsibility to know and request. However, by reading them the Administrative Investigation Admonishment, you are advising them of their right to have a representative, and therefore, reminding them of *Weingarten*.

## AS YOU NEAR COMPLETION OF THE INVESTIGATION

- For each violation of a rule or regulation: Has the misconduct been factually proven?
  - As the employer, we have the burden of proof
  - All elements of the offense must be addressed and proven or disproved.
- Is your work a full, fair, and complete investigation?
  - Were all witnesses interviewed?
  - Were investigative procedural rules followed?

## THE INVESTIGATIVE REPORT

As the investigating officer, you are the gatherer of facts. Your investigative report should set forth the factual analysis, but not reach an opinion or conclusion. Your report should be thorough and comprehensive, and assembled in a logical manner. Don't leave your reader (your command staff) with questions about the facts of the case.

An example investigative report is contained in Addendum I to use as a guideline. Investigations will be completed on Memo format and be marked as a confidential document.

Every investigation is different and may have different components. Your primary responsibility is to provide a complete and logical report. Your report should include, at the least, the following components:

---

[10] Public Safety Officers Procedural Bill of Rights Act §3303(g)
[11] Public Safety Officers Procedural Bill of Rights Act §3303(h)

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 015*



Placer County Sheriff's Office
Administrative Investigation Manual

**Background**

Include how you received the investigation and a synopsis of the complaint or alleged misconduct.

**Summary of Incident**

Provide a brief summary of the event leading up to the complaint and a summary of the complaint itself.

**Investigation Timeline**

List every action taken as a part of this investigation by date.

**Applicable Authorities**

List all applicable policies/procedures/laws that may have been violated if the accusation were found to be true. Identify related sections that define the required conduct of the employee, as well as those that identify the authorities to implement discipline (if appropriate).

When citing policy, be sure to cite the policy that was applicable at the time of the alleged violation. Example: if the violation was alleged to have occurred in June 2017, and the policy was updated in July 2017, cite the prior effective date for the policy. Copies of expired and updated policies are available through the Undersheriff's Office and Professional Standards Unit.

Penal Code sections or specific case law can also be cited should you need to use them to support or refute the alleged conduct of the officer. For example, you may need to justify a search of a vehicle and may want to cite a case that allows such a search under similar circumstances as stated in the complaint. Sources include General Orders, division specific policy manuals, County policies, statutory and case law. A list of selected polices and laws is contained in Addendum C.

For example, for a rude conduct allegation, the Applicable Authorities might include:

> *General Orders Manual – Professional Conduct and Responsibilities*
> *Conduct 3.II-Standards of Conduct, Effective 7/12/2017*
> *Section F. Courtesy to the Public §1- **Courtesy to the Public**:*
>> "Sheriff's Office members will be courteous to the public and tactful in the performance of duties. Members will not use coarse, violent, profane or insolent language and will not express any prejudice concerning sex, race, religion, politics, national origin, or similar personal characteristics."

**Analysis**

This is your investigation narrative. Include a synopsis that is based on the violations. Use of questions, answered with factual information is a good approach.

Begin with a statement describing the issues. Example:

> *1) Was Deputy X discourteous during his contact with the Complainant?*
> *2) Was Deputy X's search of the Complainant's car proper?*

- Include analysis of evidence and other documentation (video, crime report, CAD event history)
- Include subject and witness statements (audio recordings, transcribed if practical)

14



Placer County Sheriff's Office
Administrative Investigation Manual

**Summary**

For each question asked in your analysis, summarize the evidence gathered for each individual question. Simply reiterate the facts *without including your opinion*.  After stating the issues, a synopsis of the statements that support or refute the complainant's concerns should follow. Then, any supporting/refuting evidence should be described. As an example, state the material inconsistencies between the employee or complainant's version of events and other facts, such as witness accounts or audio/video recordings.

You may include law or policy as it relates to the investigation as evidence in this section.  For example, in a possible use of force violation, you may cite *Graham vs. Connor* or General Order OPER 1, to explain reasonable force and how it applies in the investigation.

If a complainant, subject or witness suffers from credibility issues, this would be where to address those issues.

This should not be confused with a finding (sustained or not sustained). In other words, is it logical, based on the above, that the complaint as alleged occurred, did not occur, can't be proven either way, or occurred but is within policy and procedure?

**Attachments**

Include a list of every piece of evidence, statement, and form used during the investigation by number.
- If a recorded statement was compelled per Lybarger, list it by name and mark it as "compelled."

**Findings**

Findings are not determined by the investigating officer.  It is the next person in the chain-of-command, a Lieutenant or Captain, who recommends the findings, which are forwarded to the Undersheriff and the Sheriff for approval. The investigator will state in this section, *"Refer to higher level for findings."*

Your investigation and analysis will provide the support for the person making the determination whether it is more likely that not that the subject employee engaged in misconduct.  This is known as the "preponderance of evidence" or "more likely that not" standard.  Internal Affairs investigations are not held to the "beyond a reasonable doubt" standard that is used in criminal prosecutions.

Possible findings as listed in Conduct 8 are:

| | |
|---|---|
| **Unfounded** | The investigation conclusively proved that the act, or acts, complained of did not occur, or the member(s) named in the complaint were not involved in the alleged misconduct. |
| **Exonerated** | The act(s) which provided the basis for the complaint occurred; however, the investigation revealed that such act(s) were justified, lawful, and proper. |
| **Not Sustained** | The investigation failed to clearly prove or disprove, by a preponderance of the evidence, the allegation(s) made in the complaint. |
| **Sustained** | The investigation disclosed sufficient evidence to prove the allegation(s) made in the complaint. |
| **Frivolous** | The complaint is totally and completely without merit or for the sole purpose of harassing an opposing party. |

15

**Recommendations**

Again, the recommendations for discipline or other actions are referred by the investigating officer to a higher level. Should an allegation be sustained, a recommendation for discipline is made by the Captain's Panel, then forwarded to the Undersheriff and Sheriff for approval. An allegation that is Not Sustained, Exonerated, etc., can still have a recommendation for informal action such as counseling or training, or a general recommendations, such as policy review or changes in procedures.

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 018*

PLACER COUNTY SHERIFF'S OFFICE                    **ADDENDUM A**
GENERAL ORDERS
COND 8



---

TITLE:        **PERSONNEL INVESTIGATION**

EFFECTIVE:    06/01/2018

---

### I.        PURPOSE

This Order describes the guidelines applicable to Sheriff's Office personnel investigations and complies with provisions of Chapter 9.7, Section 3300 et. seq. of the Government Code (Public Safety Officers Procedural Bill of Rights) as now exists and hereinafter may be amended.

### II.       POLICY

The integrity and reputation of the Placer County Sheriff's Office depends on the manner in which all members of this agency perform their varied duties and service obligations to the public. The performance of these duties and services include all manners of contacts and relationships with the public and other employees, both on and off-duty.

Investigations into allegations of misconduct by Sheriff's Office members will be conducted in a legal, timely, reasonable and consistent manner.  These investigations will not be delayed or held in suspension due to pending criminal or civil charges.

### III.      SHERIFF'S OFFICE AUTHORITY AND RESPONSIBILITY

The responsibility of the Sheriff's Office is to ensure that such investigations are conducted in a prompt manner conducive to good order and discipline, while observing and protecting the individual constitutional rights of all Sheriff's Office employees.

### IV.       RECEIVING CITIZEN COMPLAINTS

Complaints will be accepted in any form.  They will be taken in person, by telephone, in writing, third party or from anonymous complainants.  At some point the complainant's statement must be written and signed using the State required complaint form.  Inmates in the care of a Sheriff's correctional facility may use the inmate grievance procedure to file a complaint against staff or Sheriff's Office policy.

The purpose for this reporting system is to encourage citizens and Sheriff's Office members to report their grievances to Sheriff's management.   Only then can these complaints be documented, investigated and reviewed.

The manner in which complaints are accepted by Sheriff's personnel is vital.  The objective is to demonstrate credibility and responsiveness while assuring citizens that their alleged grievances are welcomed and will be taken seriously.

21

PLACER COUNTY SHERIFF'S OFFICE          **ADDENDUM A**
GENERAL ORDERS
COND 8



Sheriff's Office personnel need to be practiced, impartial listeners and avoid providing retorts or excuses. Many complaints or inquiries may be satisfactorily resolved during this initial contact simply by employing patience, understanding and empathy toward the complainant. Department members are encouraged to try and resolve minor issues not involving misconduct, ethical violations or policy violations.

A.    **Verification**: When receiving a complaint, the investigator will determine if Sheriff's Office personnel are involved. If members are not involved, the citizen will be referred to the proper agency. If the complaint involves an in-progress field situation, the involved Sheriff's Office employee's supervisor will be notified immediately.

B.    **Categories of Complaints/Inquiries**: The nature of a complaint against a Sheriff's Office member will fall into one of four categories:

    1.    **Inquiry**: An allegation involving minor transgressions on the part of a Department member may be handled informally by bringing the matter to the attention of the chain of command and his/her immediate supervisor at the Complainant's request. In choosing this process the Complainant agrees not to proceed with a formal misconduct complaint. The utilization of this process does not imply that the subject officer has in fact committed the transgression as described by the citizen complaint. When an inquiry is utilized, an Inquiry entry will be entered into BlueTeam and forwarded to the Sheriff's or Undersheriff's office.

    2.    **Policy Complaint**: A complaint which pertains to an established policy, properly employed by a Sheriff's Office member, which the complainant understands but believes is inappropriate or not valid. Complaints of this type will be entered into BlueTeam as an Inquiry.

    3.    **Citizen Complaint**: The allegation amounts to a violation of the law or of the Sheriff's Office policies, procedures, rules or regulations, which, if true, would normally result in disciplinary action. This type of complaint is requested by a citizen wishing to proceed with a formal misconduct complaint. Complaints of this type will be entered into BlueTeam as a Citizen Complaint.

    4.    **Misconduct Complaint**: The allegation amounts to a violation of the law or of the Sheriff's Office policies, procedures, rules or regulations, which, if true, would normally result in disciplinary action. This type of complaint is internally initiated by the Sheriff's Office. Complaints of this type will be entered into BlueTeam as an Administrative Investigation.

C.    **Resolution of Inquiries**: Supervisors handling inquiries wherein the person requests no further action against a member of the Sheriff's Office will nevertheless enter the Inquiry into BlueTeam and forward it to the member's Division Commander and then forward to the Sheriff/Undersheriff. All appropriate identifying information about the person and the facts involved in the incident causing the inquiry will be reviewed by the supervisor

22

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 024*



resolving the issue.  Nothing in this section shall be construed as to prevent the re-opening of the matter by the Sheriff's Office for further investigation.

D.      **Documentation**: The Placer County Sheriff's Office employs IAPro and its BlueTeam interface software as the database for the documentation of its personnel investigation function.  All inquiries, policy complaints and citizen complaints will be documented in BlueTeam and subsequently in IAPro, regardless of the type. Administrative Investigations will be entered directly into IAPro. Investigator's notes and materials developed during the initial contact will be retained, including policy complaints.  Notes regarding a policy complaint will be retained by the investigator for a period of one year.

All internal affairs interviews of Sheriff's Office employees shall be recorded.

Witness interviews involving misconduct and policy complaints will be recorded. However, this should only be done with the person's knowledge.  Since these investigations are administrative in nature, covertly recording conversations is not allowed.

When citizens decline to be recorded or are unavailable for an interview, a brief written statement of the incident about which they are complaining is recommended. The alternative is to conduct the interview orally and compile detailed notes.

When appropriate, evidence should be gathered during the initial receipt of the complaint.  Photos should be taken of injuries or damaged property.  Medical releases should also be obtained at this time, which allow investigators access to copies of complainant's medical reports.

Occasionally situations arise in which complaining parties have visible injuries but are not able to come to the Sheriff's Office.  They may be at home incapacitated, or be in the hospital, or in jail.  In these situations it may be necessary to go to the complainant as soon as practical to photograph injuries.

## V.      INVESTIGATION GUIDELINES

The administrative investigation of a Sheriff's Office member's conduct must be completed in a fair and impartial manner.  If it is not, the organization will be criticized by citizens, government officials and agency members.

A.      **Case Management**: Misconduct and policy complaints will generally be investigated by specially trained supervisors familiar with administrative policies and procedures or by members of the Professional Standards Unit.  When necessary, these supervisors will be detached from their usual normal duties to conduct these investigations in a timely, legal, reasonable and consistent fashion.

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 025*

PLACER COUNTY SHERIFF'S OFFICE    **ADDENDUM A**
GENERAL ORDERS
COND 8



The Undersheriff's Office will maintain a case file assignment log within IAPro, documenting the date assigned, investigator, file number, subject officer's name, and date completed.

B.    **Review Process**: Once a misconduct or policy complaint is received, it must be reviewed by the Undersheriff. The Undersheriff will then assign the complaint for formal investigation.

Cases involving allegations of criminal conduct will first be investigated as criminal matters. Internal Affairs investigators will conduct concurrent investigations and obtain copies of all criminal reports for use in the Administrative investigation. An administrative investigation will be conducted concurrently with the investigation filed with the District Attorney's Office or other agency. The administrative investigation will include an examination of the complete criminal investigation, physical evidence, Coroner's report (if applicable), policy review, and tactics employed.

For the integrity of the administrative process, it is imperative that protected information does not flow from Internal Affairs to the criminal investigation.

C.    **Timeliness**: Internal Affairs investigations must be completed in a timely manner. In most cases, ninety (90) days is sufficient from the date the complaint is received, to when the complaint is closed and notifications made. When circumstances exist that require additional time to conduct a thorough investigation, written updates to the Undersheriff will be required, to include reasons for the delay and an anticipated completion date.

D.    **Investigative Report Format**: An Internal Affairs investigation will be reported utilizing the following format:

1.    Background
2.    Investigation
3.    Applicable Authorities
4.    Analysis
5.    Findings (to be completed by higher authority, other than investigator)
6.    Recommendations (to be completed by higher authority, other than investigator)

E.    **Investigative Steps**: Internal Affairs investigators must prioritize their tasks in order to conduct a thorough and timely investigation. Investigations will be conducted in accordance with the law and the Placer County Sheriff's Office Administrative Investigation Manual. The legal civil standard is a preponderance of the evidence in administrative investigations.

F.    **Notification**: When the Internal Affairs investigator is prepared to interview the involved Sheriff's Office member, an Administrative Investigation Advisement will be completed and sent to the member. A copy will also be sent to the member's chain of command.

24

PLACER COUNTY SHERIFF'S OFFICE            **ADDENDUM A**
GENERAL ORDERS
COND 8



G.    **Conducting the Administrative Interview**: Planned, formal interviews of Sheriff's Office members will be recorded. The recording device will be kept in open view.  Recordings will be labeled and retained as part of the Administrative Investigation.

If the member is a sworn officer, they will be advised that the rights afforded them by the California Government Code, Sections 3300 through 3311 are in effect. These rights will also be afforded to all non-sworn members of the Placer County Sheriff's Office.

If there is a possibility that the member's conduct is criminal in nature, they will first be given the Sheriff's Office approved Miranda warning. Should the member invoke his/her Miranda Rights, they shall be read the Lybarger Admonishment using the Department form. When there is no alleged criminal conduct, the Miranda warning and Lybarger Admonishment are not necessary, unless the Sheriff's Office member refuses to answer any questions.

H.    **Representation at Interviews**:    The role of an employee representative or attorney during the interview process is to "elicit favorable facts" according to the California Supreme Court.  The employee's representative is allowed to do more than just observe the interview.

However, the employee must answer the investigator's questions and the employee can be disciplined for refusing to answer questions.

I.    **Providing Notes/Reports Prior to Interview**: Sworn Sheriff's Office members or their legal representatives frequently request copies of all notes or reports prior to the interview, citing Government Code Section 3303(G).

Also per Government Code Section 3303(G), the Internal Affairs investigator is allowed to withhold information that the Sheriff's Office deems confidential.

In the interest of conducting an unbiased investigation, statements of complainants, witnesses, evidence collected, and investigator's notes and reports are deemed confidential and will not be provided prior to the interview. Information that may be provided prior to the interview include crime reports of the incident, activity reports and communications tapes, if they are available.  These items may aid in the member's recall of the incident and provide for a more accurate statement.

J.    **Case Folder**: All formal misconduct investigations will be maintained in IA PRO. The file will be maintained by the assigned investigator as long as the case remains open and the following items will be included as attachments:

1.    All original investigative reports.
2.    All original documents/photographs.
3.    All original administrative correspondence.
4.    Case activity, noting the dates of each activity conducted by the investigator.

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 027*

PLACER COUNTY SHERIFF'S OFFICE          **ADDENDUM A**
GENERAL ORDERS
COND 8



These items will be retained and safeguarded by the case investigator. Upon completion, the case file will remain in IA Pro and copies of the investigation will only be distributed to the Personnel Department and County personnel.

## VI.    ADMINISTRATIVE REVIEW OF COMPLAINTS

Findings and recommendations involving formal misconduct and policy complaints will be approved by the Undersheriff.  Findings and recommendations for misconduct investigations not routed to the Division Commander will be designated by the Undersheriff.

A.    **Internal Affairs Findings**: In addition to the finding, the Division Commander shall enter one of the following dispositions for purposes of internal record-keeping and statistical display:

1.    **Unfounded**:  The investigation conclusively proved that the act, or acts, complained of did not occur, or the member(s) named in the complaint were not involved in the alleged misconduct.

2.    **Exonerated**:  The act(s) which provided the basis for the complaint occurred; however, the investigation revealed that such act(s) were justified, lawful, and proper.

3.    **Not Sustained**:  The investigation failed to clearly prove or disprove, by a preponderance of the evidence, the allegation(s) made in the complaint.

4.    **Sustained**: The investigation disclosed sufficient evidence to prove the allegation(s) made in the complaint.

5.    **Frivolous**:  The complaint is totally and completely without merit or for the sole purpose of harassing an opposing party.

Immediately after completion of the investigation, the written report and case file, if appropriate, shall be reviewed by the Undersheriff.  He shall make the final determination whether any or all of the allegations of the complaint are sustained or not sustained.

B.    **Disciplinary Notifications**: Once approved by the Sheriff, disciplinary action will proceed. Informal discipline consisting of training, informal counseling, documented oral counseling, and letters of reprimand can be imposed immediately.

Formal discipline consisting of suspension, demotion, reduction of pay, disciplinary transfer or termination require due process and administrative appeals.

In cases involving discipline, a Notice of Proposed Action will be prepared and served. The member will be provided with a complete copy of the administrative investigation

26

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 028*



and a proof of service verification will be completed by the employee's chain of command.

After the administrative appeal process is completed, a final recommendation will be approved by the Sheriff and an Order of Discipline will be prepared and served to the involved employee. This Order of Discipline will designate the level of discipline and how the discipline will be imposed.

Both the Notice of Proposed Action and the Order of Discipline will be prepared by the Undersheriff.  In cases involving a suspension greater than three days, the Notice of Proposed Action and Order of Discipline will be routed to Personnel Review Committee and County Counsel for final review prior to service.

The effected member's chain of command will be notified by the Undersheriff upon service of the Order of Discipline, in order to coordinate/schedule dates of suspension, for purposes of orderly staffing and planning.

C.      **Closing Complaints**: When the findings and recommendations are implemented by the Sheriff, the misconduct investigation is closed.  Appropriate notifications will then be prepared by the Undersheriff and sent to the Sheriff's Office member and his/her supervisors (Lieutenant, Captain).  The date that these closing notifications are sent will be recorded in the file.

1.      **Complainant Notice**: The Undersheriff will notify the complainant, by mail, of the final disposition of the case within 30 days of its conclusion.  The complainant will be advised only of the disposition of the case (exonerated, sustained, not-sustained, unfounded, or frivolous).

2.      **Employee Notice**: A notice of completed Internal Affairs Complaint will be completed by the Undersheriff and copies routed to the Sheriff's Office employee and his/her Division Commander.  This notice will identify the allegation, findings and complaint number.  Employees are encouraged to contact the Undersheriff and discuss the incident or review the investigation.

**VII.    ADMINISTRATIVE PROCESS**

A.      **Access to Internal Affairs Records**: Only those members of the Sheriff's Office authorized by the Sheriff will be allowed access to Internal Affairs records.  The following personnel are authorized access to a member's Internal Affairs records, with the indicated limitations:

1.      **The Member**: Members may review their own Internal Affairs records by appointment with the secretary to the Undersheriff.  Members may prepare brief notes, but will not be allowed to photocopy or remove any documentation from the file.

27

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 029*



2.    **The Member's Supervisors**: Any supervisor in the involved member's direct chain of command may review the subordinate's Internal Affairs records when such review pertains to a Sheriff's Office function, goal, assignment or responsibility.

3.    **Internal Testing**: A supervisor of a unit or section administering an internal testing process to fill a position in that unit or section may review the Internal Affairs records of any member making a request for the assignment.

4.    **Internal Affairs Records:** Any member assigned to the Sheriff's Professional Standards Unit or the assigned Internal Affairs Investigator may review another member's Internal Affairs records for the purpose of effectively completing an internal investigation.

5.    **Outside Requests**: Any requests to review a member's Internal Affairs records by an outside agency must be approved by County Counsel in accordance with California Penal Code Section 832.7, California Evidence Code Section 1043, or pursuant to a Federal court order.

B.    **Inquiry Log**: A log will be maintained by the Undersheriff's secretary listing the name, date and reason for reviewing a member's file. The Sheriff or Undersheriff will ensure that the Sheriff's Office member reviewing the file is authorized to do so.

Contacts by telephone will also be noted on this log. The only information provided by telephone will be whether or not misconduct investigations exist for review.

C.    **Chemical Tests**: When appropriate, as part of a misconduct investigation, Internal Affairs investigators can require an employee to submit to a chemical test(s). Options for chemical tests are breath, urine, or blood.

A written analysis will be requested from the laboratory, explaining the test results. This report will become part of the administrative investigation.

D.    **Civil Service**: When discipline resulting from an internal affairs investigation is appealed by a member to the Civil Service Commission, the Division Commander or designee is responsible for the following:

1.    Reviewing the case with County Counsel.
2.    Coordinating the appearance of witnesses.
3.    Subpoena service as required.
4.    Presenting the original case file and evidence at the hearing.
5.    Presenting a professional, unbiased attitude and appearance at the hearing.

E.    **Fitness for Duty Evaluation**: When a Sheriff's Office member has been relieved from duty for medical reasons, a fitness for duty evaluation may be conducted at the direction of the Sheriff or Undersheriff.

28



The evaluations should only be undertaken where there are severe job related medical factors. These medical evaluations must be coordinated with County Counsel and the County Medical Director.

The evaluations are confidential medical information and will not become a part of any disciplinary file. The evaluation results will be sent to the Sheriff.

In the event that a member refuses to submit to a fitness for duty evaluation, the Sheriff or Undersheriff may officially order the member to undergo the evaluation. A continued refusal can then be treated as a violation of a direct order and a disciplinary investigation can be instituted.

F.    **Periodic Review:** Division Commanders will periodically review early intervention data, performance evaluations, Internal Affairs records, disciplinary actions, vehicle accident history, and procedural questions involving the members under their command in an effort to identify these trends or patterns in a timely manner.

G.    **Searches**: Administrative searches will be conducted in accordance with California Government Code, Section 3309.

In cases where there is doubt as to whether a particular search would be permissible without a search warrant or valid consent, County Counsel will be contacted for advice.

H.    **Skelly Hearing**:  The Skelly hearing is an administrative appeal process available to the Sheriff's Office member, prior to the issuance of disciplinary discipline.

## VIII.    CONFIDENTIALITY

Except as provided in these procedures, records of complaints and investigations conducted by the Sheriff's Office shall be confidential to the extent allowed by law.

## IX.    MAINTENANCE OF INTERNAL AFFAIRS RECORDS

A.    Investigative reports, writings and files of every citizen complaint shall be retained by the Placer County Sheriff's Office per the below records retention schedule after a disposition has been rendered.  These records shall be maintained by the Sheriff's Office and shall remain confidential.

1.    **Records Retention Schedule**

| **ITEM** | **LENGTH** |
|---|---|
| Procedural Questions | 6 years |

29

PLACER COUNTY SHERIFF'S OFFICE   **ADDENDUM A**
GENERAL ORDERS
COND 8



| | |
|---|---|
| Citizen Complaints | 6 years |
| Agency-Initiated Complaints | 6 years |
| Officer-Involved Shootings | 20 years |
| County Vehicle Traffic Accidents | 3 years |
| Documented Oral Counseling: | 1 year |

B.      All Internal Affairs records may be purged after the retention level has been reached, unless designated otherwise by the Sheriff or Undersheriff or under the following conditions:

1.      Records of complaints that are subject to civil litigation or criminal proceedings shall be retained until final adjudication of the matter.

2.      Records of complaints resulting in employee termination or resignation in lieu of termination shall be permanently maintained.

3.      The Sheriff shall have the authority to retain for a period longer than two years any case file or records not otherwise provided for in this procedure.

C.      Every sustained case which has resulted in a letter of reprimand, suspension, loss of pay, demotion in rank, or termination, shall require a written explanation of the disciplinary action taken to be placed in the employee's personnel file. The retention of these disciplinary action letters shall not be affected by the destruction of the investigative files and records.  Disciplinary action in the form of suspension, loss of pay, demotion in rank, or termination becomes a permanent part of the affected employee's personnel file. Documented verbal counseling or letters of reprimand become a part of the affected employee's personnel file, but an employee may petition the Undersheriff after one year for removal of these adverse comments.

D.      Employee(s) accused of misconduct shall be notified immediately after the file destruction that internal investigative records have been purged.


**X.      SEVERABILITY**

If any section, subsection, sentence, clause, phrase, or portion of this Order or any additions or amendments thereto, or the application thereof to any person, if for any reason are held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Order, or its application to other persons.

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 032*

# ADDENDUM B

## *PEACE OFFICER BILL OF RIGHTS AND ASSOCIATED LAW*

## CALIFORNIA GOVERNMENT CODE (POBAR)

**3300 – Title** This chapter is known and may be cited as the Public Safety Officers Procedural Bill of Rights Act.

**3301 – Definition; Legislative findings and declaration** For purposes of this chapter, the term public safety officer means all peace officers specified in Sections 830.1, 830.2, 830.3, 830.31, 830.32, 830.33, except subdivision (e), 830.34, 830.35, except subdivision ©, 830.36, 830.37, 830.38, 830.4, and 830.5 of the Penal Code.

The Legislature hereby finds and declares that the rights and protections provided to peace officers under this chapter constitute a matter of statewide concern. The Legislature further finds and declares that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers. In order to assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that this chapter be applicable to all public safety officers, as defined in this section, wherever situated within the State of California.

**3302 – Political activity: Membership on school board**
(a) Except as otherwise provided by law, or whenever on duty or in uniform, no public safety officer shall be prohibited from engaging, or be coerced or required to engage, in political activity.
(b) No public safety officer shall be prohibited from seeking election to, or serving as a member of, the governing board of a school district.

**3303 – Investigations interrogations; conduct; conditions; representation; reassignment** When any public safety officer is under investigation and subjected to interrogation by his or her commanding officer, or any other member of the employing public safety department, that could lead to punitive action, the interrogation shall be conducted under the following conditions. For the purpose of this chapter, punitive action means any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment.
(a) The interrogation shall be conducted at a reasonable hour, preferably at a time when the public safety officer is on duty, or during the normal waking hours for the public safety officer, unless the seriousness of the investigation requires otherwise. If the interrogation does occur during off-duty time of the public safety officer being interrogated, the public safety officer shall be compensated for any off-duty time in accordance with regular department procedures, and the public safety officer shall not be released from employment for any work missed.
(b) The public safety officer under investigation shall be informed prior to the interrogation of the rank, name, and command of the officer in charge of the interrogation, the interrogating officers, and all other persons to be present during the interrogation. All questions directed to the public safety officer under interrogation shall be asked by and through no more than two interrogators at one time.
(c) The public safety officer under investigation shall be informed of the nature of the investigation prior to any interrogation.
(d) The interrogating session shall be for a reasonable period taking into consideration gravity and complexity of the issue being investigated. The person under interrogation shall be allowed to attend to his or her own personal physical necessities.

31



# ADDENDUM B

## *PEACE OFFICER BILL OF RIGHTS AND ASSOCIATED LAW*

(e) The public safety officer under interrogation shall not be subjected to offensive language or threatened with punitive action, except that an officer refusing to respond to questions or submit to interrogations shall be informed that failure to answer questions directly related to the investigation or interrogation may result in punitive action. No promise of reward shall be made as an inducement to answering any question. The employer shall not cause the public safety officer under interrogation to be subjected to visits by the press or news media without his or her express consent nor shall his or her home address or photograph be given to the press or news media without his or her express consent.

(f) No statement made during interrogation by a public safety officer under duress, coercion, or threat of punitive action shall be admissible in any subsequent civil proceeding. This subdivision is subject to the following qualifications:

(1) This subdivision shall not limit the use of statements made by a public safety officer when the employing public safety department is seeking civil sanctions against any public safety officer, including disciplinary action brought under Section 19572.

(2) This subdivision shall not prevent the admissibility of statements made by the public safety officer under interrogation in any civil action, including administrative actions, brought by that public safety officer, or that officer's exclusive representative, arising out of a disciplinary action.

(3) This subdivision shall not prevent statements made by a public safety officer under interrogation from being used to impeach the testimony of that officer after an in camera review to determine whether the statements serve to impeach the testimony of the officer.

(4) This subdivision shall not otherwise prevent the admissibility of statements made by a public safety officer under interrogation if that officer subsequently is deceased.

(g) The complete interrogation of a public safety officer may be recorded. If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential. No notes or reports that are deemed to be confidential may be entered in the officer's personnel file. The public safety officer being interrogated shall have the right to bring his or her own recording device and record any and all aspects of the interrogation.

(h) If prior to or during the interrogation of a public safety officer it is deemed that he or she may be charged with a criminal offense, he or she shall be immediately informed of his or her constitutional rights.

(i) Upon the filing of a formal written statement of charges, or whenever an interrogation focuses on matters that are likely to result in punitive action against any public safety officer, that officer, at his or her request, shall have the right to be represented by a representative of his or her choice who may be present at all times during the interrogation. The representative shall not be a person subject to the same investigation. The representative shall not be required to disclose, nor be subject to any punitive action for refusing to disclose, any information received from the officer under investigation for noncriminal matters.

This section shall not apply to any interrogation of a public safety officer in the normal course of duty, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned contact with,

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 034*



Placer County Sheriff's Office
Administrative Investigation Manual

# ADDENDUM B

### PEACE OFFICER BILL OF RIGHTS AND ASSOCIATED LAW

a supervisor or any other public safety officer, nor shall this section apply to an investigation concerned solely and directly with alleged criminal activities.

(j) No public safety officer shall be loaned or temporarily reassigned to a location or duty assignment if a sworn member of his or her department would not normally be sent to that location or would not normally be given that duty assignment under similar circumstances.

### 3304 – Lawful exercise of rights; insubordination; administrative appeal

(a) No public safety officer shall be subjected to punitive action, or denied promotion, or be threatened with any such treatment, because of the lawful exercise of the rights granted under this chapter, or the exercise of any rights under any existing administrative grievance procedure. Nothing in this section shall preclude a head of an agency from ordering a public safety officer to cooperate with other agencies involved in criminal investigations. If an officer fails to comply with such an order, the agency may officially charge him or her with insubordination.

(b) No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal.

(c) No chief of police may be removed by a public agency, or appointing authority, without providing the chief of police with written notice and the reason or reasons therefore and an opportunity for administrative appeal. For purposes of this subdivision, the removal of a chief of police by a public agency or appointing authority, for the purpose of implementing the goals or policies, or both, of the public agency or appointing authority, for reasons including, but not limited to, incompatibility of management styles or as a result of a change in administration, shall be sufficient to constitute "reason or reasons." Nothing in this subdivision shall be construed to create a property interest, where one does not exist by rule or law, in the job of Chief of Police.

(d) Except as provided in this subdivision and subdivision (g), no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. This one-year limitation period shall apply only if the act, omission, or other misconduct occurred on or after January 1, 1998. In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed disciplinary action within that year, except in any of the following circumstances:

(1) If the act, omission, or other allegation of misconduct is also the subject of a criminal investigation or criminal prosecution, the time during which the criminal investigation or criminal prosecution is pending shall toll the one-year time period.

(2) If the public safety officer waives the one-year time period in writing, the time period shall be tolled for the period of time specified in the written waiver.

(3) If the investigation is a multijurisdictional investigation that requires a reasonable extension for coordination of the involved agencies.

(4) If the investigation involves more than one employee and requires a reasonable extension.

(5) If the investigation involves an employee who is incapacitated or otherwise unavailable.

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 035*



# ADDENDUM B

### *PEACE OFFICER BILL OF RIGHTS AND ASSOCIATED LAW*

(6) If the investigation involves a matter in civil litigation where the public safety officer is named as a party defendant, the one-year time period shall be tolled while that civil action is pending.

(7) If the investigation involves a matter in criminal litigation where the complainant is a criminal defendant, the one-year time period shall be tolled during the period of that defendant's criminal investigation and prosecution.

(8) If the investigation involves an allegation of workers' compensation fraud on the part of the public safety officer.

(e) Where a predisciplinary response or grievance procedure is required or utilized, the time for this response or procedure shall not be governed or limited by this chapter.

(f) If, after investigation and any predisciplinary response or procedure, the public agency decides to impose discipline, the public agency shall notify the public safety officer in writing of its decision to impose discipline, including the date that the discipline will be imposed, within 30 days of its decision, except if the public safety officer is unavailable for discipline.

(g) Notwithstanding the one-year time period specified in subdivision (c), an investigation may be reopened against a public safety officer if both of the following circumstances exist:

(1) Significant new evidence has been discovered that is likely to affect the outcome of the investigation.

(2) One of the following conditions exist:

(A) The evidence could not reasonably have been discovered in the normal course of investigation without resorting to extraordinary measures by the agency.

(B) The evidence resulted from the public safety officer's predisciplinary response or procedure.

(h) For those members listed in subdivision (a) of Section 830.2 of the Penal Code, the 30-day time period provided for in subdivision (e) shall not commence with the service of a preliminary notice of adverse action, should the public agency elect to provide the public safety officer with such a notice.

**3304.5 – Administrative appeal** An administrative appeal instituted by a public safety officer under this chapter shall be conducted in conformance with rules and procedures adopted by the local public agency.

**3305 – Comments adverse to interest; personnel files; opportunity to read and sign; refusal to sign** No public safety officer shall have any comment adverse to his interest entered in his personnel file, or any other file used for any personnel purposes by his employer, without the public safety officer having first read and signed the instrument containing the adverse comment indicating he is aware of such comment, except that such entry may be made if after reading such instrument the public safety officer refuses to sign it. Should a public safety officer refuse to sign, that fact shall be noted on that document, and signed or initialed by such officer.

**3306 – Response to adverse comment in personnel file; time** A public safety officer shall have 30 days within which to file a written response to any adverse comment entered in his personnel file. Such written response shall be attached to, and shall accompany, the adverse comment.

**3306.5 – Inspection of personnel files; request for correction of file; time**

(a) Every employer shall, at reasonable times and at reasonable intervals, upon the request of a public safety officer, during usual business hours, with no loss of compensation to the officer, permit that officer to inspect personnel files that are used or have been used to determine that officer's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action.

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 036*

# ADDENDUM B

### PEACE OFFICER BILL OF RIGHTS AND ASSOCIATED LAW

(b) Each employer shall keep each public safety officer's personnel file or a true and correct copy thereof, and shall make the file or copy thereof available within a reasonable period of time after a request therefore by the officer.

(c) If, after examination of the officer's personnel file, the officer believes that any portion of the material is mistakenly or unlawfully placed in the file, the officer may request, in writing, that the mistaken or unlawful portion be corrected or deleted. Any request made pursuant to this subdivision shall include a statement by the officer describing the corrections or deletions from the personnel file requested and the reasons supporting those corrections or deletions. A statement submitted pursuant to this subdivision shall become part of the personnel file of the officer.

(d) Within 30 calendar days of receipt of a request made pursuant to subdivision (c), the employer shall either grant the officer's request or notify the officer of the decision to refuse to grant the request. If the employer refuses to grant the request, in whole or in part, the employer shall state in writing the reasons for refusing the request, and that written statement shall become part of the personnel file of the officer.

## 3307 – Polygraph examination; right to refuse; effect

(a) No public safety officer shall be compelled to submit to a lie detector test against his or her will. No disciplinary action or other recrimination shall be taken against a public safety officer refusing to submit to a lie detector test, nor shall any comment be entered anywhere in the investigator's notes or anywhere else that the public safety officer refused to take, or did not take, a lie detector test, nor shall any testimony or evidence be admissible at a subsequent hearing, trial, or proceeding, judicial or administrative, to the effect that the public safety officer refused to take, or was subjected to, a lie detector test.

(b) For the purpose of this section, "lie detector" means a polygraph, deceptograph, voice stress analyzer, psychological stress evaluator, or any other similar device, whether mechanical or electrical, that is used, or the results of which are used, for the purpose of rendering a diagnostic opinion regarding the honesty or dishonesty of an individual.

## 3307.5 – Use of photograph; penalties

(a) No public safety officer shall be required as a condition of employment by his or her employing public safety department or other public agency to consent to the use of his or her photograph or identity as a public safety officer on the Internet for any purpose if that officer reasonably believes that the disclosure may result in a threat, harassment, intimidation, or harm to that officer or his or her family.

(b) Based upon his or her reasonable belief that the disclosure of his or her photograph or identity as a public safety officer on the Internet as described in subdivision (a) may result in a threat, harassment, intimidation, or harm, the officer may notify the department or other public agency to cease and desist from that disclosure. After the notification to cease and desist, the officer, a district attorney, or a United States Attorney may seek an injunction prohibiting any official or unofficial use by the department or other public agency on the Internet of his or her photograph or identity as a public safety officer. The court may impose a civil penalty in an amount not to exceed five hundred dollars ($500) per day commencing two working days after the date of receipt of the notification to cease and desist.

## 3308 – Financial disclosure; right to refuse; exceptions

No public safety officer shall be required or requested for purposes of job assignment or other personnel action to disclose any item of his property,

35



# ADDENDUM B

### PEACE OFFICER BILL OF RIGHTS AND ASSOCIATED LAW

income, assets, source of income, debts or personal or domestic expenditures (including those of any member of his family or household) unless such information is obtained or required under state law or proper legal procedure, tends to indicate a conflict of interest with respect to the performance of his official duties, or is necessary for the employing agency to ascertain the desirability of assigning the public safety officer to a specialized unit in which there is a strong possibility that bribes or other improper inducements may be offered.

**3309 – Search of locker or storage space; consent; search warrant** No public safety officer shall have his locker, or other space for storage that may be assigned to him searched except in his presence, or with his consent, or unless a valid search warrant has been obtained or where he has been notified that a search will be conducted. This section shall apply only to lockers or other space for storage that are owned or leased by the employing agency.

**3309.5 – Local public safety officers; applicability of chapter; jurisdiction; remedies**
(a) It shall be unlawful for any public safety department to deny or refuse to any public safety officer the rights and protections guaranteed to him or her by this chapter.
(b) Nothing in subdivision (h) of Section 11181 shall be construed to affect the rights and protections afforded to state public safety officers under this chapter or under Section 832.5 of the Penal Code.
(c) The superior court shall have initial jurisdiction over any proceeding brought by any public safety officer against any public safety department for alleged violations of this chapter.
(d) (1) In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent
future violations of alike or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer.
(2) If the court finds that a bad faith or frivolous action or a filing for an improper purpose has been brought pursuant to this chapter, the court may order sanctions against the party filing the action, the parties attorney, or both, pursuant to Sections 128.6 and128.7 of the Code of Civil Procedure. Those sanctions may include, but not be limited to, reasonable expenses, including attorney's fees, incurred by a public safety department, as the court deems appropriate. Nothing in this paragraph is intended to subject actions or filings under this section to rules or standards that are different from those applicable to other civil actions or filings subject to Section 128.6 or 128.7 of the Code of Civil Procedure.
(e) In addition to the extraordinary relief afforded by this chapter, upon a finding by a superior court that a public safety department, its employees, agents, or assigns, with respect to acts taken within the scope of employment, maliciously violated any provision of this chapter with the intent to injure the public safety officer, the public safety department shall, for each and every violation, be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) to be awarded to the public safety officer whose right or protection was denied and for reasonable attorney's fees as may be determined by the court. If the court so finds, and there is sufficient evidence to establish actual damages suffered by the officer whose right or protection was denied, the public safety department shall also be liable for the amount of the actual damages. Notwithstanding these provisions, a public safety department may not be required to indemnify a contractor for the contractor's liability pursuant to this subdivision if there is, within the contract between the public safety department and the contractor, a "hold harmless" or similar provision that protects the

36

# ADDENDUM B

### *PEACE OFFICER BILL OF RIGHTS AND ASSOCIATED LAW*

public safety department from liability for the actions of the contractor. An individual shall not be liable for any act for which a public safety department is liable under this section.

**3310-Procedures of public agency providing same rights or protections; application of chapter** Any public agency which has adopted, through action of its governing body or its official designee, any procedure which at a minimum provides to peace officers the same rights or protections as provided pursuant to this chapter shall not be subject to this chapter with regard to such a procedure.

**3311 – Mutual aid agreements; effect of chapter upon** Nothing in this chapter shall in any way be construed to limit the use of any public safety agency or any public safety officer in the fulfilling of mutual aid agreements with other jurisdictions or agencies, nor shall this chapter be construed in any way to limit any jurisdictional or interagency cooperation under any circumstances where such activity is deemed necessary or desirable by the jurisdictions or the agencies involved.

**3312 – American Flag; pins** Notwithstanding any other provision of law, the employer of a public safety officer may not take any punitive action against an officer for wearing a pin or displaying any other item containing the American flag, unless the employer gives the officer written notice that includes all of the following:
(a) A statement that the officer's pin or other item violates an existing rule, regulation, policy, or local agency agreement or contract regarding the wearing of a pin, or the displaying of any other item, containing the American flag.
(b) A citation to the specific rule, regulation, policy, or local agency agreement or contract that the pin or other item violates.
(c) A statement that the officer may file an appeal against the employer challenging the alleged violation pursuant to applicable grievance or appeal procedures adopted by the department or public agency that otherwise comply with existing law.

## CALIFORNIA PENAL CODE

**135.5 – Evidence Tampering** Any person who knowingly alters, tampers with, conceals, or destroys relevant evidence in any disciplinary proceedings against a public safety officer, for the purpose of harming that public safety officer, is guilty of a misdemeanor.

**832.5 – Procedure for Investigation of Citizen Complaints against Personnel**
(a) (1) Each department or agency in this state that employs peace officers shall establish a procedure to investigate complaints by members of the public against the personnel of these departments or agencies, and shall make a written description of the procedure available to the public.
(2) Each department or agency that employs custodial officers, as defined in Section 831.5, may establish a procedure to investigate complaints by members of the public against those custodial officers employed by these departments or agencies, provided however, that any procedure so established shall comply with the provisions of this section and with the provisions of Section 832.7.
(b) Complaints and any reports or findings relating to these complaints shall be retained for a period of at least five years. All complaints retained pursuant to this subdivision may be maintained either in the peace or custodial officer's general personnel file or in a separate file designated by the department or

37



Placer County Sheriff's Office
Administrative Investigation Manual

# ADDENDUM B

### *PEACE OFFICER BILL OF RIGHTS AND ASSOCIATED LAW*

agency as provided by department or agency policy, in accordance with all applicable requirements of law. However, prior to any official determination regarding promotion, transfer, or disciplinary action by an officer's employing department or agency, the complaints described by subdivision (c) shall be removed from the officer's general personnel file and placed in separate file designated by the department or agency, in accordance with all applicable requirements of law.

(c) Complaints by members of the public that are determined by the peace or custodial officer's employing agency to be frivolous, as defined in Section 128.5 of the Code of Civil Procedure, or unfounded or exonerated, or any portion of a complaint that is determined to be frivolous, unfounded, or exonerated, shall not be maintained in that officer's general personnel file. However, these complaints shall be retained in other, separate files that shall be deemed personnel records for purposes of the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code) and Section 1043 of the Evidence Code.

(1) Management of the peace or custodial officer's employing agency shall have access to the files described in this subdivision.

(2) Management of the peace or custodial officer's employing agency shall not use the complaints contained in these separate files for punitive or promotional purposes except as permitted by subdivision (f) of Section 3304 of the Government Code.

(3) Management of the peace or custodial officer's employing agency may identify any officer who is subject to the complaints maintained in these files which require counseling or additional training. However, if a complaint is removed from the officer's personnel file, any reference in the personnel file to the complaint or to a separate file shall be deleted.

(d) As used in this section, the following definitions apply:

(1) "General personnel file" means the file maintained by the agency containing the primary records specific to each peace or custodial officer's employment, including evaluations, assignments, status changes, and imposed discipline.

(2) "Unfounded" means that the investigation clearly established that the allegation is not true.

(3) "Exonerated" means that the investigation clearly established that the actions of the peace or custodial officer that formed the basis for the complaint are not violations of law or department policy.

### 832.7 – Procedure for Investigation of Citizen Complaints against Personnel

a) Peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code. This section shall not apply to investigations or proceedings concerning the conduct of peace officers or custodial officers, or an agency or department that employs those officers, conducted by a grand jury, a district attorney's office, or the Attorney General's office.

(b) Notwithstanding subdivision (a), a department or agency shall release to the complaining party a copy of his or her own statements at the time the complaint is filed.

(c) Notwithstanding subdivision (a), a department or agency that employs peace or custodial officers may disseminate data regarding the number, type, or disposition of complaints (sustained, not sustained, exonerated, or unfounded) made against its officers if that information is in a form which does not identify the individuals involved.

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 040*



# ADDENDUM B

### *PEACE OFFICER BILL OF RIGHTS AND ASSOCIATED LAW*

(d) Notwithstanding subdivision (a), a department or agency that employs peace or custodial officers may release factual information concerning a disciplinary investigation if the officer who is the subject of the disciplinary investigation, or the officer's agent or representative, publicly makes a statement he or she knows to be false concerning the investigation or the imposition of disciplinary action. Information may not be disclosed by the peace or custodial officer's employer unless the false statement was published by an established medium of communication, such as television, radio, or a newspaper. Disclosure of factual information by the employing agency pursuant to this subdivision is limited to facts contained in the officer's personnel file concerning the disciplinary investigation or imposition of disciplinary action that specifically refute the false statements made public by the peace or custodial officer or his or her agent or representative.

(e) (1) The department or agency shall provide written notification to the complaining party of the disposition of the complaint within 30 days of the disposition.

(2) The notification described in this subdivision shall not be conclusive or binding or admissible as evidence in any separate or subsequent action or proceeding brought before an arbitrator, court, or judge of this state or the United States.

(f) Nothing in this section shall affect the discovery or disclosure of information contained in a peace or custodial officer's personnel file pursuant to Section 1043 of the Evidence Code.

**832.8 – Personnel Records** As used in Section 832.7, "personnel records" means any file maintained under that individual's name by his or her employing agency and containing records relating to any of the following:

(a) Personal data, including marital status, family members, educational and employment history, home addresses, or similar information.

(b) Medical history.

(c) Election of employee benefits.

(d) Employee advancement, appraisal, or discipline.

(e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties.

(f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy.

## CALIFORNIA EVIDENCE CODE

### 1043 – Discovery of Peace Officer Personnel Records

(a) In any case in which discovery or disclosure is sought of peace or custodial officer personnel records or records maintained pursuant to Section 832.5 of the Penal Code or information from those records, the party seeking the discovery or disclosure shall file a written motion with the appropriate court or administrative body upon written notice to the governmental agency which has custody and control of the records. The written notice shall be given at the times prescribed by subdivision (b) of Section 1005 of the Code of Civil Procedure. Upon receipt of the notice the governmental agency served shall immediately notify the individual whose records are sought.

(b) The motion shall include all of the following:

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 041*



Placer County Sheriff's Office
Administrative Investigation Manual

# ADDENDUM B

### *PEACE OFFICER BILL OF RIGHTS AND ASSOCIATED LAW*

(1) Identification of the proceeding in which discovery or disclosure is sought, the party seeking discovery or disclosure, the peace or custodial officer whose records are sought, the governmental agency which has custody and control of the records, and the time and place at which the motion for discovery or disclosure shall be heard.

(2) A description of the type of records or information sought.

(3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records.

(c) No hearing upon a motion for discovery or disclosure shall be held without full compliance with the notice provisions of this section except upon a showing by the moving party of good cause for noncompliance, or upon a waiver of the hearing by the governmental agency identified as having the records.

**1044 – Medical Records** Nothing in this article shall be construed to affect the right of access to records of medical or psychological history where such access would otherwise be available under Section 996 or 1016.

**1045 – Records of Complaints**

(a) Nothing in this article shall be construed to affect the right of access to records of complaints, or investigations of complaints, or discipline imposed as a result of those investigations, concerning an event or transaction in which the peace officer or custodial officer, as defined in Section 831.5 of the Penal Code, participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties, provided that information is relevant to the subject matter involved in the pending litigation.

(b) In determining relevance, the court shall examine the information in chambers in conformity with Section 915, and shall exclude from disclosure:

(1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought.

(2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code.

(3) Facts sought to be disclosed that are so remote as to make disclosure of little or no practical benefit.

(c) In determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records.

(d) Upon motion seasonably made by the governmental agency which has custody or control of the records to be examined or by the officer whose records are sought, and upon good cause showing the necessity thereof, the court may make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression.

(e) The court shall, in any case or proceeding permitting the disclosure or discovery of any peace or custodial officer records requested pursuant to Section 1043, order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law.

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 042*



# ADDENDUM B

## *PEACE OFFICER BILL OF RIGHTS AND ASSOCIATED LAW*

**1046 – Excessive Force**  In any case, otherwise authorized by law, in which the party seeking disclosure is alleging excessive force by a peace officer or custodial officer, as defined in Section 831.5 of the Penal Code, in connection with the arrest of that party, or for conduct alleged to have occurred within a jail facility, the motion shall include a copy of the police report setting forth the circumstances under which the party was stopped and arrested, or a copy of the crime report setting forth the circumstances under which the conduct is alleged to have occurred within a jail facility.

**1047 – Records for Officers Not Present** Records of peace officers or custodial officers, as defined in Section 831.5 of the Penal Code, including supervisorial officers, who either were not present during the arrest or had no contact with the party seeking disclosure from the time of the arrest until the time of booking, or who were not present at the time the conduct is alleged to have occurred within a jail facility, shall not be subject to disclosure.

## CASE LAW

*Lybarger v. Los Angeles* (1985) 40 Cal.3d 822- If criminal charges may be filed, officer must be informed of Miranda and that compelled answers are limited to the administrative investigation.

*Garrity v. New Jersey* (1967) 385 U.S. 493- Administratively ordered statements may not be used in criminal proceedings.

*Pasadena P.O.A. v. Pasadena* (1990) 51 Cal. 3d 564- Government Code section 3303(g) does not require disclosure of documents to accused officer prior to interview/interrogation.

*NLRB v. Weingarten, Inc.* (1975) 420 U.S. 251- If interview could reasonably result in disciplinary action, employee has right to request meaningful representation.

*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194- Procedural due process requires written notice of proposed action, copy of all charges, all material upon which the action is based, and an opportunity to respond, orally or in writing, to the authority imposing the discipline.

*Skinner v. Railway Labor Executives Association* (1989) 489 U.S. 602- In fitness oriented position, government may compel chemical test without individualized suspicion following certain incidents (i.e. accident.)

41

# ADDENDUM C
## *SELECTED POLICY VIOLATIONS AND CASE LAW*

## LAW ENFORCEMENT CODE OF ETHICS

## PLACER COUNTY SHERIFF'S OFFICE CORE VALUES

## PLACER COUNTY SHERIFF'S OFFICE GENERAL ORDERS MANUAL

### General Orders Manual – Administration

*Admin 1.III –General Responsibilities of All Sheriff's Office Personnel, Effective 2/26/2017*
*Section E:*

"Sworn personnel shall protect life and property; maintain order; prevent crime; investigate crimes; conduct legal searches, seizures, and arrests; apprehend criminals; recover and protect evidence and personal property; provide first aid treatment for the sick, injured, and mentally ill; testify at judicial proceedings; provide assistance when needed, regardless of duty, status or assignment."

### General Orders Manual – Professional Conduct and Responsibilities

*Conduct 3.II -Standards of Conduct, Effective 7/12/2017*
*Section C. Attention to Duty §5- **Inattention to Duty**:*

"Members shall not waste time or fail to be attentive to their duties."

*Conduct 3.II -Standards of Conduct, Effective 7/12/2017*
*Section D. Duty to Obey Orders §11- **Insubordination**:*

"Failure or refusal of any member to obey a lawful order given by a superior officer shall be insubordination. Ridiculing a superior officer, or his/her orders, whether in or out of his/her presence, to the extent that such ridicule affects the operations of the Sheriff's Office, is also insubordination."

*Conduct 3.II -Standards of Conduct, Effective 7/12/2017*
*Section D. Duty to Obey Orders §12- **Honesty in the Performance of Duty**:*

"No member shall falsify any report, official record or official communication (oral, written, or electronic). Falsification of information shall include communications that are misleading; not completely and fully disclosed as is necessary to accurately describe the matter; or, information that is known to be untruthful; any of which affects the reliability of the communication presented."

*Conduct 3.II-Standards of Conduct, Effective 7/12/2017*
*Section F. Courtesy §1- **Courtesy to the Public**:*

"Sheriff's Office members will be courteous to the public and tactful in the performance of duties. Members will not use coarse, violent, profane or insolent language and will not express any prejudice concerning sex, race, religion, politics, national origin, or similar personal characteristics."

42



Placer County Sheriff's Office
Administrative Investigation Manual

# ADDENDUM C
## SELECTED POLICY VIOLATIONS AND CASE LAW

*Conduct 3.II -Standards of Conduct, Effective 7/12/2017*
*Section J. Conduct Unbecoming a Member of the Sheriff's Office,* **Personal Conduct or Behavior**:

> " A member's conduct or behavior, either on or off duty, which is of such a nature that it causes discredit to the Sheriff's Office or the County of Placer is conduct unbecoming of a member of the Sheriff's Office. Such conduct or behavior is subject to disciplinary action."

*Conduct 3.II -Standards of Conduct, Effective 7/12/2017*
*Section L. Enforcement Activities §1-* **Use of Physical Force**:

> "Malicious assaults or batteries committed by members in the performance of law enforcement duties constitute gross misconduct. The use of physical force shall be restricted to circumstances specified by law and when necessary to accomplish a law enforcement task or to overcome actual resistance."

*Conduct 3.II -Standards of Conduct, Effective 7/12/2017*
*Section L. Enforcement Activities §2-* **Custody of Prisoners**:

> "Members charged with the custody of prisoners shall observe all laws and Sheriff's Office policies, and subordinate unit orders regarding this activity. Prisoners shall be kept securely, treated firmly and humanely, and shall not be subjected to unnecessary restraint."

*Conduct 3.II -Standards of Conduct, Effective 7/12/2017*
*Section L. Enforcement Activities §4-* **Arrests**:

> "In making arrests, members shall strictly observe the laws of arrest and the following provisions. Only necessary restraint to assure safe custody and the safety of the officer shall be employed."
> "Arresting officers are responsible for the safety and protection of the arrested person while in their custody. If necessary, the arresting officer shall ensure that emergency medical care is provided. Arresting officers shall notify the custodial officer of any injury or apparent illness or other condition that indicates the arrested person may need special care."
> "Arresting officers shall assist correctional staff, as needed, in booking a prisoner."

*Conduct 3.II -Standards of Conduct, Effective 7/12/2017*
*Section L. Enforcement Activities §8-* **Reports and Bookings**:

> "No member shall knowingly falsify any official report or enter or cause to be entered any inaccurate, false, or improper information on the books, records, or register of the Sheriff's Office."

*Conduct 3.II -Standards of Conduct, Effective 7/12/2017*
*Section L. Enforcement Activities §9-* **False Reports, Statements, Affidavits:**

> "No member of the Sheriff's Office shall knowingly and intentionally prepare, sign, and/or submit a false report, statement, or affidavit."

43



# ADDENDUM C
## SELECTED POLICY VIOLATIONS AND CASE LAW

*Conduct 3.II -Standards of Conduct, Effective 7/12/2017*
*Section L. Enforcement Activities §12- **Racial Profiling:***
> "The targeting of people based solely on their race or ethnic background is illegal profiling. Racial profiling is not to be used as the basis for enforcement action and will not be tolerated."

*Conduct 10. Social Media Policy V –Personal Use/Precautions and Prohibitions, Effective 9/12/2014*
*Section C:*
> "Placer County Sheriff's Office personnel shall not post, transmit, or otherwise disseminate confidential information to which they only have access as a result of their official duties without written permission of the Sheriff or his or her designee."

*Conduct 10. Social Media Policy V –Personal Use/Precautions and Prohibitions, Effective 9/12/2014*
*Section E §1: Personnel are prohibited from the following:*
> "Speech that ridicules, maligns, disparages, or otherwise expresses bias against any race, any religion, or any protected class of individuals."

**General Orders Manual – Personnel/Management Interests**
*Personnel 1. Sick Leave III-Limitations, Effective 1/1/15*
*Section F:*
> "Abuse of sick leave may be cause for disciplinary action."

*Personnel 3. Workplace Discrimination, Harassment and Retaliation III-Responsibilities, Effective 1/1/15*
*Section E. **Employees:***
> "It is the responsibility of all employees to know and to conduct themselves in a manner that fully conforms to this Policy. Every employee must treat the public, other employees and contractors with dignity and respect. It is the responsibility of each employee to respond fully and truthfully to all questions posed during an investigation into alleged conduct prohibited by this Policy. If so directed by the Personnel Director, it is the responsibility of each employee to maintain the confidentiality of investigations conducted pursuant to this Policy by not disclosing the substance of any investigatory interview."

**General Orders Manual – Operational Orders**
*Operational Order 1. Use of Force III –Policy, Effective 1/1/2015*
> "It is the policy of this organization that officers shall use only that amount of force that reasonably appears necessary, given the facts and circumstances perceived by the officer at the time of the event, to effectively bring an incident under control."

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 046*

# ADDENDUM C
## SELECTED POLICY VIOLATIONS AND CASE LAW

*Operational Order 1. Use of Force VI –Improper Use of Force, Effective 1/1/2015*
*Section C:*
> "The use of improper force by any member of the Sheriff's Office against any persons will not be tolerated."

*Operational Order 1. Use of Force VII–Reporting the Use of Force, Effective 1/1/2015*
> "Any use of physical force by a member of this organization shall be documented completely and accurately in an appropriate report depending on the nature of the incident."

*Operational Order 1. Use of Force IX –Notification to Supervisors, Effective 1/1/2015*
> "Supervisory notification shall be made as soon as practical following the application of physical force, under any of the following circumstances:

- Where the application of force appears to have caused physical injury
- The individual has expressed a complaint of pain
- Any application of a less lethal control device
- Where the individual has been rendered unconscious
- When any use of force application has been captured by video, pictures or source media and that information is known to the officer."

*Operational Order 3. Use of Chemical Agents VII –Reporting, Effective 1/1/2015*
*Section A:*
> "If an offense report is not completed documenting the deployment, the deputy and/or correctional officer deploying the agent shall notify his/her immediate supervisor and prepare a supplementary report documenting the incident either via a supplemental field operations report, jail incident report or an after-action/incident report."

*Operational Order 4. Impact Weapons VII –Documentation, Effective 1/1/2015*
*Section A:*
> "All injuries sustained by the suspect(s) will be photographed and described in the officer's report."

*Operational Order 7. Pursuit of Vehicles II –Policy, Effective 7/12/17*
> "Emergency vehicles operated in the course of a pursuit of an actual or suspected violator shall be in compliance with 21055 CVC, requiring red lights be activated at all times and the siren be operated when reasonable or when necessary as determined by existing conditions. All employees operating Sheriff's Office vehicles under emergency conditions are not relieved of the duty to drive with due regard for the safety of all persons using the roadway, nor are they protected from the consequences of an arbitrary exercise of the privileges granted."

45

# ADDENDUM C
## SELECTED POLICY VIOLATIONS AND CASE LAW

*Operational Order 8. Non-Pursuit Code 3 Emergency Driving III –Procedures, Effective 1/1/2015*
*Section B. Safety Precautions:*

"Emergency vehicles driving Code 3 shall operate within the limits set by CVC Section 21055 (exemption of authorized emergency vehicles) which states that officers will not drive at a speed greater than is safe considering amount of traffic, surface and width of the road, and number of intersections. Officers will slow and prepare to yield to traffic at intersections bearing stop signs or red traffic signals and proceed through only after ensuring that they can do so safely. When approaching a blind intersection (where visibility is obstructed within 100 feet), proceed through when safe. No use of MDC or other electronic devices (not including two-way radio) will occur by an officer driving Code 3."

*Operational Order 9. Firearms Qualification III –Range Attendance, Effective 1/1/2015*
*Section C:*

"Failure to comply with the regulations governing qualifications, duty weapons and off-duty weapons will result in disciplinary action. The first will consist of written admonishment; the second may consist of suspension or other more severe action."

*Operational Order 10. Use of County Vehicles II –Rules Governing the Use of County Vehicles, Effective 12/26/2016*
*Section XX:*

** For the most part, this entire GO is a list of ways you can mess up in a county car. For that reason, I am just leaving the chapter cite here and you can pull the applicable section.

## CORRECTIONS DIVISION POLICY MANUAL

**Corrections Division Policy Manual – Chapter 1 Administration & Personnel**
*Policy 1-10. Use of Force –Policy, Effective 07/01/1992, Revised 08/15/2013*

"It is the policy of the Sheriff's Office that custody staff shall use only that amount of force that reasonably appears necessary, given the facts and circumstances perceived by the officer at the time of the event, to effectively bring an incident under control."

*Policy 1-10. Use of Force –Policy, Effective 07/01/1992, Revised 08/15/2013*

"Physical force is never justifiable as a form of punishment."

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 048*



Placer County Sheriff's Office
Administrative Investigation Manual

# ADDENDUM C
## SELECTED POLICY VIOLATIONS AND CASE LAW

*Corrections Division Policy Manual – Chapter 1 Administration & Personnel*
*Policy 2-11. Booking/Intake Officer –H. Other Duties, Effective 07/01/1992, Revised 02/01/16*
"Booking staff will be tasked with writing incident reports for all occurrences including, but not limited to:
- a. Use of Force
- b. Safety Cell Placement
- c. Suicide Watch Placement
- d. Discovery of contraband
- e. Missed Cell Checks."

## COUNTY POLICIES
Chapter 3, Article 3.04 - "Personnel Regulations Generally" – Contain regulations about sick leave, work hours, and use of county property amongst others.
County Drug Policy
County Harassment Policy
County Technology Use Policy
County Workplace Relationships Policy
County Workplace Violence Policy

## P.O.S.T. LEARNING DOMAINS
Post Learning Domain #20 – "Use of Force"
Post Learning Domain #33 – "Arrest and Control"

## PENAL CODE USE OF FORCE AUTHORITIES
**Patrol**
196 PC – Justifiable Homicide by police officer
834a PC – Duty of a person to refrain from using force/weapon to resist arrest
835 PC – Person may be subject to restraint
835a PC – Reasonable force to effect arrest
854 PC – Pursue and retake prisoner

**Corrections**
723 PC - Seizing, arresting, and confining persons resisting.
831.5(f) PC – Custodial officer may use reasonable force.
831.6(d) PC – Transportation officers may use reasonable force.
836.5 (b) – No public officer or employee shall be deemed an aggressor or lose his or her right to self-defense by the use of reasonable force to effect the arrest, prevent escape, or overcome resistance.
843 PC – Force permissible under warrant.
846 PC – Disarm prisoner, take weapons.

47



# ADDENDUM C
## *SELECTED POLICY VIOLATIONS AND CASE LAW*

CASE LAW

*Terry v. Ohio*, (1968) 392 U.S. 1 - Search and seizure 101
*Graham v. Conner*, (1989) 109 S.Ct. 1865– Use of force 101
*Tennessee v. Garner*, (1985) 471 U.S.1– Deadly force 101
*Kingsley v. Hendrickson*, (2015),  576 US ___– jail use of force
*Bell v. Wolfish*, (1979) 441 U.S. 520– 4th Amendment and how it applies to pretrial detainees

48

Placer County Sheriff's Office
Administrative Investigation Manual

# ADDENDUM D
## *ADMINISTRATIVE INVESTIGATION ADVISEMENT*



**PLACER COUNTY SHERIFF'S OFFICE**

## Administrative Investigation Advisement

EMPLOYEE NAME:

DATE:                                    FILE NO. :

The Sheriff's Office is conducting an administrative investigation which could result in disciplinary action. Per the Public Safety Officers' Procedural Bill of Rights Act (POBAR), Government Code Section 3303(c), you have the right to be informed of the nature of the investigation prior to the interrogation. The nature of the investigation is as follows:

If true, these allegations would result in a violation of: (See Administrative Investigation Index)

You are to report to                    on              at              hours to answer questions relating to this investigation. If this creates and schedule conflict for you, we will work with you to choose an alternate day and time. The officer in charge of the interview will be                    . An additional investigator may be required to be present. If so they are identified as:

_____  ☐ N/A

The entire interrogation will be recorded, and per Government Code section 3303g, you will have access to a copy of the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. You have the right to make your own recording of any and all aspects of the interview.

You also have the right to a representative of your choice present at all times during the interrogation, although said representative may not be a party to the same investigation. You have the right to discuss this case with an attorney or representative of your choice, however, you are ordered not to discuss it with anyone else, unless expressly given permission to do so by the Sheriff, his designee, or myself.

You shall not harass or retaliate against anyone as a result of this investigation.

You are advised that your rights are fully outlined in the Public Safety Officers' Procedural Bill of Rights Act, Government Code Sections 3300-3311. For your convenience, a copy of these rights are attached.

If you have any questions prior to the interview, please do not hesitate to call me at                    .

Signature and Date: _____

1 of 5

49

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 051*

Placer County Sheriff's Office
Administrative Investigation Manual

# ADDENDUM D
## *ADMINISTRATIVE INVESTIGATION ADVISEMENT*



**PLACER COUNTY SHERIFF'S OFFICE**
## Administrative Investigation Advisement

### Administrative Investigation Index

| | | |
|---|---|---|
| ☐ Unlawful Arrest | ☐ Discrimination | ☐ Failure to Take Action |
| ☐ Unlawful Search | ☐ Excessive Police Service | ☐ Unofficerlike Conduct |
| ☐ Unnecessary Force | ☐ Improper Procedure | ☐ Dishonesty |
| ☐ Rude Conduct | ☐ Delay in Response / Slow Response | ☐ Missing / Damaged Property |

☐ Administrative Critical Incident Investigation (OIS, In Custody Death, etc.)

Suspected Violation (s):
General Orders (GO)    Field Operations    County Code (CC)    Corrections Div. Policy Manual (CM)

**GO  FO  CC  CM**
☐  ☐  ☐  ☐

☐  ☐  ☐  ☐

☐  ☐  ☐  ☐

☐  ☐  ☐  ☐

☐  ☐  ☐  ☐

☐  ☐  ☐  ☐

☐  ☐  ☐  ☐

☐  ☐  ☐  ☐

☐  ☐  ☐  ☐

☐  ☐  ☐  ☐  Violation 10

2 of 5

Signature and Date: _____

50

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 052*

# ADDENDUM D
### *ADMINISTRATIVE INVESTIGATION ADVISEMENT*



**PLACER COUNTY SHERIFF'S OFFICE**
## Administrative Investigation Advisement

### Brady Admonition

EMPLOYEE NAME:

DATE:                                    FILE NO. :

Honesty and integrity are core values and essential characteristics of members of the Placer County Sheriff's Office. The public we serve and the courts in which we testify demand no less.  You are advised that, as a result of court decisions, the Sheriff's Office may be compelled to disclose all administrative evidence in its possession concerning an employee's lack of honesty to various courts and, ultimately, to defense attorneys. Once such decision is Brady v. Maryland ((1963) 373 U.S. 83, 87). Administrative evidence subject to disclosure per Brady is not limited by any historical parameter; evidence spanning an employee's entire career must be disclosed.  Once disclosed, such evidence can be expected to be considered by prosecutors and judges, as well as be used by defense counsel in all future proceedings.

Furthermore, if you are a Sworn member of this organization, you swore to uphold a Code of Ethics upon entering law enforcement.  Prior to giving a statement in the pending investigation, remember the following lines from that code:

*"Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my agency."*

You are reminded that General Order Conduct III "Standards of Conduct" § II D.12 states, *"No member shall falsify any report, official record or official communication (oral, written, or electronic).  Falsification of information shall include communications that are misleading; not completely and fully disclosed as is necessary to accurately describe the matter; or, information that is known to be untruthful; any of which affects the reliability of the communication presented."*

Untruthfulness in the course of your duties, including statements concerning the pending investigation, will result in disciplinary allegations, which, if sustained, are likely to result in termination of your employment.  If you do not understand the long-term effects of departing from the truth during this investigation, ask myself, your commanding officer, or your attorney.

**If at any point during this investigation you do not understand a question, ask for clarification.**

By signing this document, I hereby acknowledge my duty to be forthright and completely honest at all times.  I understand violations of this duty may cause termination of my employment.

Signature and Date: _____

3 of 5

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 053*



# ADDENDUM D
## *ADMINISTRATIVE INVESTIGATION ADVISEMENT*



**PLACER COUNTY SHERIFF'S OFFICE**
## Administrative Investigation Advisement

Please read these certain rights as granted by law relative to administrative interrogations. If you have any questions, the interviewing officer(s) can provide further explanation.

### CALIFORNIA PEACE OFFICER PROCEDURAL BILL OF RIGHTS

**You have a right** not to be subjected to punitive action, or be denied promotion or threatened with any such treatment, because of the lawful exercise of your rights granted by Government Code section 3300 et. Seq., or the exercise of any rights under any existing administrative grievance procedure.

**You have a right** to have any interrogation conducted at a reasonable hour, with a representative of your own choosing present, preferable at a time when you are on duty, or during your normal waking hours, unless the seriousness of the investigation requires otherwise. [3303(a)]

**You have a right** to be compensated for time spent in interrogations that are conducted on your off-duty time in accordance with departmental guidelines. You shall not be released from employment for any work missed. [3303(a)]

**You have a right** to be informed of the name and rank and command of the officer in charge of an interrogation, the interrogating officers, and all persons to be present during the interrogation, in advance of the interrogation. [3303(b)]

**You have a right** to have all questions directed to you under interrogation through no more than two interrogators at one time. [3303(b)]

**You have a right** to be informed of the nature of the investigation prior to the interrogation. [3303(c)]

**You have a right** to have the interrogating sessions limited to a reasonable period, taking into consideration the gravity and complexity of the issue being investigated [3303(d)]

**You have a right** during interrogations, to be allowed to attend to your own personal physical necessities. [3303(d)]

**You have a right** not to be subjected to offensive language or threatened with punitive action, except that an officer refusing to respond to questions or submit to interrogation shall be informed that failure to answer questions directly related to the investigation, or interrogation, may result in punitive action. No promise or reward shall be made as an inducement to answering any questions. [3303(e)]

**You have a right** not to be subjected to visits by the press or news media without your express consent, nor shall your home address or photograph be given to the press or news media by the department without your express consent. [3303(e)]

**You have a right** to have no statement you make under duress or coercion during an administrative interrogation to be admissible in any subsequent civil proceeding except: when the agency is seeking civil sanctions against you; in civil or administrative actions brought by you against your employer; when the statements are used to impeach your testimony after in-camera review; or if you are subsequently deceased. [3303(f)]

Signature and Date: _____

4 of 5

52

# ADDENDUM D
### *ADMINISTRATIVE INVESTIGATION ADVISEMENT*



**PLACER COUNTY SHERIFF'S OFFICE**
## Administrative Investigation Advisement

---

### CALIFORNIA PEACE OFFICER PROCEDURAL BILL OF RIGHTS (continued)

**You have a right** to access any tape recording of any of your previous interrogations or to have your own tape recorder present. [3303(g)]

**You have a right** to a transcribed copy of any notes made by a stenographer, or to any reports or complaints made by investigators or other persons upon completion of the investigation, except those which are deemed by the investigation agency to be confidential. No notes or reports, which are deemed confidential may be entered in your personnel file. [3303(g)]

**You have a right** to be informed of your Constitutional Rights prior to or during the investigation if it is deemed that you may be charged with a criminal offense. [3303(i)]

**You have a right** to have a representative present if formal charges have been made or if punitive action may be taken as a result of interrogation. [3303(i)]

**You have a right** not to be loaned, or temporarily reassigned, to a location or duty assignment if a sworn member of the Department would not normally be sent to that location or would not normally be given that duty assignment under similar circumstances. [3303(j)]

**You have a right** that no punitive action, or denial of promotion, on grounds other than merit, shall be undertaken by any public agency without providing you with an opportunity for administrative appeal. [3304(b)]

**You have a right** not to have any comment, adverse to your interest, entered in your personnel file, or any other file used for any personnel purposes by your employer, without you first having read and signed the instrument containing the adverse comment, indication that you are aware of such comment. If you refuse to sign the document, it will be so noted and placed in your file, after you have signed or initialed the fact of your refusal to sign. [3305]

**You have a right** to refuse to inform your employer of information regarding items of property, income, assets, source of income, debts, or personal or domestic expenditures and those of your family, except such information as required by state law, or which is necessary for the employer to ascertain the desirability of assignment to a special unit in which there is a strong possibility of bribes or other improper inducements being offered. [3308]

**You have a right** to have your locker free from search, except when you are present, or when you have been notified of the date and time the search will be conducted, or by other legal means. [3309]

**You have a right** to have thirty (30) days within which to file a written response to any adverse comment entered in your personnel file and have it attached to, and accompany, the adverse comment. [3306]

**You have a right** to refuse to submit to a polygraph examination. No disciplinary action may be taken or record kept to indicate the fact that you refused the polygraph. Nor shall the fact that you refused the polygraph exam be admissible at any subsequent hearing. [3307]

Signature and Date: _____

5 of 5

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 055*

Placer County Sheriff's Office
Administrative Investigation Manual



# ADDENDUM E
## *WITNESS NOTIFICATION*



**PLACER COUNTY SHERIFF'S OFFICE**

## Witness Notification

EMPLOYEE NAME:

DATE:                                    FILE NO. :

I am _____ and this investigation concerns allegations of inappropriate conduct by another employee. The Placer County Sheriff's Office advises you that the Sheriff has authorized me to question you as part of an official investigation and for the purpose of this interview I am to be considered your superior officer. You are named as a witness in a matter which concerns another employee. The complainant has not filed a complaint against you, and you are not under investigation as a subject in this matter.

You are hereby advised that provisions of the Government Code, generally referred to as the Peace Officers' Bill of Rights, do not apply in this instance. Personnel being interviewed as witnesses only, and who are not under investigation or not personally charged with any violation, do not have a right to have a representative present during the interview. If it is determined during the interview that you are likely to be subject to discipline, the interview shall be stopped. You shall then be advised your status has changed to that of a subject of possible discipline.

You are reminded that General Order Conduct 3 "Standards of Conduct," § II D.11 states, "Failure or refusal of any member to obey a lawful order given by a superior officer shall be insubordination." In addition, General Order Administration 1 "Organization and Operation," § III B states it is a general responsibility of all Sheriff's Office personnel to, "Obey and carry out all lawful policies, procedures, and orders issued by the Sheriff and other superior officers, whether written or oral."

Initial indicating you understand the above orders _____

You are reminded that General Order Conduct III "Standards of Conduct" § II D.12 states, "No member shall falsify any report, official record or official communication (oral, written, or electronic). Falsification of information shall include communications that are misleading; not completely and fully disclosed as is necessary to accurately describe the matter; or, information that is known to be untruthful; any of which affects the reliability of the communication presented."

Initial indicating you understand the above order _____

With these orders in mind, initial indicating your understanding any refusal to follow the above General Orders may result in punitive action including termination of employment _____

You are reminded that you are under orders **NOT** to talk to, or discuss anything regarding this investigation other than with me unless you are ordered to do so by the Sheriff, his designee, or myself.

The above admonition has been explained to me and I understand its contents.

_____                    _____
Signature                                    Investigator

1 of 1

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 056*

# ADDENDUM F
## *MIRANDA/LYBARGER*





### PLACER COUNTY SHERIFF'S OFFICE
# Miranda / Lybarger

---

**Miranda Rights** *Miranda v. Arizona* 384 U.S. 436 (1966)

In addition to your Rights under Government Code 3300 et. Seq., if these allegations could result in criminal charges, you also have the following Miranda Rights:

- You have the right to remain silent.
- Anything you say can be used against you in court.
- You have the right to an attorney, before and during questioning.
- If you cannot afford an attorney, one will be appointed by the court, free of charge before questioning.

I have read and understand my Miranda Rights.

My reading and understanding of my Miranda Rights is not a waiver of those rights.    Initial_____

**Lybarger Admonishment** *Lybarger v. City of Los Angeles* 40 Cal. 3d 822 (1985)

- While per Miranda you have the right to remain silent with regard to any criminal investigation, you do not have the right to refuse to answer my administrative questions.
- This is strictly an administrative investigation.  I am therefore, now ordering you to discuss this matter with me.
- If you refuse to discuss this matter, your silence can be deemed insubordination and result in administrative discipline, up to and including termination.
- Per *Garrity v. New Jersey* 385 U.S. 493 (1967), any statement you make under compulsion of the threat of such discipline cannot be used against you in a later criminal proceeding.

I have read and understand my rights as explained above.

_____         _____
Signature                                                             Date and Time

_____         _____
Investigator                                                          Date and Time

1 of 1

55

# ADDENDUM G
### *RECORDED INTERVIEW ADMONISHMENT*



**FN**

*PLACER COUNTY SHERIFF'S OFFICE*
## Recorded Interview Admonishment

Employee Being Interviewed: _____

Today's date is _____, the time is _____, and we are at the Placer County _____ in the _____. This interview is being recorded with the knowledge of _____ _____. I am _____ and will be conducting this interview. I am currently assigned as _____.    Those also present in the room are _____ _____.

The purpose of this interview is to determine the events that occurred on _____

The nature of this investigation is in regards to possible misconduct on the part of _____

The Placer County Sheriff's Office advises you that the Sheriff has authorized me to question you as part of an official investigation and for the purpose of this interview I am to be considered your superior officer. You will be asked questions specifically directed and narrowly related to the performance of your official duties. You are entitled to all of the rights and privileges guaranteed by the constitutions and laws of the United States and the State of California, including the right not to be compelled to incriminate yourself, and if you are the subject of this investigation, the right to have legal counsel present at each and every stage of the investigation.

I further wish to advise you that if you refuse to answer questions relating to the performance of your official duties, you will be subject to departmental charges which could result in your dismissal from the Placer County Sheriff's Office.

Do you understand that I am considered your superior officer? Initial _____

If you do answer, your statements and any information or evidence gathered by reason of such state-ments, will be held confidential consistent with the California Penal Code §832.7 and Placer County Code Chapter 3.04.740 and will not be divulged except as required by law. Your statements may, however, be used against you subsequently in relation to departmental charges.

1 of 2

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 058*

Placer County Sheriff's Office
Administrative Investigation Manual



## ADDENDUM G
### *RECORDED INTERVIEW ADMONISHMENT*



FN

**PLACER COUNTY SHERIFF'S OFFICE**

## Recorded Interview Admonishment

---

Before we begin the interview, I want to advise you of three General Orders that apply to this interview:

You are reminded that General Order Conduct 3 "Standards of Conduct," § II D.11 states, *"Failure or refusal of any member to obey a lawful order given by a superior officer shall be insubordination."* In addition, General Order Administration 1 "Organization and Operation," § III B states it is a general responsibility of all Sheriff's Office personnel to, *"Obey and carry out all lawful policies, procedures, and orders issued by the Sheriff and other superior officers, whether written or oral."*

Initial indicating you understand the above orders _____

You are reminded that General Order Conduct III "Standards of Conduct" § II D.12 states, *"No member shall falsify any report, official record or official communication (oral, written, or electronic). Falsification of information shall include communications that are misleading; not completely and fully disclosed as is necessary to accurately describe the matter; or, information that is known to be untruthful; any of which affects the reliability of the communication presented."*

Initial indicating you understand the above order _____

If at any time during the interview you wish to take a break, let me know and we will turn off the recording device. When we return, we will begin the same recorder device, noting the time. If you are re-interviewed regarding the same allegation, prior to being asked any questions, you will be provided a copy of the recording of this interview, or a transcription of the interview.

Do you have any questions? _____

Upon leaving this interview, you are hereby ordered to **NOT** discuss this matter with anyone other than your attorney/representative or myself, unless expressly given permission to do so by the Sheriff, his designee, or myself.

Initial indicating you understand the above order _____

2 of 2

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 059*



Placer County Sheriff's Office
Administrative Investigation Manual

# ADDENDUM H
### *VIDEO EVIDENCE REVIEW ADMONITION*



**PLACER COUNTY SHERIFF'S OFFICE**

## Video Evidence Review Admonition

---

**EMPLOYEE NAME:**

**DATE:**                    **FILE NO. :**

There is video evidence and/or audio recordings related to this incident that you will have an opportunity to review. Video evidence has limitations and may depict the events differently than you recall, and may not depict any or all of the events as seen or heard by you. Video has a limited field of view and may not capture events normally seen by the human eye. The frame rate of video may limit the camera's ability to capture movements normally seen by the human eye. Lighting as seen on the video may be different than what is seen by the human eye. Videos are a two-dimensional medium and may not capture depth, distance, or positional orientation as well as the human eye. Remember, the video evidence is intended to assist your memory and ensure that your initial statement explains your state of mind at the time of the incident. You should not feel in any way compelled or obligated to explain any difference in what your remember and acted upon from what viewing the additional evidence provides you. If listening to audio recordings or viewing video recordings provides additional clarity to what you remember, that is fine; if it does not, that is fine too.

Item (Video/Audio)          Description of Evidence Reviewed

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____


_____          _____

Signature                    Investigator

---

1 of 1

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 060*



Placer County Sheriff's Office
Administrative Investigation Manual

**ADDENDUM I**
*EXAMPLE ADMINISTRATIVE INVESTIGATION*

PLACER COUNTY
# SHERIFF
CORONER-MARSHAL

**DEVON BELL**
SHERIFF-CORONER-MARSHAL

DATE:        XX/XX/XXXX

TO:          Your Chain of Command

FROM:        Investigating Officer

SUBJECT:     CITIZEN COMPLAINT INVESTIGATION #FN-XXX *or*
             ADMINISTRATIVE INVESTIGATION #FN-XXX

Background
*[Explain how you received the complaint.]*

EXAMPLE:

On February 1, 2018, I met with Lieutenant Black in his office at the Auburn Justice center, and he handed me a packet containing a complaint related to Citizen's Complaint FN-123. Lieutenant Black advised me the complaint was related to a cla m that Deputy Blue used improper procedures and was discourteous during an investigation of a fight that occurred on January 1, 2018. I was assigned the investigation as Deputy Blue is currently assigned to my shift.

*Summary of Incident:*
*[Provide a brief summary of the event leading up to the complaint and a summary of the complaint itself.]*

EXAMPLE:

On January 31, 2018, Jane Rose made a complaint via the online complaint system. She said that her brother, John Doe, was involved in a fight on January 1, 2018, where PCSO responded. She stated that her brother was "jumped" but Deputy Blue would not let her brother press charges. Rose said that Blue used profanity during the response to the incident. Rose said her brother suffered injuries from the altercation, but was not offered medical aid by Blue. Rose also alleged that Blue was discourteous when he made comments that her brother should "take a fucking pill."

59

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 061*



Placer County Sheriff's Office
Administrative Investigation Manual

# ADDENDUM I
### EXAMPLE ADMINISTRATIVE INVESTIGATION

Investigation Timeline
*[This section of the report provides a timeline of the investigation. It starts with complaint receipt and ends with the culmination of the investigators actions. Use bullets of steps taken or items reviewed in chronological order.]*

EXAMPLE:

- 1/31/18    Rose filed On-Line Complaint
- 2/1/18    Received and reviewed citizen complaint by Ms. Rose
- 2/3/18    Reviewed CAD Event History. Obtained video from World Pub. Interviewed Witness Amber.
- 2/4/18    Interviewed Complainant Rose (Recorded) and Witness Doe (Recorded)
- 2/5/18    Administrative Investigation Notification served on Deputy Blue
- 2/10/18    Interviewed Witness Deputy Green (Recorded)
- 3/3/18    Interviewed Subject Deputy Blue (Recorded)

Applicable Authorities (Charges)
*[Indicate the Sheriff's Office manual section or Placer County code sections that you will use to define the required conduct of the employee and that identify the authorities to implement discipline (if appropriate). Penal Code Sections or specific case law can also be cited should you need to use them to support or refute the alleged conduct of the officer. For example, you may need to justify a search of a vehicle and may want to cite a case that allows such a search under similar circumstances as stated in the complaint.]*

EXAMPLES:
**General Orders Manual – Administration**
*Admin 1.III –General Responsibilities of All Sheriff's Office Personnel, Effective 2/26/2017*
*Section E:*
"Sworn personnel shall protect life and property; maintain order; prevent crime; investigate crimes; conduct legal searches, seizures, and arrests; apprehend criminals; recover and protect evidence and personal property; provide first aid treatment for the sick, injured, and mentally ill; testify at judicial proceedings; provide assistance when needed, regardless of duty, status or assignment."

**General Orders Manual – Professional Conduct and Responsibilities**
*Conduct 3.II-Standards of Conduct, Effective 7/12/2017*
*Section F. Courtesy §1- **Courtesy to the Public***:
"Sheriff's Office members will be courteous to the public and tactful in the performance of duties. Members will not use coarse, violent, profane or insolent language and will not express any prejudice concerning sex, race, religion, politics, national origin, or similar personal characteristics."

60



## ADDENDUM I
### EXAMPLE ADMINISTRATIVE INVESTIGATION

***General Orders Manual – Professional Conduct and Responsibilities***
*Conduct 3.II -Standards of Conduct, Effective 7/12/2017*
*Section J. Conduct Unbecoming a Member of the Sheriff's Office,* **Personal Conduct or Behavior***:*

> " A member's conduct or behavior, either on or off duty, which is of such a nature that it causes discredit to the Sheriff's Office or the County of Placer is conduct unbecoming of a member of the Sheriff's Office. Such conduct or behavior is subject to disciplinary action."

<u>Analysis</u>

*[This section is the narrative of your investigation. Begin with a statement describing the issues. Example:*

> *The focus of this investigation is on two issues: 1) Was Deputy X discourteous during his contact with the Complainant? 2) Was Deputy X's search of the Complainant's car proper?*

*After stating the issues, document all the supporting and refuting evidence that you discovered during your investigation. Include a synopsis of the statements that support or refute the complainant's concerns should follow. Transcribe entire or partial interviews as necessary.]*

EXAMPLE:

The focus of this investigation is on the following issues:
1. Did Deputy Blue follow improper procedure by failing to offer Doe medical attention?
2. Did Deputy Blue fail to investigate the battery of Doe and fail to accept the private person's arrest from Doe?
3. Did Deputy Blue use profanity toward Doe and Rose during this incident?

On January 31, 2018, Complainant Rose filed a complaint via the PCSO on-line complaint form. On February 1, 2018, Lieutenant Black provided me with a copy of the on-line complaint and directed me to investigate this incident.

I reviewed the complaint filed by Rose (Attachment 1). It stated the following:

> My brother John Doe was involved in a fight on New Year's Eve after midnight in front of the World Pub on 49. He was in a fight with another man at the bar. My brother got a bloody nose in the fight. Deputy Blue came to the bar and did not offer my brother medical help for the bloody nose. I was there with my brother and Blue did not offer me anything either and he wouldn't let me talk to my brother. He told my brother to take a fucking pill when he got home. My brother had a headache and neck ache the next day and will be going to the doctor soon. I wanted the man who hit my

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 063*



Placer County Sheriff's Office
Administrative Investigation Manual

## ADDENDUM I
### *EXAMPLE ADMINISTRATIVE INVESTIGATION*

brother arrested, but Blue refused to arrest him. Blue told me to shut my fucking mouth. Blue should not be a deputy.

I reviewed the CAD incident history (Attachment 2.) The CAD report shows on January 1, 2018, at 0055hours, Deputy Blue and Deputy Green were dispatched to a report of a disturbance in the alley near the Chevron gas station on the corner of Highway 49 and Bell Road. They arrived at 0101hours. The call was phoned in 911 by an anonymous RP using the payphone on the side of the Chevron. The CAD call stated "anonymous RP stating two drunks in a 415 physical. Woman screaming." There was no listed request for medical aid in the call history. Blue went Code 4 at 0104 hours. He cleared the call at 0117hours, with the comment, "Incident adjusted prior to our arrival. One subject gone upon our arrival. Second 647f subject had bloody nose. Unknown how injury suffered. Sister said he was punched."

No report was taken in this incident. I attempted to locate ICC footage of the incident, but neither Green nor Blue activated their cameras during this incident.

On February 3, 2018, I went to World Pub and spoke with the owner, Witness Amber. I explained the purpose of my investigation and Amber agreed to speak with me. I recorded her statement and it is attached to this investigation (Attachment 3.) Amber said she was working at the bar on New Year's Eve, etc.

I asked Amber if the Pub has a video surveillance program. She said that it does, but it is "old." The video system at the World Pub uses CD discs to record. Amber said that the discs usually hold around a month or two of data, then they record over themselves. We checked the system and it no longer had any data from January 1, 2018.

On February 4, 2018, I went to 11680 Garnett Way, Auburn and met with Complainant Jane Rose. I recorded my conversation with Rose and it is attached as Attachment 4. Rose provided me with the following statement, in summary:

> Rose said that she and John Doe are brother and sister and both live at 11680 Garnett Way with their aunt. Rose said on New Year's Eve they walked to the World Pub to celebrate New Year's, etc.

I then spoke with Witness Doe. I recorded my conversation with Doe and it is attached as Attachment 5. Witness Doe said the following in summary:

> Doe said that he and Rose went to the World Pub on New Year's Eve and both got drunk, etc.

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 064*



Placer County Sheriff's Office
Administrative Investigation Manual

# ADDENDUM I
### *EXAMPLE ADMINISTRATIVE INVESTIGATION*

On February 5, 2018, at 0630 hours, I met with Deputy Blue at AJC in the Sergeant's Office. I provided Blue with the Administrative Investigation Notification (Attachment 6) and let him know that his interview was scheduled for March 3, 2018.

On February 10, 2018, at 1530 hours, I called Deputy Green into the Sergeant's Office at AJC. I told him that I needed to talk with him about a Citizen's Complaint. I advised Green of the purpose of my interview and that he was a witness to this investigation. No others were present during our interview. I recorded my interview with Green and it is attached as Attachment 7. I read Green the PCSO Witness Admonishment, which he signed indicating he understood. I reminded him that he was not to discuss this investigation with others. Following is a summary of my interview with Green.

> I showed Green the CAD summary for this incident. Green said that he recalled this incident. Green said that he and Blue were dispatched, etc.

On March 3, 2018, at 0735 hours, I met with Blue in the Backgrounds Interview Room at the Auburn Justice Center. Blue's attorney, David Dewey, was present during his interview. No others were present during the interview. I recorded my interview with Blue and it is attached as Attachment 8. I read Dewey the Administrative Admonishment (Attachment 9) and he answered that he understood and agreed to speak with me.

Blue had a chance to review the complaint and CAD incident log prior to his interview.

I asked Blue to tell me what he recalled from this incident. Blue said... etc.

Summary:
*[A statement is then made by you that analyzes the statements/evidence as they apply to each of the applicable authorities. Do this for each allegation. This should not be confused with a finding (sustained or not sustained). Summarize the corroborating evidence or the material inconsistencies between the employee or complainant's version of events and other facts, such as witness accounts or audio/video recordings. In other words, is it logical, based on the above, that the complaint as alleged occurred, did not occur, can't be proven either way, or occurred but is within policy and procedure?*

EXAMPLE:

Upon review of the initial focus of this investigation, following are the questions asked and a summary of the evidence gathered in response to each:

*Did Deputy Blue follow improper procedure by failing to offer Doe medical attention?*

63



Placer County Sheriff's Office
Administrative Investigation Manual

# ADDENDUM I
### *EXAMPLE ADMINISTRATIVE INVESTIGATION*

Jane Rose stated that John Doe suffered a bloody nose and neck injury during the altercation with the unknown suspect. She stated that Deputy Blue did not offer and first aid to Doe on scene. John Doe admitted to drinking heavily prior to this incident and after being questioned, had no independent recollection of this incident and relied heavily on what Rose had told him occurred after-the-fact. Deputy Green said that he saw that Doe appeared to have been bleeding from the nose prior to his arrival, but was not suffering an active nose bleed when he was on scene. Blue stated that he talked to Doe about the nose bleed. He stated his nose was not bleeding at the time of his arrival, and told him to pinch his nose if it started bleeding again. Blue stated that he saw no need for immediate medical attention for Doe.

Attachments

*[List each piece of evidence, statement, and form used during the investigation.]*

1. On-line complaint filed by Rose
2. CAD printout of incident #P180000027
3. Witness Amber recorded statement
4. Complainant Rose recorded statement
5. Witness Doe recorded statement
6. Notification of Administrative Investigation for Deputy Blue
7. Witness Deputy Green statement
8. Subject Deputy Blue recorded statement
9. Deputy Blue Administrative Admonishment

Findings

*[Findings are not determined by the investigating officer. It is the next person in the chain-of-command, a Lieutenant or Captain, who recommends the findings, which are forwarded to the Undersheriff and the Sheriff for approval. The investigator will state in this section, "Refer to higher level for findings."*

*Your investigation and analysis will provide the support for the person making the determination whether it is more likely that not that the subject employee engaged in misconduct. This is known as the "preponderance of evidence" or "more likely that not" standard. Internal Affairs investigations are not held to the "beyond a reasonable doubt" standard that is used in criminal prosecutions.]*

An example of findings is:

64

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 066*



Placer County Sheriff's Office
Administrative Investigation Manual

# ADDENDUM I
## *EXAMPLE ADMINISTRATIVE INVESTIGATION*

*The allegations of Failure to Provide Aid and Failure to Investigate against Deputy Blue are* **Exonerated**. *The allegation of Discourtesy against Deputy Blue is* **Sustained**.

Recommendation

*[Again, the recommendation for discipline is referred by the investigating officer to a higher level. Recommendations can take into consideration the employee's performance beyond this investigation including prior discipline or extenuating circumstances. Should an allegation be sustained, a recommendation for discipline is made by the next person in the chain-of-command; then forwarded to the Undersheriff for approval. An allegation that is Not Sustained, Exonerated, etc., can still have a recommendation for informal discipline such as counseling or training. The investigator will state in this section, "Refer to higher level for recommendations."]*

Example:

Upon review of this investigation and findings and Deputy Blue's prior discipline record, I recommend Deputy Blue receive a written reprimand regarding this incident. In addition, Deputy Blue should receive additional training in Tactical Communication.

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 067*



## ADDENDUM J
### *RESOURCES*

**The US Constitution**                              www.archives.gov/founding-docs/constitution
The National Archives official website.  Contains copies of all of America's founding documents.

## Law Enforcement Resources

**AELE Legal Publications**                              http://www.aele.org/law/index.html
Americans for Effective Law Enforcement webpage.  Contains a legal library of thousands of case digests.

**POST**                              https://www.post.ca.gov/resources.aspx
California Commission on Peace Officer Standards and Training website.  Resources link contains a POST library link.

**California State Sheriff's Association**        http://www.calsheriffs.org/
Contains resource page with legal sources and past issues of the California Sheriff Magazine.

**FLETC**                              https://www.fletc.gov/
Federal Law Enforcement Training Center's webpage. Contains a legal resource subpage with links to various references and court cases.

**IACP**                              http://www.theiacp.org/
The webpage of the International Association of Chiefs of Police.  The Resources and Publications section of the site contains hundreds of publications on a broad range of Law Enforcement topics.

**Point of View**                              http://le.alcoda.org/publications/point_of_view/
Quarterly case law journal containing updates and alerts, published by the Alameda County District Attorney's Office.

**US Department of Justice COPS**        https://cops.usdoj.gov/
The DOJ's Community Oriented Policing Services webpage contains resources and links to other police oriented legal resources and publications.

## Employee Organizations and Legal Contacts

**Placer County Deputy Sheriff's Association**     http://www.placerdsa.org/
The website of the PCSO DSA.

**Placer Public Employees Organization**        http://www.yourplacer.org/
Website with information for members of PPEO.

66

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 068*



## ADDENDUM J
### *RESOURCES*

## Internal Affairs and POBAR Resources

Mayer, Martin J., and Kevin Johnson. *Investigators Guide to the California Public Safety Officers Bill of Rights Act 2nd Edition*. Morris Publishing, 2013.

Marr, Cecil and Diane Marchant. *Pocket Guide to the Public Safety Officers Procedural Bill of Rights Act 17th Edition*. The Regents of the University of California, 2018.

## Memoranda of Understanding

**California Highway Patrol**

**Deputy Sheriff's Association**

**Nevada Interstate**

**Placer County District Attorney's Office Brady Protocol**

**Placer Public Employees Organization**

## Placer County Resources

**Placer County Code**                    http://qcode.us/codes/placercounty/
Chapter 3 includes all personnel regulations for employees of Placer County.

**Placer Civil Service Commission**      http://www.placer.ca.gov/bos/committees-and-
                                        commissions/civil-service-commission
Information about the County's civil service commission, its purpose, composition and contact information.

## Use of Force Resources

**Force Science Institute**               http://www.forcescience.org/
Website for the Force Science Institute, Ltd. Includes link to training and resource materials.

███████████████        ██████████████
████████████████████████████

*Exhibit K In Support of Plaintiff's Second Amended Complaint, pg 069*